**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYVLANIA**

**SIMONA OCKLEY,**

*Plaintiff,*

**v.**

**TOWNSHIP OF RADNOR,
PENNSYLVANIA, et al.,**

*Defendants.*

**CIVIL ACTION
NO: 2:24-cv-4070-GAW**

---

**PLAINTIFF'S RESPONSE IN OPPOSITION TO RADNOR TOWNSHIP
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

---

# TAB LE OF CONTENTS

I.    QUESTIONS PRESENTED ................................................................................. 1

II.   FACTS ............................................................................................................... 2

III.  LEGAL ARGUMENT ...................................................................................... 9

   A.    CAUSE I-WRONGFUL COMMITMENT- THE EVIDENCE OF RECORD
      SUPPORTS PLAINTIFF'S CAUSE OF ACTION FOR WRONGFUL
      COMMITMENT ............................................................................................ 9

   B.    CAUSE II - FALSE ARREST-THE EVIDENCE OF RECORD SUPPORTS ...................
      PLAINTIFF'S CAUSE OF ACTION FOR FALSE ARREST ....................................... 13

     1.    Step One: Officer's Knowledge of Falsehood and Omissions ...................................... 14

     2.    Step 2: Assertions were material or necessary to a finding of probable cause ............ 16

   C.    COUNT III – MALICIOUS PROSECUTION – THE EVIDENCE OF RECORD
      SUPPORTS PLAINTIFF'S CAUSE OF ACTION FOR MALICIOUS
      PROSECUTION ............................................................................................. 17

   D.    COUNT IV – THE EVIDENCE OF RECORD SUPPPORT PLAINTIFF'S
      CAUSE OF ACTION FOR FALSE IMPRISONMENT ................................................ 18

   E.    COUNT V – FAILURE TO TRAIN – THE EVIDENCE OF RECORD SUPPORTS
      PLAINTIFF'S CAUSE OF ACTION FOR FAILURE TO TRAIN RADNOR
      TOWNSHIP POLICE OFFICERS ..................................................................... 18

IV.  CONCLUSION ................................................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*Addington v. Texas*,
  441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1972).....................................9

*Anderson v. Liberty Lobby, Inc.*,
  477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)...............................9

*Andrews v. Scuilli*,
  853 F.3d 690, 697 (3d Cir. 2017)...........................................................................13

*Berg v. County of Allegheny*
  219 F.3d 261, 277 (1999)........................................................................................20

*Carter v. City of Philadelphia*,
  181 F.3d 339, 357. .................................................................................................19

*Castro v. Debias*,
  770 F. Supp. 3d 758 (E.D.Pa.2025) .......................................................................23

*Connick v. Thompson*,
  563 U.S. 51, 62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)................................19

*Curley v. Klem*,
  499 F.3d 199, 206 (3d Cir. 2007)...........................................................................23

*Dempsey v. Bucknell Univ.*,
  834 F.3d 457, 469 (3d Cir. 2016)...........................................................................13

*Doby v. DeCrescenzo*,
  171 F.3d 858s, 875 (3d Cir. 1989) .........................................................................10

*Finnemen v. SEPTA*,
  267 F. Supp. 3d 639, 643 (E.D. Pa. 2017) ............................................................20

*Gagliardi v, Lynn*,
  446 Pa. 144, 149, 285 A.2d 109, 111 (1971) ........................................................18

*Gallo v. City of Phila.*,
  161 F.3d 217 ..........................................................................................................18

*Halsey v. Pfeiffer*,
  750 F.3d 273, 297 (3d Cir. 2014)...........................................................................17

*Harlow v. Fitzgerald*,
  457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)..............................23

*Hicks v. City of Philadelphia*,
  2025 U.S. Dist. LEXIS 95479 ................................................................................9

*In re Energy Future Holdings Corp.*,
  990 F.3d 728, 737 (3d Cir. 2021)...........................................................................9

*In re IKON Off. Sols., Inc.*,
  277 F.3d 658, 666 (3d Cir. 2002)...........................................................................9

*Krivijanski v. Union R. Co.*,
    357 Pa. Super. 196, 515 A.2d 933, 937) (Pa. Super. Ct. 1986) ................................................ 10

*Lear v. Borough of Brentwood*,
    2006 U.S. Dist. LEXIS 84581, *18 (W.D. Pa., November 21, 2006) ...................................... 9

*Mullenix v. Luna*,
    577 U.S. 7 (2015)....................................................................................................................... 23

*Olender v. Twp. of Bensalem*,
    32 F.Supp.2d 775, 791 (E.D.Pa.1999) .................................................................................... 18

*PA. General Energy Co., LLC v. Grant Twp.*
    139 F. Supp.3d,706 718 .......................................................................................................... 22

*Payton v. New York*
    445 U.S. 573, 587-588 (1978) .................................................................................................. 22

*United States v. Halley*,
    841 F. Supp. 137, 140 (M.D.Pa. 1993) .................................................................................... 22

**Statutes**

50 P.S § 7114 of the MHPA ............................................................................................................ 10

**Rules**

Fed. R. Civ. P. 56(a) ........................................................................................................................ 9

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYVLANIA**

| | |
|---|---|
| **SIMONA OCKLEY,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**TOWNSHIP OF RADNOR, PENNSYLVANIA, et al.,**<br><br>*Defendants.* | **CIVIL ACTION<br>NO: 2:24-cv-0470-GAW** |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS TOWNSHIP OF
RADNOR, LIEUTENANT PINTO, OFFICER MCHALE, OFFICER COCCO AND
OFFICER BROWN'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff, Simona Ockley, by and through her undersigned counsel, submits the following response and incorporated memorandum of law in opposition to Defendants, Township of Radnor, Lieutenant Joseph Pinto, Officer Jennifer Cocco, Officer Brady McHale and Officer Brian Brown's Motion for Summary Judgment, and avers as follows:

## I.    QUESTIONS PRESENTED

Does the evidence of record support Plaintiff's cause of action for wrongful civil commitment?

