# EXHIBIT 2

# IN THE UNITED STATES COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA
## CIVIL ACTION – LAW

| | |
|---|---|
| SIMONA OCKLEY<br>300 S. Providence Rd., Apt. 106<br>Media, PA 19063<br>          Plaintiff,<br>    vs.<br> <br>TOWNSHIP OF RADNOR, PENNSYLVANIA<br>Township Building<br>301 Iven Avenue<br>Wayne, PA 19087<br>    and<br>JENNIFER COCCO in her individual capacity<br>Radnor Township Police Department<br>301 Iven Avenue<br>Wayne, PA 19087<br>    and<br>JOSEPH PINTO in his individual capacity<br>Radnor Township Police Department<br>301 Iven Avenue<br>Wayne, PA 19087<br>    and<br>BRADY MCHALE in his individual capacity<br>Radnor Township Police Department<br>301 Iven Avenue<br>Wayne, PA 19087<br>    And<br>BRIAN BROWN in his individual capacity<br>Radnor Township Police Department<br>301 Iven Avenue<br>Wayne, PA 19087<br>    and<br>JEFFREY BRYDZINSKI<br>416 S. Ithan Ave.<br>Villanova, PA 19085<br>    and<br>TYLER PRETE<br>416 S. Ithan Ave.<br>Villanova, PA 19085<br>    and<br>ROCKWELL-GLYNN, LP<br>126 E. State Street,<br>Media, PA, 19063<br>          Defendants. | CIV. NO.: |

1

**COMPLAINT**

1.  Over the course of two days from August 12 to 13, 2022, Radnor Township police officers twice arrested Plaintiff, Simona Ockley, without warrants, without probable cause, and in defiance of two orders of the Court of Common Pleas of Delaware County.  The orders issued by the Court of Common Pleas dated July 15, 2022 and August 9, 2022, granted Plaintiff permission to access the Premises she had recently sold to Defendant Rockwell-Glynn, L.P. until September 1, 2022 to remove her personal possessions following her extended hospitalization and  recovery from surgery.  Rockwell-Glynn then sold the Premises to Defendant, Jeffrey Brydzinski and Defendant, Tyler Prete on July 19, 2022.  Knowing that Plaintiff had permission to access the Premises on August 12, 2022, Defendant Police Officers attempted to have Plaintiff committed to a mental health facility without satisfying any of the requirements for doing so under the terms of the Pennsylvania Mental Health Procedures Act (50 P.S. § 7101, et seq.)  and under clearly established federal law.  In doing so, Defendant police officers executed a commitment form fraudulently verified by two members of the Delaware County Administrator's Office.  After Plaintiff's examination at Crozer Chester Hospital where she was transported by force for evaluation, Plaintiff was summarily discharged from custody a few hours later by a member of the medical staff finding that her mental status was normal, "given the circumstances of her arrest." Shortly after her discharge from Chester Crozier Hospital, Plaintiff returned to her former residence the next day, August 13, 2022 to find all the doors and windows covered by sheets of plywood.  On that day,  Police Officer Cocco returned to the Premises and knowing of the two orders of the Court of Common Pleas, confronted and

arrested Plaintiff while she was waiting on her porch without a warrant and without probable cause. Subsequently, Defendant, Police Officer Brian Brown of the Radnor Police Department, with the aid of Defendant Cocco, then prepared a criminal complaint by filing affidavit of probable cause, withholding all information about the Common Pleas orders permitting Plaintiff temporary unlimited access to the residence and in addition to numerous additional material patent falsehoods. Based upon the criminal complaint allegations, Plaintiff was incarcerated at the Delaware County George W. Hill Correctional Facility for a preliminary hearing for three weeks thereafter until September 2, 2022. At the preliminary hearing on September 15, 2022, Magisterial District Justice David H. Lang summarily discharged the criminal complaint with prejudice and ordered Plaintiff's release.

## I. JURISDICTION AND VENUE

2. Jurisdiction exists in this Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action is brought pursuant to 42 U.S.C. § 1983 to redress a deprivation of Plaintiff's rights secured by the United States Constitution.

3. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to adjudicate pendent state law claims.

4. Venue is proper in the Eastern District of Pennsylvania under 28 U.S.C. § 1391(b) in that this is the Judicial District where all claims arose.

## II. JURY DEMAND

5. Plaintiff demands a jury on all issues and claims set forth in this Complaint pursuant to the Seventh Amendment of the United States Constitution and Federal Rule of Civil Procedure 38(b).

## III. PARTIES

6.    Plaintiff, Simona Ockley, is citizen of the United States currently residing at  300 S. Providence Road, Apartment 106,  Media, PA 19063.

7.    Defendant, Jennifer Cocco (hereinafter "Defendant Coco")  is a citizen of the United States and police officer serving with the Police Department of Radnor Township, PA and is sued her individual capacity acting under color of Pennsylvania law.

8.    Defendant, Joseph Pinto  (hereinafter "Defendant Pinto")  is a citizen of the United States and police officer serving with the Police Department of Radnor Township, PA and is sued his individual capacity acting under color of Pennsylvania law.

9.    Defendant, Brady McHale is a citizen of the United States and police officer serving with the Radnor Township, Pennsylvania police department (hereinafter, "Defendant McHale"), and is sued his individual capacity acting under color of Pennsylvania law.

