**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYVLANIA**

| | |
|---|---|
| **SIMONA OCKLEY,** | |
| *Plaintiff,* | **CIVIL ACTION**<br>**NO: 2:24-cv-4070-GAW** |
| **v.** | |
| **TOWNSHIP OF RADNOR,**<br>**PENNSYLVANIA, et al.,** | |
| *Defendants.* | |

---

**PLAINTIFF'S RESPONSE IN OPPOSITION DEFENDANTS,
JEFFREY BRYDZINSKI, TYLER PRETE, AND ROCKWELL
GLYNN'S MOTION FOR SUMMARY JUDGMENT
AND INCORPORATED MEMORANDUM OF LAW**

---

**TABLE OF CONTENTS**

I.   OVERVIEW .................................................................................................................. 1

II.  FACTS ........................................................................................................................... 2

III. LEGAL ARGUMENT ................................................................................................ 12

   A.  COUNT IV – MALICIOUS PROSECUTION UNDER PENNSYLVANIA LAW ........ 13

   B.  COUNT VII- CONVERSION ............................................................................... 18

IV.  CONCLUSION ........................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc*.,
 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)................................................ 12

*Bernhardt v. Needleman*,
 7015A.2d 975, (Pa. Super. Ct. 1997) ................................................................................... 18

*Delahanty v. First Pennsylvania Bank*,
 318 Pa. Super. 90, 464 A.2d 1243, 1257 ([Pa. Super.] 1983),.................................................. 19

*Hicks v. City of Philadelphia,* 2025 U.S. Dist. LEXIS 95479 ................................................... 12

*In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021 ..................................... 12

*In re IKON Off. Sols., Inc*., 277 F.3d 658, 666 (3d Cir. 2002). .................................................. 12

*Pa. General Energy Co., LLC v. Grant Twp. 139 F. Supp. 3d 706,718* ..................................... 21

*PTSI, Inc. v. Haley*, 2013 PA Super 130, 71 A.3d 304, 313. ..................................................... 19

*Salvitti v. Lascelles*, 578 F. Supp. 3d 712 (E.D. PA 2022) ......................................................... 18

*Tomaskevitch v. Specialty Recs. Corp*., 717 A.2d 30, 33 (Pa. Commw. Ct. 1998) ..................... 13

*Witherspoon v. McDowell-Wright*, 2020 PA Super 254, 241 A.3d 1182, 1187-88 (Pa. Super.
 2020). .......................................................................................................................................... 20

**Other Authorities**

Restatement (Second) of Torts § 222A. (1965). ......................................................................... 18

**Rules**

Fed. R. Civ. P. 56(a). ................................................................................................................... 12

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYVLANIA**

| | |
|---|---|
| **SIMONA OCKLEY,**<br><br>*Plaintiff,*<br><br>**v.**<br><br>**TOWNSHIP OF RADNOR,**<br>**PENNSYLVANIA, et al.,**<br><br>*Defendants.* | **CIVIL ACTION**<br>**NO: 2:24-cv-04070-GAW** |

**PLAINTIFF'S RESPONSE IN OPPOSITION DEFENDANTS,**
**JEFFREY BRYDZINSKI, TYLER PRETE, AND ROCKWELL**
**GLYNN'S MOTION FOR SUMMARY JUDGMENT**
**AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff by and through the undersigned counsel hereby files her opposition to Defendants'

Motion for Summary Judgment and incorporated memorandum of law, in support thereof avers as

follows:

**I.      OVERVIEW**

Order vs. Ordinance. In its purest form this case and the related law stand for the

proposition that a Pennsylvania State Court Order from a county court of Common Pleas trumps

a Township Condemnation Ordinance.

There are sub-themes, however the principal and clearest and we believe controlling

premise is that the two court orders issued by the Delaware County Court of Common Pleas

determined and controlled all outcomes in the matter either directly or indirectly.

The plain language of the orders and the proceedings leading up to the orders are clear..

The Order of Judge John J. Whelan addresses whether Ockley is allowed to remove her

belongings from her home even after she conveys title to Lingo.

The Order states that Ockley shall have "**unlimited and unfettered**" access to the property to remove her belongs until September 1 at which time such items will be considered trash. She is doing so at her own risk.

## II.    FACTS

This matter arises from events surrounding a residential property purchase. Plaintiff, Simona Ockley, (hereinafter "Plaintiff") was the owner of a home located at 416 S. Ethan Avenue, Villanova, PA.  (hereinafter the "Premises") where she had lived with her husband who had died several years before. (Cmplt. ¶15) (D.T. Ockley at pp, 10:20-25, 11:1-6). (A true and correct copy of Plaintiff's Deposition Transcript is attached hereto as Exhibit "1")

On October 20, 2021, Plaintiff had agreed to sell the premises to a local real estate development company, Rockwell Glynn, LP. (hereinafter "Rockwell") (Cmplt. ¶15) (A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit "2".  (D.T. Lingo 10-14). (A true and correct copy of Gregory Lingo Deposition Transcript is attached hereto as Exhibit "3") (A true and correct copy of the Agreement of Sale is attached hereto as "Exhibit "4").    Defendant, Gregory Lingo, (hereinafter "Mr. Lingo") is and was the owner of Rockwell, a real estate development concern company. (Cmplt. ¶ 2.) (D.T. Lingo, 8:19). Rockwell entered into a contract to sell the property to Brydzinski and Prete and to build a home on the premises and resell the finished property to its present owner and defendant herein, Jeffrey Brydzinski. (hereinafter, "Mr. Brydzinski") (Cmplt. ¶ 1). (D.T. Lingo at 21:9-20). (D.T. Brydzinski at 34:23-35:11). (A true and correct copy Jeffrey Brydzinski Deposition Transcript is attached hereto as Exhibit "5") Over the approximately next six months, several attempts were made by the parties to close on the sale. (Cmpl. ¶ 1) (D.T. Lingo at 13:24-25, 14:1-5). (D.T. Brydzinski at 31-32, 34:23-25).

