# EXHIBIT 24

```
 1            IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY
 2                           PENNSYLVANIA
 3
 4                          CIVIL DIVISION
 5
 6      * * * * * * * * * * * * * * * *    No.   CV-2022-4275
 7                                    *
 8      ROCKWELL GLEN                  *
 9                                    *
10             VS.                     *
11                                    *
12      SIMONA OCKLEY                  *
13                                    *
14      * * * * * * * * * * * * * * * *
15
16
17
18             Media, PA, September 8, 2022
19
20                       ***
21
22             Courtroom No. 8
23
24             TRANSCRIPT OF PROCEEDINGS
25
26      BEFORE:   HONORABLE JOHN J. WHELAN
27
28             LEE HERMAN, ESQUIRE
29             For the Plaintiff
30
31
```

1                                    <u>INDEX</u>

2

3                          DIRECT   CROSS   REDIRECT   RECROSS
4        <u>ON BEHALF OF THE PLAINTIFF:</u>
5        [none]
6                                  <u>EXHIBITS</u>
7
8                                        MARKED   ADMITTED
9        <u>ON BEHALF OF THE PLAINTIFF:</u>
10       [none]
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
29
30
31
32
33
34

```
1                   P R O C E E D I N G S

2                   September 8, 2022

3            THE CLERK:  Court of Delaware County Court of

4    Appeal is now in session.  Your Honorable Judge John J.

5    Whelan presiding.  Good morning, Your Honor.

6            MR. HERMAN:  Good morning, Your Honor.

7            THE COURT:  Good morning.  Please be seated.

8    All right.  The first matter on the list today is

9    Rockwell Glen v.  Simona Ockley, Docket number 4275 of

10   2022.  Could the parties please identify themselves?

11           MR. HERMAN:  May it please the Court.  Lee M.

12   Herman, H-E-R-M-A-N, Supreme Court, ID 02750 on behalf

13   of the plaintiff, who is the movant.

14           THE COURT:  Ma'am, you are Simona Ockley,

15   correct?

16           MS. OCKLEY:  That's correct.  Yes, your Honor.

17           THE COURT:  All right.  And I know you appeared

18   once before me and you had an attorney sitting behind

19   you at that time.  Is he present?

20           MS. OCKLEY:  I don't know if he is -- yes, he is

21   present, but I did not -- you advised me last time to

22   have an attorney, but since then, and I didn't want to

23   bring to your attention, I filed a complaint with the

24   Disciplinary Board of Supreme Court of Pennsylvania, and

25   also I filed a complaint with the Supreme Court of
```

1    Pennsylvania, Pennsylvania Lawyers Fund for Client

2    Security in Harrisburg, Pennsylvania.  So he will not

3    represent me in any situation that I have right now

4    here.

5         THE COURT:  Okay.  So, you wish to proceed on

6    your own without an attorney, correct?

7         MS. OCKLEY:  That's correct, yes.

8         THE COURT:  Okay, ma'am.

9         MS. OCKLEY:  There is some legal things that

10    happened, from last time when you do advise me to have

11    an attorney and I feel a little bit betrayed, and so for

12    this reason, I just represent myself in this case.

13         THE COURT:  Okay.  That's certainly your right

14    and your choice.  I'm going to defer -- this matter

15    originally came before me.  I've heard from the -- you

16    may be seated, ma'am.  I know, you should feel

17    comfortable here.  Yes sir.

18         MR. HERMAN:  I'm very reticent to interrupt the

19    court, but because there are outstanding criminal

20    charges related to the whole situation, I thought it was

21    worthwhile, at least to provide Ms. Ockley with an

22    opportunity to know what her rights are not to violate

23    her rights against self-incrimination.

