## Exhibit 34

## Officer Brown Deposition Transcript
## March 20, 2025

# Deposition Transcript

Case Number: 2:24-cv-04070-GAW

Date: March 20, 2025

In the matter of:

## Simona Ockley v Township of Radnor, Pennsylvania, et al.

# OFFICER BRIAN BROWN



**CERTIFIED COPY**

Reported by:
KIMBERLY WENDT

Steno
Official Reporters

315 West 9th Street
Suite 807
Los Angeles, CA 90015
concierge@steno.com
(310) 573-8380
NV: Firm #108F

1          IN THE UNITED STATES COURT

2      FOR THE EASTERN DISTRICT OF PENNSYLVANIA

3              CIVIL ACTION - LAW

4                  -   -   -

5  SIMONA OCKLEY          :   Case 2:24-cv-04070-GAW
                          :
6            Plaintiff :
                          :
7           vs.           :
                          :
8  TOWNSHIP OF RADNOR,    :
   PENNSYLVANIA           :
9          and           :
   JENNIFER COCCO in her  :
10 individual capacity    :
           and           :
11 JOSEPH PINTO in his    :
   individual capacity    :
12         and           :
   BRADY MCHALE in his    :
13 individual capacity    :
           and           :
14 BRIAN BROWN in his     :
   individual capacity    :
15         and           :
   JEFFREY BRYDZINSKI     :
16         and           :
   TYLER PRETE            :
17         and           :
   ROCKWELL-GLYNN, LP     :
18                        :
              Defendants :
19

20                  -   -   -

21          Thursday, March 20, 2025

22                  -   -   -

23        Sworn videotaped deposition of OFFICER

24 BRIAN BROWN was held at the offices of Schrom,

25 Shaffer & Botel, P.C., 4 West Front Street, Media,

## Page 2

```
1  Pennsylvania commencing at 2:15 p.m. on the above
2  date before Kimberly Wendt, RPR, a Certified
3  Shorthand Reporter and Notary Public in and for the
4  State of Pennsylvania.
5                    -  -  -
6                  STENO
              Concierge@Steno.com
7              888-707-8366
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

## Page 3

```
1  APPEARANCES:
2
3  FOR THE PLAINTIFF:
4        SCHROM, SHAFFER & BOTEL, P.C.
          BY:  GERARD SCHROM, ESQUIRE
5          4 West Front Street
           Media, PA 17543
6          610-565-5050
           Gschrom@schromandshaffer.com
7
8  FOR THE DEFENDANTS:
9        MARSHALL DENNEHEY
          BY:  JOHN P. GONZALES, ESQUIRE
10         2000 Market Street
           Suite 3200
11         Philadelphia, PA 19103
           215-575-2871
12         Jpgonzales@mdwcg.com
           Counsel for Township of Radnor,
13         Pennsylvania, Jennifer Cocco,
           Joseph Pinto, Brady McHale and
14         Brian Brown
15
           SPRUCE LAW GROUP
16         BY:  TODD BARTOS, ESQUIRE
           1622 Spruce Street
17         Philadelphia, PA 19103
           267-546-0600
18         Tb@sprucelaw.com
           Counsel for Jeffrey Brydzinski,
19         Tyler Prete and Rockwell-Glynn, LP
           (Attending via Zoom)
20
21  ALSO PRESENT:
22         Neil Botel, Esquire
23         Elizabeth Malloy
24         Alan Paller - Videographer
25
```

## Page 4

```
1              I N D E X
2
3  WITNESS                              PAGE
4  OFFICER BRIAN BROWN
5
6      By:  Mr. Schrom                    7
7
8
9            E X H I B I T S
10
    NUMBER         DESCRIPTION          PAGE
11
12  P-1    Judge Whelan Order of 7/15/22  11
13  P-2    Judge Dozor Order of 8/9/22    12
14  P-3      Notice of Condemnation       37
15  P-4      Municipal Police Officer     33
             Basic Training Program
16
    P-5    Radnor Township Police Department  29
17             Polices and Procedures
18  P-6      Photo of Legal Notice        36
19  P-7    Radnor Township Incident Report
20  P-8      Police Criminal Complaint    24
21
22
23
24
25
```

## Page 5

