# Exhibit 43

## Rockwell Glynn Document Production

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

**ASR**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

| | |
|---|---|
| **BUYER(S):** Rockwell Glynn, LP | **SELLER(S):** Simona · OCKLEY<br>416 South Ithan Rd.<br>Villanuve PA 19085 |
| **BUYER'S MAILING ADDRESS:**<br>124 E. State Street<br>Wayne PA 19087 | **SELLER'S MAILING ADDRESS:** |

## PROPERTY

ADDRESS (including postal city) 416 South Ithan Rd.
Villanova , ZIP 19085 ,
in the municipality of Radner township , County of Delaware ,
in the School District of Radnor , in the Commonwealth of Pennsylvania.
Tax ID #(s): and/or
Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date):

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☑ **No Business Relationship (Buyer is not represented by a broker)**

Broker (Company) _____    Licensee(s) (Name) _____

Company License # _____
Company Address _____
Company Phone _____
Company Fax _____

State License # _____
Direct Phone(s) _____
Cell Phone(s) _____
Email _____

N/A

Broker is (check only one):
☐ Buyer Agent (Broker represents Buyer only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) is (check only one):
☐ Buyer Agent (all company licensees represent Buyer)
☐ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☑ **No Business Relationship (Seller is not represented by a broker)**

Broker (Company) _____    Licensee(s) (Name) _____

Company License # _____
Company Address _____
Company Phone _____
Company Fax _____

State License # _____
Direct Phone(s) _____
Cell Phone(s) _____
Email _____

N/A

Broker is (check only one):
☐ Seller Agent (Broker represents Seller only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) is (check only one):
☐ Seller Agent (all company licensees represent Seller)
☐ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

**Buyer Initials:** _____      ASR Page 1 of 14      **Seller Initials:** SO

🏳 Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2019
rev. 6/19; rel. 7/19

RGBSUB000001

1. **By this Agreement**, dated _____October 20 2021_____ ,
   Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (4-14)**
   (A) Purchase Price $ _550,000_
   ( _Five Hundred Fifty thousand dollars and_ _____
   _____ _00/100_ U.S. Dollars), to be paid by Buyer as follows:
   1. Initial Deposit, within _2_ days (5 if not specified) of Execution Date,
      if not included with this Agreement: $ _20,000.00_
   2. Additional Deposit within _____ days of the Execution Date: $ _____
      *THE DEPOSIT SHALL TRANSFER TO SELLER 12/13/2021*
      Remaining balance will be paid at settlement.
   (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.
   (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____
      _Hollister Land Services, LLC_ ) ,
      who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)** _N/A_
   Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (4-14)**
   (A) Settlement Date is _January 31, 2022_ , or before if Buyer and Seller agree.
   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.
   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____
   _____
   (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
      1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
      2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.
   (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
   _____
   (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
   _____
   (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.
   (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
      ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.

5. **DATES/TIME IS OF THE ESSENCE (1-10)**
   (A) Written acceptance of all parties will be on or before: _December 3, 2021_
   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.
   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be initialed and dated.
   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.

Buyer Initials: _____    ASR Page 2 of 14    Seller Initials: _SO_

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Miscellaneous

RGBSUB000002

62     (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
63     and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
64     to all parties, except where restricted by law.

65   **6.  ZONING (4-14)**
66     Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdi-
67     vidable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
68     voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
69     Zoning Classification, as set forth in the local zoning ordinance: _____

70   **7.  FIXTURES AND PERSONAL PROPERTY (1-17)**
71     (A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens,
72     and other items including plumbing; heating; gas fireplace logs; radiator covers; lighting fixtures (including chandeliers and ceil-
73     ing fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars);
74     garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment;
75     unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences;
76     mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware
77     (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners;
78     built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the
79     Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems.
80     Unless stated otherwise, the following items are included in the sale, but not in the Purchase Price: _____
81     _____
82     _____
83     (B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment
84     systems, propane tanks, satellite dishes and security systems): _____
85     (C) EXCLUDED fixtures and items: _____
86     _____

87   **8.  MORTGAGE CONTINGENCY (6-19)**
88     ☒ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties
89     may include an appraisal contingency.
90     ☐ ELECTED.
91     (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| 92 Loan Amount $ _____ | Loan Amount $ _____ |
| 93 | |
| 94 Minimum Term _____ years | Minimum Term _____ years |
| 95 Type of mortgage _____ | Type of mortgage _____ |
| 96 For conventional loans, the Loan-To-Value (LTV) ratio is not to | For conventional loans, the Loan-To-Value (LTV) ratio is not to |
| 97 exceed _____ % | exceed _____ % |
| 98 Mortgage lender _____ | Mortgage lender _____ |
| 99 | |
| 100 Interest rate _____ %; however, Buyer agrees to accept the | Interest rate _____ %; however, Buyer agrees to accept the |
| 101 Interest rate as may be committed by the mortgage lender, not | Interest rate as may be committed by the mortgage lender, not |
| 102 to exceed a maximum interest rate of _____ %. | to exceed a maximum interest rate of _____ %. |
| 103 Discount points, loan origination, loan placement and other fees | Discount points, loan origination, loan placement and other fees |
| 104 charged by the lender as a percentage of the mortgage loan (exclud- | charged by the lender as a percentage of the mortgage loan (exclud- |
| 105 ing any mortgage insurance premiums or VA funding fee) not to | ing any mortgage insurance premiums or VA funding fee) not to |
| 106 exceed _____ % (0% if not specified) of the mortgage loan. | exceed _____ % (0% if not specified) of the mortgage loan. |

107     (B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage applica-
108     tion(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case
109     no later than _____ .
110     1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mort-
111     gage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right
112     to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's
113     mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to
114     make a good faith effort to obtain mortgage financing.
115     2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demon-
116     strating lender's conditional or outright approval of Buyer's mortgage application(s):
117     a. Does not satisfy the terms of Paragraph 8(A), OR
118     b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be
119     received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writ-
120     ing by the mortgage lender(s) within   7   DAYS after the date indicated in Paragraph 8(B),or any extension thereof, other
121     than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employ-
122     ment).
123     3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement,
124     all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer
125     will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this

126   Buyer Initials: _____          **ASR Page 3 of 14**          Seller Initials: SO

RGBFSUB000003

127 Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee
128 for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
129 (3) Appraisal fees and charges paid in advance to mortgage lender(s).
130 (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
131 LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific
132 level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The
133 appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher
134 or lower than the Purchase Price and/or market price of the property.
135 (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
136 the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
137 Buyer will do so at least ___15___ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
138 by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage
139 lender(s) to make the above mortgage term(s) available to Buyer.
140 (E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage appli-
141 cation (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s)
142 identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any,
143 otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.
144 Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan
145 application.
146 (F) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or
147 employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
148 ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
149 reject, or refuse to approve or issue, a mortgage loan commitment.
150 (G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
151 repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within ___5___
152 DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
153 expense.
154     1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
155        agrees to the RELEASE in Paragraph 28 of this Agreement.
156     2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within ___5___
157        DAYS, notify Seller of Buyer's choice to:
158         a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will
159           not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the Pre-
160           Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
161         b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
162           Paragraph 26 of this Agreement.
163        If Buyer fails to respond within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice to
164        Seller within that time, Buyer will accept the Property, make the required repairs/improvements at Buyer's expense and agree
165        to the RELEASE in Paragraph 28 of this Agreement.

166                                         **FHA/VA, IF APPLICABLE**
167 (H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the
168 purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless
169 Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing
170 Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of
171 not less than $ _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege
172 and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The
173 appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will
174 insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price
175 and condition of the Property are acceptable.
176 **Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing
177 Administration Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department,
178 makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not
179 more than two years, or both."
180 (I) U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement
181    ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
182       getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
183       FHA will not perform a home inspection nor guarantee the price or condition of the Property.
184    ☐ Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(B))
185       and Buyer's acceptance of additional required repairs as determined by the lender.
186 (J) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for pur-
187 chase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in con-
188 nection with this transaction is attached to this Agreement.

189 Buyer Initials: _____                ASR Page 4 of 14                Seller Initials: SO

RGBSUB000004

190 9. **CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**
191 If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the
192 Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change
193 in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation; entry of a judgment against
194 Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to
195 purchase.

196 10. **SELLER REPRESENTATIONS (4-14)**
197 (A) Status of Water
198 Seller represents that the Property is served by:
199 ☑ Public Water ☐ Community Water ☐ On-site Water ☐ None ☐ _____
200 (B) Status of Sewer
201 1. Seller represents that the Property is served by:
202 ☑ Public Sewer ☐ Community Sewage Disposal System ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
203 ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1) ☐ Holding Tank (see Sewage Notice 3)
204 ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
205 ☐ None (see Sewage Notice 1) ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
206 ☐ _____

207 2. Notices Pursuant to the Pennsylvania Sewage Facilities Act
208 **Notice 1:** There is no currently existing community sewage system available for the subject property. Section 7 of the
209 Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,
210 repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a
211 permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with
212 administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The
213 local agency charged with administering the Act will be the municipality where the Property is located or that municipality
214 working cooperatively with others.
215 **Notice 2:** This Property is serviced by an individual sewage system installed under the ten-acre permit exemption pro-
216 visions of Section 7 of the Pennsylvania Sewage Facilities Act. (Section 7 provides that a permit may not be required before
217 installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system
218 where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site test-
219 ing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system
220 at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs
221 as a result.
222 **Notice 3:** This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water
223 carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.
224 Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank
225 from the date of its installation or December 14, 1995, whichever is later.
226 **Notice 4:** An individual sewage system has been installed at an isolation distance from a well that is less than the dis-
227 tance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances
228 provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water
229 supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hori-
230 zontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the
231 absorption area shall be 100 feet.
232 **Notice 5:** This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage
233 facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the
234 municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations
235 promulgated thereunder.
236 (C) Historic Preservation
237 Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
238 _____

239 (D) Land Use Restrictions
240 1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the
241 following Act(s) (see Notices Regarding Land Use Restrictions below):
242 ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. §901 et seq.)
243 ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
244 ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
245 ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
246 ☐ Other _____
247 2. Notices Regarding Land Use Restrictions
248 a. **Pennsylvania Right-To-Farm Act:** The property you are buying maybe located in an area where agricultural operations
249 take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits
250 circumstances where normal agricultural operations may be subject to nuisance law suits or restrictive ordinances.

251 Buyer Initials: _____ ASR Page 5 of 14 Seller Initials: SO

RGBSUB000005

252       b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assess-
253       ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution
254       of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that
255       may result in the future as a result of any change in use of the Property or the land from which it is being separated.
256       c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water
257       supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open
258       space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that
259       the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific
260       termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply
261       from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the
262       Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.
263       d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are
264       environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the
265       land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer
266       has been advised of the need to determine the restrictions on development of the Property and the term of any contract now
267       in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.
268    **(E) Real Estate Seller Disclosure Law**
269       Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real
270       estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential
271       real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of
272       an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING**
273       **UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures
274       regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale
275       of condominium and cooperative interests.
276    **(F) Public and/or Private Assessments**
277       1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner asso-
278       ciation assessments have been made against the Property which remain unpaid, and that no notice by any government or public
279       authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to vio-
280       lations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition
281       that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____
282
283       2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____
284
285    **(G) Highway Occupancy Permit**
286       Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.
287  **11. WAIVER OF CONTINGENCIES (9-05)**
288       If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions,
289       boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise
290       any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the
291       Property and agrees to the RELEASE in Paragraph 28 of this Agreement.
292  **12. BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)**
293    **(A) Rights and Responsibilities**
294       1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to
295       surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate
296       licensee(s) may attend any inspections.
297       2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the
298       condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived
299       by any other provision of this Agreement.
300       3. Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.
301       4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for
302       Buyer.
303       5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared.
304       Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.
305    **(B)** Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as
306       "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly
307       licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same
308       inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for
309       Notices Regarding Property and Environmental Inspections)
310    **(C)** For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any
311       Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit
312       a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

RGBSUB000006

| 314 | | **Home/Property Inspections and Environmental Hazards (mold, etc.)** | |
|---|---|---|---|
| 315 | Elected | Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior doors; | Waived |
| 316 | _____ | exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; electrical | |

314 **Home/Property Inspections and Environmental Hazards (mold, etc.)**
315 Elected     Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior doors;     Waived
316 _____ exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; electrical
317 systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetration; elec-
318 tromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environmental
319 hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer may
320 select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the home
321 inspection must be performed by a full member in good standing of a national home inspection association, or a per-
322 son supervised by a full member of a national home inspection association, in accordance with the ethical standards
323 and code of conduct or practice of that association, or by a properly licensed or registered engineer or architect. (See
324 Notices Regarding Property & Environmental Inspections)
325 **Wood Infestation**
326 Elected     Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as     Waived
327 _____ a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provid-
328 ed by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort-
329 gage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be
330 limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection
331 reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pes-
332 ticide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer
333 may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to
334 structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.
335 **Deeds, Restrictions and Zoning**
336 Elected     Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi-     Waived
337 _____ nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the
338 Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking)
339 is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____
340
341 **Water Service**
342 Elected     Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise     Waived
343 _____ qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will
344 locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
345 condition, at Seller's expense, prior to settlement.
346 **Radon**
347 Elected     Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency     Waived
348 _____ (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working lev-
349 els or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal
350 decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the
351 risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon
352 problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests,
353 mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental
354 Protection. Information about radon and about certified testing or mitigation firms is available through Department
355 of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O.
356 Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov
357 **On-lot Sewage (If Applicable)**
358 Elected     Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic     Waived
359 _____ load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's
360 expense, will locate, provide access to, and empty the individual on-lot sewage disposal system and provide all water
361 needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense, prior
362 to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection
363 Contingency.
364 **Property and Flood Insurance**
365 Elected     Buyer may determine the insurability of the Property by making application for property and casualty insurance for     Waived
366 _____ the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with
367 the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer
368 may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior
369 to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insur-
370 ance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood
371 insurance agents regarding the need for flood insurance and possible premium increases.
372 **Property Boundaries**
373 Elected     Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal     Waived
374 _____ description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property
375 surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural
376 or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen-
377 tations of size of property are approximations only and may be inaccurate.

378     Buyer Initials: _____       ASR Page 7 of 14       Seller Initials: SO

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     Miscellaneous

RGBSUB000007

RGE000008

379      **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**

380   Elected     Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a   **Waived**

381     risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint haz-

382     ards. Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard

383     Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved

384     lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a sep-

385     arate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any

386     lead-based paint records regarding the Property.

