# Exhibit 52

*Plaintiff's Psychological and Competency Evaluation
August 22, 2022*

| | |
|---|---|
| NAME: Simona Ockley | DATE OF INTERVIEW: 08/22/22 |
| AGE: 61 | EVALUATOR: Dr. Marc Gramatges |
| D.O.B.: 12/09/60 | PLACE OF INTERVIEW: GWH |
| INDICTMENT NO.: R337845-1 | |

TO: Department of Diagnostic Services
Delaware County Court House
201 West Front Street
Media, PA 19063

## PSYCHOLOGICAL AND COMPETENCY EVALUATION

### Identifying Information
Ms. Ockley was a 61-year-old Romania female residing at George W. Hill Correctional Facility. She was charged with 3503 Criminal Trespass - Enter Structure, 3502 Burglary - Not Adapted for Overnight Accommodation No Person Present, 3503 Defiant Trespass Actual Communication To, and 3304 Criminal Mischief/Damage Property Intentionally, Recklessly, Or Negligently. Ms. Ockley reported that she was incarcerated due to the listed charges.

### Purpose of Evaluation
The purpose of this evaluation was to render opinion regarding mental health diagnosis, treatment recommendations, and competency to proceed with the legal process. Competency is to determine whether Ms. Ockley has sufficient present ability to consult with their lawyer with a reasonable degree of rational understanding and whether they have rational as well as factual understanding of the proceedings. All opinions expressed in this report are within a reasonable degree of psychological certainty.

### Informed Consent
Ms. Ockley was advised that the information obtained during the evaluation would not be confidential and would be used to prepare a report for the court. They were informed about the purpose, nature, and anticipated use of the evaluation; who will have access to the information; associated limitations on privacy, confidentiality, and privilege; and the voluntary or involuntary nature of participation including potential consequences of participation or nonparticipation.

### Sources of Information
- 08/13/22 CR-178-22 Police Criminal Complaint
- biopsychosocial history
- Mini-Mental State Examination 2nd Edition (MMSE-2)
- Personality Assessment Screener (PAS)
- Review of prison medical chart
- Structured interview with Ms. Ockley

PLF 0141

### Mental Status
Ms. Ockley was alert and oriented to person, place, time, and situation though not the exact city. There were challenges with delayed recall (i.e., 1/3 verbal stimulus). Attention and calculation, language production with naming, language production with repetition, comprehension with simple directions, basic reading, basic writing, and basic visual motor abilities were intact. Overall Mental Status Examination was in the average range for her age and education (i.e., master's degree). Insight and judgment were intact. Mood was distressed with congruent affect and at times tearful accent. There were no reported auditory or visual hallucinations. There was no reported suicidal/homicidal intent.

### Behavioral Observations
Ms. Ockley was interviewed at George W. Hill Correctional Facility. She was met in the medical center. She was dressed in a prison uniform, appeared older than her age, and with disheveled hair. She ambulated with a four-point walker due to a slow shuffling gait. Speech was normal in production with a heavy Romanian accent. She indicated understanding and agreement to this evaluation. She was met with for approximately an hour and a half. She was able to maintain eye contact throughout interview with no psychomotor agitation. Conversational speech was coherent without disturbance.

### Interview

### Developmental History
Ms. Ockley grew up in Romania and lived there until 1998. She grew up with her parents and siblings. Childhood was very good with friends, and she was involved in volleyball and rowing. There was no history of developmental delays. There was no history of causing harm to property, animals, others, or fire setting. There was no history of physical, emotional, or sexual abuse. There was no history of placements.

### Family History
Father, age 94, graduated high school and retired from being a trucker. He did not have any health, substance use, or legal challenges. Mother, age 86, graduated high school and retired from being a tailor. She did not have any health, substance use, or legal challenges. Brother, age 67, obtained a master's degree in engineering and worked as an engineer. He did not have any health, substance use, or legal challenges. Ms. Ockley had no children. There was no other reported family health, substance use, or legal challenges.

### Medical History
Ms. Ockley had no reported significant childhood physical health concerns. In 2022 she had a displaced left leg tibia. On 04/26/22 she had seven pins put in her leg. She was still recovering from the operation.

Prior to Ms. Ockley's current charges, there was no history of major depression, anxiety, mania, psychotic features, trauma symptoms, obsessive-compulsive traits, suicide attempts, or mental health hospitalizations. There was no history of previous mental health treatment. She was brought to crisis as part of her arrest and was currently experiencing extreme distress over her housing/legal situation.

### Educational/Occupational History
Ms. Ockley did not have a history of repeating grades, being suspended, or being expelled. She graduated high school then obtained her bachelor's and master's degrees in mechanical engineering in Romania. She also did three years of school in Delaware County Community College. In Romania and in the United States she did contracting work to include work for cellphone towers. She also did various other engineering jobs to include

PLF 0142

waste management. She denied ever being fired. She last worked in 2019 before COVID-19. She denied working since and was planning on moving back to Romania.