***Proposed Answer: YES.***

Does the evidence of record support Plaintiff's cause of action for false arrest based upon police violation of the Fourth Amendment?

***Proposed answer***: **YES.**

Does the evidence of record support plaintiff's cause of action for malicious prosecution?

***Proposed answer: YES.***

Does the evidence of record support plaintiff's cause of action for false imprisonment?

***Proposed answer: YES.***

## II.    FACTS

This matter arises from events surrounding a residential property purchase. Plaintiff, Simona Ockley, (hereinafter "Plaintiff") was the owner of a home located at 416 S. Ethan Avenue, Villanova, PA.  (hereinafter the "Premises") where she had lived with her husband who had died several years before. (Cmplt. ¶15) (D.T. Ockley at pp, 10:20-25, 11:1-6). (A true and correct copy of Plaintiff Simona Ockley's Deposition is attached hereto as Exhibit "1").

On October 20, 2021, Plaintiff had agreed to sell the Premises to a local real estate development company, Rockwell Glynn, LP. (hereinafter "Rockwell") (Cmplt. ¶15) (A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit "2".  (D.T. Lingo 10-14). (A true and correct copy of Gregory Lingo Deposition Transcript is attached hereto as Exhibit "3") (A true and correct copy of the Agreement of Sale is attached hereto as Exhibit "4"). Defendant, Gregory Lingo, (hereinafter "Mr. Lingo") is and was the owner of Rockwell, a real estate development company. (Cmplt. ¶2.) (D.T. Lingo, 8:19).  Rockwell entered into a contract to build a home on the premises and resell the finished property to its present owner and Defendant herein, Jeffrey Brydzinski. (hereinafter, "Mr. Brydzinski") (Cmplt. ¶ 1) (D.T. Lingo at 21:9-20). (D.T. Brydzinski at 34:23-35:11). (A true and correct copy of Jeffrey Brydzinski Deposition Transcript is attached hereto as Exhibit "5"). Over the next six months, several attempts were made by the parties to close on the sale of the property. (Cmplt. ¶ 1) (D.T. Lingo at 13:24-25, 14:1-5). (D.T. Brydzinski at 31-32, 34:23-25).

On April 10, 2022, while awaiting closing, Plaintiff suffered a severe injury to her left leg. No longer able to take the pain and coupled with the fact that she could not bear any weight on her leg, on April 21, 2022, she contacted Radnor Township Emergency Services. (D.T. Ockley at D.T Ockley 44-45, 54:13-14).  Emergency Services transported Plaintiff to Bryn Mawr Hospital. *Id*. 46, 63).

On that same day, Radnor Township Code Enforcement was contacted by the Radnor Township Police Department over concerns of the amount of clutter in the house. Upon inspection of the premises on April 21, 2022, agents of the Radnor Township Community Development department condemned the property and declared it unfit for habitation. (Cmplt. ¶ 23, 94)  Radnor Township's Community Development office is delegated the authority to post notices of condemnation (D.T. Kochanski at 11:1-12.) (A true and correct copy of Kevin Konchanski Deposition Transcript is attached hereto as Exhibit "6").  After receiving notice of the conditions on the Premises, Mr. Kochanski visited the Premises and posted thereon notices of condemnation (D.T. Kochanski 16:7-10).

During this time, Ms. Ockley was admitted to Bryn Mawr Hospital where she underwent surgical repair of left tibia.  After surgery, Plaintiff remained hospitalized at Bryn Mawr Hospital from April 21, 2022, until May 7, 2022, and thereafter she was transferred to Broomall Manor Rehabilitation Facility to undergo physical therapy where she remained until August 8, 2022. (Cmplt. ¶22).

Six weeks prior to her release from Broomall Manor, on June 21, 2022, Defendant Rockwell Glynn filed a Complaint against Ockley for breach of contract and brought a declaratory judgment action against Plaintiff. Similarly, On June 24, 2022, defendant Rockwell Glynn also filed a Petition for Special Injunctive relief (D.T. Ockley 9:8-11) (D.T. Brydzinski, 34:19-25).

The Court scheduled a hearing and on July 11, 2022, Defendant Rockwell, through its owner, Gregory Lingo appeared before the Common Pleas judge, the Honorable John J. Whelan, asking the Delaware County Court of Common Pleas to compel Plaintiff to execute the property settlement agreement transferring the legal title to Rockwell by a date certain. (A true and correct copy of the transcript of a hearing before the Court of Common Pleas is attached hereto as Exhibit "7") (Tr. 9:8-11) (D.T. Lingo, 34:19:25)  Both Defendants, Mr. Brydzinski and Rockwell through

its owner Mr. Lingo, were present at the hearing. D.T. Lingo 35:4-11). (D.T. Brydzinski, 42:9-13, 73:20-23). The Plaintiff, who was still under doctor's care at Broomall Manor, traveled by cab from the rehabilitation center to the Court and appeared without counsel. (D.T. Ockley, 108). At the hearing, Judge Whelan accepted a letter that Ms. Ockley drafted the day prior answering Defendant Rockwell Glynn's Complaint and requesting that the Court grant her access to her former home on the Premises to collect and move her personal property from before its planned demolition. (Hearing Tr.3:18-2, 23:9-20) (A true and correct copy of Ms. Ockley' s Letters to the Court are attached hereto as Exhibit "8").

During the hearing, the Judge was made aware that the property was condemned and that unique circumstances that each party faced. Judge Whelan made the decision to allow Rockwell Glynn to record the deed and also granted Plaintiff permission to access the property until September 1, 2022.

The Court, while in session, explained its decision:

**THE COURT**: "But right now, we're still going to allow the closing to occur but you're going to still have a right. Your attorney will assist and there'll be an agreement, a court order, that'll make -- *that'll incorporate an agreement between the parties that says that although the property has been officially sold, that you're allowed to live and/or access the property up until September 1st*."

(Hearing Tr. at 37.) (Emphasis added).