10.    Defendant, Brian Brown, (hereinafter "Defendant Brown") is a United States citizen and police officer serving in with the Police Department of Radnor Township  and is sued his individual capacity acting under color of Pennsylvania law.

11.    Defendant, Jeffrey Brydzinski, (hereinafter "Defendant Brydzinski") is a citizen of the United States currently residing at 416 S. Ithan Ave., Villanova, Pennsylvania. 19085.

12.    Defendant, Tyler Prete, (hereinafter "Defendant Prete") is a citizen of the United States currently residing at 416 S. Ithan Ave., Villanova, Pennsylvania. 19085.

4

13.    Defendant, Rockwell-Glynn, LP, ("Defendant Rockwell-Glynn") is a limited partnership with mailing address located at 126 E. State Street, Media, PA, 19063.

14.    Defendant, Radnor Township (hereinafter "Defendant Township"), is a municipal corporation and governmental entity within the Commonwealth of Pennsylvania located at 301 Iven Avenue, Wayne, Pennsylvania 19087, empowered to establish, regulate, and control its Police Department for enforcement of laws within its jurisdiction.

## IV.    FACTS

15.    Plaintiff was a long-time resident of Radnor Township, at her home located at 416 S. Ithan Ave., Villanova, Pennsylvania. 19085 prior to its sale to Defendant Rockwell-Glynn.

16.    Plaintiff sold the Premises to Defendant Rockwell-Glynn, but the terms of the sale were not immediately satisfied.

17.    On April 21, 2022, prior to the completion of the sale of the Premises and while still living there, Plaintiff  sustained a crippling injury to her left tibia and was transported by ambulance to  Bryn Mawr Hospital on August 8, 2022.

18.    Plaintiff's injury required her to undergo several surgeries and remain in a rehabilitation hospital until a physician's release.

19.    On  while Plaintiff remained in hospital while undergoing therapy, Defendant Rockwell-Glynn, brought suit against Ockley asking the Court of Common Pleas of Delaware County to issue an injunction to complete the sale of the Premises to Defendant Rockwell Glynn by a date certain.

20.   On July 11, 2022 Plaintiff, while still in hospital, filed a petition requesting the Court of Common Pleas of Delaware County grant her permission to enter and allow her temporary unlimited access to the Premises until September 1, 2022 to collect and store her furniture,  personal belongings and family heirlooms during her extended convalescence.

21.   Plaintiff's Petition was granted at a hearing on July 15, 2022 by the Honorable John J. Whelan of the Court of Common Pleas of Delaware County, Pennsylvania whose Order stated, in relevant part:

> **[Ockley] shall have unlimited and unfettered access to the Property** at her own risk to remove her personal property until September 1, 2022 Any personal property remaining at the Property after September 1, 2022 shall be deemed abandoned and may be removed by Plaintiff as refuse.

(Emphasis added).

22.   Before her discharge from the hospital she contaccted Defendant Rockwell Glynn to give notice that she would return to the Premises on August 8, 2022.

23.   On August 8, 2022, after discharge from the rehabilitation hospital, Plaintiff returned to the premises and found that the exterior doors had been double-locked, one placed there by the Defendant Township and one by Defendant Brydzinski and/or Defendant Prete, and/or Defendant Rockwell-Glynn in defiance of the two Common Pleas orders permitting Plaintiff to return to her former residence and obtain temporary unlimited access to the Premises, Defendant Radnor Township  boarded up entrances to the premises and posted signs declaring the Premises "condemned" and "in violation of maintenance".

24.   On August 9, 2022, Plaintiff filed an emergency petition with the Delaware County Court of Common Pleas requesting an Order renewing her petition pursuant to Judge Whelan's Order of July 15, 2022.

25.   On August 9, 2022, the Honorable Barry C. Dozor of the Delaware County Court of Common Pleas granted Plaintiff's petition duplicating Judge Whelan's previously ordered permission for temporary unlimited access to the Premises until September 1, 2022.

26.   After issuance of Judge Dozor's Order, Plaintiff contacted the Radnor Township manager's office and upon notice of the two orders of the Court of Common Pleas asked that the locks placed on her former residence by the Township be removed in order to gain allow her access to the residence.

27.   Defendant Radnor Township, through its manager, complied and removed all locks it placed and removed all signage displaying notices that the Premises was condemned, placed there by the Township or by Defendant Brydzinski and/or Defendant Prete and or Defendant Rockwell Glynn by and through their designated agents and/or legal representatives.

28.   Plaintiff then called a locksmith and had the remaining exterior door locks removed.

29.   On the morning of August 12, 2022, Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell-Glynn, called police and reported that Plaintiff was trespassing on the Premises and demanded that police remove Plaintiff therefrom.

30.   At all times relevant hereto, Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell Glynn knew that the Court issued its Order giving

7

Plaintiff temporary access to the Premises,, having attended the hearing before Judge Whelan at which time he granted access on July 15, 2022.

31.   Defendant Brydzinski and/or Defendant Prete and or Defendant Rockwell Glynn, having received a copy of the Court's Order that Plaintiff had been granted permission to access the Premises in accordance with the terms of Order of July 15, 2022 knew Plaintiff had been given temporary access to the Premises.