On April 10, 2022, while awaiting closing, Plaintiff suffered a severe injury to her left leg. Unable to endure the pain coupled with the fact that she was unable to bear any weight on her leg,

on April 21, 2022, Plaintiff contacted Radnor Township Emergency Services. (D.T Ockley 44-45, 54:13-14).  Emergency Services transported Plaintiff to Bryn Mawr Hospital. *Id*. 46, 63).

On that same day, Radnor Township Code Enforcement was contacted by the Radnor Township Police Department over concerns of the amount of clutter in the house. Upon inspection of the premises on April 21, 2022, agents of the Radnor Township Community Development department condemned the property and declared it unfit for habitation. (Cmplt. ¶ 23, 94)  Radnor Township's Community Development office is delegated with the authority to post notices of condemnation (D.T. Kochanski at 11:1-12.) (A true and correct copy of Kevin Kochanski Deposition Transcript is attached hereto as Exhibit "6").  After receiving notice of the conditions on the Premises, Mr. Kochanski visited the Premises and posted thereon notices of condemnation (D.T. Kochanski 16:7-10).

During this time, Ms. Ockley was admitted to Bryn Mawr Hospital where she underwent surgical repair of left tibia.  After surgery, Plaintiff remained hospitalized at Bryn Mawr Hospital from April 21, 2022, until May 7, 2022, and thereafter she was transferred to Broomall Manor Rehabilitation Facility to undergo physical therapy where she remained until August 8, 2022. (Cmplt. ¶22).

A few days after surgery, Mr. Lingo goes to Bryn Mawr Hospital to have the Plaintiff sign an Addendum to the Agreement of Sale, extending the closing deadline to June 10, 2022.  The Plaintiff was confused why she needed to sign this document considering she was on heavy medication due to the pain.  The document contained the wrong date. It was dated April 17, 2022, but Ms. Ockley did not sign it until after her surgery on or around the 29th of April. (D.T. Ockley at 262:21-264:10). (A true and correct copy of the Addendum to the Agreement of Sale is attached hereto as Exhibit "7").

Six weeks prior to her release from Broomall Manor, on June 21, 2022, Defendant Rockwell Glynn filed a Complaint against Ockley for breach of contract and brought a declaratory judgment action against Plaintiff. Similarly, On June 24, 2022, defendant Rockwell Glynn also filed a Petition for Special Injunctive relief.

The Court scheduled a hearing and on July 11, 2022, Defendant Rockwell, through its owner, Gregory Lingo appeared before the Common Pleas judge, the Honorable John J. Whelan, asking the Delaware County Court of Common Pleas to compel Plaintiff to execute the property settlement agreement transferring the legal title to Rockwell by a date certain. (A true and correct copy of the transcript of a hearing before the Court of Common Pleas is attached hereto as Exhibit "8") (Tr. 9:8-11) (D.T. Lingo, 34:19:25). Defendants, Mr. Brydzinski and Rockwell Glynn, through its owner Mr. Lingo, were present at the hearing. (D.T. Lingo 35:4-11). (D.T. Brydzinski, 42:9-13, 73:20-23). The Plaintiff, who was still under doctor's care at Broomall Manor, traveled by cab from the rehabilitation center to the Court and appeared without counsel. (D.T. Ockley, 108). At the hearing, Judge Whelan accepted a letter that Ms. Ockley drafted the day prior answering Defendant Rockwell Glynn's Complaint and requesting that the Court grant her access to her former home on the Premises to collect and move her personal property from before its planned demolition. (Hearing Tr.3:18-2, 23:9-20) (A true and correct copy of Ms. Ockley's Letters to the Court are attached hereto as Exhibit "9"). During the hearing, the Judge was made aware that the property was condemned and the unique circumstances that each party faced. Judge Whelan made the decision to allow Rockwell Glynn to record the deed. Judge Whelan also granted Plaintiff permission to access the property until September 1, 2022.

The Court, while in session, explained its decision:

> **THE COURT**: But right now, we're still going to allow the closing to occur but you're going to still have a right. Your attorney will assist and there'll be an agreement, a court order, that'll make -- **that'll incorporate an agreement between the parties that says that although the property has been officially**

**sold, that you're allowed to live and/or access the property up until September
1st**.

(Hearing Tr. at 37.) (Emphasis added).

At the hearing, Ockley restates her concerns and asks for something in writing that will

allow her access to the property to remove her belongings. Again, the court reiterates:

> THE COURT: I don't know what you're saying. **We'll have a court order allowing
> you access and/or residency at this property up until September 1st. So you'll
> have a court order in your hand**.

(Hearing Tr. At 38:23-39:2) (Emphasis added).

> THE COURT: Well, let's try to work through it. Look, I'm asking you and you've
> agreed to allow your attorney to handle some of the legal aspects. You're going to
> have to pay him, but there'll be money at settlement to pay him. So you need to
> make sure that you feel comfortable, you're protected. **I'm giving you to
> September 1st to live and/or access the property**.

(Hearing Tr. At 39:18-24) (Emphasis added).

> **THE COURT: You have free access to this property to do whatever you want
> from now until September 1st.**

> (Hearing Tr. At 44:22-24) (Emphasis added).