24         THE COURT:  Well, sir, I don't intend to ask her

25    any questions that would violate her Fifth Amendment

1    right to self-incrimination.  I don't know what
2    happened, and I'm certainly not going to ask her,
3    anything that would relate to criminal charges that are
4    pending against her, so ---
5            MR. HERMAN:  I just want to be overly cautious,
6    Judge.  Your honor.
7            THE COURT:  My understanding is this matter came
8    before me that I heard the matter, in regard to
9    ownership of your house.  At the time it was represented
10   to me, uncontradicted, that the deed to your house was
11   signed over to corporation, I guess the plaintiff herein
12   Rockwell Glen, off the top of my head, at that point in
13   time, I had explained your attorney was seated behind
14   you, although he did not enter his appearance, did not
15   correct anything or did make some statements to me.  But
16   nevertheless, the issue was the transfer of title.  And
17   I mentioned the title under Pennsylvania law would
18   transfer upon execution of the deed regardless of the
19   recording.
20           So, technically, as I mentioned in the previous
21   matter, when the deed was signed over, notwithstanding
22   the fact it was being held in escrow by a title company,
23   it belonged to, the grantee in this case, Rockwell Glen.
24   At that time, I believe money was put aside in regard to
25   the purchase, which was -- and at the time you were in a

1          nursing facility and, came to court from that nursing

2          facility.

3                  I also understand, and although I don't know

4          what happened, and I'm not asking you to comment on it,

5          that I was away for a few days, you came back to the

6          court, the court administrator's office, and you were

7          filling out some type of petitioner form.  And at that

8          point in time, I believe Judge Dozor was the judge who

9          came in to review it.  At that point in time, he

10         executed another order, which was very similar to the

11         original order.  And at that point in time, I believe,

12         giving you ma'am access, to the property.

13                 Thereafter, some altercation occurred, which I'm

14         not asking you to comment on, and I don't know the

15         details of it, which resulted, in the Radnor Police

16         being involved, which was represented to the court by

17         way of letter and/or petition.  And at that point in

18         time, there may have been criminal charges against you,

19         which again, you're not here for that purpose.  We are

20         simply here for the purpose of Mr. Herman, who's present

21         in court.  And Mr. Herman then subsequently filed what

22         he has deemed a Motion for Reconsideration.  I've

23         accepted that motion, but I'm not accepting it as a

24         motion for reconsideration.  I'm accepting it as a

25         motion to address a change of circumstances because I

1          don't have the authority to change Judge Dozor's order.

2          I don't change Judge Dozor's order, and they don't

3          change my orders.  It would be Judge Dozor that would

4          have to change his own order.

5                    Nevertheless, his order was very similar to mine

6          to begin with.  And therefore, I'm going to treat this

7          matter as a change of circumstances, meaning that

8          something else has occurred since my last hearing that

9          justifies granting this petition and granting, the

10         ability to come back into court and address the court.

11         And again, I'm not concerned -- all I'm concerned about

12         is the -- I'm not concerned about any altercations,

13         which I have no idea what happened.  But what I am

14         concerned about is the transfer of the property, which

15         has already occurred.

16                   I'm concerned about the consideration that was

17         rendered to you, which I believe was approximately a

18         half a million dollars.  And I'm concerned about

19         ultimately having your goods, whatever materials that

20         were located in your house, addressed at this point in

21         time.  Because my understanding was there's a request as

22         part of a reconsideration motion, which I've mentioned,

23         again, which we'll call a change of circumstances, that

24         the matter be addressed as it relates to storage of your

25         items.  And so therefore, I'm going to defer to Mr.

1      Herman to represent to me, although not addressing or

2      changing Judge Dozor's order, allowing Mr. Herman to

3      tell me about the modification of circumstances which

4      justify an additional or supplemental order from this

5      court and me.

6           MR. HERMAN:  Thank you, your Honor.  I

7      appreciate the opportunity to address these issues.  And

8      for the record, we perceive this is a motion for

9      reconsideration.

10          THE COURT:  Well, it's not, if you want to, then

11     we would have to recess and you'll get another date.

12          MR. HERMAN:  I'm prepared to do that, Judge.  We

13     did not have an opportunity to respond to the initial

14     emergency petition that resulted in the same day.

15          THE COURT:  Well, you're here now on a whole new

16     -- what I'm considering a whole new petition.  So you

17     could take advantage of being here, or I can ask Judge

18     Dozor if he wants to reconsider and he may not

19     reconsider.  I don't know.  It's not my order.  I can't

20     change it.

21          MR. HERMAN:  I understand that, Your Honor.  I'm

22     left in a choice that is not a comfortable one for me.

23          THE COURT:  Well, I don't believe that that's

24     the case, because since I'm changing it as a change of

25     circumstances.  I'm giving you the ability to argue the

1    merits of your petition.  I'm just relabeling it for

2    you.