```
1              -  -  -
2          VIDEOGRAPHER:  Good afternoon.
3   We're going on the record at 2:15 p.m.
4   Eastern Time on March 20, 2025 to begin
5   the deposition of Officer Brian Brown
6   taken in the matter of Simona Ockley
7   versus the Township of Radnor,
8   Pennsylvania, et al.  This case is venued
9   in the United States District Court For
10  the Eastern District of Pennsylvania, case
11  number 2:24-cv-04070.  This deposition is
12  taking place at the Law Offices of Schrom,
13  Shaffer and Botel located at 4 West Front
14  Street, Media, Pennsylvania.
15          The legal videographer is
16  Alan Paller, and the court reporter is
17  Kim Wendt.  We're here on behalf of Steno
18  Court Reporting.  At this time would
19  counsel, please, identify yourselves and
20  state whom you represent.
21          MR. SCHROM:  Good afternoon.  My
22  name is Gerard Schrom, S-C-H-R-O-M, on
23  behalf of plaintiff Simona Ockley.
24          MR. GONZALES:  John Gonzales for
25  the Radnor Township defendants.
```

Page 6

1          MR. BARTOS:  Todd Bartos with
2     Spruce Law Group, and I represent Misters
3     Prete, Brydzinski and Rockwell-Glynn, LP.
4          VIDEOGRAPHER:  The court
5     reporter will swear in the witness.
6                -   -   -
7          OFFICER BRIAN BROWN, after having
8     been duly sworn, was examined and
9     testified as follows:
10               -   -   -
11         MR. GONZALES:  Like with the
12    first deposition, the witness is going to
13    read and sign.  All that means is that the
14    court reporter is going to prepare a
15    transcript, send it to me, I send it to
16    you, you review it for accuracy.  You
17    can't change your testimony, you sign off
18    on it, and then you return it.
19         THE WITNESS:  Yes.
20         MR. SCHROM:  Okay.  And all the
21    preliminary matters that were discussed
22    regarding the deposition will remain the
23    same as it was for Cocco, is that
24    acceptable?
25         MR. GONZALES:  Yes, whatever I

Page 7

1     said then goes for this deposition as
2     well.
3          MR. SCHROM:  Okay.
4  BY MR. SCHROM:
5  Q.     So would you, please, state your name for
6  the record, spell the last?
7  A.     Brian, B-R-I-A-N, last name Brown, like
8  the color, B-R-O-W-N.
9  Q.     Okay.  And where do you live?
10 A.     Where do I live?
11 Q.     Yeah.
12         MR. GONZALES:  Oh, I'm going to
13    object.  Yeah, there's a police officer
14    privilege --
15         MR. SCHROM:  Oh, that's right,
16    yeah, I forgot about that.  Okay.
17         MR. GONZALES:  Thank you.  I
18    was --
19         MR. SCHROM:  Nevermind.
20         MR. GONZALES:  -- distracted so
21    I appreciate that.  He can give his work
22    address.
23 BY MR. SCHROM:
24 Q.     That's fine.
25 A.     7236 West Chester Pike, Upper Darby, PA

Page 8

1  19082.
2  Q.     Okay.  How long have you been working
3  there?
4  A.     I guess approximately four years.
5  Q.     Okay.  And what is your role?
6  A.     Patrol division.
7  Q.     Okay.  And what are the duties that you
8  have?
9  A.     We answer emergency 9-1-1 calls, we patrol
10 the neighborhood, we can answer everything from a
11 barking dog to an active shooter.
12 Q.     Okay.  And your educational background?
13 A.     I went to the police academy.
14 Q.     And did you graduate from high school?
15 A.     Yes.
16 Q.     Okay.  What high school did you go to?
17 A.     Upper Darby High School.
18 Q.     Oh, okay.  When did you graduate?
19 A.     2015.
20 Q.     Okay.  And at some point did you work for
21 the Radnor Police Department?
22 A.     Yes.
23 Q.     Okay.  And when did you work for them?
24 A.     June of I think that was 2022.
25 Q.     Okay.  So June '22 to --

Page 9

1  A.     August '22.
2  Q.     August '22?
3  A.     Yes.
4  Q.     Okay.  So this matter involves Simona
5  Ockley, do you remember that lady at all?
6  A.     Briefly, yes.
7  Q.     Okay.  Did you review anything in
8  preparation for today's deposition?
9  A.     Yes.
10 Q.     What did you review?
11 A.     The body cam footage.
12 Q.     Your body cam footage?
13 A.     Yes.
14 Q.     Okay.  And anything else?
15 A.     Briefly went over the reports.
16 Q.     You mean the affidavit of probable cause?
17 A.     That as well, yes.
18 Q.     Okay.  Anything else?
19 A.     No.
20 Q.     Okay.
21 A.     Not that I recall.
22 Q.     Okay.  So you created the affidavit of
23 probable cause?
24 A.     Yes.
25 Q.     Okay.  And was that your first affidavit

Page 10

1 of probable cause that you created?
2 **A.        Ever or for Radnor?**
3 Q.        For Radnor?
4 **A.        I believe so.**
5 Q.        Okay.  And who directed you to create the
6 affidavit of probable cause?
7 **A.        Supervisor.**
8 Q.        And who was that?
9 **A.        Sergeant Fischer.**
10 Q.        And you were on scene on that -- for those
11 events, or why don't you just take me through your
12 physical involvement with the Ockley matter?
13 **A.        Yes, I was on scene that day.**
14 Q.        Okay.  So were you there on two occasions
15 or just one?
16 **A.        Just one.**
17 Q.        Okay.  So that would be the second one
18 where the arrest was made?
19 **A.        Yes.**
20 Q.        Okay.  And the first one was a 302?
21 **A.        I wasn't there for that, so I can't speak
22 on that.**
23 Q.        Okay.  Did you ever happen to become aware
24 of -- where are those documents?  They're right
25 here.  I'd like to show you a document previously

Page 11

1 marked P-1 in the matter involving Cocco.
2                    (P-1 was introduced and marked for
3          identification.)
4 BY MR. SCHROM:
5 Q.        Are you able to identify that document?
6 **A.        Yes.**
7 Q.        Okay.  Did you see that document prior to
8 writing your affidavit of probable cause?
9 **A.        I don't recall.**
10 Q.        Would it be fair to say you're looking at
11 Judge John J. Whelan's order, and --
12 **A.        Yes.**
13 Q.        Okay.  The last paragraph, if you want to
14 read that into the record, number -- whatever that
15 is?
16                    MR. GONZALES:  Three.
17                    **THE WITNESS:  Three?**
18 BY MR. SCHROM:
19 Q.        Yes, please?
20 **A.        "Defendant shall have unlimited and
21 unfettered access to the property at her own risk to
22 remove her personal property until September 1,
23 2022.  Any personal property remaining at the
24 property after September 1, 2022 shall be deemed
25 abandoned and may be removed by plaintiff as**

Page 12

1 **refuse."**
2 Q.        Okay.  So defendant is Simona Ockley; is
3 that correct?
4 **A.        Yes.**
5 Q.        Okay.  Now that you've read that, does
6 that refresh your recollection as to whether or not
7 you saw that order before you created the affidavit
8 of probable cause or after?
9 **A.        This was two years ago, so I --**
10 Q.        All right.
11 **A.        The incident was two years ago, I'm
12 saying --**
13 Q.        I know.
14 **A.        -- not two years -- right.**
15 Q.        So it doesn't refresh your recollection?
16 **A.        No.**
17 Q.        Okay.  I'd like to show you another order
18 marked P-2, same deposition prior.
19                    (P-2 was introduced and marked for
20          identification.)
21 BY MR. SCHROM:
22 Q.        Can you take a moment to look at that?
23 **A.        Yes.**
24 Q.        Okay.  I'd like to direct your attention,
25 if I could, to the second paragraph, if you would

Page 13

1 read that into the record?
2 **A.        "Defendant" -- sorry, what's her first
3 name again?  I want to pronounce it --**
4 Q.        Simona.
5 **A.        "Simona Ockley shall have unlimited and
6 unfettered access to the property located at 416
7 South Ithan Avenue, Villanova, PA 19085 at her own
8 risk to remove her personal property until
9 September 1, 2022.  Plaintiff shall remove any
10 additional locks so that the -- so that defendant
11 may access the property until September 1, 2022.
12 Plaintiff and/or the Radnor Police Department shall
13 allow access by removing locks to provide defendant
14 access to the property to remove her personal
15 property until September 1, 2022."**
16 Q.        Okay.  Does that refresh your recollection
17 regarding when you might have seen that order?
18 **A.        I can't say yes or no to that.**
19 Q.        Okay.  Do you recall ever seeing that
20 order?
21 **A.        I don't recall.**
22 Q.        Would -- if there were an order like that
23 in place, would you have been in a position to view
24 that order?
25                    MR. GONZALES:  Objection.  What

Page 14

1     do you mean by in a position?
2           MR. SCHROM: Let me restate
3     that.
4 BY MR. SCHROM:
5 Q.     I guess your testimony is that you're
6 unsure of whether you saw that order before or after
7 your writing of the affidavit of probable cause,
8 correct?
9 A.     After as in that day or --
10 Q.     Yeah.
11 A.     That day, yeah, I don't recall.
12 Q.     Okay. When you arrested Ockley, did you
13 go to the court with Simona?
14 A.     I physically didn't arrest her.
15 Q.     You did?
16 A.     I physically didn't arrest her.
17 Q.     Oh. So that would have been Officer
18 Cocco?
19 A.     I'm not -- I mean, it's on the body cam.
20 I'm not sure. I want to say yes. I'm not sure
21 though.
22 Q.     Okay. Do you have any idea as to whether
23 or not these two orders were presented to the
24 district justice regarding her bail hearing or
25 status?

Page 15

1 A.     Can you repeat that again? I'm sorry.
2 Q.     Do you know whether or not P-1 and P-2,
3 the two judicial orders from Judge Whelan and Judge
4 Dozor were ever presented to the D.J. who was
5 setting bail?
6 A.     I'm not sure.
7 Q.     Do you know what -- you don't recall what
8 officer appeared in front of -- or took Ockley to