387     **Other**

388   Elected     _____   **Waived**

389     _____

390   The inspection selected above do not apply to the following existing conditions and/or items: _____

391   _____

392   _____

393     (D) **Notices Regarding Property & Environmental Inspections**

394      1.   **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating

395       the surface of a structure where it may cause mold and damage to the building's frame.

396      2.   **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.

397      3.   **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal

398       of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsi-

399       bility to dispose of them properly.

400      4.   **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer

401       to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop

402       the property would be affected or denied because of its location in a wetlands area.

403      5.   **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,

404       pollen and viruses) have been associated with allergic responses.

405      6.   **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be

406       directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.

407       20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,

408       Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health

409       and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by

410       calling 1-877-724-3258.

411   **13. INSPECTION CONTINGENCY (10-18)**

412     (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected

413     in Paragraph 12(C).

414     (B) Within the stated **Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in

415     Paragraph 13(C):

416      1.   If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer **WILL present all Report(s) in**

417       **their entirely to Seller,** accept the Property with the information stated in the Report(s) and agree to the RELEASE in

418       Paragraph 28 of this Agreement, OR

419      2.   If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer **WILL present all Report(s) in**

420       **their entirely to Seller and terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer

421       according to the terms of Paragraph 26 of this Agreement, OR

422      3.   If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer **WILL present all Report(s) in**

423       **their entirely to Seller with a Written Corrective Proposal ("Proposal")** listing corrections and/or credits desired by

424       Buyer.

425       The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the

426       corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the cor-

427       rections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or govern-

428       mental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.

429      a.   Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation

430       Period. During the Negotiation Period:

431       (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR

432       (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improve-

433       ments to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.

434       If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable writ-

435       ten agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the

436       Negotiation Period ends.

437      b.   If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within

438       _____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:

439       (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this

440       Agreement, OR

441       (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms

442       of Paragraph 26 of this Agreement.

443   Buyer Initials: _____       **ASR Page 8 of 14**       Seller Initials: SO

444      **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this**
445      **Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property**
446      **and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the**
447      **Negotiation Period.**

448   (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____
449      days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the
450      name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected com-
451      pletion date for corrective measures. Within \_\_\_5\_\_ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the
452      stated time, Buyer will notify Seller in writing of Buyer's choice to:
453      1.   Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
454      2.   Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
455         Paragraph 26 of this Agreement, OR
456      3.   Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any
457         mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required
458         by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property
459         given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the
460         defects, Buyer may, within \_\_\_5\_\_ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit
461         monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
462      **If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice to**
463      **Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.**

464 **14. TITLES, SURVEYS AND COSTS (9-18)**
465   (A) Within _____ days (7 if not specified) from the Execution Date of the Agreement, Buyer will order from a reputable title company
466      for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report
467      to Seller.
468   (B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from
469      a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies
470      come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options. Buyer
471      agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's
472      title insurance policy.
473   (C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
474      (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
475      and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
476   (D) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal descrip-
477      tion of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or
478      required by the mortgage lender will be obtained and paid for by Buyer.
479   (E) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular
480      rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; his-
481      toric preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the
482      ground; easements of record; and privileges or rights of public service companies, if any.
483   (F) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the
484      Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but
485      is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against
486      Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient
487      to satisfy all liens and encumbrances against the Property.
488   (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as
489      specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to
490      Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs
491      incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items spec-
492      ified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).
493   (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
494      about the status of those rights unless indicated elsewhere in this Agreement.
495      ☐ **Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**
496   (I)  **COAL NOTICE (Where Applicable)**
497      THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH
498      THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL
499      RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE,
500      BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July
501      17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from
502      coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private
503      contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with
504      the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees
505      to sign the deed from Seller which deed will contain the aforesaid provision.
506   (J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:
507

508   Buyer Initials: _____         ASR Page 9 of 14         Seller Initials: SO

RGBSUB000009

(K) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____

☐ Private Transfer Fee Addendum (PAR Form)

2. Notices Regarding Private Transfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

## 15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)

(A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are received after Seller has signed this Agreement and before settlement, Seller will within ___5___ DAYS of receiving the notices and/or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:

  1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR

  2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within ___5___ DAYS that Buyer will:

    a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in Paragraph 28 of this Agreement, OR

    b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

    **If Buyer fails to respond within the time stated in Paragraph 15(A)(2) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.**

(B) If required by law, within ___30___ DAYS from the Execution Date of this Agreement, but in no case later than ___15___ DAYS prior to Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.

  1. Within ___5___ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy of the notice to Buyer and notify Buyer in writing that Seller will:

    a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR

    b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will notify Seller in writing within ___5___ DAYS that Buyer will:

      (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph 28 of this Agreement and make the repairs at Buyer's expense after settlement, OR

      (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

    **If Buyer fails to respond within the time stated in Paragraph 15(B)(1)(b) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the notice provided by the municipality.**

  3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller will perform all repairs/improvements as required by the notice at Seller's expense. **Paragraph 15(B)(3) will survive settlement.**

## 16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)

(A) Property is NOT a Condominium or part of a Planned Community unless checked below.

☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions set forth in Section 5407(a) of the Act.

(B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:**

If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant), Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    Miscellaneous

RGBSUB000010

**(C) THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:**

1. Within ___15___ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.

2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the association in the Certificate.

3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender.

**17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**

In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a property at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the property and result in a change in property tax.

**18. MAINTENANCE AND RISK OF LOSS (1-14)**

(A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property) specifically listed in this Agreement in its present condition, normal wear and tear excepted.

(B) If any part of the Property included in the sale fails before settlement, Seller will:

1. Repair or replace that part of the Property before settlement, OR

2. Provide prompt written notice to Buyer of Seller's decision to:
   a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender, if any, OR
   b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed part of the Property.

3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, or If Seller fails to notify Buyer of Seller's choice, Buyer will notify Seller in writing within ___5___ DAYS or before Settlement Date, whichever is earlier, that Buyer will:
   a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
   b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

   If Buyer fails to respond within the time stated in Paragraph 18(B)(3) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.

(C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not replaced prior to settlement, Buyer will:

1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR

2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

**19. HOME WARRANTIES (1-10)**

At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any preexisting defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

**20. RECORDING (9-05)**

This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

**21. ASSIGNMENT (1-10)**

This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

**22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**

(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

(B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

Buyer Initials: _____    ASR Page 11 of 14    Seller Initials: SO

RGBSUB000011

638  **23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
639  The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
640  Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
641  real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
642  chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
643  to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. tax-
644  ation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer
645  you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold,
646  you may be held liable for the tax.

647  **24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
648  The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
649  for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the municipal
650  police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular prop-
651  erty, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.

652  **25. REPRESENTATIONS (1-10)**
653  (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their
654  licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this
655  Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations,
656  covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This
657  Agreement will not be altered, amended, changed or modified except in writing executed by the parties.
658  (B) Unless otherwise stated in this Agreement, **Buyer has inspected the Property (including fixtures and any personal property**
659  **specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property**
660  **IN ITS PRESENT CONDITION**, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
661  Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the struc-
662  tural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of con-
663  ditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems con-
664  tained therein.
665  (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
666  (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

667  **26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (4-14)**
668  (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
669  deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
670  Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.
671  (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
672  determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
673      1.  If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
674          agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
675      2.  If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
676          Broker how to distribute some or all of the deposit monies.
677      3.  According to the terms of a final order of court.
678      4.  According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
679          deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))
680  (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not
681      specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
682      Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
683      request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the
684      subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of Buyer's request
685      for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer
686      and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of the deposit monies prior to
687      any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based
688      upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights
689      to pursue litigation even after a distribution is made.
690  (D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
691      law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
692      monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.
693  (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
694      1.  Fail to make any additional payments as specified in Paragraph 2, OR
695      2.  Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's
696          legal or financial status, OR
697      3.  Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
698  (F) Unless otherwise checked in Paragraph 26(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
699      1.  On account of purchase price, OR
700      2.  As monies to be applied to Seller's damages, OR
701      3.  As liquidated damages for such default.

702  Buyer Initials: _____     ASR Page 12 of 14     Seller Initials: SO

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     Miscellaneous

RGBASUB000012

(G) ☒ SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.

(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

(I) Brokers and licensees are not responsible for unpaid deposits.

**27. MEDIATION (1-10)**

Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

**28. RELEASE (9-05)**

Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

**29. REAL ESTATE RECOVERY FUND (4-18)**

A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

**30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**

(A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s) and Closing Disclosure(s) upon receipt.

(B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, except for documents required to be delivered pursuant to Paragraph 16. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

**31. HEADINGS (4-14)**

The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

**32. SPECIAL CLAUSES (1-10)**

(A) The following are attached to and made part of this Agreement if checked:

☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
☐ Appraisal Contingency Addendum (PAR Form ACA)
☐ Short Sale Addendum (PAR Form SHS)
☐ _____
☐ _____

(B) Additional Terms:

Buyer Initials: _____

Seller Initials: SO

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com    Miscellaneous

RGB-SUB000013

768     Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

769     This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
770     together shall constitute one and the same Agreement of the Parties.

771     **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised
772     to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

773     Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all
774     parties, constitutes acceptance by the parties.

775     _____   Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

776     _____   Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

777     _____   Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
778     before signing this Agreement.

779     _____   Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
780     received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

781     BUYER _____    DATE \_\_11/29/2021\_\_

782     BUYER _____    DATE _____

783     BUYER _____    DATE _____

784     Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
785     Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

786     SELLER _____    DATE \_\_11.19.2021\_\_

787     SELLER _____    DATE _____

788     SELLER _____    DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com    Miscellaneous

SO

RGBSUB000014

**416 South Ithan Road, Villanova, PA 19085**
**AMENDMENT TO AGREEMENT OF SALE**

THIS AMENDMENT TO AGREEMENT OF SALE (the "Amendment") is made and entered into this 17th day of April, 2022 (the "Amendment Date"), by and between SIMONA OCKLEY (the "Seller"), and ROCKWELL GLYNN, LP (the "Buyer").

### BACKGROUND

1.  Seller and Buyer are parties to a certain Agreement of Sale ("AOS") for Real Estate having an effective date of October 20, 2021, which AOS provides the sale and purchase of 416 South Ithan Road, Villanova, Township of Radnor, County of Delaware, and Commonwealth of Pennsylvania; and

2.  Seller and Buyer do hereby desire to amend the AOS as set forth herein.

### AGREEMENT

AND NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, Seller and Buyer agree as follows:

3.  Section 4. (SETTLEMENT AND POSSESSION) of the AOS, Part (A), settlement date is hereby extended from January 31, 2022, to June 10, 2022.

IN WITNESS THEREOF, this Amendment to the Agreement of Sale of Real Estate has been executed by the Parties hereto as of the Amendment Date set forth above. This Amendment may be executed in counterparts.

SELLER:                                                    BUYER:



SIMONA OCKLEY                                    BY: Gregory Lingo, Manager
                                                              ROCKWELL GLYNN, LP

RGBFGLIB000015

## DO NOT DETACH



101CC163-0017D

Instrument Number: 2022039048
Volume/Page: RECORD BK 6843 PG 5515
Recorded Date: 07/15/2022 4:05:32 PM

**Robert A. Auclair, Esq.**
Delaware County Recorder of Deeds
Government Center, Room 107
201 W. Front Street
Media, PA 19063
610-891-4152

| | |
|---|---|
| Transaction Number: 933109<br>Collected By: kiddk<br>Document Type: DEED<br>Document Page Count: : 3 | Return To (Simplifile):<br>Land Consultants LLC<br>126 E STATE ST<br>MEDIA, PA 19063-3431 |
| Parcel ID: 36-04-02336-00 | |

| Fees: | | Instrument Number: 2022039048 |
|---|---|---|
| RECORDING FEES: | $37.50 | Volume/Page: RECORD BK 6843 PG 5515 |
| AFFORDABLE HOUSING FEE: | $18.00 | Recorded Date: 07/15/2022 4:05:32 PM |
| COUNTY IMPROVEMENT FUND: | $5.00 | |
| ACT 152 FEE: | $15.00 | |
| JCS/ATJ FEE: | $40.25 | |
| STATE RTT: | $5,500.00 | |
| RADNOR TOWNSHIP: | $5,500.00 | |
| RADNOR TOWNSHIP SD – RADNOR TOWNSHIP: | $2,750.00 | |
| WRIT TAX: | $0.50 | |
| **Total Fees:** | **$13,866.25** | |
| **Amount Paid:** | **$13,866.25** | |
| **Amount Due:** | **$0.00** | |

OFFICIAL RECORDING COVER PAGE
## DO NOT DETACH
THIS PAGE IS NOW PART OF THIS RECORDED DOCUMENT
NOTE: If the document data differs from this cover sheet, please first check the document on our website to ensure it has
been corrected. The document data always supersedes the cover page.
If an error on the cover page appears on our website after review please let our office know.
COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL
INFORMATION.

**PREPARED BY:**                 **Folio Number 36-04-02336-00**

Kenneth C. Russell, Esq.
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006

**RECORD AND RETURN TO:**

Kenneth C. Russell, Esq.
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006

# DEED

THIS INDENTURE made the _14_ day of _December_, 2021, between SIMONA NEGUT OCKLEY a/k/a SIMONA OCKLEY NEGUT (hereinafter called the "Grantor"), and ROCKWELL GLYNN, L.P. (hereinafter called the "Grantee").

**WITNESSETH**, that the said Grantor for and in consideration of the sum of Five Hundred and Fifty Thousand Dollars ($550,000.00) lawful money of the United States of America, paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, do grant, bargain, sell, release, and confirm unto the said Grantees, as sole owners, their heirs and assigns.

**ALL THAT CERTAIN** lot or piece of ground, situate in the Township of Radnor, County of Delaware and State of Pennsylvania, bounded and described according to a Map of Property of Claymont Development Company, by M.R. and J.B. Yerkes, Civil Engineers, Bryn Mawr, Pennsylvania, August 26, 1952 and revisited as to this lot January 21, 1953 as follows to wit:

Beginning at a point in the middle of Ithan Avenue (fifty feet wide) at the distance of Two hundred sixty-two feet measured Northeastwardly along the middle line of said Ithan Avenue from its intersection with the middle line of Mill Road ( fifty feet wide); thence extending along the middle line of said Ithan Avenue, North sixty-seven degrees, thirty-four minutes East, Two hundred thirty feet to a point; hence leaving said Ithan Avenue and extending North twenty-two degrees, twenty-six minutes West, Two hundred thirty feet to a point; thence extending South sixty-seven degrees, thirty four minutes West, Two hundred thirty feet to a point; thence extending South twenty two degrees, twenty six minutes East, Two hundred fifteen feet to the first mentioned point and place of beginning. Being Lot #16 on the above-mentioned plan. CONTAINING One Acre and One hundred thirty-five one-thousandths. (1.135) Acres.