### Legal History
This was Ms. Ockley's first set of charges.

### Substance Use History
Ms. Ockley did not have a history of past substance use or treatment history.

### Social History
Ms. Ockley lived with her parents in Romania until she went to college. Afterwards she lived by herself. She moved to the United States in 1999 for work. In 2000 she met her husband. He worked as an electrical engineer for the US Navy. It was a good marriage, but he had heart problems and died in the hospital in 2005. She then remained single. She continued to live in her home that was owned by her family since 1952. She continued to pay taxes and take care of the house. She began to sell the house in November 2021 but there were delays due to COVID-19, the wintertime, and her having surgery in April 2022.

Ms. Ockley sold her property to a builder but was unaware that she was being tricked into signing paperwork while she was in the hospital for leg surgery to move out earlier than she expected. In July 2022 she had to go from the hospital to go to court where she was given clearance to continue to go to her home until September 2022. When she got to her home in August 2022, she was locked out while still in a hospital gown. She kept trying to get back into her home to get her possessions, "My medication, my therapy equipment, everything is in the house." She had to go back to court on 08/09/22 to get paperwork for clearance but still could not get into it the house due to the builder locks. She had to get a locksmith to regain entry into her house though there still was no water or electricity. The next day she went to work to get water and electricity back, but the police arrived. They placed her inpatient at Crozer as a psychiatric patient. She was released the following morning, August 13th, and she went back to her home and the doors and windows were boarded up. The police returned and arrested her. She then had a video arraignment and was told she needed to have evaluations. All of her belongings are still in the home.

Ms. Ockley's current plan is to collect her belongings and move back to Romania. She had few friends, but her family was not local. Personal interests were travel and spending time with friends. Personal strengths were organizing and engineering. Areas to improve were her leg and losing weight.

### Assessments

### Personality Assessment Screener (PAS)
The PAS is a self-administered, objective questionnaire designed to provide rapid screening for a broad range of clinical issues. The PAS was developed with reference to its parent instrument, the Personality Assessment inventory (PAI). It can serve as a stand-alone screening instrument to identify items that were maximally sensitive to the broad range of clinical issues measured the parent PAI. Overall results from the PAS showed low levels of clinical concern. A low response rate may indicate a guarded response style with a desire to show good mental health with few clinical concerns.

PLF 0143

## Discussion

Ms. Ockley denied any past psychiatric history which was consistent with her PAS showing low levels of clinical concern. A low response rate may indicate a guarded response style with a desire to show good mental health with few clinical concerns. However, Ms. Ockley was adamant that she did not have previous mental health concerns but was currently emotionally overwhelmed by her housing/legal situation. She wanted assistance with getting her possessions back and getting out of jail.

## Competency Status

The following three competency-related abilities were addressed regarding capacity to proceed with the legal process. These were determined through interview, account of history, and personal/generalized decision-making questions.

### Capacity to Communicate with Counsel

Ms. Ockley expressed reasonable expectations of her attorney, what her attorney expected from him, and how counsel works for the defendant. She showed the ability to understand counsel's inquires, settle disagreements, and was capable of responding to counsel's inquires in a manner that provides relevant information for the defense. She was able to provide a consistent account of events relevant to charges and a defense. Ms. Ockley also appeared to be able to manage the demands (e.g., stress, maintaining demeanor) of the legal process and could testify if necessary.

### Factual Understanding of the Proceedings

Ms. Ockley was able to express understanding of charges, court's ability to decide guilt or innocence, and that a trial may result in punishment. She was able to express understanding of various ways that a defendant may plea (i.e., guilty, not guilty, plea bargain, insanity). She was able to express different possible sentences with this nature and severity. She could express roles of various participants in the legal process (i.e., judge, defense counsel, prosecution, jury, probation), the risks of speaking to the prosecution without attorney representation, and the general legal process. She was unsure the role of the public defender but, after it was explained, she noted that she currently had an attorney, Kenneth Russell.

### Rational Understanding of the Proceedings

Ms. Ockley's understanding of the legal process was rational and not distorted by delusional beliefs. She was appropriately motivated to further her defense and had reasoning ability sufficient to process relevant information during decision making. She was able to express the nature and risks of testifying, plea bargains in relation to her current charges, and the most likely outcome of the legal process to include best and worst-case scenarios. There was no history of any previous psychotic experiences or unmanageable behavior in the courtroom.

## Conclusions and Recommendations

Currently Ms. Ockley met the criteria for:

- (F43.23) Adjustment Disorder with Mixed Anxiety and Depressed Mood

**PLF 0144**

At the time of this report, Ms. Ockley had sufficient psychological and cognitive capacity to proceed with the legal process. She met sufficient criteria for capacity to communicate with counsel and have factual and rational understanding of court proceedings. Based upon this she, to a reasonable degree of certainty, had competency to proceed with the legal process.

Ms. Ockley's adjustment disorder should resolve upon elimination of the stressors (i.e., resolving her housing/legal situation). She may benefit from solution focused outpatient psychotherapy to process the events as they are occurring. If her anxiety and depressive symptoms persist, then she would benefit from outpatient psychotherapy. Please contact The Department of Diagnostic Services for further questions or concerns.

- Please accept typed signatures as valid

---

Marc A Gramatges, PsyD, ABPP, CBIS
Neurorehabilitation Psychologist
License #PS017448

PLF 0145