An Order issued by Judge Whelan dated July 15, 2022, compelled Plaintiff to close on the Property and granted her permission to access the Premises until September 1, 2022, to afford her the opportunity to remove her personal possessions from the premises following her extended hospitalization. The Order stated, in relevant part:

[Ockley] "*shall have unlimited and unfettered access to the Property at her own risk to remove her personal property until September 1, 2022 Any personal property remaining at the Property after September 1, 2022 shall be deemed abandoned and may be removed by Plaintiff as refuse*."

-4-

(Emphasis added).  *Id*. (A true and correct copy of the Court of Common Pleas Order is attached hereto as Exhibit "9").

On July 19, 2022, four days after Judge Whelan signed the Order, Defendants immediately signed a settlement agreement and recorded the Deed. (A true and correct of the Deed is attached hereto as Exhibit "10").

A few days prior to Plaintiff's discharge from Broomall Manor, at the beginning of August 2022, she contacted Mr. Lingo and informed him that she would be released on August 8, 2022, and was planning to return to the house.  Mr. Lingo assured Plaintiff that she would not have any problems with accessing the property.  (D.T. Ockley 68:17-19, 69:10-70:20).

On August 8, 2022, Plaintiff returned to the Premises to find that the exterior doors had been locked with **two** sets of locks.   The Plaintiff attempted to call Defendant Lingo to have him remove the locks from the door but was unsuccessful in her attempts at contact. Given the late hour, Plaintiff rented a hotel room for the night at the Red Roof. (D.T. Ockley 70:21-72:1).

The Plaintiff returned to the property early the next morning on August 9, 2022, and found that **two** sets of locks remained and she was unable to access the property. The Plaintiff made multiple calls to Radnor Township and was assured that they had her information, and somebody would get back to her.  (D.T. Ockley at 84:2-90:12). No one from the Township returned Plaintiff's calls.

After many failed attempts at speaking with the manager of the Township, as a last result, she was forced to call attention to her dilemma, by filing an Emergency Petition with the Delaware County Court of Common Pleas requesting an Order renewing Judge Whelan's Order of July 15, 2022, and requesting that the locks blocking her access to the premised be removed. (Cmplt. ¶¶24-25) (D.T. Ockley at 94:4-20).  (A true and correct copy of Emergency Petition is attached hereto as Exhibit "11").

On the same date, Rockwell Glynn's agent, Luke Attanasi informed police of Plaintiff's efforts to return to the Premises.  (D.T. Attanasi 5, 28) (A true and correct copy of Luke Attanasi Deposition Transcript is attached hereto as Exhibit "12" (A true and correct copy of the Radnor Township Police Department Incident Report Form RT-22-10670 is attached hereto as Exhibit "13").

The Honorable Barry C. Dozer, a judge of the Delaware County Court of Common Pleas, granted Plaintiff's petition renewing her "unlimited and unfettered" access to the Premises until September 1, 2022. (Cmplt. ¶¶24-25). (A true and correct copy of Judge Dozer's Order is attached hereto as Exhibit 14).

After receiving an originally signed Order from Judge Dozer's staff, Plaintiff returned to the property to find that one set of locks were removed by who she believed was the Township. (D.T. Ockley 101:15-22).   The Plaintiff tried calling Mr. Lingo but was unable to speak with him. She left a message and again, given the late hour, Plaintiff returned to the Red Roof Hotel to rent another room for the night. (D.T. Ockley 1024:10-23).

On August 10, 2022, Plaintiff returned to the property to find that the one set of locks remained. After failed attempts in contacting Defendant Lingo and/or Attansi, she contacted a locksmith who was able to remove the locks. (D.T. Ockley 130:16-131:22). After gaining access on August 10, 2022, Plaintiff stayed at the Property until the morning of August 12th. (Complaint ¶¶33)

On August 11, 2022, Gregory Lingo, the owner and president of Defendant, Rockwell Glynn, L.P., sent an email to Kevin Kochanski, the head of the Township's Community Development Office, Defendant Radnor's code enforcement officer stating as follows:

Kevin,

> I wanted to update you regarding this property (416 S, Ithan) that we purchased and then sold and plan to start construction imminently for the current owner. We did

not unlocked [sic] the home and **we had turned off the utilities to the home**. However, earlier today **the prior owner (Simona Ockley) broke into the home and is apparently squatting there. I called the Radnor Twp Police** and spoke with Officer Ray Rodden. Officer Rodden was professional/courteous but could not do anything this evening to remove her from the property. I let him know that I was reaching out to you and that with **we would go through the courts to have her forcibly removed. Our attorney Is drafting the documents them this evening and will be filed with alacrity**. Please let me know if there Is anything else you would like us to do at this time.

(A true and correct copy of Mr. Lingo's email is attached hereto as Exhibit "15".)

The next day August 12, 2022, Mr. Lingo or one of Defendant, Rockwell Glynn's staff, contacted Radnor police to inform them of Plaintiff's activity. Based on that report, Defendant Officer Jennifer Cocco of the Radnor Police contacted Defendant Jeffrey Brydzinski, the new owner of the Premises, to let him know of Plaintiff's presence within the residence on the Premises. Brydzinski went to the police station in person and gave misinformation to the police. He indicated time limits and condition limits which were not in any order. (A true and correct copy of Radnor Township Police Department Incident Report Form RT-22-10812 is attached hereto as Exhibit "16"). With Defendant Brydzinski's encouragement Radnor police officer Defendants Cocco, Pinto and McHale and non-defendant Sergeant Michael Fischer broke into the residence without a warrant and handcuffed Ockley while yelling that she was not permitted to remain in the house. Lieutenant Pinto had already contacted the Delaware County crises center to have Plaintiff removed by means of a Mental Health Procedures Act warrant. (hereinafter "302-warrant").