32.   Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell Glynn through their agents, employees and representative, based on information about the Common Pleas' orders, knowing that their attempt to remove Plaintiff from the Premises violated Judges Whelan and Dozer's orders, contacted the Radnor Township police on August 12, 2022  and falsely claimed that Plaintiff was a trespasser and demanded  that Radnor Police remove Plaintiff from the premises.

33.   On August 12, 2022, following Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell Glynn's contact with Radnor Township police, Defendants, Radnor Township police Officers Jennifer Cocco,  Joseph Pinto and Brady McHale  traveled to the residence with the purpose of removing Plaintiff from the premises.

34.   To avoid the process of applying for a warrant of arrest, Defendant officers fraudulently and unlawfully committed Plaintiff involuntarily under the Pennsylvania Mental Health Procedures Act, 50 P.S. § 7101, et seq. (hereinafter the "MHPA") for a mental health evaluation at Crozier Chester Hospital, a designated mental health facility under that Act.

8

35. When arriving at the Premises, Defendant police officers Cocco, Pinto and McHale, without a warrant and without prior warning, broke into the Premises by means pushing through a porch screen door.

36. While in the process of taking Plaintiff into custody, Defendant Officers falsely told Plaintiff several times she had no right to be on the Premises and attempted to lure her out of the residence claiming there was a "judge" on the Premises who wanted to talk to her.

37. In response, Plaintiff repeatedly replied that she had been granted permission by the two orders of the Delaware County Court of Common Pleas.

38. In response to Plaintiff's claim that she had a right to access the Premises, Defendant Cocco and two other officers at the scene responded that Plaintiff was "delusional" because she had sold the property and had no right to be there.

39. Plaintiff retrieved copies of the two orders of the Court from a cloth carry bag and showed them to the officers present.

40. Upon display of the two orders, Defendant Pinto exclaimed that he did not care what the orders said and that Plaintiff had no right to access the Premises.

41. The three defendant officers on the scene were joined by persons identifying themselves  Lisa Black and Courtney Stott, both of whom were unknown to Plaintiff and who represented themselves as agents of the Delaware County Administrator's office.

42. Defendant police officers  presented Ms. Black and Ms. Stott with a form 7302  entitled "Application For Involuntary Emergency Examination and Treatment" form provided under the MHPA  for Plaintiff's involuntary commitment.

9

43.  Defendants unlawfully induced mental health workers, Ms. Black and Ms. Stott, to verify Officers' false claims regarding Plaintiff's mental status outlined in the MHPA application, while giving them no opportunity whatsoever to evaluate Plaintiff's mental status personally.

44.  With knowledge of Defendant Police Officers, Ms. Black or Ms. Stott enter made only limited observation of Plaintiff's behavior in the course of her arrest, and made no effort to establish interpersonal contact with Plaintiff either inside or outside the residence as she was shunted into a Radnor Township ambulance to transport her to Crozer Chester Hospital.

45.  Instead, Ms. Black and Ms. Stott relied exclusively on defendant police officers' false representation that Plaintiff was *non compos mentis*. [1]

46.  Without personal knowledge of Plaintiff's mental status, Ms. Black and Ms. Stott verified the application prepared by defendant police officers which stated as follows:

> Simona has a [sic] unknown mental health diagnosis.  She was recently discharged from Bryn Mawn Hospital.  She believes she owns the house that she sold.  The home is uninhabitable and there is no running water.  Simona is sitting in the bed with no ventilation in extremely warm temperatures.  She is sitting in her urine and feces and refusing to leve [sic].

---

[1] The United States Supreme Court has held that state statutes, such as the MHPA in this case, require clear and convincing evidence that an individual poses a danger to himself or to others before having him or her involuntarily committed. *See Foucha v. Louisiana*, 504 U.S. 71, 80, 112 S. Ct. 1780, 118 L. Ed. 2d 437 (1992). Consequently, "[t]here is an established constitutional right to not be involuntarily committed to a mental institution without evidence that an individual suffers from mental illness and poses a threat to himself or others." *Lear v. Borough of Brentwood*, No. Civ.A. 02-1747, 2006 U.S. Dist. LEXIS 6882, 2006 WL 456194 (W.D.Pa. Feb. 23, 2006) (citing *Addington v. Texas*, 441 U.S. 418, 425, 99 S. Ct. 1804, 60 L. Ed. 2d 323 (1972)).

47.   On the force of the MHPA 7302 commitment form, Defendants Cocco and Pinto and McHale, transported Plaintiff to Chester Crozer Hospital falsely claiming authority to do so under terms of the MHPA.

48.   In the course of doing so, Defendants violently grabbed Plaintiffs arms and  handcuffed Plaintiff without obvious need to do so under the circumstances, bruising her wrists, and dragged her violently outside the residence breaking the frame of a screen door and placed her on a gurney for transportation to Crozer Chester Hospital for mental observation and evaluation.

49.   Further, in the course of removing Plaintiff from the premises, Defendant Officers left Plaintiff's walker on the premises' porch, depriving her its use.

50.   Several hours after arriving at Crozier Chester Hospital,  a psychiatrist examined Plaintiff and immediately discharged her stating in the discharge form that:

> [Patient] was brought to ED for 302 evaluation as police believed she had delusion of owning her house and pt would not leave.  They were also concerned that she was in her own urine and feces but pt explained she had no running water and limited mobility due to recent leg surgery.  **[Patient] is able to communicate logically, has normal mental status given the situation and does not have any psychiatric illness from our standpoint.**

(Emphasis added).