On July 15, 2022, Judge Whelan issued an Order that compelled Plaintiff to close on the

Property and granted her permission to access the Premises until September 1, 2022, to afford her

the opportunity to remove her personal possessions from the premises following her extended

hospitalization. The Order stated, in relevant part:

> 1. Plaintiff may immediately record the Deed to 416 South lthan Avenue,
> Villanova, PA 19085 ("the Property") previously executed by Defendant.

> 2. The title company shall disburse the proceeds it currently holds in the
> approximate amount of Four Hundred Ninety Thousand Dollars ($490,000.00) to
> Defendant.

> 3. **Defendant shall have unlimited and unfettered access to the Property at
> her own risk to remove her personal property until September 1, 2022. Any
> personal property remaining at the Property after September 1, 2022 shall be
> deemed abandoned and may be removed by Plaintiff as**
> **refuse.**

(Emphasis added).  (A true and correct copy of the Court of Common Pleas Order is attached

hereto as Exhibit "10").

-5-

On July 19, 2022, four days after Judge Whelan signed the Order, Defendants immediately signed a settlement agreement and recorded the Deed. (A true and correct copy of the Agreement Sale executed by Defendants, Jeffrey Brydzinski and Gregory Lingo *obo* Rockwell Glynn is attached hereto as Exhibit "11").

A few days prior to Plaintiff's discharge from Broomall Manor, at the beginning of August 2022, Ms. Ockley contacted Mr. Lingo and informed him that she would be released on August 8, 2022, and was planning to return to the house. Mr. Lingo assured Plaintiff that she would not have any problems with accessing the property. (D.T. Ockley 68:17-19, 69:10-70:20).

On August 8, 2022, Plaintiff returned to the Premises to find that the exterior doors had been locked by **two** sets of locks. The Plaintiff attempted to call Defendant Lingo to have him remove the locks from the door but was unsuccessful in her attempts at contact. Given the late hour, Plaintiff was forced to rent a hotel room for the night at the Red Roof. (D.T. Ockley 70:21-72:1).

The Plaintiff returned to the property early the next morning on August 9, 2022, and found that **two** sets of locks remained and she was unable to access the property. The Plaintiff made multiple calls to Radnor Township and was assured that they had her information, and somebody would get back to her. (D.T. Ockley at 84:2-90:12). No one from the Township returned Plaintiff's calls.

In an attempt to resolve her inability to access the property because it was locked with **two** sets of locks that she did not have the keys to, Plaintiff filed an Emergency Petition with the Delaware County Court of Common Pleas requesting the Court to enforce its July 11, 2022, Order signed by Whelan. (Complt. ¶¶ 24-25) (D.T. Ockley at 94:4-20). (A true and correct copy of Plaintiff's Emergency Petition is attached hereto as Exhibit "12").

The Honorable Barry C. Dozer, a judge of the Delaware County Court of Common Pleas, granted Plaintiff's petition renewing her temporary unlimited access to the Premises until September 1, 2022. (Cmplt. ¶¶24-25).

In relevant part, Judge Dozer's Order specifically states:

"Defendant Simona Ockley shall have **unlimited and unfettered access to the property located at 416 South Ith.an Avenue, Villanova, PA 19085 at her own risk to remove her personal property until September 1, 2022**. Plaintiff shall **remove any additional locks so that Defendant may access the property until September 1, 2022. Plaintiff and/or the Radnor Police Department shall allow access by removing locks to provide Defendant access to the property to remove her personal property until September 1, 2022**."

(A true and correct copy of Judge Dozer's Order is attached hereto as Exhibit "13").

After receiving an originally signed Order from Judge Dozer's staff, Plaintiff returned to the property to find that one set of locks was removed. She again attempted to reach out to Lingo and Attanasi. When she spoke to Attanasi, she was told that she had no right to be on the property, and he hung up the phone. Again, given the late hour, Plaintiff had no other alternative than to return to the Red Roof Hotel to rent a room for another night.

On August 10, 2022, Plaintiff returned to the property to find that the one set of locks remained. After failed attempts in contacting Defendant Lingo and/or Attanasi, she contacted a locksmith who was able to remove the locks.

On August 11, 2022, Gregory Lingo, the owner and president of defendant, Rockwell Glynn, L.P., sent an email to Kevin Kochanski, the head of the Township's Community Development Office, Defendant Radnor's code enforcement officer stating as follows:

Kevin,

I wanted to update you regarding this property (416 S, Ithan) that we purchased and then sold and plan to start construction imminently for the current owner. **We did not unlocked [sic] the home and we had turned off the utilities to the home**. However, earlier today the prior owner (Simona Ockley) broke into the home and is apparently squatting there. I called the Radnor Twp Police and spoke with Officer Ray Rodden. Officer Rodden was professional/courteous but could not do anything this evening to remove her from the property. I let him know that I was reaching

out to you and that **we would go through the courts to have her forcibly removed**. **Our attorney Is drafting the documents this evening and will them filed with alacrity**. Please let me know if there Is anything else you would like us to do at this time.

(A true and correct copy of Mr. Lingo's email is attached hereto as Exhibit "14").

**On August 12, 2022, the very next day, Mr. Brydzinski went to the police department to report a "squatting issue"** at the premises in which he is now the present owner. Mr. Brydzinski relayed to the police that Ockley "**only had permission to be inside the property to retrieve and clear out specific belongings**." Mr. Brydzinski provided a written statement attesting to the information given to the police and also provided proof of ownership of the premises. (A true and correct copy of the Radnor Township Incident Report Form RT-22-10812 as Exhibit "15"). Mr. Brydzinski assured the police that he would have all of the windows and doors boarded up to prevent access to the premises. (*See* Exhibit "15").