3         MR. HERMAN:  Thank you, Judge.  For the record,

4    Ms. Ockley was permitted access to the property.  And

5    when she got inside the property, she intended to stay

6    and live at the property, which was not permitted by the

7    Radnor Township order.

8         THE COURT:  The Radnor Township order?

9         MR. HERMAN:  Yes, Your Honor.  There was a ---

10        THE COURT:  Well, I don't know if there's was a

11   court order out of Radnor Township.  I'm not aware of

12   it.

13        MR. HERMAN:  It was a determination by Radnor

14   Township that the property was not fit for human

15   habitation.

16        THE COURT:  That was probably done by code

17   enforcement, not by police.

18        MR. HERMAN:  That is correct.  But from a

19   practical point of view, we are here today, my client

20   has moved all of the interior aspects of the property,

21   which were detailed in many photographs that are before

22   the court into four pods that are currently on the

23   property.

24        THE COURT:  Okay.

25        MR. HERMAN:  My client has expended $8,000

1    because Ms. Ockley chose not to retrieve her goods.  And
2    we are here at a point where very shortly the property
3    will be demolished.  There's nothing in the house with
4    the exception of one couch, which frankly was filled
5    with defecation material from the defendant, as is
6    indicated on the police reports, she was there in a
7    hospital gown intending to be in the property when there
8    was no running water.  When there was no ability to
9    actually stay there.  The only thing that was not taken
10   to a pod was a couch.  Everything is available to Ms.
11   Ockley, she can come and take what she wants, whenever
12   she wants, but those pods will be moved shortly to a
13   storage facility.
14        THE COURT:  Okay.  What are you asking the court
15   to do?
16        MR. HERMAN:  I want the court to do something
17   it's not willing to do, which is to vacate the judge's
18   order.  Judge Dozor's order, because it's factually
19   incorrect.  We did not have the ability ---
20        THE COURT:  His order mirrors my order.  So why
21   are you saying it's factually incorrect?
22        MR. HERMAN:  It doesn't, in a certain important
23   way.  It says that plaintiff is obligated not to remove
24   locks which it placed.  Plaintiff never placed those
25   locks there.  Those were Radnor Township locks.  We had

1          no ability to put up or to take down those locks.

2          That's an important fact, judge.  And in fact, the

3          plaintiff doesn't even own the property at this point.

4                    THE COURT:  Well, I believe Judge Dozor, what

5          was represented to him at the time when I was away was

6          the fact that, my court order indicated that she

7          would've access to the property.  We never addressed

8          whether she moved in, because I never even considered to

9          move in because of the condemnation.  However, because

10         she needed access to the property, putting aside the

11         fact that she may or may not have moved in, she needed

12         access to the property.  Well, I believe Judge Dozor's

13         order, and I don't have it sitting right in front of me,

14         indicated was that those locks would be removed so she

15         could have access.

16                   Now she had access and she moved in.  Now you

17         believe that was inappropriate.  I didn't address it

18         saying that she couldn't live in the property.  But

19         obviously if there's a condemnation order, that would be

20         up to the Radnor Township solicitor to enforce that

21         condemnation order.  It wasn't part of my consideration.

22         And I don't know what happened between her and the

23         Radnor police that generated criminal charges, but

24         nevertheless, it should have been a solicitor matter

25         with a condemnation and an emergency petition to exclude

```
1        her from the property.  But that's neither here nor
2        there.  So what do you want me to do?
3               MR. HERMAN:  Just to fully inform the court,
4        there were two separate Radnor police actions.
5               THE COURT:  Yeah.  And I don't ---
6               MR. HERMAN:  One resulted in a 302.  We're not
7        here for that.
8               THE COURT:  Nope.
9               MR. HERMAN:  And after she was released from the
10       hospital, she returned to the property, changed the
11       locks, put her own locks up, as I understand it.
12              THE COURT:  Okay.
13              MR. HERMAN:  And ---
14              THE COURT:  I think you can overcome that.
15       Since you're going to knock it down anyway.  I think the
16       locks are a minimal intrusive, inconvenience.
17              MR. HERMAN:  I understand the court is not
18       considering this a motion for reconsideration.  We're
19       here if necessary ---
20              THE COURT:  Only because I can't change his
21       order.  If I can be considerate of reconsideration, I
22       have to tell you to come back in a couple months or
23       whenever Judge Dozor would sign off on his hearing.  If
24       he gives you a hearing, he may look at it and deny the
25       motion for reconsideration.  I don't know.  It's his
```

1        order.