9 the court?
10 A.     Took her to the court? No. I don't know
11 who took her to the court.
12 Q.     Okay. Where would --
13 A.     Are you asking for a prelim, sir? I'm
14 sorry.
15 Q.     Yeah.
16 A.     I'm really confused on your question.
17 Q.     Well, just for the bail hearing.
18 A.     Oh, yes, I was present for that. Yes.
19 Q.     Oh, you were?
20 A.     Yes.
21 Q.     Okay. Do you know whether or not either
22 order was ever given to the judge who was setting
23 bail on this matter?
24 A.     I don't recall.
25 Q.     You don't recall. Okay. Why don't you

Page 16

1 take us through your involvement with Ockley on that
2 particular day, as much as you can recall?
3 A.     I showed up on scene, other officers were
4 already on scene. I'm pretty sure like the first
5 responder officers were pretty much taking the
6 primary on everything, which, you know, talking to
7 Ms. Ockley and whatnot. I don't remember ever
8 actually having a conversation with Ms. Ockley
9 personally at the scene, so --
10 Q.     Okay. And how were you assigned to that?
11 A.     I just got hired by Radnor, and I was in
12 their field training program, in a sense, so I was
13 just -- you're assigned a field training officer,
14 which is common practice for every law enforcement
15 agency I can think of, so I was training in a sense
16 during that day.
17 Q.     Okay. Do you recall hearing Simona say
18 that she felt like she had a right to the property
19 because of court orders?
20 A.     That day, I don't recall.
21 Q.     After you reviewed your body camera, did
22 that spark your recollection at all or no?
23 A.     No, but I do remember seeing -- hearing
24 that on the body camera, yes.
25 Q.     Seeing the what?

Page 17

1 A.     I do remember her saying something along
2 those lines on the body camera.
3 Q.     Meaning that please look at the order,
4 correct?
5 A.     I'm not exactly sure what her words were
6 on that.
7 Q.     Was it something to the effect of I have
8 court orders?
9 A.     I don't recall. I know she had like --
10 she was stating some defense, or something like
11 that, but I don't recall as far as the exact wording
12 of it.
13 Q.     Do you recall any officer ever looking at
14 the court orders?
15 A.     I don't recall. I was possibly the last
16 officer to arrive there. If you look at the body
17 cam footage, I'm like the last one who shows up, so
18 I don't know what happened before I got there, so --
19 as far as what officers were talking to her and
20 whatnot.
21 Q.     Okay. And as far as taking Ockley to the
22 bail hearing, you don't recall whether it was
23 Officer Cocco, or some other officer?
24 A.     Take her to the bail --
25 Q.     Yeah.

Page 18

1  A.      That's at the police station.
2  Q.      Oh.  Well, who was the officer, other than
3  you, who was bringing Ockley to that spot?
4              MR. GONZALES:  I'm going to
5          object.  Are you talking about
6          transporting her to the police station, or
7          taking her from somewhere within the
8          police station, to where the video bail
9          hearing took place?
10 BY MR. SCHROM:
11 Q.      Oh, it was a video bail hearing; is that
12 correct?
13 A.      Yes, sir.
14 Q.      Okay.
15 A.      That's why I was confused about that.  No
16 problem.
17 Q.      All right.  Thank you.  So it was a video
18 bail hearing at the police station?
19 A.      Yes.
20 Q.      And you participated in that hearing?
21 A.      Yes.  I was present.
22 Q.      Okay.  Do you recall anything about that
23 hearing?
24 A.      I do not recall anything from that
25 hearing.

Page 19

1              MR. SCHROM:  It's getting
2          shorter.
3              MR. GONZALES:  Keep it up,
4          Officer.
5  BY MR. SCHROM:
6  Q.      Any particular reason that you left the
7  Radnor Police Department?
8  A.      Just my personal choice.
9  Q.      Okay.  Because you're more familiar with
10 Upper Darby, and that's where you grow up?
11 A.      Once again, just my personal choice.  It
12 has no relevance to this case, or like any other
13 case as well.
14 Q.      Okay.  Do you recall being aware of a
15 condemnation notice on that property?
16 A.      Yes.
17 Q.      Did you view the condemnation notice?
18 A.      Yes.
19 Q.      Were there discussions regarding the
20 condemnation notice among the officers?
21 A.      Yes.
22 Q.      And was there a determination made that
23 she was not allowed to stay on the property because
24 of the condemnation notice?
25 A.      I'm sorry, restate that again?  I'm sorry.

Page 20

1  Q.      Was there a determination among the
2  officers made that she can't stay on the property
3  because of the condemnation notice?
4  A.      I would say there was several reasons why.
5  That wasn't just the sole reason.
6  Q.      Okay.  What's the reason -- what are the
7  reasons that you recall?
8  A.      That was one, the order given.  At that
9  time she didn't own the property.  Sorry.  Just give
10 me some time, I'm just trying to think, like I said
11 this was two years ago.
12 Q.      Yeah.  Anything else?
13 A.      That I can think of right now, I think
14 that was pretty much the gist of it.
15 Q.      Okay.  Was Officer Cocco the -- one of the
16 leads on that arrest day?
17 A.      From what I can remember, I want to say
18 she was possibly the first officer on the scene.
19 Q.      Okay.  Who helped you construct the
20 affidavit of probable cause?
21 A.      It was pretty much a collab with the --
22 pretty much everyone that was there.  Like I said, I
23 was in field training, so there's always going to be
24 at least my field training officer, Officer Cocco
25 was there, and Sergeant Fischer was there as well.

Page 21

1  Q.      Okay.  So they all contributed to the
2  creation of the document?
3  A.      Correct.  Yes.
4  Q.      So there were four officers?  Four, is
5  that right?
6  A.      I'm sorry, as far as like who was on
7  scene?
8  Q.      Who all was contributing to the creation
9  of --
10 A.      Everyone that was on scene that day, yes.
11 Q.      Okay.  And who do you recall being on the
12 scene?
13 A.      Officer Cocco, Sergeant Fischer, myself.
14 Don't knock me, but it was my FTO, I forgot his
15 name.  I'm sorry.
16 Q.      Your what?
17 A.      My FTO, field training officer.
18 Q.      Oh, FTO.  I see.  All right.  Who actually
19 physically typed the document?
20 A.      I did.
21 Q.      Okay.  Was it revised by anyone, after you
22 finished it?
23 A.      I don't recall.  I mean, like I said, it
24 was a collab, I'm in field training, so there's --
25 you know, there might be some things where, you

Page 22

1 know, a supervisor or someone might say, you know,
2 you need to word this better, something like that,
3 as far as advice and stuff like that.
4 Q.    Do you know who determined the crimes?
5 A.    I don't recall.  I definitely had a part
6 in it though.
7 Q.    You had a part?
8 A.    Yes, sir.
9 Q.    Criminal trespass, what is your
10 recollection as to why she got charged with criminal
11 trespass?
12 A.    She was on a property that she was not
13 supposed to be on.
14 Q.    Due to what?
15                 MR. GONZALES:  Objection.
16 BY MR. SCHROM:
17 Q.    Why not?
18 A.    Why as in -- I'm sorry?
19 Q.    Why wasn't she supposed to be on the
20 property?
21 A.    Because she was told not to be on the
22 property, and there was orders that's telling her
23 not to be on the property unless she was removing
24 belongings, which she was not.
25 Q.    Okay.  Told by the Radnor Police

Page 23

1 Department previously not to be on the property?  Is
2 that your understanding?
3 A.    As in?  I'm sorry, can you restate that
4 again?
5 Q.    She was told by Radnor Police Department
6 not to be on the property; is that correct?
7 A.    I can't really speak on what happened as
8 far as -- I mean, are you saying like the day
9 before?  Like what are you --
10 Q.    At any point.
11 A.    At any point?
12 Q.    Yeah.
13 A.    I know she was told that day that she was
14 not supposed to be on the property and requested to
15 leave, and she did not.
16 Q.    Okay.  Did you see a black bag next to
17 her?  Do you recall that?
18 A.    I don't recall.  I know she had some
19 belongings, or something like that, but I don't
20 recall.  I know she had like a cane, or something
21 like that.
22 Q.    Do you know whether or not any officer
23 went through those belongings?
24 A.    I don't recall.
25 Q.    Regarding burglary, why did you write

Page 24

1 burglary as a charge?
2 A.    What's that?
3 Q.    Burglary.
4 A.    What is it, like a typo?
5 Q.    No, I'm just saying why did you determine
6 that there was burglary as a charge?
7 A.    I can't -- I don't have the statute in
8 front of me, but if I can read the statute, I mean,
9 it says pretty much --
10 Q.    Sure.  Showing you P-8, affidavit of
11 probable cause in the prior matter.
12 A.    Thank you.
13           (P-8 was introduced and marked for
14     identification.)
15           THE WITNESS:  I don't think this
16     one shows the full statute either.  Yeah,
17     it doesn't show the full statute, but --
18 BY MR. SCHROM:
19 Q.    Do you have any independent recollection?
20 A.    As in?
21 Q.    Of why you wrote burglary as a charge?
22 A.    Yes.  I mean, as far as I can remember off
23 the facts and circumstances that I gathered from --
24 you know, like I said, it was a collaboration,
25 that's why she was charged the way she was charged.

Page 25

1 Q.    Anything else?
2 A.    No.  Like I said, it was based off the
3 facts and circumstances that were gathered by myself
4 and the other officers.
5 Q.    Okay.  And would that be the answer to all
6 the rest of the charges?
7 A.    Yes.
8 Q.    Do you have any specific recollection as
9 to why she was charged with defiant trespass?
10 A.    Yes, so if you can read the description of