**ALSO ALL THAT CERTAIN** strip or piece of ground, situate in the Township of Radnor, County of Delaware and State of Pennsylvania, bounded and described according to a Map of property of Claymont Development Company, made by M.R. and J.B. Yerkes, Civil Engineers, Bryn Mawr, Pennsylvania on August 26, 1952 and las revised as to this piece on July 13, 1955 as follows to wit:

**BEGINNING** at an interior point, which point is at the distance of Two hundred fifteen feet measured North twenty-two degrees, twenty-six minutes West, from a point in the center line of Ithan Avenue, which last mentioned point is at the distance of Two hundred sixty-two feet measured North sixty seven degrees, thirty four minutes East along the center line of Ithan Avenue from its intersection with the center line of Mill Road; thence from said point of beginning extending North Twenty two degrees, twenty six minutes West, Ten feet to a point; thence extending North seventy degrees, three minutes East, Two hundred thirty feet and twenty-two on hundredths feet to a point; thence extending South sixty seven degrees, thirty four minutes West, Two hundred thirty feet to the place of beginning: CONTAINING Twenty-six on thousandths (.026) Acres.

**BEING** the same premises which Reginald F. Ockley Jr. and Margaret E Ockley by Deed dated September 9, 1976 and recorded in the Office of the Recorder of Deeds, in and for the County of Delaware, in Deed Book 2591; Page 851 granted and conveyed unto Margaret E. Ockley, Individually in fee.

And the said Margaret E. Ockley died on January 31, 2002 leaving a Will probated and registered at Delaware County of Will No. 23-2002-0968, wherein she appointed Reginald F Ockley Jr as Executor, to whom Letters Testamentary were granted on April 19, 2002.

And the said Reginald F. Ockley Jr. did pass from this life on May 18, 2005.

Together with all and singular the buildings, Improvements ways, waters, water courses, driveways, rights, liberties, hereditaments and appurtenances whatsoever thereunto belonging or in any wish appertaining and the reversions and remainders, rents, issues and profits thereof and all the estate right title, interest, property claim and demand whatsoever of them, the grantor in law, equity, or otherwise howsoever of in and to the same and every part thereof.

**TO HAVE AND TO HOLD** the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, their heirs and assigns, to and for the only proper use and behoof of the said Grantee, their heirs and assigns, forever.

**AND** the said Grantor, her heirs, executors and administrators, does, by these presents, covenant, grant and agree, to and with the said Grantee, their heirs and assigns, that the said Grantor, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, their heirs and assigns, against the said Grantor, and against all and every other person and persons whosoever lawfully claiming or to claim the same or any part thereof, shall and will WARRANT and Forever DEFEND.

IN WITNESS WHEREOF, the said Grantors has caused these presents to be duly executed, the _14_ day of _December_ ~~2022~~. _2021_

Grantor:

SIMONA NEGUT OCKLEY

Grantee:

ROCKWELL GLYNN, L.P.
BY: _Gregory B. Lingo_
Manager

Commonwealth of Pennsylvania     :
County of _Delaware_     : SS
    :

Commonwealth of Pennsylvania - Notary Seal
ELIZABETH R. HURTUBISE, Notary Public
Delaware County
My Commission Expires February 26, 2025
Commission Number 1394107

On this the _14_ day of _December_ 2022, before me, the undersigned officer, personally appeared _Gregory B. Lingo_ on behalf of ROCKWELL GLYNN, L.P., who acknowledged themself to be the person/s whose name/s are subscribed in the foregoing document, that the foregoing instrument was executed for the purposes therein contained.

Notary Public

Commonwealth of Pennsylvania     :
County of _Delaware_     : SS
    :

On this the _14_ day of _December_ 2022, before me, the undersigned officer, personally appeared SIMONA NEGUT OCKLEY, who acknowledged themself to be the person/s whose name/s are subscribed in the foregoing document, that the foregoing instrument was executed for the purposes therein contained.

Notary Public

The precise residence and the complete post office address of the above-named Grantees is:
_124 E. State St._
_Media, PA 19063_

Commonwealth of Pennsylvania - Notary Seal
ELIZABETH R. HURTUBISE, Notary Public
Delaware County
My Commission Expires February 26, 2025
Commission Number 1394107

RGBSUB000019



# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

**ASR**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

| PARTIES | |
|---|---|
| **BUYER(S):** Jeffrey Brydzinski | **SELLER(S):** Rockwell Glynn, LP |
| **BUYER'S MAILING ADDRESS:**<br>795 E. Lancaster Avenue, Suite 200, Villanova, PA 19085 | **SELLER'S MAILING ADDRESS:**<br>126 E State St, Media, PA 19063-3431 |

## PROPERTY

ADDRESS (including postal city) **416 S Ithan Ave**

               **Villanova**     ZIP **19085-1427** ,

in the municipality of       **Radnor Township**      , County of **Delaware** ,

in the School District of        **Radnor**        , in the Commonwealth of Pennsylvania.

Tax ID #(s): **36-04-02336-00**                        and/or

Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): _____

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

[X] **No Business Relationship (Buyer is not represented by a broker)**

| | |
|---|---|
| Broker (Company) _____ | Licensee(s) (Name) _____ |
| Company License # _____<br>Company Address _____<br>_____ | State License # _____<br>Direct Phone(s) _____<br>Cell Phone(s) _____ |
| Company Phone _____<br>Company Fax _____ | Email _____<br>Licensee(s) is (check only one): |
| Broker is (check only one):<br>☐ Buyer Agent (Broker represents Buyer only)<br>☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Buyer Agent (all company licensees represent Buyer)<br>☐ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer)<br>☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

[X] **No Business Relationship (Seller is not represented by a broker)**

| | |
|---|---|
| Broker (Company) _____ | Licensee(s) (Name) _____ |
| Company License # _____<br>Company Address _____ | State License # _____<br>Direct Phone(s) _____<br>Cell Phone(s) _____ |
| Company Phone _____<br>Company Fax _____ | Email _____<br>Licensee(s) is (check only one): |
| Broker is (check only one):<br>☐ Seller Agent (Broker represents Seller only)<br>☐ Dual Agent (See Dual and/or Designated Agent box below) | ☐ Seller Agent (all company licensees represent Seller)<br>☐ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller)<br>☐ Dual Agent (See Dual and/or Designated Agent box below) |

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

**By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**

**Buyer Initials:** _____      **ASR Page 1 of 14**      **Seller Initials:** _____

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2020
rev. 5/20; rel. 7/20

Valley Forge Real Estate Group, LLC, 124 E. State Street Media PA 19063    Phone: 4844454310   Fax    416 S Ithan Ave
Christopher Hogan    Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

RGBRGLB000020

1. **By this Agreement**, dated July 13, 2022

Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (4-14)**

   (A) Purchase Price $ 550,000.00
       (Five Hundred Fifty Thousand

       _____ U.S. Dollars), to be paid by Buyer as follows:

       1. Initial Deposit, within _____ days (5 if not specified) of Execution Date,
          if not included with this Agreement:                                          $ _____
       2. Additional Deposit within _____ days of the Execution Date:                   $ _____
       3. _____                                     $ _____

       Remaining balance will be paid at settlement.

   (B) **All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.**

   (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____

       _____ } .

       who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)**

   Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (4-14)**

   (A) Settlement Date is _____ July 19, 2022 _____ , or before if Buyer and Seller agree.

   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.

   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____

   (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
       1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
       2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.

   (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____

   (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____

   (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.

   (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.

       ☐ **Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.**

5. **DATES/TIME IS OF THE ESSENCE (1-10)**

   (A) Written acceptance of all parties will be on or before: _____

   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.

   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be initialed and dated.**

   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.

   (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

Buyer Initials: _____          ASR Page 2 of 14          Seller Initials: _____
                                                          416 S Ithan Ave

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

RGBSUB000021

**6. ZONING (4-14)**

Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

Zoning Classification, as set forth in the local zoning ordinance: _____

**7. FIXTURES AND PERSONAL PROPERTY (1-20)**

(A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be regarded as part of the Property and therefore included in a sale. Buyer and Seller are encouraged to be specific when negotiating what items will be included or excluded in this sale.

(B) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; gas fireplace logs; radiator covers; hardwired security systems; thermostats; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, solar panels, windmills, water treatment systems, propane tanks and satellite dishes. Unless stated otherwise, the following items are included in the sale, at no additional cost: _____
_____
_____

(C) The following items are not owned by Seller and may be subject to a lease or other financing agreement. Contact the provider/vendor for more information (e.g., solar panels, windmills, water treatment systems, propane tanks and satellite dishes): _____
_____

(D) EXCLUDED fixtures and items: _____
_____

**8. MORTGAGE CONTINGENCY (6-19)**

☒ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.

☐ ELECTED.

(A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ _____ | Loan Amount $ _____ |
| Minimum Term _____ years | Minimum Term _____ years |
| Type of mortgage _____ | Type of mortgage _____ |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender _____ | Mortgage lender _____ |
| Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of _____ %. | Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

(B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than _____ .

   1. If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing.

   2. Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demonstrating lender's conditional or outright approval of Buyer's mortgage application(s):
      a. Does not satisfy the terms of Paragraph 8(A), OR
      b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within ___7___ DAYS after the date indicated in Paragraph 8(B), or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).

   3. If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement,

Buyer Initials: _____    ASR Page 3 of 14    Seller Initials: _____

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

416 S Ithan Ave

RGBFSUB000022

129 all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer
130 will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this
131 Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee
132 for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
133 (3) Appraisal fees and charges paid in advance to mortgage lender(s).

134 (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
135 LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a spe-
136 cific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan.
137 The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be
138 higher or lower than the Purchase Price and/or market price of the property.

139 (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
140 the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
141 Buyer will do so at least ____15__ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
142 by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage
143 lender(s) to make the above mortgage term(s) available to Buyer.

144 (E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage appli-
145 cation (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s)
146 identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any,
147 otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.
148 Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan
149 application.

150 (F) **Buyer will be in default of this Agreement if Buyer furnishes false information** to anyone concerning Buyer's financial and/
151 or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
152 ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
153 reject, or refuse to approve or issue, a mortgage loan commitment.

154 (G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
155 repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within ____5___
156 DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
157 expense.

158    1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
159        agrees to the RELEASE in Paragraph 28 of this Agreement.

160    2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within ____5___
161        DAYS, notify Seller of Buyer's choice to:

162        a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
163           will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the
164           Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
165        b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
166           Paragraph 26 of this Agreement.

167        **If Buyer fails to respond** within the time stated in Paragraph 8(G)(2) or fails to terminate this Agreement by written notice
168        to Seller within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and
169        agree to the RELEASE in Paragraph 28 of this Agreement.

---

170 **FHA/VA, IF APPLICABLE**

171 (H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
172 chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
173 has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
174 Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
175 $_____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
176 proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
177 is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
178 not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
179 Property are acceptable.

180 **Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration
181 Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters
182 or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years,
183 or both."

184 (I) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement**
185    ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
186       getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
187       FHA will not perform a home inspection nor guarantee the price or condition of the Property.
188    ☐ Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(B))
189       and Buyer's acceptance of additional required repairs as required by the lender.

190 (J) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for
191 purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in
192 connection with this transaction is attached to this Agreement.

193 Buyer Initials: _____  ASR Page 4 of 14  Seller Initials: _____
Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201  www.lwolf.com  416 S Ithan Ave

RGBKGLUB000023

194  **9.  CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**

195  If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the

196  Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change

197  in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation; entry of a judgment against

198  Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to**

199  **purchase.**

200  **10.  SELLER REPRESENTATIONS (1-20)**

201    (A) **Status of Water**

202      Seller represents that the Property is served by:

203      ☒ Public Water  ☐ Community Water  ☐ On-site Water  ☐ None  ☐ _____

204    (B) **Status of Sewer**

205      1.  Seller represents that the Property is served by:

206        ☒ Public Sewer  ☐ Community Sewage Disposal System  ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)

207        ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)  ☐ Holding Tank (see Sewage Notice 3)

208        ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)

209        ☐ None (see Sewage Notice 1)  ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)

210        ☐

211      2.  **Notices Pursuant to the Pennsylvania Sewage Facilities Act**

212        **Notice 1: There is no currently existing community sewage system available for the subject property.** Section 7 of the

213        Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter,

214        repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a

215        permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with

216        administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The

217        local agency charged with administering the Act will be the municipality where the Property is located or that municipality

218        working cooperatively with others.

219        **Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption**

220        **provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required

221        before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage

222        system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and

223        site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by

224        the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance

225        which occurs as a result.

226        **Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a**

227        **water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another**

228        **site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the

229        tank from the date of its installation or December 14, 1995, whichever is later.

230        **Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the dis-**

231        **tance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances

232        provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water

233        supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hor-

234        izontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the

235        absorption area shall be 100 feet.

236        **Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage

237        facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until

238        the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations

239        promulgated thereunder.

240    (C) **Historic Preservation**

241      Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____

242

243    (D) **Land Use Restrictions**

244      1.  ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the

245        following Act(s) (see Notices Regarding Land Use Restrictions below):

246        ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. §901 et seq.)

247        ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)

248        ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)

249        ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)

250        ☐ Other _____

251      2.  **Notices Regarding Land Use Restrictions**

252        a.  **Pennsylvania Right-To-Farm Act:** The property you are buying may be located in an area where agricultural operations

253          take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits

254          circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.

255        b.  **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assess-

256          ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution

257          of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that

258          may result in the future as a result of any change in use of the Property or the land from which it is being separated.

259  **Buyer Initials:** _____      ASR Page 5 of 14      **Seller Initials:** _____

RGBSUB000024

c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

**(E) Real Estate Seller Disclosure Law**

Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

**(F) Public and/or Private Assessments**

1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____

2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____

**(G) Highway Occupancy Permit**

Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

**(H) Internet of Things (IoT) Devices**

1. The presence of smart and green home devices that are capable of connecting to the Internet, directly or indirectly, and the data stored on those various devices make up a digital ecosystem in the Property sometimes referred to as the "Internet of Things (IoT)." Buyer and Seller acknowledge that IoT devices may transmit data to third parties outside of the control of their owner.

2. On or before settlement, Seller will make a reasonable effort to clear all data stored on all IoT devices located on the Property and included in the sale. Seller further acknowledges that all personal devices owned by Seller (including but not limited to cellular telephones, personal computers and tablets) having connectivity to any IoT device(s) located on the Property will be disconnected and cleared of relevant data prior to settlement. Further, no attempts will be made after settlement by Seller or anyone on Seller's behalf to access any IoT devices remaining on the Property.