Also on August 12, prior to examining Plaintiff, the mental health delegates were informed by Radnor Township defendant officer Jennifer Cocco that Plaintiff believed she still owned the Property. (A true and correct copy of Defendant Jennifer Cocco's Deposition Transcript is attached hereto as Exhibit "17"). The delegates conducted a perfunctory interview with Plaintiff. Thereafter, the delegates executed a 302-warrant form which if properly executed gave police authority to remove Plaintiff from the Premises. After approval of the County Administrator,

Plaintiff was immediately transferred to Crozer Chester Hospital to undergo an examination to determine her mental status.  (A true and correct copy of Delegates' report is attached hereto as Exhibit "18").

At Crozer Chester Hospital the examining psychiatrist, Daniel Marotta, M.D. discharged Plaintiff within two hours of her arrival finding that her mental status was normal and that she had proof that the Court gave her permission to be on the property.  (D.T. Pinto at 117-118:16).  (A true and correct copy of Lieutenant Joseph Pinto Deposition is attached hereto as Exhibit "19").

After her discharge from Chester Crozer Hospital, the Plaintiff returned by cab to her former residence the next day, August 13, 2022, to find that all the doors and windows to the home had been covered by sheets of plywood.  On that day, knowing of the two orders of the Court of Common Pleas, defendant Cocco along with other police officers confronted and arrested Plaintiff without a warrant and without probable cause.  Subsequently, Defendant Cocco, with the participation of Defendant police officer Brian Brown, then prepared a Criminal Complaint and warrant of arrest charging Ockley with trespass and burglary among others. (A true and correct copy of Criminal Complaint is attached hereto as Exhibit "20").

In the Criminal Complaint and the Affidavit of Probable Cause the Defendants Cocco and Brown **improperly and unethically withheld any mention of the two Common Pleas orders permitting Plaintiff temporary "unlimited and unfettered access" to the residence until September 1, 2022**. (A true and correct copy of the Affidavit of Probable Cause is attached hereto as Exhibit "21").  Later that evening Defendant Cocco and other officers formally arrested and transported Plaintiff to the Radnor Township lockup for arraignment. Based upon the Criminal Complaint's allegations, presiding magisterial court judge, Mancini-Duerr set bail and  committed Plaintiff to the Delaware County George W. Hill Correctional Facility in advance of a preliminary hearing scheduled for September 15, 2022.  (Cmplt. ¶¶63, 65). Plaintiff was released on September

2, 2022, after undergoing a psychological evaluation which was part of the bail conditions. As another part of the conditions of her release, she was told not to return to her former residence and posted a bond of one dollar.

Subsequently, at the preliminary hearing on September 15, 2022, Magisterial District Justice David H. Lang summarily discharged the entire criminal complaint with prejudice and ordered Plaintiff's release. (A true and correct copy of the criminal docket is attached hereto as Exhibit "22").

## III.    LEGAL ARGUMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as [*18] to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Genuine issues of material fact refer to any reasonable disagreement over an outcome-determinative fact." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021). When considering a motion for summary judgment, we must "view the record and draw inferences in a light most favorable to the non-moving party." *In re IKON Off. Sols., Inc.*, 277 F.3d 658, 666 (3d Cir. 2002). We ask, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986), *Hicks v. City of Philadelphia*, 2025 U.S. Dist. LEXIS 95479.

### A.    CAUSE I-WRONGFUL COMMITMENT- THE EVIDENCE OF RECORD SUPPORTS PLAINTIFF'S CAUSE OF ACTION FOR WRONGFUL COMMITMENT

There is an established constitutional right to be free of involuntarily commitment for psychiatric treatment without evidence that a suspected individual suffers from mental illness and poses a threat to himself or others. *Lear v. Borough of Brentwood*, 2006 U.S. Dist. LEXIS 84581, *18 (W.D. Pa., November 21, 2006) (citing *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1972)). Here, the circumstances surrounding Plaintiff's detention resulted in

Plaintiff's immediate and unlawful arrest in violation of her right to be free of involuntary commitment.

The authority of the Commonwealth to detain persons believed to be suicidal or in danger of injuring another is governed by the Mental Health Procedures Act. Under the Act, it is unlawful to provide mental health authorities with false information leading to the detention of a person suspected of suffering from mental illness. 50 P.S § 7114 of the MHPA states, in relevant part that:

> …a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act [may not be liable except] in the absence of willful misconduct, or gross negligence.

"Pennsylvania law defines gross negligence in the context of the MHPA as 'facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity or indifference…" *Doby v. DeCrescenzo*, 171 F.3d 858s, 875 (3d Cir. 1989), the court of appeals further reasoned that willful misconduct exists when:

> "the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a **conscious indifference** to the perpetration of the wrong."

*Id.* (quoting *Krivijanski v. Union R. Co.*, 357 Pa. Super. 196, 515 A.2d 933, 937) (Pa. Super. Ct. 1986)) (Emphasis added).

As noted, on August 12, 2022, Defendants Lieutenant Pinto, Officer Cocco, and Officer McHale individually and in concert displayed a clear conscious indifference when they detained Plaintiff after receiving word from Defendant Brydzinski that Plaintiff had allegedly broken into her former home. They disregarded her pleas to look at the court orders. And later after looking at the orders they disregarded their contents.

The detention furthered the objectives of Lingo and Brydzinski by removing Plaintiff from the premises. Reports later prepared by police present at the scene document their understanding that Plaintiff had previously obtained court orders granting her access to the premises for the

-10-

purpose of retrieving and relocating her personal property.  A report authored by arresting officer

defendant Cocco filed on August 12, 2022 (the date of Plaintiff's detention under the MHPA)

stated:

> Ockley kept stating she has a court order, and she can be inside the home. The court
> order Ockley is speaking about states the home is condemned and she is able to get
> belongings out of the home, as it is not owned by her anymore. [Cocco is referring
> to the Township Ordinance determination not the Common Pleas Orders]

 (A true and correct copy of the Radnor Township Incident Report Form RT-22-10812

Supplemental Report is attached hereto as Exhibit "23").