51.   Following her evaluation and release a few hours after her arrival, Plaintiff remained in the hospital waiting room for the remainder of the night. Thereafter, she took a taxicab to a nearby hotel into  the next morning.

52.   On the morning of August 13, 2022, Plaintiff returned to the *Premises.*

53.   When Plaintiff arrived at the Premises on August 13, 2022, she found that all entrances to the residence had been boarded up with plywood and nailed

11

shut preventing her access to the interior where her furniture, personal possessions and family heirlooms still remained, and in defiance of the two orders of the Delaware County Court of Common Pleas.

54. Sometime after Plaintiff's arrival on August 13, 2022 Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell Glynn, became aware that Plaintiff had returned to the Premises.

55. Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell Glynn contacted Defendant Radnor Township demanding that Plaintiff once again be removed from the Premises.

56. Acting on Defendant Bridzinski's and/or Defendant Prete's, and/or Rockwell Glynn's demand, Defendant Cocco returned to the Premises and, upon seeing Plaintiff, immediately placed her in handcuffs and arrested her without a warrant and without probable cause.

57. Once again, Defendant Cocco refused to acknowledge the Court orders Plaintiff had presented to the defendant officers the day before and immediately transported Plaintiff to the Radnor Township Police station in handcuffs.

58. At the Radnor Township Police station Plaintiff was administratively processed and placed in a juvenile holding cell until approximately 7:00 p.m. that evening in anticipation of bringing Plaintiff before a magisterial district justice for arraignment.

59. For a period of approximately one-half hour while Plaintiff was awaiting further processing, she observed Defendant Cocco going through the cloth carry bag containing the Court of Common Pleas orders permitting Plaintiff access to the premises.

12

60.  By that time, and in spite of her previous willful disregard of the court orders, Defendant Cocco knew that Plaintiff had permission to access the Premises at the time of Plaintiff's arrest, having seen or having been informed by Defendant Pinto of the contents of the two orders of the Courts of Common Pleas the day before and having had personal access to Plaintiff's records contained within Plaintiff's carry bag while at the Radnor police station.

61.  Sometime after Plaintiff's detention Defendant Cocco, Defendant Brown prepared a criminal complaint against Plaintiff.

62.  The Criminal Complaint charged Plaintiff with Criminal Trespass (18 Pa CS §3503 (a)(1) a felony of the third degree; Burglary, (18 Pa CS §3502(a)(4) a felony of the second degree; Criminal Trespass after warning given (18 Pa CS §3503 (b)(1)), a misdemeanor of the third degree; Criminal Mischief (18 Pa.C.S §3304(a)(1))a felony of the third degree; damage to the property of another (18 Pa.CS §3304(a)(1)-(2) a felony of the third degree; causing or risking a catastrophe (18 Pa.CS §3302(a)(1) a felony of the third degree; impairment of public communications in excess of $5000 in damages (18 Pa.CS §3304(a)(1)-(2)) a felony of the third degree.

63.  On the basis of the falsified averments and charge contained in the Affidavit of Probable Cause, Plaintiff was arraigned from the Township jail at a hearing held before Magisterial Court Justice Mancini Duerr of the Magisterial Court, located in Newtown Square by video conference at approximately 7:00 p.m. on August 13, 2022.

64.  The Magisterial District Justice knew of and disregarded the two Common Pleas orders and the Plaintiff's medical evaluation finding her mentally competent.

13

65.   On the basis of the falsified allegations contained in the affidavit of probable cause, the Magisterial District Justice held Plaintiff over for preliminary hearing scheduled on September 15, 2022.

66.   Bail was set at one dollar attached to which were conditions of release including an additional but unnecessary competency evaluation and psychological evaluation before release, and upon Plaintiff's promise not to revisit the Premises. No effort was made by court personnel to collect the dollar bail.

67.   Plaintiff was then transported by Defendant officers directly to Delaware County's George W. Hill Correctional Facility where she remained for three weeks until September 2, 2022.

68.   On September 15, 2022, after presentation of all evidence and testimony before Magisterial District Court Justice David H. Lang, all charges against Plaintiff were summarily dismissed with prejudice and Plaintiff was released from custody.

69.   At Plaintiff's request, the record of the charges against her were expunged.

70.   During Plaintiff's incarceration, Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell-Glynn had Plaintiff's clothing and other personal possessions and family heirlooms placed in "pods" and transferred to a storage facility, but her household furniture was collected and its whereabouts were never disclosed to her and cannot be determined.

## V.   CAUSES OF ACTION

### COUNT I

### PLAINTIFF V. COCCO, PINTO and MCHALE

### FALSE ARREST/WRONGFUL CIVIL COMMITMENT

14

**UNDER 42 U.S.C. § 1983**

71.   The foregoing and subsequent allegations are incorporated as if fully set forth herein.

72.   At all times relevant hereto, Plaintiff had a right to possession of the Premises secured under the Fourth and Fourteenth Amendments to the United States Constitution by and through the two orders of Delaware County Court of Common Pleas, Judges Whalen and Dozer, granting Plaintiff full access to the Premises until September 1, 2022 to organize and retrieve her personal possessions.