Also, on the same date, August 12, 2022, Mr. Lingo's attorney wrote to the court requesting reconsideration of the Order entered on August 9, 2022, stating that he was not given an opportunity to respond to the emergency petition because he was never served. (A true and correct copy of the letter dated August 12, 2022, from Lee Herman, Esquire to Judge Barry Dozer is attached hereto as Exhibit "16"). Although he received notice of the filing on the same day, as the Court staff docketed the Emergency Petition and Judge Dozer's Order. (A true and correct copy of the Docket for CV-2022-004275 is attached hereto as Exhibit "17").

In the meantime, Defendant officer Jennifer Cocco of the Radnor Police confirmed with Defendant Jeffrey Brydzinski, Plaintiff's presence within the residence on the Premises. At Defendant Byrdzinski's request, Radnor Police Officer Defendants Cocco, Pinto and McHale and non-defendant Sergeant Michael Fischer responded to the premises where they found Plaintiff watching TV, and without a warrant, handcuffed her while yelling that she was not permitted to remain in the house. Lieutenant Pinto contacted the Delaware County Crises Center to have

-8-

Plaintiff removed by means of a Mental Health Procedures Act warrant. (hereinafter "302 warrant").

The mental health delegates were told by Radnor Township defendant officer Jennifer Cocco that Plaintiff believed she still owned the Property. (A true and correct copy of Officer Jennifer Cocco Deposition Transcript is attached hereto as Exhibit "18"). The delegates conducted a perfunctory interview with Plaintiff. Thereafter, the delegates executed a 302-warrant form which if properly executed would give police authority to remove Plaintiff from the Premises. After approval of the County Administrator, Plaintiff was immediately transferred to Crozer Chester Hospital to undergo an examination to determine her mental status. (A true and correct copy of Delegates' report is attached hereto as Exhibit "19").

At Crozer Chester Hospital the psychiatrist, Daniel Marotta, M.D. conducted an examination and discharged Plaintiff within two hours of her arrival, finding that her mental status was normal and that she had proof that the Court gave her permission to be on the property. (D.T. Pinto at 117-118:16). (A true and correct copy of Lieutenant Joseph Pinto Deposition Transcript is attached hereto as Exhibit "20").

After her discharge from Chester Crozer Hospital, the Plaintiff returned by cab to her former residence the next day, August 13, 2022, to find that all the doors and windows to the home had been covered by sheets of plywood. On that day, knowing of the two orders of the Court of Common Pleas, Defendant Cocco along with other police officers confronted and arrested Plaintiff without a warrant and without probable cause. Subsequently, Defendant Cocco, with the participation of Defendant police officer Brian Brown, then prepared a Criminal Complaint and warrant of arrest charging Ockley with trespass and burglary among others. (A true and correct copy of Criminal Complaint is attached hereto as Exhibit "21").

Later that evening Defendant Cocco and other officers transported Plaintiff to the Radnor Township lockup. Based upon the criminal complaint's allegations, presiding Magisterial court judge, set bail and committed Plaintiff to the Delaware County George W. Hill Correctional Facility in advance of a preliminary hearing scheduled for September 15, 2022. (Cmplt. ¶ 63, 65).

On August 15, 2022, while Plaintiff was incarcerated at George W. Hill Prison, Rockwell Glynn through counsel filed a formal motion for reconsideration of the August 9, 2022, Order, seeking to have the Court: (a) grant movant's motion (2) vacate the Order of August 9. 2022, and amend the order of July 15, 2022, by limiting her access to the removal of property and to subject her access to supervision of the Radnor Township and Radnor Township Police Department. (A true and correct copy of Rockwell Glynn's Motion for Reconsideration is attached hereto as Exhibit "22").

On August 22, 2022, Counsel for Rockwell Glynn sent a letter to Judges Dozer and Whelan to give them an update on Plaintiff's status. Counsel relays that Ms. Ockley is currently locked up at George W. Hill Prison, and that she has not met the obligations to be released. Counsel renewed his request for reconsideration and asked the Court to schedule a hearing regarding same. (A copy of the Letter dated August 22, 2022, from Lee Herman Esquire to Judge Dozer and Judge Whelan is attached hereto as Exhibit "23").

Plaintiff was ultimately released on September 2, 2022, after undergoing a psychological evaluation as part of her bail conditions. As part of the conditions of her release, she was not to return to her former residence and posting a bond of one dollar.

On September 6, 2022, Plaintiff filed a response to Rockwell Glynn's Motion for Reconsideration. On September 8, 2022, the Court scheduled a hearing before Judge Whelan. At this hearing, Counsel for Rockwell Glynn was seeking to have Judge Dozer's Order vacated but Judge Whelan explained that:

-10-

**THE COURT: Well, you're here now on a whole new -- what I'm considering a whole new petition. So you could take advantage of being here, or I can ask Judge Dozor [sic] if he wants to reconsider and he may not reconsider. I don't know. It's not my order. I can't change it.**

(9/8/2022 Hearing Tr. at 8:15-20) (A true and correct copy of September 8, 2022, Hearing

Transcript is attached hereto as Exhibit "24").

Counsel again requested Judge Whelan to vacate the Order of Judge Dozer, stating that it

was "factually incorrect."    Judge Whelan responded that:

"Well, I believe Judge Dozor's [sic]order, and I don't have it sitting right in front of me, indicated was that those locks would be removed so she could have access. Now she had access and she moved in. Now you believe that was inappropriate. **I didn't address it saying that she couldn't live in the property. But <u>obviously if there's a condemnation order, that would be up to the Radnor Township solicitor to enforce that condemnation order.</u> It wasn't part of my consideration. And I don't know what happened between her and the Radnor police that generated criminal charges, but nevertheless, <u>it should have been a solicitor matter with a condemnation and an emergency petition to exclude her from the property</u>."**

(9/8/2022 Hearing Tr. at 11:12-12:1) (Emphasis added).