2               MR. HERMAN:  And with respect, I didn't schedule

3        this hearing.  The court administration did ---

4               THE COURT:  Well, I told judge, Judge Dozor came

5        to me and said, you're going to schedule this because it

6        was your original order.  I just tweaked your order.

7        And I explained to him, I can't change your order.  And

8        he said, well, if I have to change my order, I'll then

9        consider whether or not I'm going to do it or not.  And

10       so, I mean, I think you are in a quandary in that I

11       don't think, you're looking at the trees and the forest

12       here.  I'm giving you the ability to address what you

13       want to address, but I'm calling it a different name.

14              MR. HERMAN:  That's fine judge.  From a

15       practical point of view, we would like to give the

16       defendant 30 days to retrieve her property from the

17       pods.  And we'll determine who's going to be paying for

18       the pods ultimately at another place at another time.

19              THE COURT:  Okay.

20              MR. HERMAN:  We want to limit the exposure that

21       the plaintiff has.

22              THE COURT:  All right.  Let me talk to the

23       plaintiff.  I mean, let me talk to Ms. Ockley and see

24       what we're doing here.  All right.  Ms. Ockley, where do

25       you reside?  You don't have to stand up ma'am.  You can

1          just relax.  Sit down, take a deep breath.  No problem.

2          You want a glass of water?

3                    MS. OCKLEY:  No, thank you, Judge.

4                    THE COURT:  All right.  Listen to me though.

5          Listen, let's listen and let's talk this through.  I

6          know you have some health problems.  I know you were in

7          some type of assisted living or some type of ---

8                    MR. HERMAN:  Nursing home, your honor.

9                    THE COURT:  Nursing facility.  So, my question

10         to you is right now, obviously you're not living in the

11         property, correct?

12                   MS. OCKLEY:  No.

13                   THE COURT:  Okay.

14                   MS. OCKLEY:  I was not allowed a minute to be on

15         the property.

16                   THE COURT:  Well, that wasn't this court, of

17         course, that was Radnor Township.  And if Radnor

18         Township believes it is unfit for human habitation,

19         unless I had a hearing on that particular issue, I

20         really can't address that.  But what I want to address

21         is your belongings.  And I also want to make sure, so

22         you, you currently live -- do you live in a hotel or do

23         you ---

24                   MS. OCKLEY:  I live in a hotel here in Media.

25                   THE COURT:  Okay.  All right.  So, and I know

1    the last time you were at the hearing, if I recall what

2    you represented to me correctly, you were talking about

3    moving and going back to another place ---

4            MS. OCKLEY:  Yeah.  Yeah, sure.

5            THE COURT:  So, and this money, have you

6    received the money from the sale of the house?

7            MS. OCKLEY:  Not yet.  I just deposited the

8    check this week.  I did not -- and I check with the bank

9    yesterday and it was not in deposit.  But what is my big

10   concern about these people not letting me to be in the

11   house, not letting me, the people helping me to move my

12   belongings.  Why these people get into the house, into

13   my belongings, on my own property, on my own things that

14   I -- and move them in a storage facility without me

15   being informed.  They should not do that, when I have a

16   court order from you Judge, and also from Judge Dozor

17   the same.  They did not let me go.  They found all kind

18   of excuses.  The, Radnor Township locks were removed

19   immediately after ---

20           THE COURT:  Well, I know, but there was a change

21   of circumstances and I know I keep using that phrase.

22   And the one change of circumstances is the fact that my

23   court order, if I recall it correctly --

24           MS. OCKLEY:  Yes.

25           THE COURT:  Gave you the ability to go in and

1          out of the property by September 1st.

2                    MS. OCKLEY:  Yes, but I was not allowed.

3                    THE COURT:  Of course we are beyond -- we're

4          beyond September 1st.

5                    MS. OCKLEY:  Yeah.

6                    THE COURT:  And I know you were detained, you

7          had a bad experience.  I understand that, but my order

8          was to try to bring this to a conclusion by the 1st.