11 it, the actor knowing that he -- in this case she --
12 was not licensed or privileged to do so entered or
13 remained in a place, namely 416 South Ithan, as to
14 which notice against trespass was given by actual
15 communication to the actor, namely -- and that's
16 pretty much it stops right there, but she was given
17 communication that she was not supposed to be here.
18 Q.    Okay.  All right.  In your opinion, as you
19 review those orders, do you think these orders in
20 any way impact your affidavit of probable cause?
21 A.    Yes.
22 Q.    How so?
23 A.    If you look at these orders, the key thing
24 that we got to look at is that is says access by
25 removing -- I'm sorry -- this one right here.

1           MR. GONZALES:  And you're
2     referring to exhibit P -- just refer --
3           THE WITNESS:  I'm sorry, yes,
4     exhibit P-1.  Like I said, the key that we
5     got to look at, the keynote here is access
6     to the property at her own risk to remove
7     her personal belong -- property.  So what
8     I really want to just emphasize on is
9     removing her personal property, she was
10    not removing her personal property at that
11    time, so that's the key.
12 BY MR. SCHROM:
13 Q.      Okay.  Meaning that she had to be --
14 A.      Removing her personal property.
15 Q.      At all times she had to be removing the
16 property?
17 A.      As far as the court, I mean, that's what
18 the order says.
19 Q.      So if she went outside and took a break,
20 she would be subject to arrest?
21 A.      I mean, that's speculation.  I don't want
22 to get into -- I mean, we can --
23 Q.      Right.  You're saying that she needed to
24 be removing property --
25 A.      Correct.

1 Q.      -- all the time?
2 A.      The order.  I'm not saying.  The order
3 said that.
4 Q.      That's what you understand the order to
5 say?
6 A.      Yes.
7 Q.      And that was what the Radnor police
8 officers that were around you at that time
9 understood as well, is that your understanding?
10 A.      I can't really speak on someone else's
11 thoughts, and stuff like that.  I can only speak on
12 mine.  I want to say yes, but I don't want to speak
13 on for someone else.
14 Q.      Okay.  Do you have any reason to believe
15 that the officers were taking a different position,
16 other than what you suggested?
17 A.      As far as?  I'm sorry.
18 Q.      Just what you suggested before, do you
19 have any reason to believe that any officers took a
20 different position, other than the position that
21 you're taking?
22           MR. GONZALES:  I'm going to
23      object.  I mean, you can answer it, if you
24      understand it.
25           THE WITNESS:  Yeah, I just don't

1      really understand the question.  I'm
2      sorry.
3 BY MR. SCHROM:
4 Q.      Well, you said a little while ago that she
5 had to be removing property.  She wasn't removing
6 property, therefore she was subject to breaking the
7 order --
8 A.      Yes.
9 Q.      -- and then subject to arrest, correct?
10 A.      Correct.
11 Q.      And I asked did all officers share that
12 opinion, or at least to the best of your knowledge,
13 that you were with on that day?
14 A.      To the best of my knowledge, yes.
15 Q.      Did you ever receive specific training in
16 real estate or property law from the -- from Radnor
17 Police Department?
18 A.      I don't recall.
19 Q.      Have you ever in your life received any
20 specific training on property rights issues?
21 A.      I mean, I -- the academy, you know, I went
22 to the academy, what, graduated in 2019.  I mean, we
23 learned a lot.  I can't like state on like how
24 much -- you know, like I said, this is 2019, so --
25 Q.      Okay.  If you had to classify yourself as

1 an officer, even as an officer in training on that
2 day, would you classify yourself as conscientious,
3 and to what degree, high, medium, low?
4 A.      Can you simplify that a little better?
5 I'm sorry.
6 Q.      Yeah.  Would you consider yourself, when
7 you were working for the Radnor Police, a
8 conscientious officer?
9 A.      In my opinion, yes.
10 Q.      Do you believe that it's your duty to
11 acknowledge and follow orders of Common Pleas Court?
12 A.      Yes.
13 Q.      Do you believe that would be the opinion
14 of all the officers that you were with that day?
15 A.      I can't speak on someone else's opinion,
16 so --
17 Q.      Do you have any reason to believe they
18 wouldn't?
19 A.      I can't speak on someone else's opinion.
20 Q.      I'd like you to look at a document
21 previously marked P-5.
22           (P-5 was introduced and marked for
23      identification.)
24 BY MR. SCHROM:
25 Q.      Can you look at that for a moment?

Page 30

1  A.      Yes, sir.
2  Q.      And can you identify that?
3  A.      Yes.  It's the Radnor Township Police
4  Department policy and procedures, subject
5  emotionally disturbed persons.
6  Q.      Okay.  Did it appear to you that -- on
7  that day that Ockley was an emotionally disturbed
8  person?
9  A.      I didn't have that much physical -- I
10 don't remember even saying one word to the lady at
11 the scene, so --
12 Q.      But I mean by observation, did it appear
13 to you that she was in that category of emotionally
14 disturbed persons?
15 A.      I don't recall.
16 Q.      Do you recall ever being presented with
17 this policy from the police department?
18 A.      That I have right here, sir?
19 Q.      Yeah.
20 A.      Yes.
21 Q.      And did you have to study it and --
22 A.      Yes, we reviewed it, yes.
23 Q.      Okay.  I'd like to direct your attention
24 to C, which is on the next page, deescalation.
25 A.      Yes.

Page 31

1  Q.      If you would read that into the record?
2  A.      "C, deescalation, is calmly communicating
3  with an agitated person in order to understand,
4  manage or resolve his or her concerns.  Ultimately,
5  these actions should help reduce the person's
6  agitation and potential for future aggression or
7  violence."
8  Q.      Okay.  And do you believe that was done on
9  that particular day that you were present?
10 A.      In my opinion?
11 Q.      Yes.
12 A.      In my opinion, yes.
13 Q.      Okay.  And how would you characterize that
14 being done?  Very well, well, not so well, poorly?
15 A.      I think it was well.
16 Q.      I'd like you to read under policy where it
17 says it is, it's the second paragraph down?
18 A.      Yes, sir.
19 Q.      Can you read that?
20 A.      Yes.  "It is the policy of the Radnor
21 Township Police Department to treat emotionally
22 disturbed persons and persons with mental illness
23 with dignity, respect and thorough deescalation
24 tactics to the extent possible, and to divert them
25 from the criminal justice system and possible use of

Page 32

1  force or unnecessary injury whenever possible."
2  Q.      Okay.  So the focus is dignity, respect
3  and deescalation; is that correct?
4  A.      I think the focus is the whole thing,
5  but --
6  Q.      Okay.
7  A.      Yeah.
8  Q.      But deescalation is part of it?
9  A.      Yes, sir.
10 Q.      And also diverting them from the criminal
11 justice system, what does that mean?
12 A.      I guess, you know, steering them away from
13 it.
14 Q.      Rather than putting them into it?
15 A.      Yes.
16 Q.      Okay.  In this circumstance, Ms. Ockley
17 was put into the criminal system, correct?
18 A.      Correct.
19 Q.      But you believe that the actions of the
20 police were consistent with the policy; is that
21 correct?
22 A.      Yes.
23              MR. SCHROM:  Where are the other
24          documents I had in here?
25 BY MR. SCHROM:

Page 33

1  Q.      I'm showing you a document previously
2  marked P-4 in the Cocco matter.
3              (P-4 was introduced and marked for
4          identification.)
5  BY MR. SCHROM:
6  Q.      Can you identify that?
7  A.      Yes.  Municipal police officer basic
8  training program.
9  Q.      Okay.  Is that the training program that
10 you completed?
11 A.      Yes.  It's MOPEC.
12 Q.      Okay.  This is a 2024 version, but -- and
13 you were in 2019, so five years ago --
14 A.      That's when I graduated.  Yes, I graduated
15 2019.
16 Q.      Okay.  As you look at it -- take a moment
17 to look at it.  Okay.  Does that appear to be the
18 identical or similar program that you trained
19 through?
20 A.      I don't recall.  I mean, one, like I said,
21 this says effective January 1, 2022, I graduated
22 2019, so if you had the one from 2019 maybe I can
23 point it, but --
24 Q.      Okay.  Are you aware that Act 120 is the
25 principal act guiding municipal police officer basic

Page 34

1 training programs?
2 A.       Yes, sir.
3 Q.       Okay.  I'd like to direct your attention
4 to page five, if you would look to it.
5 A.       Yep.
6 Q.       Volume one, introduction.  Can you read
7 the second sentence, the learning and study skills?
8 A.       Yes.  "The learning and study skills block
9 provides the police cadet with valuable information
10 to assist them in developing some basic skills
11 regarding how to actively listen and participate in
12 class, think critically, and study for and take
13 rigorous tests."
14 Q.       Okay.  Hold on.  So would it be fair to
15 say that active listening is a critical function of
16 a police officer?
17 A.       In my opinion, yes.
18 Q.       Okay.  And thinking critically is also a
19 very important function of a police officer?
20 A.       In my opinion, yes.
21 Q.       Okay.  Do you believe that the police
22 officers on that scene that day were actively
23 listening and thinking critically relative to this
24 lady?
25 A.       In my opinion, yes.

Page 35

1 Q.       If you turn to page seven, volume five,
2 human relations, are you there?
3 A.       Yes, sir.
4 Q.       Okay.  If you would read the second
5 sentence beginning with they?