3. Following settlement, Buyer will make a reasonable effort to clear all stored data from any IoT device(s) remaining on the Property and to restrict access to said devices by Seller, Seller's agents or any third party to whom Seller may have previously provided access. This includes, but is not limited to, restoring IoT devices to original settings, changing passwords or codes, updating network settings and submitting change of ownership and contact information to device manufacturers and service providers.

4. This paragraph will survive settlement.

**11. WAIVER OF CONTINGENCIES (9-05)**

If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.**

**12. BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)**

**(A) Rights and Responsibilities**

1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.

2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived by any other provision of this Agreement.

3. **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**

4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.

5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

Buyer Initials: _____  ASR Page 6 of 14  Seller Initials: _____

RGBSUB000025

325 (B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as
326 "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly
327 licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same
328 inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D)
329 for Notices Regarding Property and Environmental Inspections)
330 (C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any
331 Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit
332 a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

**Home/Property Inspections and Environmental Hazards (mold, etc.)**

| | | |
|---|---|---|
| **Elected** | 334 Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior | **Waived** |
| | 335 doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; | |
| | 336 electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetra- | |
| | 337 tion; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environ- | |
| | 338 mental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer | |
| | 339 may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the | |
| | 340 home inspection must be performed by a full member in good standing of a national home inspection association, | |
| | 341 or a person supervised by a full member of a national home inspection association, in accordance with the ethical | |
| | 342 standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or | |
| | 343 architect. (See Notices Regarding Property & Environmental Inspections) | |

**Wood Infestation**

| | | |
|---|---|---|
| **Elected** | 345 Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a | **Waived** |
| | 346 wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided | |
| | 347 by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort- | |
| | 348 gage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be | |
| | 349 limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection | |
| | 350 reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesti- | |
| | 351 cide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer | |
| | 352 may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to | |
| | 353 structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property. | |

**Deeds, Restrictions and Zoning**

| | | |
|---|---|---|
| **Elected** | 355 Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi- | **Waived** |
| | 356 nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the | |
| | 357 Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) | |
| | 358 is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____ | |
| | 359 | |

**Water Service**

| | | |
|---|---|---|
| **Elected** | 361 Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise | **Waived** |
| | 362 qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will | |
| | 363 locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous | |
| | 364 condition, at Seller's expense, prior to settlement. | |

**Radon**

| | | |
|---|---|---|
| **Elected** | 366 Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection | **Waived** |
| | 367 Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 | |
| | 368 working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground | |
| | 369 by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas | |
| | 370 can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a | |
| | 371 house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any | |
| | 372 person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department | |
| | 373 of Environmental Protection. Information about radon and about certified testing or mitigation firms is available | |
| | 374 through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State | |
| | 375 Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov | |

**On-lot Sewage (If Applicable)**

| | | |
|---|---|---|
| **Elected** | 377 Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic | **Waived** |
| | 378 load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's | |
| | 379 expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water | |
| | 380 needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense, | |
| | 381 prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection | |
| | 382 Contingency. | |

**Property and Flood Insurance**

| | | |
|---|---|---|
| **Elected** | 384 Buyer may determine the insurability of the Property by making application for property and casualty insurance | **Waived** |
| | 385 for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate | |
| | 386 with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, | |
| | 387 Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more | |
| | 388 prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood | |

389 **Buyer Initials:** _(signature)_        ASR Page 7 of 14        **Seller Initials:** _(signature)_

RGRSUB000026

| | | |
|---|---|---|
| 390 | | insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more |
| 391 | | flood insurance agents regarding the need for flood insurance and possible premium increases. |

**Property Boundaries**

| Line | | |
|---|---|---|
| 393 | **Elected** | Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal **Waived** |
| 394 | _____ | description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property _____ |
| 395 | | surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural |
| 396 | | or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen- |
| 397 | | tations of size of property are approximations only and may be inaccurate. |

**Lead-Based Paint Hazards (For Properties built prior to 1978 only)**

**Elected** Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct **Waived**
_____ a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint _____
hazards. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard
Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved
lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a
separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and
any lead-based paint records regarding the Property.**
**Other**

**Elected** _____ **Waived**
_____

The Inspections elected above do not apply to the following existing conditions and/or items: **Radnor Township has declared that the house is
unsafe for human occupancy. The house is being conveyed to Buyer in "as is" condition. Buyer intends to demolish the house and build a
new house.**

(D) **Notices Regarding Property & Environmental Inspections**
 1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating the surface of a structure where it may cause mold and damage to the building's frame.
 2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
 3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsibility to dispose of them properly.
 4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the property would be affected or denied because of its location in a wetlands area.
 5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores, pollen and viruses) have been associated with allergic responses.
 6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C. 20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health, Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by calling 1-877-724-3258.

**13. INSPECTION CONTINGENCY (10-18)**
 (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected in Paragraph 12(C).
 (B) **Within the stated Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in Paragraph 13(C):
 1. If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL **present all Report(s) in their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement,** OR
 2. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in their entirety to Seller and terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR
 3. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer.**
 The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
 a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation Period. During the Negotiation Period:
 (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
 (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
 If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable

**Buyer Initials:** [handwritten] **ASR Page 8 of 14** **Seller Initials:** [handwritten]

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 416 S Ithan Ave

RGBRSUB000027

| | | |
|---|---|---|
| 455 | | written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the |
| 456 | | Negotiation Period ends. |

455      written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the
456      Negotiation Period ends.
457      b.   If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within
458      _____ days (2 if not specified) **following the end of the Negotiation Period,** Buyer will:
459      (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
460      Agreement, OR
461      (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
462      of Paragraph 26 of this Agreement.
463      **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement**
464      **by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree**
465      **to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation**
466      **Period.**
467      (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____
468      days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to,
469      the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected
470      completion date for corrective measures. Within \_\_\_5\_\_\_ DAYS of receiving Seller's Proposal, or **if no Proposal is provided within**
471      **the stated time,** Buyer will notify Seller in writing of Buyer's choice to:
472      1.   Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
473      2.   Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
474      Paragraph 26 of this Agreement, OR
475      3.   Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by
476      any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time
477      required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the
478      Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct
479      the defects, Buyer may, within \_\_\_5\_\_\_ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all
480      deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
481      **If Buyer fails to respond** within the time stated in Paragraph 13(C) **or fails to terminate** this Agreement by written notice to
482      Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
483   **14. TITLES, SURVEYS AND COSTS (6-20)**
484      (A) Within \_\_\_\_\_ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company
485      for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report
486      to Seller.
487      (B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different
488      from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance
489      policies come in standard and enhanced versions; **Buyer should consult with a title insurance agent about Buyer's options.**
490      Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an
491      owner's title insurance policy.
492      (C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
493      (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
494      and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
495      (D) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal descrip-
496      tion of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or
497      required by the mortgage lender will be obtained and paid for by Buyer.
498      (E) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the reg-
499      ular rates, free and clear of all liens, encumbrances, and easements, **excepting however** the following: existing deed restrictions;
500      historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the
501      ground; easements of record; and privileges or rights of public service companies, if any.
502      (F) If a change in Seller's financial status affects Seller's ability to convey title to the Property on or before the Settlement Date, or
503      any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to,
504      Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice
505      of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all
506      liens and encumbrances against the Property.
507      (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates,
508      as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned
509      to Buyer according to the terms of Paragraph 26 of this Agreement, or take such title as Seller can convey. If the title condition
510      precludes Seller from conveying title, Buyer's sole remedy shall be to terminate this Agreement. Upon termination, all deposit
511      monies shall be returned to Buyer according to the terms of Paragraph 26 of this Agreement and Seller will reimburse Buyer for
512      any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those
513      items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).
514      (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
515      about the status of those rights unless indicated elsewhere in this Agreement.
516      ☐ **Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**

517   **Buyer Initials:** _JB_        **ASR Page 9 of 14**        **Seller Initials:** _9/_

RGBRSLUB000028

518 **(I) COAL NOTICE (Where Applicable)**
519 THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-
520 NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COM-
521 PLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND
522 ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of
523 the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence
524 resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsid-
525 ence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose
526 of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27,
527 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.
528 **(J)** The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:
529 _____
530 **(K) 1.** This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
531 ☐ **Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.**
532 **2.** **Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private
533 Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that
534 is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obli-
535 gation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of
536 whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or
537 other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must
538 disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed,
539 the Act gives certain rights and protections to buyers.
540 **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)**
541 **(A)** In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
542 received after Seller has signed this Agreement and before settlement, Seller will within ___5_ DAYS of receiving the notices and/
543 or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
544 **1.** Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
545 notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
546 **2.** Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or **fails**
547 **within the stated time to notify Buyer whether Seller will comply,** Buyer will notify Seller in writing within ___5___ DAYS
548 that Buyer will:
549 **a.** Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
550 Paragraph 28 of this Agreement, OR
551 **b.** Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
552 Paragraph 26 of this Agreement.
553 **If Buyer fails to respond** within the time stated in Paragraph 15(A)(2) or **fails to terminate** this Agreement by written notice
554 to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
555 **(B)** If required by law, within ___30_ DAYS from the Execution Date of this Agreement, but in no case later than ___15_ DAYS prior
556 Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
557 of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of
558 the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to
559 Seller.
560 **1.** Within ___5_ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a
561 copy of the notice to Buyer and notify Buyer in writing that Seller will:
562 **a.** Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/
563 improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
564 **b.** Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
565 notify Seller in writing within ___5_ DAYS that Buyer will:
566 **(1)** Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph
567 28 of this Agreement and make the repairs at Buyer's expense after settlement, OR
568 **(2)** Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
569 of Paragraph 26 of this Agreement.
570 **If Buyer fails to respond** within the time stated in Paragraph 15(B)(1)(b) or **fails to terminate** this Agreement by writ-
571 ten notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this
572 Agreement, and **Buyer accepts the responsibility to perform the repairs/improvements** according to the terms of the
573 notice provided by the municipality.
574 **2.** If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph,
575 Seller will perform all repairs/improvements as required by the notice at Seller's expense. **Paragraph 15(B)(2) will survive**
576 **settlement.**
577 **16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**
578 **(A)** Property is NOT a Condominium or part of a Planned Community unless checked below.
579 ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407
580 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of
581 the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

582 **Buyer Initials:** ⟋⟍ **ASR Page 10 of 14** **Seller Initials:** ⟋⟋

RGBSUB000029

583 ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
584 the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the decla-
585 ration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the
586 provisions set forth in Section 5407(a) of the Act.
587 **(B) THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM**
588 **OR A PLANNED COMMUNITY:**
589 If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
590 Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
591 this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
592 Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
593 Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
594 **(C) THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A**
595 **PLANNED COMMUNITY:**
596 1. Within ___15___ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
597 a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
598 that the association is required to provide these documents within 10 days of Seller's request.
599 2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer
600 for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
601 association in the Certificate.
602 3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents
603 and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon
604 Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of
605 this Agreement.
606 4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
607 reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the
608 Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for
609 cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3)
610 Appraisal fees and charges paid in advance to mortgage lender.
611 **17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**
612 In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-
613 erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for
614 the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of
615 the property and result in a change in property tax.
616 **18. MAINTENANCE AND RISK OF LOSS (1-14)**
617 (A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property)
618 specifically listed in this Agreement in its present condition, normal wear and tear excepted.
619 (B) If any part of the Property included in the sale fails before settlement, Seller will:
620 1. Repair or replace that part of the Property before settlement, OR
621 2. Provide prompt written notice to Buyer of Seller's decision to:
622 a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
623 if any, OR
624 b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
625 part of the Property.
626 3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller fails**
627 **to notify Buyer of Seller's choice,** Buyer will notify Seller in writing within ___5___ DAYS or before Settlement Date, whichever
628 is earlier, that Buyer will:
629 a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
630 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
631 Paragraph 26 of this Agreement.
632 **If Buyer fails to respond** within the time stated in Paragraph 18(B)(3) or **fails to terminate** this Agreement by written notice
633 to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
634 (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
635 replaced prior to settlement, Buyer will:
636 1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
637 2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
638 Paragraph 26 of this Agreement.
639 **19. HOME WARRANTIES (1-10)**
640 At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller
641 understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any
642 pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or
643 certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends
644 a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

645 **Buyer Initials:** _____  ASR Page 11 of 14  **Seller Initials:** _____

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com 416 S Irhan Ave

RGBGUB000030

**20. RECORDING (9-05)**
This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

**21. ASSIGNMENT (1-10)**
This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

**22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**
(A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

(B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

**23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold, you may be held liable for the tax.

**24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular property, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.

**25. REPRESENTATIONS (1-10)**
(A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property specifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C) Any repairs required by this Agreement will be completed in a workmanlike manner.

(D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

**26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**
(A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

(B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

(C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

Buyer Initials: _____      ASR Page 12 of 14      Seller Initials: _____

RGB SUB000031

(D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
1. Fail to make any additional payments as specified in Paragraph 2, OR
2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(F) **Unless otherwise checked in Paragraph 26(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies:
1. On account of purchase price, OR
2. As monies to be applied to Seller's damages, OR
3. As liquidated damages for such default.

(G) ☒ **SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.**

(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

(I) Brokers and licensees are not responsible for unpaid deposits.

**27. MEDIATION (7-20)**

Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. Legal proceedings may be initiated prior to the completion of the mediation process to stop any statute of limitations from expiring and for the purpose of indexing a lis pendens by Buyer to prevent the transfer of title to a third party when Buyer is seeking to purchase the Property. The parties agree that all proceedings shall be stayed until the completion of mediation and that a court of competent jurisdiction may award attorneys' fees to the prevailing party should the court find that a party has unreasonably breached this provision or acted in bad faith. Any agreement reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.

**28. RELEASE (9-05)**

Buyer releases, quit claims and forever discharges **SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

**29. REAL ESTATE RECOVERY FUND (4-18)**

A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658.

**30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**

(A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s) and Closing Disclosure(s) upon receipt.

(B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant to Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller, unless otherwise agreed to by the parties.