At the time of Plaintiff's detention by "302" delegates, Defendant, Lieutenant Pinto knew

that Plaintiff had obtained court orders permitting her access to her former home. With respect to

the Orders in question, Lieutenant Pinto misstates the contents of the orders but testified:

> 22· I knew that [Plaintiff] was given rights to retrieve
> 23·items if she was given access by the owner or the
> 24·police.· I never read those documents.

(D.T. Pinto 63-64).

And again:

> 17.  A.· ·I had knowledge that Ms. Ockley no longer owned
> 18· the property, and with specific access limitations was
> 19· allowed to remove items.

(D.T. Pinto 63-64)

Defendant Cocco, engaged in similar misrepresentations when the delegates showed up at

the premises. In aid of placing Plaintiff in custody under the MHPA, Defendant Cocco unlawfully

induced mental health workers to accept her representation that "[Plaintiff] believes she own's

[sic] a house that she sold."  Defendant Cocco's Answers to Requests for Admissions confirm that

she misled delegates. (A true and correct copy of Defendant Cocco's Answers to Request for

Admission are attached hereto as Exhibit "24").  Delegates used this falsehood, conveyed to them

by Defendant Cocco, as a basis for finding that Plaintiff suffered from an unknown mental disorder.

According to Plaintiff, the delegates did not do a thorough interview of her before they concluded that she suffered from what delegates described as an "undiagnosed mental disorder." The Plaintiff testified that:

> 4 A.  think one of the -- they introduce me
> 5.  to these women.  I didn't know who are these
> 6. women.  I don't know if one of them speak to me.
> 7.  And they put me on the ambulance.
> 8. Q.  Okay.  Is it possible that they did
> 9. speak to you while you were on the porch?
> 10. A. I don't recall that.

(D.T. Ockley p.183)

The delegates' report contains no representation that they gave Plaintiff any opportunity to speak.  On the contrary, they reported, without elaboration:

> "Disposition Detail - - Simona was delusional about her housing status and demonstrated a [sic] inability to care. 302 petition approved by OBH delegate Phillip Morrison."

*See* Exhibit "18."

By accepting the Defendants, Cocco and Pinto's, version of Plaintiff's mental state, the delegates were left with a limited ability to make a rational decision as to whether Plaintiff posed a risk of injury to herself or to others.

The facts surrounding Plaintiff's detention show that she was improperly detained on information provided by Lingo and Brydzinski.  The detention was improperly and unlawfully and unethically implemented by police for a commitment under the MHPA.

Viewing the matter in the light most favorable to Plaintiff shows that Ockley was unlawfully detained and suffered violation of her right to be free of involuntarily commitment for psychiatric treatment. *Lear supra*.

The issue as to whether the officers acted reasonably is a genuine dispute of material facts which demands a finding in favor of Plaintiff Ockley.

### B.    CAUSE II - FALSE ARREST-THE EVIDENCE OF RECORD SUPPORTS PLAINTIFF'S CAUSE OF ACTION FOR FALSE ARREST

In order to plead a Fourth Amendment violation on the basis of an arrest warrant, a plaintiff must state factual allegations sufficient to establish "(1) that the officer, with at least a reckless disregard for the truth, 'made false statements or omissions that create[d] a falsehood in applying for a warrant, and (2) that those assertions or omissions were 'material, or necessary, to the finding of probable cause." *Andrews v. Scuilli*, 853 F.3d 690, 697 (3d Cir. 2017) (quotations omitted).

When drafting an Affidavit of Probable Cause, a police officer may not knowingly and deliberately or with a reckless disregard for the truth make any false statements or omissions that create a falsehood. An omission is made with reckless disregard where the officer leaves out anything that a reasonable person would have known was the kind of matter that the judge would want to know in determining whether probable cause exists for the arrest. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 469 (3d Cir. 2016).

When a court determines that false information was asserted or true and material facts were omitted in an affidavit of probable cause with at least reckless disregard for the truth, it must perform a word-by-word reconstruction of the affidavit. *Id*. 470.  An assertion is made with reckless disregard when the affiant must have entertained serious doubts as to the truth of his statements or had obvious reasons to doubt the accuracy of the information he reported. *Id*. (quotations omitted). *Id*. at 468.

First, the officer must have knowledge of the information alleged to have been recklessly omitted. For this reason, we look only at the information available to the officer at the time of the swearing of the affidavit of probable cause. Second, the information must be relevant to the existence of probable cause. The relevance requirement "ensures that a police officer does not

'make unilateral decisions about the materiality of information" by enabling a magistrate to decide independently on the basis of an affidavit containing all relevant information, whether the circumstances give rise to probable cause. *Id*. at 471. As to the second step, the Court considers:

> whether any such omissions were "necessary to the finding of probable cause," id. Thus, for ease of reference we describe the recklessness inquiry as one that examines the relevance of the omitted information.

*Id*. fn. 9. (citation omitted) (internal brackets omitted).

In the present matter, the Police at the scene on August 13 arrested Plaintiff on the basis of an Affidavit of Probable Cause authored principally by Cocco, but with the assistance of all officers at the scene. Defendant Officer Brown testified:

> 19· Q.· · · · Okay.· Who helped you construct the
> 20· affidavit of probable cause?
> 21· A.· · · · It was pretty much a collab with the
> -22·pretty much everyone that was there.·

(D.T. Brown 20:19-25) (A true and correct copy of Officer Brian Brown Deposition is attached hereto as Exhibit "25").

The Officers charged Plaintiff with the following crimes: (1) 18 Pa.C.S. §3503 Crim Tres-Enter Structure (2) 18 Pa.C.S. § 3602, Sec A4 (Burglary), 18 Pa.C.S. 3503 Sec. B1 (Trespass), and 3304 Malicious Mischief (Sections(a) and (b)).