73.   On August 12, 2022 defendants Cocco, Pinto and McHale individually and in concert caused Plaintiff to be deprived without a warrant and/or without clear and convincing evidence that she suffered from a mental disability based upon a falsely verified 7302 application for Plaintiff's  involuntary commitment for a 302 examination under the MHPA.

74.   Defendants Cocco, Pinto and McHale  knew or should have known that Plaintiff had a right to be free from arrest and detention except upon  a showing of Plaintiff's mental incapacity by clear and convincing evidence.[2]

75.   The arrest and detention of the Plaintiff also lacked probable cause.

76.   By their conduct, the Defendants police officers' actions failed to  validly meet any of the bases for Plaintiff's commitment for observation and evaluation under the Mental Health Procedures Act.

---

[2] See *Foucha v. Louisiana*, 504 U.S. 71, 80, supra.

77.   Under the circumstances surrounding Plaintiff's arrest, Plaintiff was neither mentally ill nor dangerous as the examining physician at Crozer Chester Hospital opined.

78.   Instead, Defendant police officers knowingly created and relied upon false facts upon which to base their arrest and detention of Plaintiff, alleging without proof that Plaintiff was *non compos mentis*.

79.   In support of their actions, Defendant officers Cocco, Pinto and McHale unlawfully induced mental health workers, Ms. Black and Ms. Stott,  to verify Officer Cocco's false claims as outlined in the 7302 documents rather than seek a warrant of arrest, and in the course of doing so submitted falsified documents in their commitment application in violation of the terms of the MHPA and Radnor Police Policy by:

a. failing to observe Plaintiff in any manner to determine her mental status as referenced in Defendant Radnor Township Police Manual related to the use of the MHPA.

b. summarily summoning mental health workers to the residence without giving them the opportunity to observe Plaintiff long enough to determine her mental status and for the sole purpose of aiding in Plaintiff's removal from the premises.

c. aiding in the creation of false MHPA form 7023 for the sole purpose of satisfying  Defendants Bryzinski and/or Prete and/or Rockwell Glynn's complaint asking the Radnor Township police to remove Plaintiff from the Premises without having to establish probable cause for Plaintiff's arrest and detention.

16

d. making an arrest without an affidavit of probable cause where the violations they contemplated submitting to a Magisterial District Court were classified as felonies.

80. As a direct and proximate result of Defendant's actions and failure to act, Defendants deprived Plaintiff of her freedom and of her possessory right to access the Premises secured by the two orders of Delaware County Court of Common Pleas Judges Whalen and Dozer.

80. Defendant officers committed willful misconduct, recklessness and gross negligence by their intentional disregard and failure to enforce the two orders of the Delaware County Court of Common Pleas dated July 15, 2022 and August 9, 2022 permitting Plaintiff to access the Premises for the purposes indicated in those orders.

81. As a direct and proximate result of Plaintiff's arrests and Defendant's criminal complaint Plaintiff has suffered:

a. loss of personal liberty;

b. harm to her reputation,

c. mental anguish and humiliation,

d. injury to her emotional wellbeing,

e. physical injury and distress, and

f. loss and damage of personal property including but not limited to virtually all of her household furnishings, jewelry, gold coins, silverware, silver trays, appliances, family heirlooms and a grand piano.

WHEREFORE, Plaintiff demands judgment against defendants, Cocco, Pinto, and McHale, jointly and severally, for actual damages, punitive damages, court costs, and attorney's fees and such other relief deemed to be just and equitable.

## COUNT II

## PLAINTIFF V. COCCO

## FALSE ARREST UNDER 42 U.S.C. § 1983.

82.   The foregoing and subsequent allegations are incorporated as if fully set forth herein.

83.   Defendant Cocco  placed Plaintiff under arrest  on August 13, 2023 without seeking a warrant of arrest and without probable cause.

84.   Defendant Cocco knew that Plaintiff had the right to access the residence located on the Premises by the two orders of Delaware County Court of Common Pleas Judges Whalen and Dozer issued  prior to Plaintiff's arrest while still convalescing from a crippling injury.

85.   Defendant Cocco's actions in placing Plaintiff  under arrest prior to seeking a warrant and transporting Plaintiff in handcuffs to the Radnor Township police lock-up,  without probable cause and without warrant,  deliberately, recklessly and/or in a grossly negligent manner violated Plaintiffs  known rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free of arrest without a warrant of arrest and without probable cause.

86.   Defendant Officers acted with deliberate indifference and malice  in the execution of their duties as demonstrated by the following conduct:

      a.  Knowingly creating and relying upon false facts upon which to base the charges brought against Plaintiff alleging without proof that

18

Plaintiff was engaged in felonious conduct with which she was charged.

   b.  Deliberately ignoring two orders of the Court of Common Pleas of Delaware County.

87.  As a direct and proximate result of Plaintiff's arrests and Defendants' criminal complaint, Plaintiff has suffered:

   a.  loss of personal liberty;

   b.  harm to her reputation,

   c.  mental anguish and humiliation,

   d.  injury to her emotional wellbeing,

   e.  physical injury and distress, and

   f.  loss and damage of personal property including but not limited to virtually all of her household furnishings, jewelry, gold coins, silverware, silver trays, appliances, family heirlooms and a grand piano.