Judge Whelan stated that although he knows that she has had a bad experience, he can only

address the issue of her property. However, he suggested that once her check clears, she should

consult a lawyer to address any rights she thinks were violated as result of either Rockwell Glynn's

actions or the government's actions. (9/8/2022 Hearing Tr. at 16:6-13).  Plaintiff also expressed at

the hearing that she felt that Rockwell Glynn did everything in their power to prevent her from

accessing the property to retrieve her property as originally Ordered by the Court.  By the time this

hearing took place, Defendants had removed her property and placed them into PODs.

After the hearing, on September 9, 2022, Judge Whelan entered an Order giving her access

to PODs that were placed on the property until September 18th. There after the property would be

placed in a POD facility until October 8, 2022.  Rockwell Glynn was ordered to give her all

necessary information so that she could access the PODs.  (A true and correct copy of the Judge

Whelan's September 9, Order is attached hereto as Exhibit "25").

-11-

Even after the Judge granted their petition, they still made it difficult for Plaintiff to retrieve her belonging. They did not provide her with the account information to access the PODs. On two separate occasions, Plaintiff wrote to the Court to inform them that Mr. Lingo and/or his employees did not provide the POD account information as Ordered. (A true and correct copies of Ms. Ockley letters dated September 26, 2022, and October 6, 2022, are attached hereto as Exhibit "26_"). Plaintiff was not able to gain access to the PODs until October 6, 2022. (D.T. Ockley Volume II at 314:9-315:14, 315:15-316:7) (A true and correct copy of Plaintiff Deposition Transcript Volume II is attached hereto as Exhibit "27").

Subsequently, at the preliminary hearing on September 15, 2022, Magisterial District Justice David H. Lang summarily discharged the criminal complaint with prejudice and ordered Plaintiff's release. (A true and correct copy of the criminal docket is attached hereto as Exhibit "28").

## III.    LEGAL ARGUMENT

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as [*18] to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Genuine issues of material fact refer to any reasonable disagreement over an outcome-determinative fact." *In re Energy Future Holdings Corp.*, 990 F.3d 728, 737 (3d Cir. 2021). When considering a motion for summary judgment, we must "view the record and draw inferences in a light most favorable to the non-moving party." *In re IKON Off. Sols., Inc*., 277 F.3d 658, 666 (3d Cir. 2002). We ask, "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). *Hicks v. City of Philadelphia,* 2025 U.S. Dist. LEXIS 95479.

### A.    COUNT IV – MALICIOUS PROSECUTION UNDER PENNSYLVANIA LAW

In order to charge a private person with responsibility for the initiation of proceedings by a public official:

> it must therefore appear that his desire to have the proceedings initiated, expressed by direction, request or pressure of any kind, was the determining factor in the official's decision to commence the prosecution, or that the information furnished by him upon which the official acted was known to be false.

Id. 514 A.2d at 683. *Tomaskevitch v. Specialty Recs. Corp.*, 717 A.2d 30, 33 (Pa. Commw. Ct. 1998).

Mr. Lingo and Mr. Brydzynski worked together to padlock the property, board the place up, shut off the electricity and water to the property thus creating very unsafe and difficult conditions for Ockley who would try to get her things out of the property. Consequently, toilets will not work, no hot water, no cold water, no A/C, no appliances, no vacuum cleaner, no lights, no washer, no dryer, no microwave, no refrigerator, no sump pumps, no electric tools, no cell chargers for a phone no phone service, no security service]. Lingo and Brydzinski created a "constructive eviction" by their actions.

After the hearing before the Court of Common Pleas on July 11, 2022, that Mr. Lingo and Mr. Brydzinski attended, the Court, per Judge John Whelan, the Court explicitly ruling from the bench that Plaintiff would be permitted "**unlimited and unfettered access"** the premises for a period ending September 1, 2022.  On July 15, 2022, the Court filed a written Order stating:

> "Defendant [Mrs. Ockley] "shall have **unlimited and unfettered access** to the Property *at her own risk* to remove her personal property until September 1, 2022. Any personal property remaining at the Property after September 1, 2022, shall be deemed abandoned and may be removed by Plaintiff [Rockwell Glynn] as refuse."

*See* Exhibit 9.

The Judge went on to say over and over in many different ways even saying that she could do anything that she wanted as per prior quote. (See Hearing Transcript)

-13-

Thereafter, on July 19, 2022, in conformity with the Court's Order, Plaintiff completed the transfer of title to Mr. Brydzinski and his partner Tyler Prete. *See* Exhibit "10." Meanwhile, Mr. Lingo and Mr. Brydzinski stated that the Court's Order prevented Plaintiff's return to the premises and placed certain conditions and time limits on her use of the property. These were falsehoods.

When questioned at deposition about his understanding of the Order issued by Judges Whalen and Dozer, Mr. Brydzinski, a lawyer practicing in Radnor Township, maintained that he did not understand the meaning of the word "unfettered." *See* Exhibit 5. He did not make a similar denial as to the word "unlimited." Mr. Brydzinski also makes this same admission in his responses to Plaintiff's request for admissions. (A true and correct copy of Jeffrey Brydzinski's Responses to Plaintiff's Request for Admissions is attached hereto as Exhibit "29").

On August 12, 2022, Mr. Brydzinski learned that Plaintiff had returned to the Premises and had been there since August 10, 2022. Officer Cocco contacted the homeowner, Jeff Brydzinski, "to update him on the situation.