9          So, what I'm saying to you is this, yes, they did move

10         out and you can consult with an attorney to address any

11         rights that you think were violated as a result of

12         either their actions or the government's actions or

13         whatever you want to consult and consider.  However, for

14         me, today, this property, again, is no longer -- it

15         hasn't been yours since you signed over the deed.  And

16         now we're at a point where I believe the property was

17         even transferred to a third party, or ---

18                    MR. HERMAN:  That's correct, your Honor.

19                    THE COURT:  So, what we'd like to do now is

20         whatever goods, property that you want to retrieve from

21         there, you're out.  I know you're living in a hotel.

22         Hopefully you can hire somebody when this check clears

23         that you refer to.  And again, I can't help but to say

24         to you, I recommend that you take a little bit of that

25         money and hire an attorney to consult with over all of

1    your issues that you may have, in regard to this matter.

2    But the owner now has the ability, to move forward and

3    do what they're going to do with the property.  However,

4    I have sympathy for you so that you can get your items

5    that you believe are worthwhile.  I don't know what's in

6    there, what's not in there.  Of course.  But ---

7            MS. OCKLEY:  I don't know where is my car?  I

8    don't know where my belongings are, are important ---

9            THE COURT:  Well, they said they're in pods.

10    The pods are on the property?

11            MR. HERMAN:  Today they are judge, but they will

12    shortly be moved to a location for pod storage.  It's a

13    pod location.

14            MS. OCKLEY:  Judge, how comes they do this?

15    They enter into the property when there is your court

16    order and there is judge -- emergency motion from Judge

17    Dozor.  They come into the property.  They found all

18    kind of excuses not letting me ---

19            THE COURT:  Well, I agree.  I agree with you

20    that I don't know when they decided to take the property

21    out of the house ---

22            MS. OCKLEY:  That's a violation.

23            THE COURT:  But September 1st was the date that

24    she was supposed to have access to the property.

25            MR. HERMAN:  Judge, just for the record, the

1    initial bail, which was set was $0 for three conditions.

2    The defendant had to undergo a competency examination --

3    -

4         THE COURT:  What does that have to do with you

5    taking the property?

6         MR. HERMAN:  Well, what it has to do was, she

7    waited until, September 2nd to leave Delaware County

8    Prison.  And she had the keys all along to get out and

9    chose not to.

10        THE COURT:  Keys to get out?

11        MR. HERMAN:  Keys to get out of jail.  She had -

12    - it was a $0 bail.  It was -- she needed three things,

13    a competency exam, a psych exam, and a location given to

14    prison authorities, which she would be returning to.

15    And she ---

16        THE COURT:  But I still don't understand because

17    if the order said she could -- putting aside the fact

18    that she's incarcerated at the Delaware County Prison,

19    if the order said that she has the ability to access the

20    property, because I don't know when she would've gotten

21    out and you don't know exactly when she would've gotten

22    out, but realistically, you said she got out on the 2nd,

23    but the order said she had up until the 1st to access

24    the property.  When was the property moved?

25        MR. HERMAN:  After the 1st.

```
1              THE COURT:  Okay, that's what I'm asking.
2              MR. HERMAN:  Yes, Judge, I can have ---
3              THE COURT:  So they moved it, they're saying, so
4       you did have, the order said the 1st.  So that ended the
5       time.  Now you had extraordinary circumstances, you were
6       detained, but how would I ever know that?
7              MS. OCKLEY:  Yeah.
8              THE COURT:  And the order says the 1st, so they
9       had the right after the first, to move forward.  Now
10      they did it.  And so again, you can consult with an
11      attorney to review any rights that you think were
12      violated.  But right now, my issue is how much time do
13      you need?  And where's -- you're saying that these pods
14      are going to be transported.  Where are they going to be
15      transported to?
16             MR. HERMAN:  I can ask my client.  It is a pod
17      warehouse location close by, I don't know if it's five
18      miles or 10 miles, but it's obviously ---
19             MR. GLEN:  We can leave it on the property for
20      another week.
21             MR. HERMAN:  We can leave it on the property for
22      another week.
23             THE COURT:  Okay.  So, what they're saying is
24      they can leave the pods on the property for another week
25      to give you again a week.  But then at that point in
```

1          time, they're saying that the pods will be moved to some

2          type of storage facility, which will be in the local

3          area.  And you would have an additional three weeks to

4          retrieve it from the pod storage, wherever that may be.

5                    MS. OCKLEY:  But where is my car, Judge?  Where

6          ---

7                    THE COURT:  Where is your what?  I'm sorry, I

8          didn't hear you.