6 A.       "They will discuss the basic
7 characteristics of effective interpersonal
8 communication and gain an understanding of the
9 benefits of active listening, as well as the
10 barriers to active listening and how to overcome
11 those barriers."
12 Q.       Okay.  Was this part of your training?  Do
13 you recall whether this part of your training when
14 you went through it?
15 A.       Yes.
16 Q.       Okay.  So, again, it's repeating active
17 listening?
18 A.       Yes, sir.
19 Q.       Which is a critical function?
20 A.       Yes, sir.
21 Q.       And then, it also talks about barriers to
22 active listening.  What are the barriers to active
23 listening that may have been presented on that day
24 with Ms. Ockley?
25 A.       In part of this, or what are the barriers

Page 36

1 you're talking about at that incident?
2 Q.       I'm just taking this out and applying it
3 to that particular day.  Were there any barriers to
4 active listening on that day that you observed?
5 A.       That I observed?  No.
6 Q.       When you were there, was Officer Cocco
7 there already?
8 A.       When I arrived, she was there, yes,
9 Officer Cocco was already there.
10 Q.       And how long were you on the scene?
11 A.       I'm not sure.  I don't recall.
12 Q.       You don't -- you don't recall?
13 A.       No, sir.
14 Q.       Thank you.  If you would take a moment to
15 look at P-6, I don't know whether you looked at P-6
16 previously.
17        (P-6 was introduced and marked for
18    identification.)
19 BY MR. SCHROM:
20 Q.       What is P-6?  Can you identify that?
21 A.       It is a legal notice of danger from Radnor
22 Township.
23 Q.       Was that on the property when you arrived;
24 do you know?
25 A.       I don't recall that day.  I'm not sure.

Page 37

1 Q.       If it were on the property, would that
2 signal that the property is condemned?
3 A.       I would -- yes, I would assume so.
4 Q.       I'm showing you a document previously
5 marked P-3.
6        (P-3 was introduced and marked for
7    identification.)
8 BY MR. SCHROM:
9 Q.       Can you identify that?
10 A.       It's a notice of property being condemned
11 by property maintenance of Radnor Township.
12 Q.       Okay.  And that's a code enforcement
13 entity?
14 A.       It says the property maintenance code of
15 Radnor Township.
16 Q.       Okay.  In bold though, it's a notice of
17 condemnation?
18 A.       Yes, sir.
19 Q.       Due to property maintenance, do you know
20 what that relates to?
21 A.       It says it relates to adopted as the
22 property maintenance code of Radnor Township.
23 Q.       Did you ever see one of those before?
24 A.       Me?  I don't recall, no.
25 Q.       Okay.  Do you recall anyone, any officer

1 or yourself, reviewing any other document regarding
2 legal title to that property?
3 **A.      I'll speak for myself.  I don't recall**
4 **myself.  I don't recall for me.  I know other**
5 **officers had more information than I did on the**
6 **whole incident and stuff.**
7 Q.      All right.  Do you know whether any
8 independent legal authority was brought in, in order
9 to interpret those orders?
10 **A.      I'm sorry, state that again?**
11 Q.      Do you know whether any separate legal
12 authority, counsel or other authority, was requested
13 by the police to interpret P-1 and P-2?
14 **A.      That day?**
15 Q.      Yeah.
16 **A.      I don't recall.**
17 Q.      Did it appear that Ms. Ockley was capable
18 of removing sheets of plywood on that day?
19 **A.      Like physically herself?  In my opinion, I**
20 **want to say possibly not physically.**
21 Q.      Because?
22 **A.      Just her physical stature that day, I**
23 **could be wrong, I don't know exactly, I don't want**
24 **to say what she's capable of doing, and what she's**
25 **not capable of doing, but just my opinion I would**

1 say possibly not.
2 Q.      Ever had any personal experience with
3 four-by-eight sheets of plywood?
4 **A.      Me personally?**
5 Q.      Yes.
6 **A.      No, sir.**
7 Q.      Are there particular protocols in place
8 involving a situation such as Ms. Ockley found
9 herself in on that day?
10          MR. GONZALES:  Objection.  I
11          don't understand your question, but you
12          can answer it if you do.
13          **THE WITNESS:  Yeah, can you**
14          **restate that again?**
15 BY MR. SCHROM:
16 Q.      Sure.  What specific protocols were in
17 place in the Radnor Police Department to deal with a
18 person such as Ockley?  Let me back up from that.
19 I may have asked you this before, but did
20 she appear to be an emotionally disturbed person?
21 **A.      I didn't have much, if any -- I don't**
22 **think I had any communication with her.**
23 Q.      I know that, but I mean just from your
24 observations of the interactions?
25 **A.      I mean, she was upset, that I could see,**

1 but I wasn't -- I wasn't that much close to her.
2 Q.      How close did you come to her at any -- at
3 the closest point?
4 **A.      Well, eventually I got real close to her,**
5 **because she was back at the station, I was at the**
6 **bail hearing, so it was kind of like where you're**
7 **standing, I'm sitting.**
8 Q.      Maybe three feet away?
9 **A.      Yes, sir.**
10 Q.      Okay.  Did she ever talk to you at that
11 point and say why don't you look at a court order
12 for me?
13 **A.      I don't remember her ever saying a word to**
14 **me, to be honest.**
15 Q.      Did you ever have a separate conversation
16 with her?
17 **A.      I don't recall, no.**
18 Q.      Did you ever speak to a man by the name of
19 Brydzinski?
20 **A.      No.  Me?  Correct?  Right?**
21 Q.      You.
22 **A.      Me, no.**
23 Q.      Or Prete?
24 **A.      Me, no.**
25 Q.      Or Lingo?

1 **A.      No.**
2 Q.      Or a man whose first name is Luke?
3 **A.      And related to this incident?**
4 Q.      Yes.
5 **A.      No.**
6 Q.      Do you know whether or not there were any
7 disciplinary actions taken against any officers as a
8 result of this incident?
9 **A.      I'm not sure.  I know for me, no.  Like I**
10 **said, I left --**
11 Q.      Do you know if there were any
12 conversations, discussions, meetings regarding this
13 particular incident?
14 **A.      No.  To my knowledge, no.**
15 Q.      You were instrumental in causing a
16 criminal proceeding to be initiated against Simona
17 Ockley, correct?
18 **A.      State that again?**
19 Q.      You were instrumental in creating a
20 criminal proceeding to be initiated, started,
21 against Simona Ockley, correct?
22 **A.      In regards to my -- the probable cause,**
23 **the criminal complaint?**
24 Q.      In regard to your duties as an officer?
25          MR. GONZALES:  I'm going to

Page 42

1      object.  I mean, you're reading the
2      definition of malicious prosecution as one
3      of the elements.  That's a civil claim.
4      That's for the attorneys to argue.  He can
5      answer the facts.
6                  MR. SCHROM:  I understand.
7                  MR. GONZALES:  I think he's --
8      so I'm going to object.
9                  THE WITNESS:  I don't --
10     honestly, I don't really get the question
11     that you're asking me.
12 BY MR. SCHROM:
13 Q.     Well, I just want to know whether you --
14 you were one of the people who started a criminal
15 action against Ockley, right?
16 A.     I don't understand the question.  I'm
17 sorry.
18 Q.     You don't understand the question?
19 A.     No.
20 Q.     Okay.  You wrote the affidavit of probable
21 cause, right?
22 A.     Yes.
23 Q.     Okay.  And that started a criminal
24 proceeding, right?
25 A.     Yes.

Page 43

1 Q.     Okay.  And then, she was arrested prior to
2 that, right?
3 A.     Prior to?
4 Q.     Prior to the affidavit of probable cause,
5 or around the same time as the affidavit of probable
6 cause?
7 A.     Same -- the day I wrote the probable
8 cause, criminal complaint, yes, she was arrested
9 that day.
10 Q.     Okay.  And were you ever aware of how the
11 proceeding ended?
12 A.     No.
13 Q.     Do you have any ongoing contact with
14 anybody in the Radnor Police Department?
15 A.     No.
16 Q.     Have you ever been disciplined for
17 anything at Upper Darby?
18 A.     No.
19 Q.     Do you know whether any of the officers
20 that were there on that day were disciplined for any
21 other activity?
22 A.     I'm not sure.  I mean, I can't really
23 answer that.
24                 MR. SCHROM:  I'm just going to
25     take five, and then I'm just about done.

Page 44

1                  MR. GONZALES:  Okay.
2                  MR. SCHROM:  You have to be out
3      by 4:00, you said?
4                  THE WITNESS:  Yeah.
5                  MR. SCHROM:  Oh, you do?  Yeah?
6                  MR. GONZALES:  Going off the
7      video?
8                  VIDEOGRAPHER:  Off the record at
9      3:08.
10                 (At this time, a short break was
11     taken.)
12                 VIDEOGRAPHER:  Back on the
13     record 3:13.
14 BY MR. SCHROM:
15 Q.     Nothing additional.  Thank you.
16 A.     Thank you, sir.
17                 MR. GONZALES:  Mr. Bartol (sic)
18     may have questions for you on the
19     computer.
20 BY MR. BARTOS:
21 Q.     Hi.  Officer Brown, good afternoon.
22 Actually, I have no questions for you this
23 afternoon.  Thank you for your time.
24 A.     Thank you, sir.  I appreciate it.
25                 MR. GONZALES:  I meant Bartos.

Page 45

1 Sorry.  My apologies.
2                  MR. BARTOS:  No worries.
3                  MR. GONZALES:  I have no
4      questions.  You're done.
5                  VIDEOGRAPHER:  This concludes
6      today's testimony given by Officer Brian
7      Brown in the matter of Simona Ockley
8      versus The Township of Radnor, et al.  We
9      are off the record at 3:14.
10                 -  -  -
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Page 46