**31. HEADINGS (4-14)**

The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

Buyer Initials: _SB_    ASR Page 13 of 14    Seller Initials: _____

RGBRSUB000032

769 **32. SPECIAL CLAUSES (1-10)**
770   (A)  The following are attached to and made part of this Agreement if checked:
771 ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
772 ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
773 ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
774 ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
775 ☐ Appraisal Contingency Addendum (PAR Form ACA)
776 ☐ Short Sale Addendum (PAR Form SHS)
777 ☐ _____
778 ☐ _____
779 ☐ _____

780   (B)  **Additional Terms: The following subsections of this Agreement shall be amended as follows:**
781 **Section 4.G: the Property will not be free of debris or broom-clean at time of settlement as the Property will contain the prior**
782 **owner's property through September 1, 2022 pursuant to a court order.**
783
784 **Section 10.E: Buyer intends to demolish the house after settlement; as such, this transaction is exempt from PA's Real Estate**
785 **Seller Disclosure Law.**
786
787 **Section 12.A: Buyer acknowledges that the heat and other utilities may not be turned on or available at time of or after**
788 **settlement.**
789
790 **Section 18.B: Seller has no obligation to make any repairs or provide any credits if any systems or part of the Property should**
791 **fail prior to settlement.**
792
793 **Section 28: Seller's indemnification obligations set forth in the Indemnification Agreement attached hereto as Exhibit "A,"**
794 **which is incorporated as if set forth herein, are expressly excluded from any Section 28 releases.**
795 Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

796 This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
797 together shall constitute one and the same Agreement of the Parties.

798 **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are
799 advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

800 Return of this Agreement, and any addenda and amendments, including **return by electronic transmission**, bearing the signatures of all
801 parties, constitutes acceptance by the parties.

802 _____  Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

803 _____  Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

804 _____  Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
805 before signing this Agreement.

806 _____  Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
807 received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

808 **BUYER** _____  **DATE** _7/19/22_
           Jeffrey Brydzinski
809 **BUYER** _____  **DATE** _____
810 **BUYER** _____  **DATE** _____

811 Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
812 Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

813 **SELLER** _____  **DATE** _7/19/22_
           Rockwell Glynn, LP
814 **SELLER** _____  **DATE** _____
815 **SELLER** _____  **DATE** _____

RGBRGLIB000033

# EXHIBIT A

RGBFGLIB000034

## INDEMNIFICATION AGREEMENT

This Indemnification Agreement ("Agreement) is entered into this **19th** day of **July, 2022,** between **JEFFREY BRYDZINSKI** ("Owner"), and **ROCKWELL GLYNN, LP** ("Rockwell").

### BACKGROUND

A. Rockwell purchased the property located at 416 S. Ithan Avenue, Villanova, Delaware County, Pennsylvania 19085 (the "Property") from a Mrs. Simona Ockley ("Previous Owner"), pursuant to a separate agreement of sale.

B. The Previous Owner, prior to her closing with Rockwell, due to a health issue, vacated the Property leaving her personal property within the single-family home on the Property ("Personal Property").

C. On April 21, 2022, the vacant single-family home on the Property (the "Structure"), with the Personal Property inside, was declared by a Radnor Township Code Official "Unsafe For Human Occupancy or Use." The Township further declared that it was "Unlawful For Any Person To Use Or Occupy This Building After 4-21-22" (Notice of Condemnation"). The Notice of Condemnation was issued by Radnor Township code official Andy Pancoast, and the vacant home was secured with bolt locks by the Township and Legal Notices were placed on the Structure's entrance ways.

D. Judge Whelan of the Court of Common Pleas of Delaware County, Pennsylvania issued an Order, attached as Tab 1, stating that the Previous Owner "shall have unlimited and unfettered access to the Property at her own risk to remove her [P]ersonal [P]roperty until September 1, 2022. Any [P]ersonal [P]roperty remaining at the Property after September 1, 2022 shall be deemed abandoned and may be removed by [Rockwell] as refuse ("Court Order").

E. Rockwell sold the Property to Owner with the Previous Owner's Personal Property remaining in the vacant Structure until September 1, 2022, pursuant to the Court Order. Rockwell did not receive keys to the Structure from the Previous Owner upon purchase of the Property and, as such, was not able to provide Owner with keys to any of the Structure's doors. Moreover, Rockwell was not provided with keys by the Township and, as such, was not able to provide Owner with the keys to the bolt locks installed by the Township. If necessary, Rockwell will coordinate with the Previous Owner to obtain the keys to the entranceways to the Structure or otherwise gain access to the Structure. Rockwell will coordinate with the Township to obtain the keys to the bolt locks or to gain access from the Township to the Structure.

F. Once Rockwell coordinates a means to enter the Structure, Owner hereby agrees that Rockwell and/or Previous Owner shall have access to the Property and Structure, at their own risk and in a manner consistent with the Court Order and any rules and regulations imposed by the Township to allow for removal of Previous Owner's Personal Property from

the Structure by September 1, 2022 at no cost to Owner. The period from today through and including September 1, 2022, will be hereinafter referred to as "Removal Term." Owner shall not access the Property or the Structure during the Removal Term nor shall Owner permit any other individuals or third parties (other than Rockwell and the Previous Owner and their respective employees, agents, contractors, beneficiaries, affiliates, and movers) to enter the Property or the Structure or remove any of the Personal Property.

G. By September 2, 2022, Rockwell agrees to remove any Personal Property from the Structure on the Property deemed "abandoned" per the Court Order, at Rockwell's cost; provided, Rockwell may determine in its sole discretion that some or all of any such "abandoned" Personal Property may remain and be effectively disposed of as part of the demolition of the Structure, rather than removal from the Property and then disposition as refuse.

H. Rockwell agrees to defend, indemnify and save harmless Owner for any and all claims by the Previous Owner or any other third party related to the Personal Property and the removal of the same, as set forth in greater detail herein.

**NOW THEREFORE**, in consideration of the mutual covenants hereinafter set forth, Owner and Rockwell agree as follows:

1.    <u>Indemnity</u>.

(a)    Rockwell agrees to defend, indemnify and save harmless Owner, and Owner's beneficiaries (collectively the "Indemnified Parties"), to the fullest extent permitted by the law, from and against all claims, losses, liabilities, damages, theft, costs, penalties, fines, damages, expenses (including but not limited to court costs and reasonable attorney's fees) and claims of whatever nature by any third parties (including but not limited to Previous Owner )arising from: (i) the storage of the Personal Property at the Property during Removal Term; (ii) removal of the Personal Property by the Previous Owner, Rockwell or any other person from the Property during the Removal Term; (iii) the presence of the Previous Owner, Rockwell or any other person on the Property during the Removal Term, including the Structure subject to the Notice of Condemnation; (iv) any and all accidents or injuries (including but not limited to permanent injuries or death) to any person (including but not limited to Previous Owner, Previous Owner's employees, agents, contractors, beneficiaries, affiliates, movers, or any other person Previous Owner permitted on the Property during the Removal Term and further including but not limited to Rockwell's employees, or anyone else directly or indirectly employed by Rockwell) present at the Property during the Removal Term for the purpose of inventorying, sorting, inspecting, photographing, collecting, purchasing, moving, taking apart, or removing the Personal Property from the Property pursuant to the Court Order (this also includes any accidents or injuries incurred during the ingress and egress from the Property or presence at the Property or in the Structure to do any of the above); (v) damage to the Personal Property.

(b)    Rockwell will provide the above referenced indemnification in connection with any alleged negligence, act, omission, claim, or condition, caused or created, in whole or in part by Rockwell, Rockwell's affiliates, employees or agents, or any other person or persons

-2-

RGBGSUB000036

whatsoever (including Previous Owner), whether or not based in part upon the active, passive, concurrent (but not sole) negligence of an Indemnified Party.

(c)     Rockwell's obligations to defend, indemnify, and hold harmless set forth in this Agreement shall continue beyond the Removal Term, it being agreed that such rights and obligations are and shall be continuing in nature and effect.

2.     <u>Access to the Property.</u>  Given Owner does not have keys for the entranceways of the Structure by Rockwell and the Township has installed bolt locks on all entranceways to the structure, Owner has no way to provide access to the Structure to either Rockwell or Previous Owner.  Accordingly, if necessary, Rockwell agrees to coordinate with the Previous Owner to obtain the keys to the entranceways to the Structure or otherwise gain access to the Structure. Rockwell also agreed to coordinate with the Township to obtain the keys to the bolt locks or to gain access from the Township to the Structure.  Owner shall not permit or invite anyone to enter Property or the Structure on the Property, where the Personal Property is being stored, other than Rockwell and the Previous Owner and their respective employees, agents, contractors, beneficiaries, affiliates, and movers.

3.     <u>Personal Property of Previous Owner.</u>  Owner hereby agrees that Rockwell and/or Previous Owner shall have access to the Property and Structure in a manner consistent with the Court Order to allow for removal of Previous Owner's Personal Property.  Owner shall have no contact or communication with Previous Owner.  Owner shall not access the Property or the secured Structure during the Removal Term.  Owner shall not permit any other individuals or third parties to enter the Property or the Structure other than Rockwell and the Previous Owner. Rockwell will remove by September 2, 2022 any Personal Property not removed from the Property by the Previous Owner that is deemed "abandoned" pursuant to the Court Order at Rockwell's own expense; provided, notwithstanding the foregoing, Rockwell may determine in its sole discretion that some or all of any such "abandoned" Personal Property may remain and be effectively disposed of as part of the demolition of the Structure, rather than removal from the Property and *then* disposition as refuse.

4.     <u>Attorneys' Fees.</u>  If a court of competent jurisdiction enters a judgment against Rockwell in any action instituted by reason of any default under this Agreement, Rockwell shall pay to Owner the Owner's attorneys' fees charged for instituting or prosecuting such action or proceedings, together with interest, costs and disbursements and any and all costs necessary to obtain satisfaction of any judgment for money or possession.

5.     <u>Miscellaneous.</u>  This Agreement shall be binding upon and inure to the benefit of the parties hereto and their respective successors and assigns, subject to the provisions of this Agreement.  If any provision of this Agreement or portion of such provision or the application thereof to any person or circumstance is for any reason held invalid, the remainder of the Agreement (or the remainder of such provision) and the application thereof to other persons or circumstances shall not be affected thereby. This Agreement contains all of the agreements of the parties with respect to the subject matter thereof, supersedes all prior dealings between the parties with respect to such subject matter and may be amended only by instruments in writing executed

-3-

RGBSUB000037

by the parties hereto. This Agreement is not a lease and confers no leasehold interests for the Property to Rockwell, Previous Owner, or any other party.

6.    Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

IN WITNESS WHEREOF, **Jeffrey Brydzinski** and **Rockwell Glynn, L.P.,** intending to be legally bound hereby, have entered into this License Agreement the day and year aforesaid.

**JEFFREY BRYDZINSKI,** an adult individual

Dated:_____    By:_____

**ROCKWELL GLYNN, LP,** a Pennsylvania Limited Partnership

Dated:_____    By:_____

Title:_____

-4-

RGBKSUB000038

# TAB 1

RGERSUB000039

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| ROCKWELL GLYNN, LP. | : | Court of Common Pleas of Delaware County |
| Plaintiff | : | |
| v. | : | No. CV-2022-004275 |
| | : | |
| SIMONA OCKLEY | : | CIVIL ACTION |
| Defendant | : | |

## ORDER

Upon consideration of the Complaint and Petition for Special Injunction filed by Plaintiff, Rockwell Glynn LP., and after a hearing on July 11, 2022 and having heard the arguments advanced by Defendant, Simona Ockley, and Lee M. Herman, Esquire, counsel for Plaintiff, and good cause appearing,

It is on this _15th_ day of July, 2022, hereby ORDERED and DECREED as follows:

1. Plaintiff may immediately record the Deed to 416 South Ithan Avenue, Villanova, PA 19085 ("the Property") previously executed by Defendant.

2. The title company shall disburse the proceeds it currently holds in the approximate amount of Four Hundred Ninety Thousand Dollars ($490,000.00) to Defendant.

3. Defendant shall have unlimited and unfettered access to the Property at her own risk to remove her personal property until September 1, 2022. Any personal property remaining at the Property after September 1, 2022 shall be deemed abandoned and may be removed by Plaintiff as refuse.

BY THE COURT:

John J. Whelan, J.

Date: July 11, 2022

RGBRSUB000040

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

| | | |
|---|---|---|
| ROCKWELL GLYNN, LP. | : | Court of Common Pleas of Delaware County |
| Plaintiff | : | |
| v. | : | No. CV-2022-004275 |
| | : | |
| SIMONA OCKLEY | : | CIVIL ACTION |
| Defendant | : | |

## ORDER

Upon consideration of the Complaint and Petition for Special Injunction filed by Plaintiff, Rockwell Glynn LP., and after a hearing on July 11, 2022 and having heard the arguments advanced by Defendant, Simona Ockley, and Lee M. Herman, Esquire, counsel for Plaintiff, and good cause appearing,

It is on this _15th_ day of July, 2022, hereby ORDERED and DECREED as follows:

1. Plaintiff may immediately record the Deed to 416 South Ithan Avenue, Villanova, PA 19085 ("the Property") previously executed by Defendant.

2. The title company shall disburse the proceeds it currently holds in the approximate amount of Four Hundred Ninety Thousand Dollars ($490,000.00) to Defendant.

3. Defendant shall have unlimited and unfettered access to the Property at her own risk to remove her personal property until September 1, 2022. Any personal property remaining at the Property after September 1, 2022 shall be deemed abandoned and may be removed by Plaintiff as refuse.

BY THE COURT:

_____
John J. Whelan, J.

Date: July 11, 2022

RGBSUB000041

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

## CIVIL ACTION – LAW

ROCKWELL GLENN, LP      :      No: 2022-004275
                 :
       v.            :
                 :
SIMONA OCKLEY           :

## ORDER

AND NOW, this _____9_____ day of August, 2022, upon consideration of Defendant's Emergency Petition, and upon review of the Docket and the July 15, 2022 Order signed by Judge John J. Whelan, after a prior hearing on the matter, it is hereby **ORDERED** that Defendant's Petition is **GRANTED**.

Defendant Simona Ockley shall have unlimited and unfettered access to the property located at 416 South Ithan Avenue, Villanova, PA 19085 at her own risk to remove her personal property until September 1, 2022. Plaintiff shall remove any additional locks so that Defendant may access the property until September 1, 2022. Plaintiff and/or the Radnor Police Department shall allow access by removing locks to provide Defendant access to the property to remove her personal property until September 1, 2022.