1. **Step One: Officer's Knowledge of Falsehood and Omissions**

Applying the Dempsey court's test in the instant matter, the following facts are dispositive of the determination that Cocco later misled the magisterial court in asking for Plaintiff's arrest by omitting Defendant Cocco's knowledge of the critical information negating probable cause for the charges she brought. In the affidavit of Probable Cause submitted to the magisterial judge, Cocco and the remaining police defendants failed to tell the court the Orders of the Courts of Common Pleas of Delaware County each permitting Plaintiff "***unlimited and unfettered access***" to the premises. The defendants had prior actual notice as early as August 12, 2022, that Plaintiff was

-14-

permitted to occupy the premises until September 1, 2022. Officer Cocco's submitted "Radnor Township PD Incident Report Form RT-22-10812 - Mental Health Emergency (EMER 302)") stating, in relevant part: "Ockley kept stating she has a court order, and she can be inside the home." See Exhibit "".

Defendant Cocco's deposition testimony confirms the truth of the position she adopted in her incident report stating that she had notice of the existence of the Common Pleas orders in question:

> I don't know when, ***but according to the***
> **19· *[incident] report I at least knew there was at least one court***
> **20· *order . . .***

(D.T. Cocco 96:19-20)

Even if Defendant Cocco did not actually read the orders prior to Plaintiff's arrest, she most certainly knew of their content while waiting for the magisterial justice to begin the arraignment that took place on August 13, 2022. The Plaintiff testified that the court orders issued by Judges Whelan and Dozer were stored inside her black carry bag. (D.T. Ockley at 175:3-10). During both August 12 and August 13, 2022, confrontations with police, Plaintiff had repeatedly implored Cocco and all other officers at the scene to view the Orders, but those officers had brushed her entreaties aside. The Plaintiff testified at the deposition that she saw Defendant Cocco going through the black carry bag at the police station prior to the commencement of the arraignment. (D.T. Ockley at 207:16-208:16). **Critically, Defendant Cocco admitted that Defendant Cocco had gone through the papers in the black bag at the Radnor Township lockup. Cocco confirmed that she viewed the Orders at the lockup**:

> 9. Q.· · · · At the time that Ockley was sitting
> 10· outside on the second instance, [referring to August 13 arrest] she had
> some bags
> 11· with her with papers in them; isn't that correct?
> 12· A.· · · · Yes. . . .
> 13· Q.· · · · Okay.· Did you go through all those

-15-

14· papers?
15· A.· · · · *Later at the police station, that's where*
16· *I believe I saw the -- first saw the orders . . .*

(D.T. Cocco at 31:9-16) (Emphasis added).

Defendant Cocco deliberately withheld mention of the two Common Pleas court orders documents from the magistrate in the affidavit of probable cause she and Defendant Brown clearly show that Plaintiff had permission to occupy the premises until September 1, 2022. The Court Orders were evidently "something the magistrate would have wanted to know" when assessing probable cause for the violations charged since they provided patently exculpatory evidence of the crimes charged.   Thus, if defendant Cocco had included these documents in the affidavit of probable cause, there should have been no basis for Plaintiff's arrest.

2.      **Step 2: Assertions were material or necessary to a finding of probable cause**

Continuing with the test prescribed by the appeals court looks at elements of the crimes with which Cocco charged her. The affidavit of probable cause claimed Plaintiff committed the following crimes: the elements of each are as follows:

**18 § 3503(b)(1) CC-Criminal Trespass**
(b) Defiant trespasser. (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he enters or remains in any place as to which notice against trespass is given by: [Listing factors]

**18 § 3502. Burglary.**
(a) Offense defined. — A person commits the offense of burglary if, with the intent to commit a crime therein, the person:(4) enters a building or occupied structure, or separately secured or occupied portion thereof that is not adapted for overnight accommodations in which at the time of the offense no person is present.
(b) Defense. — It is a defense to prosecution for burglary if any of the following exists at the time of the commission of the offense:
(3) The actor is licensed or privileged to enter.  (emphasis added).
18 § 3503 (a)(1)(i) Trespass-Enter Structure
(a) (a) Buildings and occupied structures.
 (1) A person commits an offense if, knowing that he is not licensed or privileged to do so, he:
        (i) enters, gains entry by subterfuge or surreptitiously remains in any
        building or occupied structure or separately secured or occupied
        portion thereof; . . .

-16-

**18 3304 A1- Criminal Mischief**.
(a) Offense defined. A person is guilty of criminal mischief if he:
(1) damages tangible property of another intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in section 3302(a) of this title (relating to causing or risking catastrophe).

The charges of trespass, criminal trespass and burglary require a showing that Plaintiff had no license and privilege to enter the Premises. Clearly, the Orders of the Court of Common Pleas gave Plaintiff license and privilege to enter and stay within the Premises until September 1, 2022. Thus, the elements of each of those offenses are not satisfied.

With respect to malicious mischief, there is no showing in the affidavit that Plaintiff "damaged tangible property of another". All of the possessions within the household on the property belonged to Plaintiff. Further, it follows that no evidence was presented in the affidavit for the proposition that Plaintiff employed fire, explosives, or other dangerous means to accomplish that end.

Count II concludes as does Count I, calling for a decision in favor of Ockley for all the same reasons previously cited.

**C.    COUNT III – MALICIOUS PROSECUTION – THE EVIDENCE OF RECORD SUPPORTS PLAINTIFF'S CAUSE OF ACTION FOR MALICIOUS PROSECUTION**

To state a claim for malicious prosecution pursuant to Section 1983, Plaintiff must demonstrate:

"(1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of [a] seizure as a consequence of a legal proceeding."

*Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014) (citation omitted). There cannot be any question whether the elements 1-3 and 5 have been established. (See previous discussion of false arrest at topic heading II).

As to the crucial fourth element, "[a] malicious prosecution claim might be maintained against one who furnished false information to, or concealed material information from, prosecuting authorities." *Gallo v. City of Phila*., 161 F.3d 217; *Halsey*, 750 F.3d at 297 citation omitted.)  Defendant officers acted maliciously by deliberately withholding from the affidavit of probable cause the Orders of the two Delaware County Common Pleas judges allowing Plaintiff unfettered and unlimited access to her former home in order to take possession of her personal property.  See "Affidavit of Probable Cause."