WHEREFORE, Plaintiff demands judgment against defendants, Cocco, Pinto, and McHale, jointly and severally, for actual damages, punitive damages, court costs, and attorney's fees and such other relief deemed to be just and equitable.

## COUNT III

### PLAINTIFF V. COCCO AND BROWN

### FALSE IMPRISONMENT UNDER 42 U.S.C. § 1983

88.  The foregoing and subsequent allegations are incorporated as if fully set forth herein.

19

89. The subsequent detainment of Plaintiff pursuant to her false arrest, as more fully described hereinbefore above, constituted false imprisonment of the Plaintiff and violated Plaintiff's right as guaranteed to her by the Fourth and Fourteenth Amendments to the United States Constitution.

90. The actions of the Defendant Cocco and Brown were willful, wanton and/or done with a reckless disregard for the rights of Plaintiff.

91. As a direct and proximate result of the acts described hereinbefore above perpetrated by the Defendant, Plaintiff suffered the following injuries and damages

92. At the behest of defendant Cocco and under authority of Defendant Township, Defendant Brown filed criminal charges against Plaintiff.

93. Defendant Brown's affidavit of probable cause supporting the criminal complaint was co-authored but not signed by Defendant Cocco.

94. The criminal complaint affidavit stated:[3]

On 08/12/2022 the homeowner of 416 S. !than Av. advised of an unwanted subject living in the residence. The subject is known as Simons Ockley and no longer resides at the listed address. The residence was condemned in May of 2022 and Ockley was not allowed to reside in the residence. ***Ockley sold the residence on July 15th, 2022, to the current homeowner and was advised she could remove personal Items from the residence only with permission from the new property owner and only until 4:00pm.***

On August 9th, 2022, ***the property owner was advised Ockley, with the assistance of a taxi driver, broke all locks off of all the doors with a hammer, and removed all of the notices of condemnation from the building***. Ockley refused to leave the home and locked the owner/construction crew out of the home. Ockley informed the homeowner she was corning back to live In the residence, ***Ockley, within the next couple of days, continued to interfere with construction crews and refused to allow access to the home by Inspectors,*** On B/12/22 the property owner received a phone call advising that PECO service was taken out of his name and put Into Ockley's ( the PECO was turned off, since the home Is being demolished in 2-3 weeks), When Ockley changed the account, the scheduled meter disconnect was also terminated. Oakley also attempted to restore water service by calling Aqua and even had

---

[3] Paragraphing not in original

Verizon at the home attempting to restore service, Ockley has been living in the home, which is condemned and she does not have permission from the current homeowner.

**On 8/12, the homeowner requested Radnor Police respond to the address and speak to Ockley, was indeed living in the home the past few days,** Ockley did not appear to be making any progress with removing items from the home, **The house was extremely hot, has no running water, and Ockley was still In a hospital gown** (she was discharged from the hospital on 8/8/22 The house only had a small pathway to a couch, where Ockley appeared to be sleeping and trash bags on both sides of the path. Ockley was on the phone with Aqua when police arrived, trying to restore service, Radnor Police attempted to explain to Ockley that she could not live In the residence, but she continually refused to leave. **Ockley was also sitting in her own fecal matter**, It appeared Ockley did not want to take care of herself, so we had Mobile Crisis respond. An involuntary commitment was signed and Ockley was transported to the hospital for assistance. Prior to hospital transport, Ockley Was told several times she has no right to the property and can't live In It, Ockley was 'advised, several times, if she returned to the property, she would be considered trespassing,

**On 8/13/22, at the request of the home-owner**, **Ofc, Cocoa [sic] checked on the residence. checking the residence, the plywood erected by the homeowner, preventing access to the home, was unscrewed** from the garage. No access to the house was gained through the garage, but the attempt was made, As Ofc. Cocco went to check the rear of the residence, Ockley was seen sitting on the back porch in her hospital gown. Ockley advised she was waiting for a friend to come and help her get Into the house. Ockley was advised she is not allowed to be on the property or house, as she was advised on 8/12/22. Ockley refused to leave the residence and was subsequently arrested.

Based on the aforementioned facts, I request Simone Ockley answer to the charges brought against her.

(emphasis added).

95.   The affidavit of probable cause upon which the criminal complaint was

brought was issued without  probable cause by deliberately misrepresenting facts,

fabricating evidence, and intentionally and or recklessly omitting exculpatory

evidence in the form of the two orders of the Court of Common Pleas as more fully

outlined above herein.

96. The criminal complaint's allegations failed to state a basis for probable cause to pursue the charges leveled against Plaintiff and contained the following defects:

a. Defendants Brown and Cocco lied that Plaintiff access the Premises without legal permission while it was clear to Defendants that the Delaware County Court of Common Pleas issued two orders granting Plaintiff temporary unlimited access to the residence.

b. At no time did defendants Brown claim he had personal knowledge of any facts stated in his affidavit.

c. The allegation that Plaintiff had "broken into" the house on August 9, 2022 by breaking the locks and removing plywood was false. There was no physical evidence obtained at the scene showing a break-in as alleged. On the contrary, two sets of locks were present on the doors to the house when Plaintiff returned on August 9, 2022. One set was placed there by the Radnor Township manager's office and the other by a locksmith. Plaintiff notified the Township manager of her circumstances, and the manager removed one set of the locks. The other set of locks was removed by a locksmith.

d. At no time did Plaintiff "interfere" with construction crews as alleged. On the contrary, Plaintiff accessed the Premises inside the residence attempting to restore water and electrical service in her own name in order to make the residence habitable while exercising her right to remain on the Premises consistend with the two Delaware County court orders.