Rockwell Custom Construction, the company attempting to do work on the property, observed Ockley arrive at 416 S. Ithaca Avenue [sic]with an unidentified b/m in a yellow cab. . . . Rockwell Custom advised Brydzinski, that Ockley has hindered construction for several hours. Following this notice, and despite his personal knowledge of the contents of the Orders of the Delaware County Court of Common Pleas, Mr. Brydzinski engaged in a systematic effort, through contact with Radnor Township police and Defendant Rockwell Glynn, through Mr. Lingo to have Plaintiff removed from the Premises and to permanently bar her from returning. Mr. Brydzinski claimed to have been "concerned" about Plaintiff's living conditions but said he did not authorize police to arrest her. Nevertheless, it became clear that his objective was to have Plaintiff permanently removed from the premises so that he could tear down the house and begin building a mini mansion with Rockwell Glynn. Rockwell Glynn resold the property to Mr. Brydzinski

-14-

without adding a fee so he did not make any money until the teardown started and Ockley was in the way.

Only a few weeks after the Court of Common Pleas conducted its hearing with Mr. Brydzinsky present and thereafter issued its Order permitting Plaintiff to access the Premises, Mr. Brydzinski knowingly, falsely reported to Radnor Township police that Plaintiff was not permitted to access the Premises. Despite Mr. Brydzinski's avowed concern for Plaintiff's welfare, on August 12, upon learning from Mr. Lingo that the Plaintiff was attempting to restore water and electrical service to the residence Mr. Brydzinski notified AQUA and PECO to block basic necessities from entering the home. These are not actions that flow from concern for her person but flow from malicious personal desires that led to the police interaction and her prosecution. Oakley could stay in the building 24 hours a day, remove nothing and leave on September 1 having complied fully with the Orders of the court.

According to Mr. Brydzinski, in an effort to minimize his involvement he asked officers to "speak to [Plaintiff]." However, interpreting the facts in the light most favorable to the Plaintiff, Mr. Brydzinski's claim that he told Defendant Cocco to "speak" with Plaintiff, is a misnomer. The police did more than merely "speak" to Plaintiff. Judging by their actions, Police evidently understood Mr. Brydzinski's words to mean he wanted them to remove her from the Premises (as they ultimately did) for trespassing and burglary among other charges.

Soon thereafter on the same day, Defendant officer Cocco arrived at the Premises with several police officers. At the same time, Defendant Pinto summoned two Delaware County mental health workers to the Premises whom he knew were authorized to evaluate Plaintiff's mental status by invoking the terms of the Pennsylvania Mental Health Procedures Act.

Due to Defendant Cocco's intervention following Plaintiff's detention at Crozer Chester Hospital, either or both Mr. Brydzinski and/or Mr. Lingo had workers seal the doorways and

windows at the residence with sheets of plywood over the doors and slats of wood nailed across the windows preventing any further entry into the home.

Defendant Rockwell's agent , Mr. Attanasi contacted police on August 9, 2022, to inform them that Plaintiff had returned to the premises.  On or about August 10, 2022, Rockwell Custom advised Brydzinski, that Ockley was present on the property.  Mr. Lingo reported to Defendant Brydzinski that Plaintiff was "hindering work of Rockwell Custom Construction, the company attempting to do work on the property."  Defendant Cocco testified as follows:

> **11· A.· · · · I did contact homeowner Jeff Brydzinski**
> **12· about the possibility Ockley could be released from**
> **13· the hospital if the crisis doctor did not think she**
> **14· needed assistance.· Brydzinski advised she[sic]  was**
> **15· having contractors board up he was having**
> **16· contractors board up all entrances and requested**
> **17· added patrol to the residence.· Brydzinski advised**
> **18· no one should be at the house after dark or over the**
> **19· weekend.·**

(D.T. Officer Cocco 79:11-19)

Separately, Mr. Lingo, president and owner of Rockwell contacted Kevin Kochanski of Radnor Township's Community Development, the local agency responsible for code enforcement. Interpreting the facts of record in the light most favorable to Plaintiff as the non-moving party, the record demonstrates that Rockwell, through its owner and by and through its agent/employee, Mr. Attanasi, pursued a course of action seeking Plaintiff's removal from her former residence in spite of their knowledge of the Common Pleas Orders permitting Plaintiff to return. Additionally, Mr. Lingo, had personal knowledge that the Court permitted Plaintiff to "**live**" or do anything that she wanted on the premises until September 1, 2022.

In addition to Mr. Brydzinski's contact with the police, Mr. Lingo engaged in efforts to summon Radnor Township authorities to remove Plaintiff from the premises.  He encouraged

police to check on the Premises. As previously noted, the email from Mr. Lingo to Kevin Kochanski stated:

> [E]arlier today the prior owner Simona Ockley broke into the home and is apparently squatting there. I called the Radnor Township Police and spoke to this evening to remove her from the property. ***I let· him know that I was reaching out to you, and that we <u>would go through the courts to have her forcibly removed.</u>· Our attorney is drafting the documents this evening, and we will have them filed with alacrity.***

Mr. Lingo knew that he had to go through the courts to have Ockley removed. Mr. Lingo and Mr. Brydzinski. used a form of self-help through the arms of the police department. Blatant action from one who admitted he knows what proper methodology for removal and a lawyer --- one who specializes in complex real estate problems. Outrageous actions all. Simply put it is Order over Ordinance. A state court order is superior to the local township ordinance on condemnation and unfit usages. Blatant disregard of the law by seasoned professionals. Professions on a mission to build a house no matter who or what is in the way.