9                    MS. OCKLEY:  Excuse me Judge, where is my car?

10         Where are my belongings?

11                   THE COURT:  Your car?

12                   MS. OCKLEY:  They ---

13                   MR. HERMAN:  It's on the property, Judge.  The

14         car remains on the property.

15                   MS. OCKLEY:  Why all my belongings are getting

16         through by these people that I don't know?  I'm not sure

17         that all my property's still over there.  I have a lot

18         of ---

19                   THE COURT:  Well, you have rights.  Like I'm not

20         saying you don't have rights.  So, if you believe

21         something bad happened to your property, and I'm sure

22         they documented whatever they did, you have a right to

23         consult with an attorney and bring an action if you

24         believe that you've been -- your rights have been

25         violated in any way.  But that's -- again, I had my

1      order said the 1st, and therefore the 1st they moved

2      your stuff.  And I know you were, couldn't have moved it

3      by then.  But at the time, the order said the 1st, it

4      was never modified.  And therefore, they have your

5      belongings.

6           Now whether you believe they're in good

7      condition, bad condition, something happened to them,

8      you reserve your rights.  None of that is going to be

9      determined here.  What's simply going to be determined

10     here is the timeframe that you have to look at your

11     belongings, take what you want from the belongings, and

12     then they're going to dispose of the remainder of the

13     belongings.

14          And they're not even going to address at this

15     point in time, monies associated with the cost,

16     transportation of the storage.

17          Now, they may say that they have a claim against

18     you for that.  I don't want to get into that.  So, and

19     you may say you have a claim against them for certain

20     things, and I don't want to get into that.  I just want

21     to get into trying to resolve this.  So, okay, what

22     you're going to do, I'm going to ask Mr. Herman when he

23     goes back to his office today to send me another court

24     order.  And I'll look at it and I'm going to sign a

25     court order that says that the property in storage will

1    remain on the site of your previous residence for at

2    least another seven days.

3         Thereafter, it may be transported to a local pod

4    facility.  And that, that information will be

5    transmitted to you.  With the location of that, and that

6    you will have the ability for an additional, we'll call

7    it, an additional three weeks to go through that and

8    retrieve whatever items you believe are, worthy of

9    retrieving.  And at the expiration of 30 days from, at

10   this point in time, any unclaimed property will be

11   disposed of because they can't keep it in storage

12   because they're going to have to pay for storage.

13        MS. OCKLEY:  But I just don't let you know,

14   judge, whatever they did, and this, it was my opinion

15   and also doctor's opinion that check on me, everything

16   that they did, they did with a purpose not letting me

17   access the property from the first day when I left here,

18   the court.  They found all kind of reasons not to keep

19   me closer to my house.  How comes police is so involved

20   in this problem, to saying that I trespassed the

21   property when I have your court order and also the

22   emergency court order from Judge Dozor?  And I still

23   been incarcerated, fingerprint, took pictures of me for

24   no reason.  It's a trespassing for what?  When I was

25   allowed on the property.

1          THE COURT:  Well, again, you may have, like I
2      said, I can't really -- that matter, or that issue,
3      although I sympathize with you, is not before me.  I
4      don't know, as I said, I don't know why you were
5      arrested.  I don't know why you spent time in jail.  But
6      I do know this much that whatever rights you think have
7      been violated, you can consult with an attorney, and
8      they can advise you whether they think that something
9      happened here that shouldn't have happened and thus you
10     have a cause of action to pursue either the police or
11     the plaintiff here or whoever you think is appropriate.
12     I'm not here to judge that.  All I'm here to do is try
13     to modify what has occurred so that you have at least
14     some protection in regard to retrieval of your goods.
15         MS. OCKLEY:  All the time, when I try to go to
16     the property, and this is from August 8th, there were
17     people from, plaintiff workers or from three company
18     over there that did not let me access the property.
19     What is the purpose to put locks to the house when they
20     knew that I had to access the house?
21         THE COURT:  And I'm not asking you to comment,
22     but I know that there was some allegation or comment
23     that you had moved into the house and that was perceived
24     as a violation of the court order.  It certainly, I
25     don't know if it was a violation of the court order

1        because I didn't really address it in my court order,

2        but I know it was a violation of what Radnor Township

3        had posted the property, but then it was up to Radnor

4        Township to address that.  But again, I'm not here to

5        judge those issues, just in order to make sure that

6        whatever property, just like we go back to the previous

7        hearing we had.  At the previous hearing we had, my

8        issue was to make sure that you had the ability to

9        retrieve whatever property was in that residence that

10       you deemed worthy of retrieval that you would have the

11       opportunity to do so.