```
 1        C E R T I F I C A T I O N
 2
 3         I, KIMBERLY WENDT, a Certified
 4  Professional Reporter and Notary Public for the
 5  Commonwealth of Pennsylvania, do hereby certify that
 6  the foregoing is a true and accurate transcript of
 7  the stenographic notes taken by me in the
 8  aforementioned matter.
 9
10                  - - -
11
12
13
14
15
16
17
18           Kimberly Wendt
19         _____
20         KIMBERLY WENDT
           Notary Public
21         My Commission Expires
           On January 15, 2027
22
23
24
25
```

Page 47

```
 1                  - - -
 2        E R R A T A   S H E E T
 3                  - - -
 4
 5  PAGE     LINE     CHANGE
 6  _____   _____   _____
 7  _____   _____   _____
 8  _____   _____   _____
 9  _____   _____   _____
10  _____   _____   _____
11  _____   _____   _____
12  _____   _____   _____
13  _____   _____   _____
14  _____   _____   _____
15  _____   _____   _____
16  _____   _____   _____
17  _____   _____   _____
18  _____   _____   _____
19  _____   _____   _____
20  _____   _____   _____
21  _____   _____   _____
22  _____   _____   _____
23  _____   _____   _____
24  _____   _____   _____
25
```

Page 48