**BY THE COURT:**

_____ J.

# Radnor Twp PD

## Incident Report Form

**Primary Officer: <u>SGT KATHERINE REARDON</u> - <u>KREARD</u>**

| | | | | |
|---|---|---|---|---|
| ☐ Juvenile Involved | ☐ Investigation | ☐ Video Available | ☐ Gang Related | ☐ Paperless |
| ☐ Domestic Related | ☐ Suspects | ☐ Bias Crime | ☐ Accident | ☐ Administrative |
| ☐ Alcohol Involved | ☐ Arrests Made | ☐ Drugs Involved | ☐ Ready for DA / Prosecutor | ☐ Alarm Activated |

| Log Number | Incident Number | File Number | Case Number | UCR |
|---|---|---|---|---|
| **RT-22-10812** | **P2200276232** | | | |

| Incident Type | MEN302 | Dispatcher | Source | District | Status |
|---|---|---|---|---|---|
| **MENTAL HEALTH (EMER 302)** | | | **PERSON** | **7624** | **CLOSED** |

### Incident Date / Times

| Date Received | Day Rec'd | Rcvd | Disp | Arrv | Clrd | Earliest Date and Time | Latest Date and Time |
|---|---|---|---|---|---|---|---|
| **8/12/2022** | **Friday** | **1330** | **1345** | **1345** | **1700** | | |

**Incident Occurred At or Between**

| Disposition | Cleared by Exception | ☐ Suspended |
|---|---|---|
| UCR Clearance | UCR Occur Date | UCR Clear Date |

| UCR Count | UCR Human Traffic Code | UCR HT Count |
|---|---|---|
| | | **0** |

### Location

☐ Intersection

**416 S ITHAN AV
VILLANOVA PA 19085**

| Cross Street |
|---|
| **CONESTOGA RD** |

| GPS Loc X | GPS Loc Y |
|---|---|

Municipality: **Radnor Township**

| Business Name | Premise Code | Arson Value |
|---|---|---|
| | Weather | |

| Modus Operandi Coding | | |
|---|---|---|
| Entry: | Victim: | |
| | Property: | |
| Exit: | Area: | |
| Method: | Time of Day: | |

**WEAPON USED:**

| Caller / Complainant Type | Normal ☐ | Anonymous ☐ | Hangup ☐ | Refused ☐ |
|---|---|---|---|---|

## INVOLVED PERSONS

### COMPLAINANT

CODE: COMPL

| Name (Last, First, Middle) - Address | Juvenile | Date of Birth | Age | Race | Sex | Ethnic | Social Security Number |
|---|---|---|---|---|---|---|---|
| **BRYDZINSKI, JEFFREY** <br> **416 S ITHAN AV** <br> **VILLANOVA PA 19085** | ☐ | | | | | | |

| | Weight | Height | Hair | Eyes | Phone Number |
|---|---|---|---|---|---|
| | | | | | |

| Driver License Number | State | Class | Expiration Date |
|---|---|---|---|
| | | | |

| ID Provided | ID Detail |
|---|---|
| | |

Link Comments

# Radnor Twp PD

## Incident Report Form

## INVOLVED PERSONS

### CONTACT

| | CODE: | CONT |
|---|---|---|

| Name (Last, First, Middle) - Address | Juvenile | Date of Birth | Age | Race | Sex | Ethnic | Social Security Number |
|---|---|---|---|---|---|---|---|
| **OCKLEY, SIMONA**<br>**416 S ITHAN AVE**<br>**ROSEMONT  PA  19010** | ☐ | | | | | | |

| | Weight | Height | Hair | Eyes | Phone Number |
|---|---|---|---|---|---|
| | | | | | |

| Driver License Number | State | Class | Expiration Date |
|---|---|---|---|
| | | | |

| ID Provided | ID Detail |
|---|---|
| | |

Link Comments

## RESPONDING / INVOLVED UNITS, OFFICERS, TIMES

| Division | Supervisor / ID | |
|---|---|---|
| **PATR** | **LT. JOSEPH PINTO** | **JPINTO** |

| Unit Number | Officer / ID  (Ofcr1 / Ofcr2) | | Officer / ID (Ofcr3 / Ofcr4) |
|---|---|---|---|
| | **SGT KATHERINE REARDON** | **KREARD** | |

## COMMENTS / NARRATIVES

**Title**
## INITIAL

| Narrative Created By / Creation Date | | Narrative Updated By / Update On | |
|---|---|---|---|
| **SGT KATHERINE REARDON** | 08/12/2022 | **SGT KATHERINE REARDON** | 08/12/2022 |

| Narrative Approved By / Approved Date | |
|---|---|
| **SGT MICHAEL FISCHER** | 08/12/2022 |

C:  Jeffrey Brydzinski responded to 7690 in regards to a possible squatting issue at 416 S. Ithan Avenue
SEE SUPPLEMENTAL
Sgt. Reardon #303

## COMMENTS / NARRATIVES

**Title**
## SUPPLEMENTAL

| Narrative Created By / Creation Date | | Narrative Updated By / Update On | |
|---|---|---|---|
| **SGT KATHERINE REARDON** | 08/12/2022 | **OFC JENNIFER COCCO** | 08/12/2022 |

| Narrative Approved By / Approved Date | |
|---|---|
| **SGT MICHAEL FISCHER** | 08/12/2022 |

On 8/12/2022, Jeffrey Brydzinski responded to 7690 in regards to a possible squatting issue at 416 S. Ithan Avenue.  I made contact with Jeffrey Brydzinski, who advised, Simona Ockley (previous property owner of the above address), has been occupying 416 S. Ithan Avenue since Wednesday, 8/10/2022.  As of today's date, Brydzinski is the current owner of 416 S. Ithan Avenue.  Settlement on the property was made on 7/21/2022 and Ockley received payment.  The above property was deemed inhabitable by the Radnor Township Codes Department back in May of 2022.  Ockley only had permission to be inside of the property to retrieve and clear out specific belongings.  Ockley has yet to remove any belongings from the residence.  She has removed any and all signage for legal notice and condemnation and is refusing to leave.  Rockwell Custom Construction, the company attempting to do work on the property, observed Ockley arrive at 716 S. Ithan Avenue with an unidentified b/m in a yellow cab.  The unidentified male was observed breaking the locks on the garage door and the back kitchen doors with a hammer on 8/10/22.  Rockwell Custom advised Brydzinski, that Ockley has hindered construction for several hours.  An inspector arrived for a pest inspection and she blocked his entry into the home.  Ockley also contacted PECO and had the electric changed back into her name, contacted Verizon to connect phone service, and contacted Aqua.  Brydzinski completed a written statement attesting to the above. Brydzinski also provided proof the home is in his name and he purchased it from Ockley. Superintendent Flanagan, Lt. Pinto, and Radnor Township Codes Department were advised.
Sgt. Reardon #303

| **RT-22-10812** | **8/12/2022** | ☒ | APPROVED BY:  **SGT MICHAEL FISCHER** | PAGE  **2** |
|---|---|---|---|---|
| IRF 1.6 | | | APPROVED ON:  **8/12/2022** | Print Date/Time     8/18/2022 8:47:30 AM |

RGLP-JB000044

Narrative Created By / Creation Date
OFC JENNIFER COCCO                                    08/12/2022

Narrative Updated By / Update On
OFC JENNIFER COCCO                                    08/14/2022

Narrative Approved By / Approved Date
SGT MICHAEL FISCHER                                   08/12/2022

# MENTAL HEALTH (EMER 302)

On 8/12/2022 Lt. Pinto, Sgt. Fischer, Ofc. McHale, and I responded to 416 S. Ithan Av. to make contact with Ockley. Prior to response, Lt. Pinto contacted Mobile Crisis, who also arrived on scene with officers. We made contact with Ockley, who was still in her hospital gown. The home was full of unknown items and there was only a small path from the porch door to the area Ockley was sitting. Ockley also had the cable service to the home restored, as she was watching TV when we arrived.There was also a stench of raw sewage, as Ockley confirmed there was no running water in the home. There was also no ventilation to the home and the temperature inside was extremely hot. The floor was also caving in, as there was a large hole in the kitchen floor. We attempted to explain to Ockley the home was not only condemned, but legally not hers anymore. Ockley kept stating she has a court order and she can be inside the home. The court order Ockley is speaking about states the home is condemned and she is able to get belongings out of the home, as it is not owned by her anymore. Ockley was given several attempts to leave voluntarily, but kept shouting the police were in her home "fraudulently". Mobile Crisis did speak to her and observed Ockley's behavior, which they deemed enough to have Ockley 302'd. The 302 paperwork was signed by mobile crisis staff and RFC/A was called to transport Ockley, since she could not be transported safely in a police vehicle (walker, cane, Ace bandage on her leg, body fluids on her clothes, etc.). Ockley initially resisted leaving her home, but with some slight coercion and assistance with sitting up from the sofa, she walked outside to an awaiting stretcher. I followed RFC/A and Ockley to Crozer ER, where they were provided the 302. Ockley was turned over to Crozer staff without further incident.

   I did contact homeowner, Jeff Brydzinski, about the possibility Ockley could be released from the hospital, if the crisis doctor did not think she needed assistance. Brydzinski advised he was having contractors board up all entrances and requested added patrol to the residence. Brydzinski advised no one should be at the house after dark or over the weekend.  Brydzinski is also putting up new no trespassing and condemned signs at the home. Brydzinski is demolishing the home in the next two weeks and Ockley being in the home is unsafe.
ASSIST: Lt. Pinto, Sgt. Fischer, McHale.
Cocco #94

**MOIRA MULRONEY, ESQ.** *Ward 5*
*President*

**JACK LARKIN, ESQ.** *Ward 1*
*Vice President*

**MAGGY MYERS** *Ward 2*
**ANNAMARIE JONES** *Ward 3*
**LISA BOROWSKI** *Ward 4*
**JAKE ABEL** *Ward 6*
**SEAN FARHY** *Ward 7*



**RADNOR TOWNSHIP**
**301 IVEN AVENUE**
**WAYNE, PENNSYLVANIA 19087-5297**

Phone **(610) 688-5600**
Fax **(610) 971-0450**
**www.radnor.com**

**WILLIAM M. WHITE**
*Township Manager*
*Township Secretary*

**JOHN B. RICE, ESQ.**
*Solicitor*

**KEN FROHLICH**
*Treasurer*

# NOTICE OF CONDEMNATION
## PROPERTY MAINTENANCE

**Person(s) Responsible**
**for Violation:**     Simona Ockley

**Mailing Address:**     416 Ithan Avenue, Villanova, PA 19085

**Date of Issuance:**     April 26, 2022

**Location of Condemned Property:**

416 Ithan Avenue, Villanova, PA 19085
(Delaware County Folio - 36040233600)

**Delivered:** _____ In person to Owner of Record
_____X_____ By Regular Mail and Property Posting

In accordance with Section 108 of the 2009 edition of the International Property Maintenance Code, adopted as the Property Maintenance Code of Radnor Township (Code) under Chapters 222 of the Radnor Township Code, Radnor Township has found the Property located at 416 Ithan Avenue to be unfit for human occupancy and hereby **CONDEMNS** this Property. Therefore, the dwelling shall be vacated immediately and shall be secured to prevent entry by unwanted individuals. The Property may not be occupied except as follows:

- Adults may occupy this dwelling during the hours of 8:00am to 4:00pm only for the sole purpose of abating the violations.

- There shall be no other activity on the Property, including cooking, sleeping, conducting other business etc., other than the activity of abating the violations.

- There shall be no children permitted in the dwelling until a Township Codes Official approves the re-occupancy of children.

This Notice of Condemnation is based upon all of the violations listed in the attached Notice of Violation issued against this Property. The Property shall not be reoccupied until all of these violations have been corrected. A compliance re-inspection shall be conducted by this office

before the dwelling is re-occupied. Permission shall be obtained from this office before entry into the structure for repairs or cleaning.

You have the right to appeal this Notice to the Radnor Township Code Appeals Board. YOU MUST FILE THIS APPEAL WITHIN TEN (10) DAYS OF THE DATE OF ISSUANCE OF THIS NOTICE.

Failure to comply with this Notice within the time limits specified above constitutes a violation and is subject to a fine of up to $1,000.00 per day, plus all court costs and reasonable attorney's fees, unless an appeal is filed with the Radnor Township Code Appeals Board within 10 days of the date of issuance of this Notice. Each day that a violation continues shall be considered a separate offense punishable by the above-described fines and penalties. In accordance with Section 106.3 of the Code, all costs incurred by the Township in enforcing this matter shall be charged against the Property and shall be a lien upon this property.

You should take the following action immediately:

Respond to me in writing within five (5) days acknowledging receipt of this Notice and stating what actions you have taken or will take to bring your property into compliance with the Code. This response should be directed to me at the Radnor Township Municipal Building, 301 Iven Avenue, Wayne, PA 19087-5297 or at kkochanski@radnor.org. If you do not take appropriate corrective action, I shall recommend to the Township Board of Commissioners that a civil action be filed against you in Court.

Sincerely,

Kevin W. Kochanski, RLA, CZO
Director of Community Development / BCO

CC:     Commissioner Moira Mulroney
        William White, Township Manager
        Andy Pancoast, Code Official
        Chris Flanagan, Superintendent of Police
        John Rice, Township Solicitor
        Property File

RGLP-JB000047

**MOIRA MULRONEY, ESQ.** *Ward 5*
*President*
**JACK LARKIN, ESQ.** *Ward 1*
*Vice President*
**MAGGY MYERS** *Ward 2*
**ANNAMARIE JONES** *Ward 3*
**LISA BOROWSKI** *Ward 4*
**JAKE ABEL** *Ward 6*
**SEAN FARHY** *Ward 7*



**RADNOR TOWNSHIP**
**301 IVEN AVENUE**
**WAYNE, PENNSYLVANIA 19087-5297**

Phone (610) 688-5600
Fax (610) 971-0450
www.radnor.com

**WILLIAM M. WHITE**
*Township Manager*
*Township Secretary*

**JOHN B. RICE, ESQ.**
*Solicitor*

**KEN FROHLICH**
*Treasurer*

# NOTICE OF VIOLATION
## PROPERTY MAINTENANCE

**Person(s) Responsible**
**for Violation:**          Simona Ockley

**Mailing Address:**        416 Ithan Avenue, Villanova, PA  19085

**Date of Issuance:**       April 26, 2022

**Location of Condemned Property:**

      416 Ithan Avenue, Villanova, PA  19085
      (Delaware County Folio - 36040233600)

**Delivered:**    _____   In person to Owner of Record
           ___X____   By Regular Mail and Property Posting

In accordance with Sections 106 and 107 of the 2009 edition of the International Property Maintenance Code, adopted as the Property Maintenance Code of Radnor Township (Code) under Chapter 222 of the Radnor Township Code, Radnor Township is issuing this Notice of Violation and demanding that the following activities being conducted in violation of the Code immediately cease:

**Your property is declared "Unfit for Human Occupancy" and may not be occupied except as follows:**
- **Adults may occupy this dwelling during the hours of 8:00am to 4:00pm only for the sole purpose of abating the violations.**
- **There shall be no other activity on the Property in Violation, including cooking, sleeping, conducting other business etc., other than the activity of abating the violations.**
- **There shall be no children permitted in the dwelling until a Township Codes Official approves the re-occupancy of children.**

RGLP-JB000048

Specific Violations:

## UNSAFE STRUCTURES

A. Chapter 222, Section 108.1.3 Structure Unfit for Human Occupancy. A Structure is unfit for human occupancy whenever the code official finds that such structure is unsafe, unlawful or, because of the degree to which the structure is in disrepair or lacks maintenance, is insanitary, vermin infested, contains filth and contamination, or lacks ventilation, illumination, sanitary or heating facilities or other essential equipment required by this code, or because the location of the structure constitutes a hazard to the occupants of the structure or to the public.