Interpreting the facts of record in the light most favorable to Plaintiff as the non-moving party, the record demonstrates that defendants indeed engaged in a malicious prosecution. The Police have a duty of "candor to the tribunal" as does a lawyer. There is no candor or probable cause when key exculpating documents are withheld from that tribunal.

### D.   COUNT IV – THE EVIDENCE OF RECORD SUPPPORT PLAINTIFF'S CAUSE OF ACTION FOR FALSE IMPRISONMENT

The elements of a cause for false imprisonment are identical to those for false arrest. Plaintiff herein restates the analysis set forth above in Count II.  Further, it is notable that "probable cause ceases to exist when it becomes clear that the wrong person has been taken into custody . . . "Interpreting the facts in the light most favorable to Plaintiff, plaintiff has stated a claim for False Imprisonment. Under Pennsylvania law, false arrest is synonymous with false imprisonment. *Gagliardi v, Lynn*, 446 Pa. 144, 149, 285 A.2d 109, 111 (1971).  See also *Olender v. Twp. of Bensalem*, 32 F.Supp.2d 775, 791 (E.D.Pa.1999) (citing Pennsylvania cases).

### E.   COUNT V – FAILURE TO TRAIN – THE EVIDENCE OF RECORD SUPPORTS PLAINTIFF'S CAUSE OF ACTION FOR FAILURE TO TRAIN RADNOR TOWNSHIP POLICE OFFICERS

When asked whether that had specific training in interpreting court orders or what to do if they had a lack of clarity regarding court orders all of the officers indicted that they never had any

specific training or education regarding dealing with court orders or whether ordinances trumped order or orders of a state court trumped ordinances of a township.

Additionally, this lack of training plays out as constitutional violations in the nature of exculpatory evidence being withheld intentionally and arrogantly by all of the officers of the Radnor Police Department. A very significant concern in any criminal case. A significant piece of a subsequent civil action such as this case.

. "Ordinarily, a pattern of similar constitutional violations by untrained employees is necessary to demonstrate deliberate indifference for the purposes of failure to train." *Id*. at 223 (quoting *Connick v. Thompson*, 563 U.S. 51, 62, 131 S. Ct. 1350, 179 L. Ed. 2d 417 (2011)).   An exception to that rule permits a finding of failure to train when a plaintiff shows that the need to train officers was "so patently obvious" that the municipality's failure to train constituted deliberate indifference to the "highly predictable consequence" that failing to train would result in constitutional violations." See also, *Carter v. City of Philadelphia*, 181 F.3d 339, 357 (3d... ... See Thomas, 749 F.3d at 223-25.

In Ockley the circumstances of a person who was arrested when she was in possession of not one but two court orders allowing her to be on the premises defies reason and is a blatant affront to legal process. Interestingly, the Mission Statement of the Radnor Police Department is '*We are Dedicated to…upholding the law*…" The law in this case is the two Delaware County Court of Common Pleas orders.

Orders withheld from the Affidavit of Probable Cause. Orders withheld from the Magistrate Judge who signed the Criminal Complaint.  This is the type of circumstance that the Carter court says is "so patently obvious" it would create a "highly probable circumstance" of constitutional violations.

The "single-incident" method of proving deliberate indifference applies only where the need for training was "so obvious" that a failure to do so would mean that the policymaker was deliberately indifferent to constitutional rights. City of Canton, 489 U.S. 378, 790 (1989). The need for additional training is considered sufficiently obvious only when the deprivation of constitutional rights is a "highly predictable" consequence of the training deficiency. *Berg v. County of Allegheny* 219 F.3d 261, 277 (1999).

Applying foregoing test, the record demonstrates that on both August 12 and August 13, 2022, every police officer on the Premises had knowledge that Plaintiff had in her possession two court orders issued by the Court of Common Pleas.  Lieutenant Pinto's testimony shows that officers refused to view those orders even though they were immediately available.   A failure to consider reasonably discoverable exculpatory evidence may constitute a constitutionally deficient investigation. In particular, an officer is liable if he:

> fails to disclose exculpatory evidence to prosecutors, makes false or misleading reports to the prosecutor, omits material information from the reports, or otherwise interferes with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute.

*Finnemen v. SEPTA*, 267 F. Supp. 3d 639, 643 (E.D. Pa. 2017).   A   failure   to   consider reasonably discoverable exculpatory evidence may constitute a constitutionally deficient investigation. In other words, a plaintiff can prevail on a false arrest and false imprisonment claim by showing that the arresting officer ignored exculpatory evidence. That is exactly what happened in the Ockley matter. And even though the Chief of Police/ Superintendent was not on the scene, he joined in the action and agreed with the decision to arrest Ockley in the manner that they did.

D.T Pinto p.43 (emphasis added)

        8. Q.· ·Did you ever speak to the superintendant [sic] prior to
        ·9· ·arresting Ockley?
        10· ·A.· ·Prior to arresting her?
        11· ·Q.· ·Yes.· Regarding this incident.
        12· ·A.· ·Yes.
        13· ·Q.· ·And did he make the same recommendation?

14· ·A.· ·About arresting her?
15· ·Q.· ·Yes.
16· ·A.· ·No.· I -- he was advised she was arrested after
17· ·she was arrested.· We discussed the matter as it
18· ·occurred the day prior. . . .

D.T. Pinto p.42

Q.· ·And he supported that arrest; correct?
·3· ·A.· ·Yes.

(D.T. Pinto at 43) (emphasis added).