22

e. Items claimed to be "trash bags" were plastic bags containing Plaintiff's clothing, household items and other items of personal property. These bags were later placed in a three "Pods" for storage by Defendant Rockwell-Glynn and transported off the Premises.

f. On August 13, 2022 plywood sheets nailed to the entrances to the residence including that blocking entry through the garage were not and could not be removed by Plaintiff since all such sheets were nailed or screwed shut.

g. Defendant officers falsely claimed that Plaintiff was "sitting in her own feces." At the time defendant Cocco arrived at the Premises, Plaintiff had just gotten home from the hospital, was wearing a hospital gown as a result of her being locked out of the residence in violation of the two orders of the Delaware County Common Pleas Courts.

97. As a direct and proximate result of Plaintiff's arrests and Defendants' criminal complaint, Plaintiff has suffered:

a. loss of personal liberty;

b. harm to her reputation,

c. mental anguish and humiliation,

d. injury to her emotional wellbeing,

e. physical injury and distress, and

f. loss of and loss and damage of personal property including but not limited to all of her household furnishings, jewelry, gold coins, silverware, silver trays, appliances, family heirlooms and a grand piano.

23

WHEREFORE Plaintiff demands judgment against defendants, Jennifer Cocco and Brian Brown, jointly and severally, for actual damages, punitive damages, court costs, and attorney's fees and such other relief deemed to be just and equitable.

### COUNT IV

### PLAINTIFF V. BROWN AND COCCO

### MALICIOUS PROSECUTION UNDER 42 U.S.C. § 1983.

98.  The foregoing and subsequent allegations are incorporated as if fully set forth herein.

99.  At all times relevant herein, defendants Brown and Cocco acted in an intentional, reckless, and/or in a grossly negligent manner in their failure to observe basic requirements precedent to a criminal complaint.

100. Defendant Cocco acted with malice, demonstrated by the following conduct:

    a. Knowingly creating and relying upon false facts alleging that Plaintiff had no right to access the Premises upon which to base her arrest of Plaintiff.

    b.  Deliberately ignoring two orders of the Court of Common Pleas of Delaware County.

    c. Acting at all times to remove Plaintiff from the Premises and incarcerate her on the basis of a demand by Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell Glynn each of whom knew of Plaintiff's right to access the premises.

d.  Characterizing Plaintiff as "delusional" in spite of their knowledge
that Plaintiff had been granted temporary access to the Premises.

101.  As a direct and proximate result of Plaintiff's arrests and Defendants'
criminal complaint, Plaintiff has suffered:

a.  loss of personal liberty;

b.  harm to her reputation,

c.  mental anguish and humiliation,

d.  injury to her emotional wellbeing,

e.  physical injury and distress, and

f.  loss of and damage to personal property including but not limited to
virtually all of her household furnishings, jewelry,  family heirlooms,
gold coins, silverware, silver trays, appliances, and a grand piano.

WHEREFORE Plaintiff demands judgment against defendants, Jennifer Cocco
and Brian Brown, jointly and severally, for actual damages, punitive damages, court
costs, and attorney's fees and such other relief deemed to be just and equitable.

## COUNT V

### FAILURE TO TRAIN UNDER 42 U.S.C. § 1983

### PLAINTIFF V. RADNOR TOWNSHIP

102.  The foregoing and subsequent allegations are incorporated as if fully set
forth herein.

103.  At all relevant times herein, defendant Township, intentionally or  with
deliberate indifference failed to train its officers to implement the provisions with
respect to the proper use of the MHPA or the proper creation of affidavits of
probable cause, deprived plaintiff of known rights and privileges secured by the

25

Constitution of the United States without due process of law as more fully set forth above in that it failed to instruct, train or otherwise educate its agents, servants or employees, including Defendant Officers , in proper and accepted methods of law enforcement, to refrain from:

    a.  summary arrest, confinement and prosecution of suspects and depriving suspects access to their property  by relying on unconfirmed reports of criminal activity without proper investigation.

    b.  summary arrest and confinement of suspects by relying on falsified and uncorroborated  observations of suspects' mental health status in violation of the MHPA;

    c.  arrest, confinement and prosecution of suspects without applying for a warrant of arrest where circumstances offered adequate opportunity to do so.

104.  Defendants Cocco, Pinto and McHale  knew that they had violated clearly established policies and procedures of the Radnor Township training manual relating to implementation of the Pennsylvania MHPA in the course of their detention  arrest and prosecution of criminal suspects.

105.  The pervasive use by all defendant police officers involving unconstitutional tactics to detain, arrest and charge Plaintiff with behavioral disorders and criminal acts as hereinbefore described shows that Defendant Township's lacked obvious training and discipline  and  created  an obvious need for more and different training and oversight of its police activity with regard to the MHPA and the need for more and different training regarding the preparation of affidavits of probable cause under the present circumstances.