One more time, ….   Despite Mr. Lingo's assertion to the contrary, the plain meaning of the Judge Whalen's admonition at the hearing and later through issuance of his Order of July 15, 2022, established that Plaintiff had the right to **"live at the premises"** and would have "**unlimited and unfettered"** access to the premises until September 1, 2022.  The terms "unlimited"[1] and "unfettered" can each have one and only one meaning in the English language: that Plaintiff was permitted to remain on the premises at any time ("unlimited access") until September 1, 2022, without any interference ("unfettered access") from township officials, Mr. Brydzinski, Mr. Lingo and police.

Genuine issues of material facts regarding key issues as described are blatant in this matter and as a consequence Motion for summary Judgement should be denied.

---

[1] Without restriction or limitation.  Black's law Dictionary, 9th Edition p. 1678.

## B.    COUNT VII- CONVERSION

There is agreement with counsel that under Pennsylvania law, "[c]onversion is the deprivation of another's right of property in, or use or possession of, a chattel without the owner's consent and without lawful justification. "*Bernhardt v. Needleman*, 7015A.2d 975, (Pa. Super. Ct. 1997) (citations omitted). Additionally, the affected party must have an interest in the property at the time it was allegedly converted. *Id. Salvitti v. Lascelles*, 578 F. Supp. 3d 712 (E.D. PA 2022)

In the present matter, while Ockley was in jail on August 13, 2022, and deprived of her property due to the illegal actions of Mr. Lingo and Mr. Brydzinski and the Radnor Police.  Mr. Lingo and his agents had padlocked the home. Later, Lingo moved items from the house into storage Pods. He locked the Pods and had full control of Ockley's property from the locking of the home until she gained the necessary access to the Pods at a later date. When Plaintiff later opened the Pods, significant items were missing.

At all times Mr. Lingo assumed the care, custody and control of the home, the items in the home and the Pods until access was surrendered to Ockley. Additionally, Mr. Lingo in an Indemnification Agreement which was a part of the Agreement of Sale between Rockwell Glenn and Brydzinski, Lingo agreed to be responsible for any issues involving Ockley's property. (See Agreement of Sale and Indemnification Agreement)

Mr. Lingo was given the right to remove Ockley's property and place it in a Pod. Mr.  Lingo and his agents were not given the right to abscond with or sell or destroy or trash her property. In that respect the property of Ockley was converted by Mr. Lingo.

In conversion the measure of damages is the full value of the chattel at the time and place of the tort. Conversion has been limited by the courts, to those serious, major, and important interferences with the right to control  chattel, which justify requiring the defendant to pay its full value. *See* Comment  to Restatement (Second) of Torts § 222A. (1965). *PTSI, Inc. v. Haley*, 2013

PA Super 130, 71 A.3d 304, 313. If the fact-finder determines that defendant is liable for the tort of conversion, then defendant should not be able to avoid paying damages simply because it destroyed plaintiffs' property rendering plaintiff unable to obtain an appraisal for any items that could have been appraised.

Turning to the present case, defendant essentially **[\*12]** argues that plaintiffs supplied no objective valuation for the missing or destroyed items, therefore damages are too speculative, they also deny that any conversion took place and thus, the **conversion** claim cannot be submitted to a jury or a judge.

There is clearly a dispute as to whether a conversion exists and unless a fact finder determines that conversion did exist one does not get to valuation. At this point in the proceedings it is premature to eliminate a cause of action based on the valuation of the offense. Should the trier-of-fact make the determination of conversion from the testimony presented at trial then the analysis of value comes into play. At this stage the count should remain.

Pennsylvania law does clearly hold that where **conversion** lies, the fact-finder **determines** the **value** of the converted chattel. In *Delahanty v. First Pennsylvania Bank*, [] 318 Pa. Super. 90, 464 A.2d 1243, 1257 ([Pa. Super.] 1983), this Court described the fact-finder's role regarding the determination of damages as follows:

> Though justice and public policy require that the wrongdoer bear the risk of uncertainty which his own wrong has created and which prevents the precise computation of damages, the fact-finder still may not render a verdict based on speculation or guesswork. Yet, the fact-finder may make a just and reasonable estimate of the damage based on relevant data, and in such circumstances may act on probable and inferential, as well as upon direct and positive, proof. Thus, the law does not demand that the estimation of damages be completely free of all elements of speculation.

> Generally, under Pennsylvania law, damages need not be proved with mathematical certainty, but only with reasonable certainty, and evidence of damages may consist of probabilities and inferences. Although the law does not command mathematical

precision from evidence in finding damages, sufficient facts must be introduced so that the court can [*16] arrive at an intelligent estimate without conjecture. Where the amount of damage can be fairly estimated from the evidence, recovery will be sustained even though such amount cannot be determined with entire accuracy. It is only required that the proof afford a reasonable basis from which the fact-finder can calculate the plaintiff's loss.

*Id.*, at 1257-1258 (citations omitted). *Witherspoon v. McDowell-Wright*, 2020 PA Super 254, 241 A.3d 1182, 1187-88 (Pa. Super. 2020). Ockley has the right to present to the trier of fact her view of values of her property. At that time the determination of values will take place not at present.

Moreover, under the facts present here, and giving Plaintiff the benefit of all reasonable inferences, defendant Rockwell Glynn's agents and employees continued to be responsible for any and all damages occurring prior to demolition.