12              I had not anticipated all of what happened, that

13       happened.  However, now I'm here for the change of

14       circumstances because of everything that happened.  And

15       I'm here giving you another opportunity to retrieve

16       whatever you deem worthy of retrieval and you'll have 30

17       days to do so.  Seven at your residence, the current.  .

18       .  Well, it's not your residence.  Seven at the previous

19       residence, and then another three weeks.  So, a total of

20       30 days, another three weeks at the pod location, and

21       you'll be provided with that address.  Okay?

22              MS. OCKLEY:  Yes, Judge, but I just want to tell

23       you, because of their action and their action, that in

24       my opinion was a violation of these two court orders,

25       I'm not going to pay for anything for this transfer of

1      my property to the pod, because they knew that my

2      intention was to have people in the house to pick up

3      furniture because everything was for sale because I will

4      move overseas.  So, whatever they do, and they ask me

5      now for $8,000, I'm really not going to pay.

6          They supposed to let me access the property, not

7      turn off the Pico, not turn off the Aqua, services in

8      the house.  Now I have Verizon and I have Comcast.

9      Where are these boxes that I supposed to return to the

10     company?  They were in the house.  There are a lot of

11     things that are not right, Judge, that they did to me.

12         And they did this because I was by myself.  They

13     tried to lock me down to the Chester Crozer for mental

14     issues.  They tried to lock me down in prison and people

15     from prison when they release me on 2nd, they did

16     apologize for what happened to me.  They said, there's

17     nothing wrong with me.  There are people that see in

18     your house dollar sign.  And I'm so disappointed because

19     you are so kind with me and you try to resolve this in a

20     different manner.  And also Judge Dozor said, you have

21     to go and retrieve your property.  I didn't get any

22     chance of this locking me down from August 13th till

23     September 2nd.

24         THE COURT:  Yeah.  And of course I don't believe

25     plaintiff locked you down.  It was the Radnor police,

1    I'm told, and I know nothing about it.  But they didn't

2    have you, I mean, they didn't arrest you.  I don't know

3    what was communicated to the Radnor police.  But they

4    didn't have you arrested.  They didn't arrest you.  I

5    should rephrase that.  They didn't arrest you.  It was

6    Radnor.  I don't know why they did that ---

7         MS. OCKLEY:  Because of trespassing of the

8    property, that it was the reason and how comes, police

9    officer tried to put handcuffs to me when I was inside

10   of the porch.  Inside of the porch means it's a mesh

11   cover porch.  And this is a fraudulent because the porch

12   being enclosed, it's part of the house.  They're not

13   supposed to do that inside of my previous house, right?

14        And they incarcerated me.  They put me in a

15   stretcher, first they brought me to this Crozer medical

16   facility.  When Dr. Marotta said -- in few minutes he

17   said, "Why you are here?  " I said, "I don't know, they

18   just brought me here.  " They released me after few

19   minutes from that facility.  And second, this police

20   involvement, it's a question mark why they are so

21   involved on this case, when there is nothing -- there is

22   a trespassing against me.  So how it's a trespassing

23   when there is two court orders that allowed me,

24   unconditionally and unlimited into the property.

25        THE COURT:  I understand.  And that's something

1          you can review with an attorney, and see if you have

2          rights.  Right now, what we're doing is simply giving

3          you the ability to retrieve any goods that you believe,

4          can be retrieved.  Okay?

5                    MS. OCKLEY:  Yes.  Yes, Judge.

6                    THE COURT:  All right.

7                    MR. HERMAN:  Your Honor.  And I appreciate the

8          courtesy which has been given to both sides here.  I

9          would need an address, a hotel in Media is not specific

10         for service of processor serving copies of things on Ms.

11         Ockley.  If she could tell me ---

12                   THE COURT:  Well, where are you living, ma'am?

13                   MS. OCKLEY:  I'm living in Media.

14                   THE COURT:  What's the name of the hotel?

15                   MS. OCKLEY:  Media Inn.  And ---

16                   THE COURT:  Is that there by the corner of 252?

17         Is that the one?

18                   MS. OCKLEY:  That's correct.  Media Inn and

19         Suite.

20                   THE COURT:  Okay.

21                   MS. OCKLEY:  And the address, it is.  .  .

22                   MR. HERMAN:  It's across from the Rite Aid and

23         the Rita's WaterIce?