```
 1        ACKNOWLEDGMENT OF DEPONENT
 2
 3         I,                  , do hereby certify
 4  that I have read the foregoing pages and that the
 5  same is a correct transcription of the answers given
 6  by me to the questions therein propounded, except
 7  for the corrections or changes in form or substance,
 8  if any, noted in the attached Errata Sheet.
 9
10
11
12
13
     _____    _____
14   Date          Signature
15
16
17   Subscribed and sworn to before me this ____ day
     of  _____ 20___.
18
19   My commission expires: _____
20
21   _____
     Notary Public
22
23
24
25
```

## Exhibits

**Exhibit P-1**  4:12 11:1,2 15:2 26:4 38:13

**Exhibit P-2**  4:13 12:18, 19 15:2 38:13

**Exhibit P-3**  4:14 37:5,6

**Exhibit P-4**  4:15 33:2,3

**Exhibit P-5**  4:16 29:21, 22

**Exhibit P-6**  4:18 36:15, 17,20

**Exhibit P-7**  4:19

**Exhibit P-8**  4:20 24:10, 13

---

### 1

**1**  11:22,24 13:9,11,15 33:21
**120**  33:24
**19082**  8:1
**19085**  13:7

---

### 2

**20**  5:4
**2015**  8:19
**2019**  28:22,24 33:13,15, 22
**2022**  8:24 11:23,24 13:9, 11,15 33:21
**2024**  33:12
**2025**  5:4
**22**  8:25 9:1,2
**2:15**  5:3
**2:24-cv-04070**  5:11

---

### 3

**302**  10:20

**3:08**  44:9
**3:13**  44:13
**3:14**  45:9

---

### 4

**4**  5:13
**416**  13:6 25:13
**4:00**  44:3

---

### 7

**7236**  7:25

---

### 9

**9-1-1**  8:9

---

### A

**abandoned**  11:25
**academy**  8:13 28:21,22
**acceptable**  6:24
**access**  11:21 13:6,11,13, 14 25:24 26:5
**accuracy**  6:16
**acknowledge**  29:11
**act**  33:24,25
**action**  42:15
**actions**  31:5 32:19 41:7
**active**  8:11 34:15 35:9, 10,16,22 36:4
**actively**  34:11,22
**activity**  43:21
**actor**  25:11,15
**actual**  25:14
**additional**  13:10 44:15
**address**  7:22
**adopted**  37:21

**advice**  22:3
**affidavit**  9:16,22,25 10:6 11:8 12:7 14:7 20:20 24:10 25:20 42:20 43:4,5
**afternoon**  5:2,21 44:21, 23
**agency**  16:15
**aggression**  31:6
**agitated**  31:3
**agitation**  31:6
**Alan**  5:16
**allowed**  19:23
**and/or**  13:12
**apologies**  45:1
**appeared**  15:8
**applying**  36:2
**approximately**  8:4
**argue**  42:4
**arrest**  10:18 14:14,16 20:16 26:20 28:9
**arrested**  14:12 43:1,8
**arrive**  17:16
**arrived**  36:8,23
**assigned**  16:10,13
**assist**  34:10
**assume**  37:3
**attention**  12:24 30:23 34:3
**attorneys**  42:4
**August**  9:1,2
**authority**  38:8,12
**Avenue**  13:7
**aware**  10:23 19:14 33:24 43:10

---

### B

**B-R-I-A-N**  7:7
**B-R-O-W-N**  7:8

**back**  39:18 40:5 44:12
**background**  8:12
**bag**  23:16
**bail**  14:24 15:5,17,23 17:22,24 18:8,11,18 40:6
**barking**  8:11
**barriers**  35:10,11,21,22, 25 36:3
**Bartol**  44:17
**Bartos**  6:1 44:20,25 45:2
**based**  25:2
**basic**  33:7,25 34:10 35:6
**begin**  5:4
**beginning**  35:5
**behalf**  5:17,23
**belong**  26:7
**belongings**  22:24 23:19,23
**benefits**  35:9
**black**  23:16
**block**  34:8
**body**  9:11,12 14:19 16:21,24 17:2,16
**bold**  37:16
**Botel**  5:13
**break**  26:19 44:10
**breaking**  28:6
**Brian**  5:5 6:7 7:7 45:6
**Briefly**  9:6,15
**bringing**  18:3
**brought**  38:8
**Brown**  5:5 6:7 7:7 44:21 45:7
**Brydzinski**  6:3 40:19
**burglary**  23:25 24:1,3,6, 21

## C

**cadet** 34:9

**calls** 8:9

**calmly** 31:2

**cam** 9:11,12 14:19 17:17

**camera** 16:21,24 17:2

**cane** 23:20

**capable** 38:17,24,25

**case** 5:8,10 19:12,13 25:11

**category** 30:13

**causing** 41:15

**change** 6:17

**characteristics** 35:7

**characterize** 31:13

**charge** 24:1,6,21

**charged** 22:10 24:25 25:9

**charges** 25:6

**Chester** 7:25

**choice** 19:8,11

**circumstance** 32:16

**circumstances** 24:23 25:3

**civil** 42:3

**claim** 42:3

**class** 34:12

**classify** 28:25 29:2

**close** 40:1,2,4

**closest** 40:3

**Cocco** 6:23 11:1 14:18 17:23 20:15,24 21:13 33:2 36:6,9

**code** 37:12,14,22

**collab** 20:21 21:24

**collaboration** 24:24

**color** 7:8

**common** 16:14 29:11

**communicating** 31:2

**communication** 25:15,17 35:8 39:22

**complaint** 41:23 43:8

**completed** 33:10

**computer** 44:19

**concerns** 31:4

**concludes** 45:5

**condemnation** 19:15, 17,20,24 20:3 37:17

**condemned** 37:2,10

**confused** 15:16 18:15

**conscientious** 29:2,8

**consistent** 32:20

**construct** 20:19

**contact** 43:13

**contributed** 21:1

**contributing** 21:8

**conversation** 16:8 40:15

**conversations** 41:12

**correct** 12:3 14:8 17:4 18:12 21:3 23:6 26:25 28:9,10 32:3,17,18,21 40:20 41:17,21

**counsel** 5:19 38:12

**court** 5:9,16,18 6:4,14 14:13 15:9,10,11 16:19 17:8,14 26:17 29:11 40:11

**create** 10:5

**created** 9:22 10:1 12:7

**creating** 41:19

**creation** 21:2,8

**crimes** 22:4

**criminal** 22:9,10 31:25 32:10,17 41:16,20,23 42:14,23 43:8

**critical** 34:15 35:19

**critically** 34:12,18,23

## D

**D.J.** 15:4

**danger** 36:21

**Darby** 7:25 8:17 19:10 43:17

**day** 10:13 14:9,11 16:2, 16,20 20:16 21:10 23:8,13 28:13 29:2,14 30:7 31:9 34:22 35:23 36:3,4,25 38:14,18,22 39:9 43:7,9,20

**deal** 39:17

**deemed** 11:24

**deescalation** 30:24 31:2,23 32:3,8

**defendant** 11:20 12:2 13:2,10,13

**defendants** 5:25

**defense** 17:10

**defiant** 25:9

**definition** 42:2

**degree** 29:3

**department** 8:21 13:12 19:7 23:1,5 28:17 30:4,17 31:21 39:17 43:14

**deposition** 5:5,11 6:12, 22 7:1 9:8 12:18

**description** 25:10

**determination** 19:22 20:1

**determine** 24:5

**determined** 22:4

**developing** 34:10

**dignity** 31:23 32:2

**direct** 12:24 30:23 34:3

**directed** 10:5

**disciplinary** 41:7

**disciplined** 43:16,20

**discuss** 35:6

**discussed** 6:21

**discussions** 19:19 41:12

**distracted** 7:20

**district** 5:9,10 14:24

**disturbed** 30:5,7,14 31:22 39:20

**divert** 31:24

**diverting** 32:10

**division** 8:6

**document** 10:25 11:5,7 21:2,19 29:20 33:1 37:4 38:1

**documents** 10:24 32:24

**dog** 8:11

**Dozor** 15:4

**Due** 22:14 37:19

**duly** 6:8

**duties** 8:7 41:24

**duty** 29:10

## E

**Eastern** 5:4,10

**educational** 8:12

**effect** 17:7

**effective** 33:21 35:7

**elements** 42:3

**else's** 27:10 29:15,19

**emergency** 8:9

**emotionally** 30:5,7,13 31:21 39:20

**emphasize** 26:8

**ended** 43:11

**enforcement** 16:14 37:12

**entered** 25:12

**entity** 37:13

**estate** 28:16

et al 5:8 45:8

events 10:11

eventually 40:4

exact 17:11

examined 6:8

exhibit 26:2,4

experience 39:2

extent 31:24

**F**

facts 24:23 25:3 42:5

fair 11:10 34:14

familiar 19:9

feet 40:8

felt 16:18

field 16:12,13 20:23,24 21:17,24

fine 7:24

finished 21:22

Fischer 10:9 20:25 21:13

focus 32:2,4

follow 29:11

footage 9:11,12 17:17

force 32:1

forgot 7:16 21:14

found 39:8

four-by-eight 39:3

front 5:13 15:8 24:8

FTO 21:14,17,18

full 24:16,17

function 34:15,19 35:19

future 31:6

**G**

gain 35:8

gathered 24:23 25:3

Gerard 5:22

gist 20:14

give 7:21 20:9

Gonzales 5:24 6:11,25 7:12,17,20 11:16 13:25 18:4 19:3 22:15 26:1 27:22 39:10 41:25 42:7 44:1,6, 17,25 45:3

good 5:2,21 44:21

graduate 8:14,18

graduated 28:22 33:14, 21

Group 6:2

grow 19:10

guess 8:4 14:5 32:12

guiding 33:25

**H**

happen 10:23

happened 17:18 23:7

hearing 14:24 15:17 16:17,23 17:22 18:9,11,18, 20,23,25 40:6

helped 20:19

high 8:14,16,17 29:3

hired 16:11

Hold 34:14

honest 40:14

honestly 42:10

human 35:2

**I**

idea 14:22

identical 33:18

identification 11:3 12:20 24:14 29:23 33:4 36:18 37:7

identify 5:19 11:5 30:2 33:6 36:20 37:9

illness 31:22

impact 25:20

important 34:19

incident 12:11 36:1 38:6 41:3,8,13

independent 24:19 38:8

information 34:9 38:5

initiated 41:16,20

injury 32:1

instrumental 41:15,19

interactions 39:24

interpersonal 35:7

interpret 38:9,13

introduced 11:2 12:19 24:13 29:22 33:3 36:17 37:6

introduction 34:6

involvement 10:12 16:1

involves 9:4

involving 11:1 39:8

issues 28:20

lthan 13:7 25:13

**J**

January 33:21

John 5:24 11:11

judge 11:11 15:3,22

judicial 15:3

June 8:24,25

justice 14:24 31:25 32:11

**K**

key 25:23 26:4,11

keynote 26:5

Kim 5:17

kind 40:6

knock 21:14

knowing 25:11

knowledge 28:12,14 41:14

**L**

lady 9:5 30:10 34:24

law 5:12 6:2 16:14 28:16

leads 20:16

learned 28:23

learning 34:7,8

leave 23:15

left 19:6 41:10

legal 5:15 36:21 38:2,8,11

licensed 25:12

life 28:19

lines 17:2

Lingo 40:25

listen 34:11

listening 34:15,23 35:9, 10,17,22,23 36:4

live 7:9,10

located 5:13 13:6

locks 13:10,13

long 8:2 36:10

looked 36:15