B. Chapter 222, Section 108.1.5 Dangerous structure or premises. For the purpose of this code, any structure or premises that has any or all of the conditions or defects described below shall be considered dangerous:

   1. Any door, aisle, passageway, stairway, exit or other means of egress that does not conform to the approved building or fire code of the jurisdiction as related to the requirements for existing buildings.

   2. The walking surface of any aisle, passageway, stairway, exit or other means of egress is so warped, worn loose, torn or otherwise unsafe as to not provide safe and adequate means of egress.

   6. The building or structure, or any portion thereof, is clearly unsafe for its use and occupancy.

   8. Any building or structure has been constructed, exists or is maintained in violation of any specific requirement or prohibition applicable to such building or structure provided by the approved building or fire code of the jurisdiction, or of any law or ordinance to such an extent as to present either a substantial risk of fire, building collapse or any other threat to life and safety.

   9. A building or structure, used or intended to be used for dwelling purposes, because of inadequate maintenance, dilapidation, decay, damage, faulty construction or arrangement, inadequate light, ventilation, mechanical or plumbing system, or otherwise, is determined by the code official to be unsanitary, unfit for human habitation or in such a condition that is likely to cause sickness or disease.

   10. Any building or structure, because of a lack of sufficient or proper fire-resistance-rated construction, fire protection systems, electrical system, fuel connections, mechanical system, plumbing system or other cause, is determined by the code official to be a threat to life or health.

**Due to the amount of clutter, filth, and rubbish throughout the house, the dwelling was found to be unsanitary, lacking maintenance, and in a general state of disrepair.**

<u>**INTERIOR STRUCTURE**</u>

C.  Chapter 222, Section 305.3 Interior Surfaces. All interior surfaces, including windows and doors shall be maintained in good, clean and sanitary condition. Cracked or loose plaster, decayed wood and other defective surface conditions shall be corrected.

**Every room of the dwelling contained a significant amount of filth, clutter, debris, and rubbish. These conditions constitute violations of this Code section.**

D.  Chapter 222, Section 308.1 Accumulation of rubbish or garbage. All exterior property and premises, and the interior of every structure, shall be free from any accumulation of rubbish or garbage.

**Debris and rubbish were observed throughout the inside of the dwelling. This constitutes a violation of this Code Section.**

E.  Chapter 222, Section 404.5 Food preparation. All spaces to be occupied for food preparation purposes shall contain suitable space and equipment to store, prepare and serve foods in a sanitary manner. There shall be adequate facilities and services for the sanitary disposal of food wastes and refuse, including facilities for temporary storage.

**The kitchen area was observed with a significant amount of clutter and filth and is being kept in an unsanitary condition. This constitutes a violation of this Code Section.**

F.  Chapter 222, Section 704.2 Smoke Alarms. Single or multi-station smoke alarms shall be installed as follows:

  1.  On the ceiling or wall outside of each separate sleeping area in the immediate vicinity of bedrooms.

  2.  In each room used for sleeping purposes.

  3.  In each story within a dwelling unit, including basements and cellars but not including crawl spaces and uninhabitable attics. In dwellings or dwelling units with split levels and without an intervening door between the adjacent levels, a smoke alarm installed on the upper level shall suffice for the adjacent lower level provided that the lower level is less than one full story below the upper level.

  **Smoke alarms were not observed in the dwelling unit.**

Due to the enormous amount of clutter, debris, and other items limiting a complete visual inspection of the dwelling, there may be additional issues that are undetectable at the present time. Before the Property is declared habitable, a re-inspection will be necessary to ensure no additional violations are present. This should take place once the cleanup is complete and before repair/restoration work begins to ensure all violations have been identified. Please note that all work shall be done in accordance with Radnor Township applicable codes by licensed contractors with appropriate permits issued by the Community Development Department.

**Therefore, the dwelling shall be vacated immediately. It shall be secured to prevent entry by unwanted individuals. It shall not be reoccupied until the above listed violations have been corrected.** A compliance re-inspection shall be conducted by this office before the dwelling is re-occupied. Permission shall be obtained from this office before entry into the structure for repairs or cleaning.

RGLP-JB000050

You are to commence corrections of these violations immediately. You must either correct these violations or appeal this Notice as set forth below.

You have the right to appeal this Enforcement Notice to the Radnor Township Code Appeals Board. **YOU MUST FILE THIS APPEAL WITHIN TEN (10) DAYS OF THE DATE OF ISSUANCE OF THIS NOTICE.** Failure to file a timely appeal with the Board of Appeals results in the violation being conclusively determined against you and unassailable in subsequent court proceedings.

Failure to comply with this Notice within the time limits specified above constitutes a violation and is subject to a fine of up to $1,000.00 per day, plus all court costs and reasonable attorney's fees, unless an appeal is filed with the Radnor Township Code Appeals Board within 10 days of the date of issuance of this Notice. Each day that a violation continues shall be considered a separate offense punishable by the above-described fines and penalties. In accordance with Section 106.3 of the Code, all costs incurred by the Township in enforcing this matter shall be charged against the Property in Violation and shall be a lien upon this property.

You should take the following action immediately:

Respond to me in writing within five (5) days acknowledging receipt of this Notice of Violation and stating what actions you have taken or will take to bring your property into compliance with the Code. This response should be directed to me at the Radnor Township Municipal Building, 301 Iven Avenue, Wayne, PA 19087-5297 or at kkochanski@radnor.org. If, you do not take appropriate corrective action, I shall recommend to the Township Board of Commissioners that a civil action be filed against you in Court.

Sincerely,

Kevin W. Kochanski, RLA, CZO
Director of Community Development / BCO

CC:     Commissioner Moira Mulroney
        William White, Township Manager
        Andy Pancoast, Code Official
        Chris Flanagan, Superintendent of Police
        John Rice, Township Solicitor
        Property File

RGLP-JB000051

**MOIRA MULRONEY, ESQ.** *Ward 5*
*President*
**JACK LARKIN, ESQ.** *Ward 1*
*Vice President*
**MAGGY MYERS** *Ward 2*
**ANNAMARIE JONES** *Ward 3*
**LISA BOROWSKI** *Ward 4*
**JAKE ABEL** *Ward 6*
**SEAN FARHY** *Ward 7*

**WILLIAM M. WHITE**
*Township Manager*
*Township Secretary*

**JOHN B. RICE, ESQ.**
*Solicitor*

**KEN FROHLICH**
*Treasurer*



**RADNOR TOWNSHIP**
**301 IVEN AVENUE**
**WAYNE, PENNSYLVANIA 19087-5297**

Phone (610) 688-5600
Fax (610) 971-0450
www.radnor.com

# NOTICE OF CONDEMNATION
## PROPERTY MAINTENANCE

**Person(s) Responsible
for Violation:**     Simona Ockley

**Mailing Address:**     416 Ithan Avenue, Villanova, PA  19085

**Date of Issuance:**     April 26, 2022

**Location of Condemned Property:**

416 Ithan Avenue, Villanova, PA  19085
(Delaware County Folio - 36040233600)

**Delivered:**     _____ In person to Owner of Record
         ___X___ By Regular Mail and Property Posting

In accordance with Section 108 of the 2009 edition of the International Property Maintenance Code, adopted as the Property Maintenance Code of Radnor Township (Code) under Chapters 222 of the Radnor Township Code, Radnor Township has found the Property located at 416 Ithan Avenue to be unfit for human occupancy and hereby **CONDEMNS** this Property.  Therefore, the dwelling shall be vacated immediately and shall be secured to prevent entry by unwanted individuals.  The Property may not be occupied except as follows:

- Adults may occupy this dwelling during the hours of 8:00am to 4:00pm only for the sole purpose of abating the violations.

- There shall be no other activity on the Property, including cooking, sleeping, conducting other business etc., other than the activity of abating the violations.

- There shall be no children permitted in the dwelling until a Township Codes Official approves the re-occupancy of children.

This Notice of Condemnation is based upon all of the violations listed in the attached Notice of Violation issued against this Property.  The Property shall not be reoccupied until all of these violations have been corrected.  A compliance re-inspection shall be conducted by this office

RGLP-JB000052

before the dwelling is re-occupied. Permission shall be obtained from this office before entry into the structure for repairs or cleaning.

You have the right to appeal this Notice to the Radnor Township Code Appeals Board. YOU MUST FILE THIS APPEAL WITHIN TEN (10) DAYS OF THE DATE OF ISSUANCE OF THIS NOTICE.

Failure to comply with this Notice within the time limits specified above constitutes a violation and is subject to a fine of up to $1,000.00 per day, plus all court costs and reasonable attorney's fees, unless an appeal is filed with the Radnor Township Code Appeals Board within 10 days of the date of issuance of this Notice. Each day that a violation continues shall be considered a separate offense punishable by the above-described fines and penalties. In accordance with Section 106.3 of the Code, all costs incurred by the Township in enforcing this matter shall be charged against the Property and shall be a lien upon this property.

You should take the following action immediately:

Respond to me in writing within five (5) days acknowledging receipt of this Notice and stating what actions you have taken or will take to bring your property into compliance with the Code. This response should be directed to me at the Radnor Township Municipal Building, 301 Iven Avenue, Wayne, PA 19087-5297 or at kkochanski@radnor.org. If you do not take appropriate corrective action, I shall recommend to the Township Board of Commissioners that a civil action be filed against you in Court.

Sincerely,

Kevin W. Kochanski, RLA, CZO
Director of Community Development / BCO

CC:    Commissioner Moira Mulroney
       William White, Township Manager
       Andy Pancoast, Code Official
       Chris Flanagan, Superintendent of Police
       John Rice, Township Solicitor
       Property File



RGLP-JB000054



RGLP-JB000055



RGLP-JB000056



RGLP-JB000057



RGLP-JB000058



RGLP-JB000059



RGLP-JB000060

# POLICE CRIMINAL COMPLAINT
## COMMONWEALTH OF PENNSYLVANIA
### VS.

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF DELAWARE

Magisterial District Number: **32-1-27**

MDJ: Hon. **HONORABLE DAVID H. LANG**
**4655 WEST CHESTER PIKE**
**NEWTOWN SQUARE, PA**

Address: **19073**

Telephone: **(610) 356-7430**

DEFENDANT: *(NAME and ADDRESS):*

| **SIMONA** | | **OCKLEY** | |
|---|---|---|---|
| First Name | Middle Name | Last Name | Gen |

**0**

## NCIC Extradition Code Type

| | | |
|---|---|---|
| ☐ 1-Felony Full | ☐ 5-Felony Pend. | ☐ C-Misdemeanor Surrounding States   ☐ Distance: |
| ☐ 2-Felony Ltd. | ☐ 6-Felony Pend. Extradition Determ. | ☐ D-Misdemeanor No Extradition |
| ☐ 3-Felony Surrounding States | ☐ A-Misdemeanor Full | ☐ E-Misdemeanor Pending |
| ☐ 4-Felony No Ext | ☐ B-Misdemeanor Limited | ☐ F-Misdemeanor Pending Extradition Complaint |

## DEFENDANT IDENTIFICATION INFORMATION

| Docket Number | Date Filed 08/13/22 | OTN/LiveScan Number R337845-4 / | Complaint 9587 | Incident Number RT-22-10846 | Request Lab Services? ☐ YES ☒ NO |
|---|---|---|---|---|---|

| GENDER | DOB | Personal | POB | | Add'l DOB | | Co-Defendant(s) ☐ |
|---|---|---|---|---|---|---|---|
| ☐ Male | | | First Name | Middle Name | Last Name | | Gen. |
| ☒ Female | AKA | | | | | | |

| RACE | ☒ White | ☐ Asian | ☐ Black | ☐ Native American | ☐ Unknown |
|---|---|---|---|---|---|

| ETHNICITY | ☐ Hispanic | ☒ Non-Hispanic | ☐ Unknown |
|---|---|---|---|

| HAIR COLOR | ☐ GRY (Gray) | ☐ RED (Red/Aubn.) | ☐ SDY (Sandy) | ☐ BLU (Blue) | ☐ PLE (Purple) | ☐ BRO (Brown) |
|---|---|---|---|---|---|---|
| | ☐ BLK (Black) | ☐ ONG (Orange) | ☒ WHI (White) | ☐ XXX (Unk/Bald) | ☐ GRN (Green) | ☐ PNK (Pink) |
| | ☐ BLN (Blonde / Strawberry) | | | | | |

| EYE COLOR | ☐ BLK (Black) | ☐ BLU (Blue) | ☒ BRO (Brown) | ☐ GRN (Green) | ☐ GRY (Gray) |
|---|---|---|---|---|---|
| | ☐ HAZ (Hazel) | ☐ MAR (Maroon) | ☐ PNK (Pink) | ☐ MUL (Multicolored) | ☐ XXX (Unknown) |

| DNA | ☐ YES ☒ NO | DNA Location | | WEIGHT (lbs.) |
|---|---|---|---|---|
| FBI Number | | MNU Number | | **275** |

| Defendant Fingerprinted: | ☐ YES ☐ NO | | Ft. HEIGHT In. |
|---|---|---|---|
| Fingerprint Classification: | | | **5**   **7** |

## DEFENDANT VEHICLE INFORMATION

| Plate # | State | Hazmat ☐ | Registration Sticker (MM/YY) | Comm'l Veh. Ind. ☐ | School Veh. ☐ | Oth. NCIC Veh. Code | Reg. same as Def. |
|---|---|---|---|---|---|---|---|
| VIN | | Year | Make | Model | Style | Color | ☐ |

Office of the attorney for the Commonwealth   ☐ Approved   ☐ Disapproved Because: _____

(The attorney for the Commonwealth may require that the complaint, arrest warrant affidavit, or both be approved by the attorney for the Commonwealth Prior to filing. See Pa.R.Crim.P. 507.)