With respect to deliberate indifference, Plaintiff testified as follows with regard to her interaction with Defendant police on August 12, 2022, the date of her arrest and detainment by Delegates:

· ·A.· ·They want to remove me from the house.
They said you don't have air conditioning into the
house.· And I tried to ask them to provide me with
the black bag in which I have the Court Orders to
provide them with the Court Orders, both Court
Orders.
· · ·Q.· ·Okay.
· · ·A.· **And Officer Pinto said to me "I don't
care.**

(D.T. Ockley at 175 and 176) (emphasis added)

As to the Defendant officers, it is clear their understanding of the circumstances and the basis for ignoring them would not have made any difference in their conduct. Defendant Cocco testified:

11· Q.· · · · Had you seen the [Judge Dozor's] order, would you have
12· still proceeded with the arrest? . . .
17· A.· · · · Yes.
18· Q.· · · · And if you had seen Judge Whelan's order,
19· would you still have proceeded with the arrest?
20· A.· · · · Yes.

The facts as gathered also how that the Township failed to train police in their contact with mental health workers by their interfering with workers' duty to draw independent conclusions

about their examination of Plaintiff at the scene by suggesting even before they conducted their interview that Plaintiff was non compos mentis, thus depriving Plaintiff of any real opportunity to properly present her own version of events and support her conclusions by showing workers the court orders at issue.

It is effectively black letter law known to any competent law enforcement officer that warrantless felony arrests in the home are prohibited by the Fourth Amendment, absent probable cause and exigent circumstances. *United States v. Halley*, 841 F. Supp. 137, 140 (M.D.Pa. 1993) citing *Payton v. New York* 445 U.S. 573, 587-588 (1978) holding that:

> "To be arrested in the home involves not only the invasion **attendant to all arrests** but also an invasion of the sanctity of the home. This is simply too substantial an invasion to allow without a warrant, at least in the absence of exigent circumstances, **even when it is accomplished under statutory authority and when probable cause is clearly present**.

*Id.* (emphasis added).

## IV.    CONCLUSION

Order over Ordinance.

Orders were clear. Ockley was clear "*I have two court orders*" Said over and over again.

Ignored over and over again. Orders were known to the officers. State court orders controlled. Not the municipality ordinances. And seasoned officers should have known that.

" A municipality is a creature of the state and thus necessarily subordinate to its creator and can exercise only such power as may be granted to it by the legislature." *PA. General Energy Co., LLC v. Grant Twp.* 139 F. Supp.3d,706 718 the court continues to make its point clear…**There can be no doubt that here the state statute…and the local provision are diametrically opposed to each other. In such a situation, the state law preempts the local ordinance".**

In this case, the court order trumps the ordinances. Orders that when presented in the 302 setting got Ockley out of observation almost immediately. Same result at Municipal Court.

The police purposefully withheld the orders in constructing the Affidavit of Probable Cause. There was no probable cause. Blatant disregard for the law. Blatant disregard for an infirmed older woman. Blatant disregard to the Tribunal.

Defendants claim in essentially all the counts that they are protected from the consequences of their actions by qualified immunity. Police officers, embodying the authority of the state, are liable under § 1983 when they violate someone's constitutional rights, unless they are protected by qualified immunity." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007). The doctrine of qualified immunity shields government officials performing discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982). *Castro v. Debias*, 770 F. Supp. 3d 758 (E.D.Pa.2025).  Under the analysis herein, Officers Pinto, Cocco, McHale and Brown are not entitled to qualified immunity.  They have violated Plaintiff's Fourth Amendment Rights involving each of the counts cited above as explained herein.  Consequently, no qualified immunity attaches to the actions of the Radnor Police Department as their actions relate to Ockley.

Qualified immunity is a creation of the Supreme Court and has no basis in common law. Even Justice Thomas in the case of *Ziglar v. Addasi* criticized the doctrine as bearing little resemblance to the common law and suggested that we should reconsider our qualified immunity jurisprudence.

Qualified immunity is banned in four states: Colorado, Montana, Nevada, and New Mexico. Justice Sotomayor expressed concern that Court's qualified decisions contribute to a culture of police violence and "renders the protections of the Fourth Amendment hollow" *Mullenix v. Luna*, 577 U.S. 7 (2015).

When officers withhold evidence, their qualified immunity should be withheld as well.

**WHEREFORE,** Plaintiff respectfully requests that all the Counts of the Motion for Summary Judgment be DENIED.

SCHROM, SHAFFER & BOTEL, P.C.

BY: _/s/ Gerard K. Schrom_
                Gerard K. Schrom, Esquire
                Attorney I.D. No: 39282
                Neil E. Botel, Esquire
                Attorney I.D. No: 84953
                4 West Front Street
                Media, PA 19063
                Phone: (610) 565-5050
                Fax:   (610) 565-2980
                Email: gschrom@schromandhaffer.com
                              nbotel@schromandshaffer.com

**Date:** __July28, 2022__              _Attorney for Plaintiff Simona Ockley_

## CERTIFICATE OF SERVICE

I, Gerard K. Schrom, Esquire, hereby certifies that on this 28th day of July 2025, I caused a true and correct copy of the foregoing: *Plaintiffs' Response in Opposition to Defendants, Radnor Township, Lieutenant Joseph Pinto, Officer Jennifer Cocco, Officer Brady McHale and Officer Brian Brown's Motion for Summary Judgment and Incorporated Memorandum of Law,* was filed with the Clerk via CM/ECF filing system which generates a Notice of Filing to all counsel of record listed below:

John P. Gonzales, Esquire
jpgonzales@mdwcg.com
**Marshall, Dennehey, Warner**
 **Coleman & Goggin, P.C.**
2000 Market Street, Suite 2300
Philadelphia, PA 19103
*Attorney for Defendants, Radnor Township,
Officer Jennefer Cocco, Lieutenant Joseph
Pinto, Officer Brian Brown and Officer
McHale*

Todd Bartos, Esquire
tb@sprucelaw.com
**Spruce Law Group, LLC**
1622 Spruce Street
Philadelphia, PA 19103
*Attorney for Defendants, Rockwell Glynn,
Gregory Lingo, Jeffrey Brydzinski and Tyler
Prete*

SCHROM, SHAFFER & BOTEL, P.C.

BY:   /s/ Gerard K. Schrom
        Gerard K. Schrom, Esquire
        *Attorney for Plaintiff*

**Date:  July 28, 2025**