106.  At all relevant times herein, Defendant Radnor Township, knew or in the exercise of reasonable caution should have known that its failure to adopt specific policies and procedures for training its officers with regard to the MHPA and the standards of probable cause and affidavits of probable cause posed an unreasonable risk that the constitutional violations recounted above were likely to occur.

107.  Absent proper training,  Defendant Township created a significant risk of constitutional violations for Plaintiff's detention, arrest, and incarceration.

108.  Defendant Radnor Township acted with deliberate indifference to the need to properly train its police officers, Defendant Radnor Township directly or indirectly approved and/or ratified the unlawful, deliberate, malicious, reckless, and wanton conduct of Defendant Officers Pinto, Cocco, McHale  and Brown heretofore described.

109.  The policies, actions and failure to act described herein in violation of the Fourth and Fourteen Amendments to the Constitution., caused plaintiff to be deprived of known rights, privileges, and immunities, without due process of law, including but not limited to  her rights to be free of unlawful seizure, involuntary detention without probable cause and imposition of unsupported criminal charges depriving Plaintiff access to her personal  property without due process of law

110.  The practices of the defendant Township described above are not relevant to any legitimate governmental purpose.

111. As a direct and proximate result of Plaintiff's detention, arrests and Defendants' criminal complaint, Plaintiff has suffered:

     a.    loss of personal liberty;

b. harm to her reputation,

c. mental anguish and humiliation,

d. injury to her emotional wellbeing,

e. physical injury and distress, and

f. loss of and damage to virtually all of her personal property including but not limited to her household furnishings, jewelry, family heirlooms, gold coins, silverware, silver trays, appliances, and a grand piano.

WHEREFORE, Plaintiff demands judgment against defendant, Radnor Township, for Plaintiff demands judgment against Defendants for actual damages, punitive damages, court costs, and attorney's fees and such other relief deemed to be just and equitable.

## COUNT VI

## PLAINTIFF V. BYRDZINSKI AND PRETE AND ROCKWELL-GLYNN

## MALICIOUS PROSECUTION UNDER PENNSYLVANIA LAW

112. The foregoing and subsequent allegations are incorporated as if fully set forth herein.

113. In spite of his knowledge of Plaintiff's right to access the Premises as ordered by two Courts of Common Pleas, Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell Glynn, demanded that Defendant police officers arrest and charge Plaintiff with various felonies relating to Plaintiff's presence at the Premises.

114. On both August 12 and August 13, 2022, knowing of Plaintiff's rights to occupy the residence, Defendant Brydzinski and/or Defendant Prete and/or

28

Defendant Rockwell-Glynn, contacted Defendant Radnor Township and demanded that Plaintiff be removed from the Premises and charged criminally.

115. Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell-Glynn knew there was no basis for Plaintiff's arrest and removal from the premises under the circumstances.

116. Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell-Glynn acted with malice in that:

    a. they knew Plaintiff had a right to access the premises granted by two orders of the Court of Common Pleas of Delaware County but took steps to expel her from the property in defiance of those orders, and

    b. defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell-Glynn through its agents, lied to Radnor Township police claiming that Plaintiff had no right to access the Radnor Township premises.

117. As a direct and proximate result of Plaintiff's arrests and Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell Glynn's actions Plaintiff has suffered:

    a. loss of personal liberty;

    b. harm to her reputation,

    c. mental anguish and humiliation,

    d. injury to her emotional wellbeing,

    e. physical injury and distress, and

    f. loss of personal property including but not limited to virtually all of her household furnishings, jewelry, family heirlooms gold coins,

silverware, silver trays, appliances, and a grand piano..

WHEREFORE, Plaintiff demands judgment against defendant, Jeffrey Brydzinski and/or Defendant Tyler Prete  and/or Defendant Rockwell-Glynn, jointly and severally, for actual damages, punitive damages, court costs, and attorney's fees and such other relief deemed to be just and equitable.

## COUNT VII

## PLAINTIFF V. BYRDZINSKI, PRETE AND ROCKWELL GLYNN

## CONVERSION UNDER PENNSYLVANIA LAW

118. The foregoing and subsequent allegations are incorporated as if fully set forth herein.

119.  While Plaintiff was incarcerated, Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell-Glynn,  took advantage of her absence to remove Plaintiff's personal property from the Premises.

120.   Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell Glynn kept, disposed or sold off virtually all of Plaintiff's personal property.

121.   Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell-Glynn had no permission from Plaintiff to do so. As a direct and proximate result of Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell-Glynn's actions, Plaintiff has permanently lost her ability to recover and retain her personal property including but not limited to household furnishings, jewelry, gold coins, silverware, silver trays, appliances, family heirlooms and a grand piano.

WHEREFORE, Plaintiff demands judgment against defendants, Defendant Brydzinski and/or Defendant Prete and/or Defendant Rockwell-Glynn, jointly and

severally, for actual damages, court costs, and attorney's fees and such other relief deemed to be just and equitable.

LAW OFFICE OF NEIL E. BOTEL

BY:    Neil E. Botel, Esquire
PA Bar No.: 84953
4 West Front St.
Media, PA 19063
Phone:  (215) 796-4000
Fax: (610) 565-2980
E-mail:  nbotelaw@gmail.com
Attorney for Plaintiff,
Simona Ockley