**NOW THEREFORE**, in consideration of the mutual covenants hereinafter set forth, Owner and Rockwell agree as follows:

1. Indemnity.

-(a) Rockwell agrees to defend, indemnify and save harmless Owner, and Owner's beneficiaries (collectively the "Indemnified Parties"), to the fullest extent permitted by the law, from and against all claims, losses, liabilities, damages, theft, costs, penalties, fines, damages, expenses (including but not limited to court costs and reasonable attorney's fees) and claims of whatever nature by any third parties (including but not limited to Previous Owner )arising from: (i) the storage of the Personal Property at the Property during Removal Term; (ii) removal of the Personal Property by the Previous Owner, Rockwell or any other person from the Property during the Removal Term; (iii) the presence of the Previous Owner, Rockwell or any other person on the Property during the Removal Term, including the Structure subject to the Notice of Condemnation; (iv).any and all accidents or injuries (including but not limited to permanent injuries or death) to any person (including but not limited to Previous Owner, Previous Owner's employees, agents, contractors, beneficiaries, affiliates, movers, or any other person Previous Owner permitted on the Property during the Removal Term and further including but not limited to Rockwell's employees, or anyone else directly or indirectly employed by Rockwell) present at the Property during the Removal Term for the purpose of inventorying, sorting, inspecting, photographing, collecting, purchasing, moving, taking apart, or removing the Personal Property from the Property pursuant to the Court Order (this also includes any accidents or injuries incurred during the ingress and egress from the Property or presence at the Property or in the Structure to do any of the above); (v) damage to the Personal Property.

*See* Exhibit 11

-20-

Consistent with the two Court Orders, Plaintiff was supposed to have had full access to the premises on August 13, 2023 when she was arrested. She remained in custody until September 2, 2022 when the Magisterial Court released her from custody. The only persons having access to the property were persons employed by Defendant, Rockwell Glynn while undertaking construction activities on the premises.

Ockley indicates in her Complaint and her deposition the multiple personal property items were affected. The subject of values was not fully developed for each and every item at issue in the Discovery depositions of Ockley --- nor did they have to be at this stage of the matter. Nevertheless, her evaluation of value would not be universally accepted by the defense who would put on their own witnesses saying they disagree the plaintiff's valuation.

As a consequence, genuine issues of material fact are present in the valuation of items and in the presence or absence of conversion.

For the reasons set forth herein and supported by Amended Statement of Undisputed Fact, and Joint Exhibits, the Court should DENY the Motion for Summary Judgment of Rockwell Glynn and Jeffrey Brydzinski.

## IV.    CONCLUSION

Order over Ordinance.

ORDER OVER ORDINANCE.

We ended where we began. The orders of the State Court of Pennsylvania namely the Delaware County Court of Common Pleas override the Ordinance condemning the property. This concept is clearly laid out in the Pennsylvania General Energy Company case:

*"A municipality is a creature of the state and thus necessarily subordinate to its creator and can exercise only such power as may be granted to it by the legislature" Pa. General Energy Co., LLC v. Grant Twp. 139 F. Supp. 3d 706,718 ...There can be no doubt here* **the state statute …and the**

*local provision are diametrically opposed to each other. In such a situation, the state law preempts the local ordinance.*

Here as well the State Court order for all concerned preempts the township ordinance determination of condemnation.

Two seasoned professionals should have known better. A long-time developer and an experienced attorney. They could have waited for the two weeks to run. They could have allowed the Township to enforce the condemnation to evict Ockley. They were in a "rush to crush" and build the new house. They had personal motivations. They used the police to effectuate self-help. To constructively evict Ockley. Poor decisions all.

Their actions were malicious. Their motivation is impure. They did not care about the law or Ockley or her property. They gave misinformation deliberately. They were both in attendance at the hearing where the Judge made clear his ruling. They thought they knew better. They did not.

**WHEREFORE**, we respectfully request that the court DENY the Motion for Summary Judgment.

SCHROM, SHAFFER & BOTEL, P.C.

BY:  */s/ Gerard K. Schrom*
Gerard K. Schrom, Esquire
Attorney I.D. No: 39282
Neil E. Botel, Esquire
Attorney I.D. No: 84953
4 West Front Street
Media, PA 19063
Phone: (610) 565-5050
Fax:    (610) 565-2980
Email: gschrom@schromandhaffer.com
nbotel@schromandshaffer.com
*Attorney for Plaintiff Simona Ockley*

**Date:  July 28, 2025**

## <u>CERTIFICATE OF SERVICE</u>

I, Gerard K. Schrom, Esquire, hereby certifies that on this 28th day of July 2025, I caused a true and correct copy of the foregoing*: Plaintiffs' Response in Opposition to Defendants, Rockwell Glynn, LP, Gregory Lingo, Jeffrey Byrdzinski and Tyler Prete's Motion for Summary Judgment and Incorporated Memorandum of Law,* was filed with the Clerk via CM/ECF filing system which generates a Notice of Filing to all counsel of record listed below:

Todd Bartos, Esquire
tb@sprucelaw.com
**Spruce Law Group, LLC**
1622 Spruce Street
Philadelphia, PA 19103
*Attorney for Defendants, Rockwell Glynn, Gregory Lingo, Jeffrey Brydzinski and Tyler Prete*

John P. Gonzales, Esquire
jpgonzales@mdwcg.com
**Marshall, Dennehey, Warner Coleman & Goggin, P.C.**
2000 Market Street, Suite 2300
Philadelphia, PA 19103
*Attorney for Defendants, Radnor Township, Officer Jennefer Cocco, Lieutenant Joseph Pinto, Officer Brian Brown and Officer McHale*

**SCHROM, SHAFFER & BOTEL, P.C.**

BY:   */s/ Gerard K. Schrom*
                  Gerard K. Schrom, Esquire
                  *Attorney for Plaintiff*

**Date: <u>July 28, 2025</u>**