24                   MS. OCKLEY:  I will give you exactly.

25                   THE COURT:  I don't think that's the one.

1           MS. OCKLEY:  The address.  It is 300 South
2    Providence Road Media, Pennsylvania 19063.
3           THE COURT:  What room are you in?
4           MS. OCKLEY:  Room 106.  And I have another
5    question, Judge.
6           THE COURT:  Okay.
7           MS. OCKLEY:  All these bills from locksmith to
8    remove the locks, from me using a taxi driver to drive
9    me around when I have a car in the house and also these
10   bills that are piling from hotel who is going to pay?
11   Since I am so frustrated.  And now they said that I have
12   to pay a thousand dollars for the pod.  I did not
13   request my belongings to be moved into the pods for no
14   reason ---
15          THE COURT:  Well, like I said that Mr. Herman,
16   made a representation that they'll address the issue of
17   any costs at a later date.  It's really not before me.
18   Certainly, you have claims against them.  They have
19   claims against you.  That's why I'm recommending an
20   attorney to consult with.  Maybe the attorney could
21   contact Mr. Herman and resolve the issues and work out
22   some type of an agreement between you.  But, right now,
23   my issue's very narrow.  Okay?
24          MS. OCKLEY:  Yeah.  All right, judge.  What
25   happened to me was just to be preventing all this time

1          from when I was here to you, in front of you to enter
2          the property, with any reason.  Police, Radnor Township
3          that should not be involved.  This is a civil matter and
4          to be so involved, it's a question mark from many people
5          that I discussed.  Why police, it's involved on this
6          property, on this issue and cause me some damages, moral
7          damages, being incarcerated for trespassing on the
8          property.
9                    THE COURT:  No, I understand.  I understand your
10         frustration.  I understand.  I don't understand what
11         happened.  I'm not sure what happened, but I'm
12         certainly, somebody can get to the bottom of it that you
13         hire.  Okay.  Anything else?
14                   MR. HERMAN:  Just wanted to let the court know.
15         I will send a draft of a simple order this morning.
16                   THE COURT:  Okay.
17                   MR. HERMAN:  I'm not sure exactly how to get it.
18         Maybe we'll hand deliver it to the ---
19                   THE COURT:  Do you, do you have any type of
20         email address or anything?
21                   MS. OCKLEY:  No, my computer.  It's ---
22                   THE COURT:  All right.  We're going to have it
23         hand delivered to you.
24                   MR. HERMAN:  It's five minutes from my office
25         Judge.

1               THE COURT:  Okay.

2               MR. HERMAN:  I'll deliver it.

3               THE COURT:  All right.  Anything else?

4               MR. HERMAN:  That will conclude my business

5       before your Honor.

6               THE COURT:  All right.  You're free to leave.

7       Thank you.

8               MR. HERMAN:  Thank you, Judge.

9                              ***

10      [End of Proceedings]

11

12

31

```
1                    C E R T I F I C A T E
2            I, Richard Coogan, hereby certify that the
3        proceedings and evidence are contained fully and
4        accurately on digital multi-track recording; that the
5        recording was reduced to typewriting by my direction;
6        and that this is a correct transcript of the same.
7
8                        _____
9                        Richard Coogan, Director
10                       Electronic Recording Center
11
12           Officemotive, Inc. DBA Capital Typing., hereby
13       certifies that the attached pages represent an accurate
14       transcript of the multi-track digital sound recording of
15       the proceedings in the Court of Common Pleas of Delaware
16       County, Pennsylvania, in the matter of:
17
18
19                       ROCKWELL GLEN
20
21                            vs.
22
23                       SIMONA OCKLEY
24
25                       CV-2022-4275
26
27
28                       BY:
29
30                       _____
31                       Christian Hartselle, CET-2774
32                       Transcriber for
33                       Officemotive, Inc. DBA Capital Typing
34
35
36
37           The foregoing record of the proceedings upon the
38       hearing of the above cause is hereby approved and
39       directed to be filed.
40
41                       _____
42                                                    Judge
43
```