lot 28:23

low 29:3

LP 6:3

Luke 41:2

**M**

made 10:18 19:22 20:2

maintenance 37:11, 14,19,22

malicious 42:2

**man** 40:18 41:2

**manage** 31:4

**March** 5:4

**marked** 11:1,2 12:18,19 24:13 29:21,22 33:2,3 36:17 37:5,6

**matter** 5:6 9:4 10:12 11:1 15:23 24:11 33:2 45:7

**matters** 6:21

**Meaning** 17:3 26:13

**means** 6:13

**meant** 44:25

**Media** 5:14

**medium** 29:3

**meetings** 41:12

**mental** 31:22

**mine** 27:12

**Misters** 6:2

**moment** 12:22 29:25 33:16 36:14

**MOPEC** 33:11

**municipal** 33:7,25

**N**

**needed** 26:23

**neighborhood** 8:10

**Nevermind** 7:19

**notice** 19:15,17,20,24 20:3 25:14 36:21 37:10,16

**number** 5:11 11:14

**O**

**object** 7:13 18:5 27:23 42:1,8

**Objection** 13:25 22:15 39:10

**observation** 30:12

**observations** 39:24

**observed** 36:4,5

**occasions** 10:14

**Ockley** 5:6,23 9:5 10:12 12:2 13:5 14:12 15:8 16:1, 7,8 17:21 18:3 30:7 32:16 35:24 38:17 39:8,18 41:17, 21 42:15 45:7

**officer** 5:5 6:7 7:13 14:17 15:8 16:13 17:13,16,23 18:2 19:4 20:15,18,24 21:13,17 23:22 29:1,8 33:7,25 34:16,19 36:6,9 37:25 41:24 44:21 45:6

**officers** 16:3,5 17:19 19:20 20:2 21:4 25:4 27:8, 15,19 28:11 29:14 34:22 38:5 41:7 43:19

**Offices** 5:12

**ongoing** 43:13

**opinion** 25:18 28:12 29:9,13,15,19 31:10,12 34:17,20,25 38:19,25

**order** 11:11 12:7,17 13:17,20,22,24 14:6 15:22 17:3 20:8 26:18 27:2,4 28:7 31:3 38:8 40:11

**orders** 14:23 15:3 16:19 17:8,14 22:22 25:19,23 29:11 38:9

**overcome** 35:10

**P**

**P-1** 11:1,2 15:2 26:4 38:13

**P-2** 12:18,19 15:2 38:13

**P-3** 37:5,6

**P-4** 33:2,3

**P-5** 29:21,22

**P-6** 36:15,17,20

**P-8** 24:10,13

**p.m.** 5:3

**PA** 7:25 13:7

**Paller** 5:16

**paragraph** 11:13 12:25 31:17

**part** 22:5,7 32:8 35:12,13, 25

**participate** 34:11

**participated** 18:20

**patrol** 8:6,9

**Pennsylvania** 5:8,10, 14

**people** 42:14

**person** 30:8 31:3 39:18, 20

**person's** 31:5

**personal** 11:22,23 13:8, 14 19:8,11 26:7,9,10,14 39:2

**personally** 16:9 39:4

**persons** 30:5,14 31:22

**physical** 10:12 30:9 38:22

**physically** 14:14,16 21:19 38:19,20

**Pike** 7:25

**place** 5:12 13:23 18:9 25:13 39:7,17

**plaintiff** 5:23 11:25 13:9, 12

**Pleas** 29:11

**plywood** 38:18 39:3

**point** 8:20 23:10,11 33:23 40:3,11

**police** 7:13 8:13,21 13:12 18:1,6,8,18 19:7 22:25 23:5 27:7 28:17 29:7 30:3, 17 31:21 32:20 33:7,25 34:9,16,19,21 38:13 39:17 43:14

**policy** 30:4,17 31:16,20 32:20

**poorly** 31:14

**position** 13:23 14:1 27:15,20

**possibly** 17:15 20:18

38:20 39:1

**potential** 31:6

**practice** 16:14

**prelim** 15:13

**preliminary** 6:21

**preparation** 9:8

**prepare** 6:14

**present** 15:18 18:21 31:9

**presented** 14:23 15:4 30:16 35:23

**Prete** 6:3 40:23

**pretty** 16:4,5 20:14,21,22 24:9 25:16

**previously** 10:25 23:1 29:21 33:1 36:16 37:4

**primary** 16:6

**principal** 33:25

**prior** 11:7 12:18 24:11 43:1,3,4

**privilege** 7:14

**privileged** 25:12

**probable** 9:16,23 10:1,6 11:8 12:8 14:7 20:20 24:11 25:20 41:22 42:20 43:4,5,7

**problem** 18:16

**procedures** 30:4

**proceeding** 41:16,20 42:24 43:11

**program** 16:12 33:8,9, 18

**programs** 34:1

**pronounce** 13:3

**property** 11:21,22,23,24 13:6,8,11,14,15 16:18 19:15,23 20:2,9 22:12,20, 22,23 23:1,6,14 26:6,7,9, 10,14,16,24 28:5,6,16,20 36:23 37:1,2,10,11,14,19, 22 38:2

**prosecution** 42:2

**protocols** 39:7,16

**provide** 13:13

**put** 32:17

**putting** 32:14

---

**Q**

**question** 15:16 28:1 39:11 42:10,16,18

**questions** 44:18,22 45:4

---

**R**

**Radnor** 5:7,25 8:21 10:2, 3 13:12 16:11 19:7 22:25 23:5 27:7 28:16 29:7 30:3 31:20 36:21 37:11,15,22 39:17 43:14 45:8

**read** 6:13 11:14 12:5 13:1 24:8 25:10 31:1,16,19 34:6 35:4

**reading** 42:1

**real** 28:16 40:4

**reason** 19:6 20:5,6 27:14,19 29:17

**reasons** 20:4,7

**recall** 9:21 11:9 13:19,21 14:11 15:7,24,25 16:2,17, 20 17:9,11,13,15,22 18:22, 24 19:14 20:7 21:11,23 22:5 23:17,18,20,24 28:18 30:15,16 33:20 35:13 36:11,12,25 37:24,25 38:3, 4,16 40:17

**receive** 28:15

**received** 28:19

**recollection** 12:6,15 13:16 16:22 22:10 24:19 25:8

**record** 5:3 7:6 11:14 13:1 31:1 44:8,13 45:9

**reduce** 31:5

**refer** 26:2

**referring** 26:2

**refresh** 12:6,15 13:16

**refuse** 12:1

**regard** 41:24

**related** 41:3

**relates** 37:20,21

**relations** 35:2

**relative** 34:23

**relevance** 19:12

**remain** 6:22

**remained** 25:13

**remaining** 11:23

**remember** 9:5 16:7,23 17:1 20:17 24:22 30:10 40:13

**remove** 11:22 13:8,9,14 26:6

**removed** 11:25

**removing** 13:13 22:23 25:25 26:9,10,14,15,24 28:5 38:18

**repeat** 15:1

**repeating** 35:16

**reporter** 5:16 6:5,14

**Reporting** 5:18

**reports** 9:15

**represent** 5:20 6:2

**requested** 23:14 38:12

**resolve** 31:4

**respect** 31:23 32:2

**responder** 16:5

**rest** 25:6

**restate** 14:2 19:25 23:3 39:14

**result** 41:8

**return** 6:18

**review** 6:16 9:7,10 25:19

**reviewed** 16:21 30:22

**reviewing** 38:1

**revised** 21:21

**rights** 28:20

**rigorous** 34:13

**risk** 11:21 13:8 26:6

**Rockwell-glynn** 6:3

**role** 8:5

---

**S**

**S-C-H-R-O-M** 5:22

**scene** 10:10,13 16:3,4,9 20:18 21:7,10,12 30:11 34:22 36:10

**school** 8:14,16,17

**Schrom** 5:12,21,22 6:20 7:3,4,15,19,23 11:4,18 12:21 14:2,4 18:10 19:1,5 22:16 24:18 26:12 28:3 29:24 32:23,25 33:5 36:19 37:8 39:15 42:6,12 43:24 44:2,5,14

**send** 6:15

**sense** 16:12,15

**sentence** 34:7 35:5

**separate** 38:11 40:15

**September** 11:22,24 13:9,11,15

**Sergeant** 10:9 20:25 21:13

**setting** 15:5,22

**Shaffer** 5:13

**share** 28:11

**sheets** 38:18 39:3

**shooter** 8:11

**short** 44:10

**shorter** 19:2

**show** 10:25 12:17 24:17

**showed** 16:3

**showing** 24:10 33:1 37:4

**shows** 17:17 24:16

**sic** 44:17

**sign** 6:13,17

**signal** 37:2

**similar** 33:18

**Simona** 5:6,23 9:4 12:2 13:4,5 14:13 16:17 41:16, 21 45:7

**simplify** 29:4

**sir** 15:13 18:13 22:8 30:1, 18 31:18 32:9 34:2 35:3, 18,20 36:13 37:18 39:6 40:9 44:16,24

**sitting** 40:7

**situation** 39:8

**skills** 34:7,8,10

**sole** 20:5

**South** 13:7 25:13

**spark** 16:22

**speak** 10:21 23:7 27:10, 11,12 29:15,19 38:3 40:18

**specific** 25:8 28:15,20 39:16

**speculation** 26:21

**spell** 7:6

**spot** 18:3

**Spruce** 6:2

**standing** 40:7

**started** 41:20 42:14,23

**state** 5:20 7:5 28:23 38:10 41:18

**States** 5:9

**stating** 17:10

**station** 18:1,6,8,18 40:5

**stature** 38:22

**status** 14:25

**statute** 24:7,8,16,17

**stay** 19:23 20:2

**steering** 32:12

**Steno** 5:17

**stops** 25:16

**Street** 5:14

**study** 30:21 34:7,8,12

**stuff** 22:3 27:11 38:6

**subject** 26:20 28:6,9 30:4

**suggested** 27:16,18

**supervisor** 10:7 22:1

**supposed** 22:13,19 23:14 25:17

**swear** 6:5

**sworn** 6:8

**system** 31:25 32:11,17

---

**T**

**tactics** 31:24

**taking** 5:12 16:5 17:21 18:7 27:15,21 36:2

**talk** 40:10

**talking** 16:6 17:19 18:5 36:1

**talks** 35:21

**telling** 22:22

**testified** 6:9

**testimony** 6:17 14:5 45:6

**tests** 34:13

**thing** 25:23 32:4

**things** 21:25

**thinking** 34:18,23

**thoughts** 27:11

**time** 5:4,18 20:9,10 26:11 27:1,8 43:5 44:10,23

**times** 26:15

**title** 38:2

**today's** 9:8 45:6

**Todd** 6:1

**told** 22:21,25 23:5,13

**Township** 5:7,25 30:3 31:21 36:22 37:11,15,22 45:8

**trained** 33:18

**training** 16:12,13,15 20:23,24 21:17,24 28:15, 20 29:1 33:8,9 34:1 35:12, 13

**transcript** 6:15

**transporting** 18:6

**treat** 31:21

**trespass** 22:9,11 25:9, 14

**turn** 35:1

**typed** 21:19

**typo** 24:4

---

**U**

**Ultimately** 31:4

**understand** 27:4,24 28:1 31:3 39:11 42:6,16,18

**understanding** 23:2 27:9 35:8

**understood** 27:9

**unfettered** 11:21 13:6

**United** 5:9

**unlimited** 11:20 13:5

**unnecessary** 32:1

**unsure** 14:6

**Upper** 7:25 8:17 19:10 43:17

**upset** 39:25

---

**V**

**valuable** 34:9

**venued** 5:8

**version** 33:12

**versus** 5:7 45:8

**video** 18:8,11,17 44:7

**view** 13:23 19:17

**Villanova** 13:7

**violence** 31:7

**volume** 34:6 35:1

---

**W**

**Wendt** 5:17

**West** 5:13 7:25

**whatnot** 16:7 17:20

**Whelan** 15:3

**Whelan's** 11:11

**word** 22:2 30:10 40:13

**wording** 17:11

**words** 17:5

**work** 7:21 8:20,23

**working** 8:2 29:7

**worries** 45:2

**write** 23:25

**writing** 11:8 14:7

**wrong** 38:23

**wrote** 24:21 42:20 43:7

---

**Y**

**years** 8:4 12:9,11,14 20:11 33:13