_____   _____   _____
(Name of the attorney for the Commonwealth)   (Signature of the attorney for the Commonwealth)   (Date)

I, **BRIAN BROWN**   **304021**   **140**
(Name of the Affiant)   PSP/MPOETC -Assigned Affiant ID Number and Badge #

of **RADNOR TWP PD**   **PA0232600**
(Identify Department or Agency Represented and Political Subdivision)   (Police Agency ORI Number)

do hereby state: (check appropriate box)

1. ☒ I accuse the above named defendant who lives at the address set forth above

   ☐ I accuse the defendant whose name is unknown to me but who is described as _____

   ☐ I accuse the defendant whose name and popular designation or nickname are unknown to me and whom I have therefore designated as John Doe or Jane Doe

   with violating the penal laws of the Commonwealth of Pennsylvania at []
   (Subdivision Code)   (Place-Political Subdivision)

   **416 S ITHAN AV   VILLANOVA, PA 19085**

in _____ County [_____] on or about **08/13/2022**
(County Code)   (Offense Date)

 **POLICE CRIMINAL COMPLAINT**

| Docket Number: | Date Filed:<br>08/13/2022 | OTN/LiveScan Number<br>**R337845-4** | | Complaint<br>9587 | Incident Number<br>**RT-22-10846** |
|---|---|---|---|---|---|
| Defendant Name | First:<br>**SIMONA** | Middle: | | Last:<br>**OCKLEY** | |

2. I ask that a warrant of arrest or a summons be issued and that the defendant be required to answer the charges I have made.

3. I verify that the facts set forth in this complaint are true and correct to the best of my knowledge or information and belief. This verification is made subject to the penalties of Section 4904 of the Crimes Code (18 Pa.C.S. § 4904) relating to unsworn falsification to authorities.

4. This complaint consists of the preceding page(s) numbered _____ through _____ .

5. I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

The acts committed by the accused, as listed and hereafter, were against the peace and dignity of the Commonwealth of Pennsylvania and were contrary to the Act(s) of the Assembly, or in violation of the statutes cited.
**(Before a warrant of arrest can be issued, an affidavit of probable cause must be completed, sworn to before the issuing authority, and attached.)**

BRIAN BROWN

_____     **8/13/2022**     _____
                                        (Date)                    (Signature of Affiant)

AND NOW, on this date _____ I certify that the complaint has been properly completed and verified.

An affidavit of probable cause must be completed before a warrant can be issued.

32-1-27
_____     _____
(Magisterial District Court Number)      (Issuing Authority)

SEAL

---

AOPC 412A - Rev. 12/21

 **POLICE CRIMINAL COMPLAINT**

| Docket Number: | Date Filed:<br>08/13/2022 | OTN/LiveScan Number<br>R337845-4 | | Complaint<br>9587 | Incident Number<br>RT-22-10846 |
|---|---|---|---|---|---|
| **Defendant Name** | First:<br>SIMONA | Middle: | | Last:<br>OCKLEY | |

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.)

| Inchoate Offense | ☐ | Attempt<br>*18 901 A* | ☐ | Solicitation<br>*18 902 A* | ☐ | Conspiracy<br>*18 903* | | Number of Victims Age 60 or Older _____ | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| ☒ | 1 | 3503 | A1I | of the | 18 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lead?** | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Code | UCR/NIBRS Code | |

| PennDOT Data<br>(if Applicable) | Accident<br>Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (Include the name of the statute or ordinance):
**Crim Tres-Enter Structure**

Acts of the accused associated with this Offense:
**The actor knowing that he was not licensed or privileged to do so, entered a building or occupied structure or separately secured or occupied portion thereof, namely, 416 S. ITHAN in violation of Section 3503(a)(1) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa. C.S. 3503(a)(1).**

| Inchoate Offense | ☐ | Attempt<br>*18 901 A* | ☐ | Solicitation<br>*18 902 A* | ☐ | Conspiracy<br>*18 903* | | Number of Victims Age 60 or Older _____ | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| ☐ | 2 | 3502 | A4 | of the | 18 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lead?** | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Code | UCR/NIBRS Code | |

| PennDOT Data<br>(if Applicable) | Accident<br>Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (Include the name of the statute or ordinance):
**Burglary - Not Adapted for Overnight Accommodation, No Perso**

Acts of the accused associated with this Offense:
**Burglary - Not Adapted for Overnight Accommodation**

| Inchoate Offense | ☐ | Attempt<br>*18 901 A* | ☐ | Solicitation<br>*18 902 A* | ☐ | Conspiracy<br>*18 903* | | Number of Victims Age 60 or Older _____ | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|

| ☐ | 3 | 3503 | B1I | of the | 18 | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| **Lead?** | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Code | UCR/NIBRS Code | |

| PennDOT Data<br>(if Applicable) | Accident<br>Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (Include the name of the statute or ordinance):
**Def Tres Actual Communication Tc**

Acts of the accused associated with this Offense:
**The actor knowing that he was not licensed or privileged to do so, entered or remained in a place, namely, 416 S. ITHAN as to which notice against trespass was given by actual communication to the actor, namely, COURT ORDER in violation of Section 3503(b)(1)(i) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa. C.S. -3503(b)(1)(i).**

 **POLICE CRIMINAL COMPLAINT**

| Docket Number: | Date Filed: 08/13/2022 | OTN/LiveScan Number R337845-4 | | Complaint 9587 | Incident Number RT-22-10846 |
|---|---|---|---|---|---|

| Defendant Name | First: SIMONA | Middle: | Last: OCKLEY |
|---|---|---|---|

The acts committed by the accused are described below with each Act of Assembly or statute allegedly violated, if appropriate. When there is more than one offense, each offense should be numbered chronologically.

(Set forth a *brief* summary of the facts sufficient to advise the defendant of the nature of the offense(s) charged. A citation to the statute(s) allegedly violated, without more, is not sufficient. In a summary case, you must cite the specific section(s) and subsection(s) of the statute(s) or ordinance(s) allegedly violated.)

| Inchoate Offense | ☐ | Attempt 18 901 A | ☐ | Solicitation 18 902 A | ☐ | Conspiracy 18 903 | Number of Victims Age 60 or Older _____ |
|---|---|---|---|---|---|---|---|

| ☐ | 4 | 3304 | A1 | of the | 18 | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Lead? | Offense # | Section | Subsection | | PA Statute (Title) | Counts | Grade | NCIC Code | UCR/NIBRS Code |

| PennDOT Data (if Applicable) | Accident Number | | ☐ Interstate | ☐ Safety Zone | ☐ Work Zone |
|---|---|---|---|---|---|

Statute Description (Include the name of the statute or ordinance):
**Crim Misch/Dmg Prop Intent, Reckless, Or Neglig**

Acts of the accused associated with this Offense:
**The actor intentionally damaged tangible property of another, namely in the employment of fire, explosives, or other dangerous means listed in Section 3302(a)(relating to causing or risking catastrophe) causing a pecuniary loss in excess of $500.00 in violation of Section 3304 (a)(1) and (b) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa. C.S. -3304(a)(1) and (b), as amended. The actor damaged tangible property of another, intentionally, recklessly, or by negligence in the employment of fire, explosives, or other dangerous means listed in Section 3302(a)(relating to causing or risking catastrophe) causing or risking catastrophe) in violation of Section 3304 (a)(1) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa. C.S. -3304(a)(1), as amended. The actor intentionally damaged tangible property of another, namely in the employment of fire, explosives, or other dangerous means listed in Section 3302(a)(relating to causing or risking catastrophe) causing a pecuniary loss in excess of $5,000.00 or causing a substantial interruption or impairment of public communications, transportation, supply of water, gas or power, or other public service, in violation of Section 3304 (a)(1) and (b) of the Pennsylvania Crimes Code, Act of December 6, 1972, 18 Pa. C.S. -3304(a)(1) and (b), as amended.**



# Confidential Information Form
# Criminal Complaint

**Complete the defendant's SSN Information if known. If this form is submitted as part of a Police Criminal Complaint, the NCIC Cautions/Medical Conditions and Scars/Marks/Tattoos should also be completed if known.**

| Docket Number: | Date Filed:<br>08/13/2022 | OTN/LiveScan Number<br>**R337845-4** | | Complaint<br>9587 | Incident Number<br>RT-22-10846 |
|---|---|---|---|---|---|
| **Defendant Name** | First:<br>**SIMONA** | Middle: | | Last:<br>**OCKLEY** | |

| NCIC Cautions and Medical Conditions (Check up to 9) |
|---|

| ☐ 00 | ☐ 20 | ☐ 50 | ☐ 70 | ☐ 01 |
|---|---|---|---|---|
| ☐ 05 | ☐ 25 | ☐ 55 | ☐ 80 | _____ |
| ☐ 10 | ☐ 30 | ☐ 60 | ☐ 85 | _____ |
| ☐ 15 | ☐ 40 | ☐ 65 | ☐ 90 | |

| Scars, Marks, Tattoos<br>NCIC Codes | |
|---|---|

Pursuant to the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania*, the Confidential Information Form shall accompany a filing where confidential information is required by law, ordered by the court, or otherwise necessary to effect the disposition of a matter. This form, and any additional pages, shall remain confidential, except that it shall be available to the parties, counsel of record, the court, and the custodian. This form, and any additional pages, must be served on all unrepresented parties and counsel of record.

| This Information Pertains To: | Confidential Information: | Reference in Filing: |
|---|---|---|
| SIMONA OCKLEY<br>(full name of adult)<br>OR<br>This information pertains to a minor with the Initials of _____ and the full name of<br><br>(full name of minor)<br>and date of birth of: _____ | Personal Identification Information | Alternative Reference:<br>SSN1  SSN1A<br>Alternative Reference:<br>FAN1<br>Alternative Reference:<br>DLN1<br><br>Alternative Reference:<br>SID1 |

Additional page(s) attached. _____ total pages are attached to this filing.

I certify that this filing complies with the provisions of the *Case Records Public Access Policy of the Unified Judicial System of Pennsylvania* that require filing confidential information and documents differently than non-confidential information and documents.

_____     _____
Signature of Attorney or Affiant                    Date

Name: _ **BRIAN BROWN**

Attorney Number: (if applicable) _____

Address: **RADNOR TWP PD**

Telephone: _____

**301 IVEN AV**
**WAYNE, PA 19043**

Email: _____



# POLICE CRIMINAL COMPLAINT

| Docket Number: | Date Filed: 08/13/2022 | OTN/LiveScan Number R337845-4 | Complaint 9587 | Incident Number RT-22-10846 |
|---|---|---|---|---|
| Defendant Name | First: SIMONA | Middle: | Last: OCKLEY | |

## AFFIDAVIT OF PROBABLE CAUSE

On 08/12/2022 the homeowner of 416 S. Ithan Av. advised of an unwanted subject living in the residence. The subject is known as Simona Ockley and no longer resides at the listed address. The residence was condemned in May of 2022 and Ockley was not allowed to reside in the residence. Ockley sold the residence on July 15th, 2022, to the current homeowner and was advised she could remove personal items from the residence only with permission from the new property owner and only until 4:00pm.
On August 9th, 2022, the property owner was advised Ockley, with the assistance of a taxi driver, broke all locks off of all the doors with a hammer, and removed all of the notice of condemnation from the building. Ockley refused to leave the home and locked the owner/construction crew out of the home. Ockley informed the homeowner she was coming back to live in the residence. Ockley, within the next couple of days, continued to interfere with construction crews and refused to allow access to the home by inspectors. On 8/12/22 the property owner received a phone call advising that PECO service was taken out of his name and put into Ockley's ( the PECO was turned off, since the home is being demolished in 2-3 weeks). When Ockley changed the account, the scheduled meter disconnect was also terminated. Ockley also attempted to restore water service by calling Aqua and even had Verizon at the home attempting to restore service. Ockley has been living in the home, which is condemned and she does not have permission from the current homeowner.
On 8/12/22, the homeowner requested Radnor Police respond to the address and speak to Ockley. Ockley was indeed living in the home the past few days. Ockley did not appear to be making any progress with removing items from the home. The house was extremely hot, has no running water, and Ockley was still in a hospital gown (she was discharged from the hospital on 8/8/22). The house only had a small pathway to a couch, where Ockley appeared to be sleeping and trash bags on both sides of the path. Ockley was on the phone with Aqua when police arrived, trying to restore service. Radnor Police attempted to explain to Ockley that she could not live in the residence, but she continually refused to leave. Ockley was also sitting in her own fecal matter. It appeared Ockley did not want to take care of herself, so we had Mobile Crisis respond. An involuntary commitment was signed and Ockley was transported to the hospital for assistance. Prior to hospital transport, Ockley was advised several times she has no right to the property and can't live in it. Ockley was advised, several times, if she returned to the property, she would be considered trespassing.
On 8/13/22, at the request of the homeowner, Ofc. Cocco checked on the residence. While checking the residence, the plywood erected by the homeowner, preventing access to the home, was unscrewed from the garage. No access to the house was gained through the garage, but the attempt was made. As Ofc. Cocco went to check the rear of the residence, Ockley was observed sitting on the back porch in her hospital gown. Ockley advised she was waiting for a friend to come and help her get into the house. Ockley was advised she is not allowed to be on the property or house, as she was advised on 8/12/22. Ockley refused to leave the residence and was subsequently arrested.
Based on the aforementioned facts, I request Simona Ockley answer to the charges brought against her.


| Docket Number: | Date Filed: 08/13/2022 | OTN/LiveScan Number R337845-4 | Complaint 9587 | Incident Number RT-22-10846 |
|---|---|---|---|---|
| **Defendant Name** | First: SIMONA | Middle: | Last: OCKLEY | |

## AFFIDAVIT OF PROBABLE CAUSE CONTINUATION

I, <u>BRIAN BROWN</u>, BEING DULY SWORN ACCORDING TO THE LAW, DEPOSE AND SAY THAT THE FACTS SET FORTH IN THE FOREGOING AFFIDAVIT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

I CERTIFY THAT THIS FILING COMPLIES WITH THE PROVISIONS OF THE CASE RECORDS PUBLIC ACCESS POLICY OF THE UNIFIED JUDICIAL SYSTEM OF PENNSYLVANIA THAT REQUIRE FILING CONFIDENTIAL INFORMATION AND DOCUMENTS DIFFERENTLY THAN NON-CONFIDENTIAL INFORMATION AND DOCUMENTS.

_____
(Signature of Affiant)

Sworn to me and subscribed before me this _____day of _____, _____.

_____ Date _____, Magisterial District Judge

My commission expires first Monday of January,

SEAL

AOPC 411C - Rev. 12/21

# Public Records Exemptions

Enclosed please find a copy of the response documents for your public records request. The following information is provided to explain the process employed to review and produce the response documents.

| Reason | Description | Pages |
|--------|-------------|-------|
| Personal Identification Information | Right to Know Law, Section 708(b)(6)(i)(A) | 1,5 |

RGLP-JB000068