## Exhibit 57

## Rockwell Glynn Petition for Special Injunctive Relief

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

## COVER SHEET - NOTICE OF FILING OF MOTION OR PETITION UNDER LOCAL RULES OF CIVIL PROCEDURE

CASE CAPTION:

ROCKWELL GLYNN, L.P.

vs.

SIMONA OCKLEY

CIVIL CASE NO.

CV-2022-004275

PETITION FOR SPECIAL INJUNCTION

NATURE OF MATTER FILED: (*please check one*)

[✔] Petition Pursuant to Rule 206.1    [ ] Response to Petition    [ ] Motion for Judgment on the Pleadings Pursuant to Rule 1034(a)

[ ] Motion Pursuant to Rule 208.1    [ ] Response to Motion    [ ] Summary Judgment Pursuant to Rule 1035.2

[ ] Family Law Petition/Motion Pursuant to Rule 206.8

## FILING PARTY IS RESPONSIBLE FOR SERVICE OF THE RULE RETURNABLE DATE OR HEARING DATE UPON <u>ALL</u> PARTIES

A motion or petition was filed in the above captioned matter on the **2?** day of **June**, **2022**, which:

[ ] Requires you, Respondent, to file an Answer within twenty (20) days of the above date to this notice, or risk the entry of an Order in favor of the Petitioner. Answers must be filed and time stamped by the Office of Judicial Support by 4:30 PM on the following date _____ _____, _____.

[✔] Requires all parties, to appear at a hearing/conference on the _____ day of _____, _____, at _____ in Courtroom _____, Delaware County Courthouse, Media, Pennsylvania. At this hearing/conference you must be prepared to present all testimony and/or argument, and must ensure that your witnesses will be present.

[ ] Was timely answered, thus requiring the scheduling of the following hearing in the above captioned matter on: _____ _____, _____ at 10:00 AM in Courtroom _____.

At this hearing, all parties must be prepared to present all testimony and/or argument and **must ensure that their witnesses will be present.**

[ ] Qualifies as an Uncontested Motion or Petition, and as such requires neither an answer from the Respondent nor the scheduling of a hearing in this matter.

[ ] Has been assigned to Judge _____.

## FOR OFFICE USE ONLY

Mailing date: _____     Processed by: _____

Copying Prohibited

| ROCKWELL GLYNN, L.P. | : | Court of Common Pleas |
|---|---|---|
| 123 E. State Street | : | Delaware County, PA |
| Media, PA 19063 | : | |
| Plaintiff | : | No. CV-2022-004275 |
| vs. | : | |
| SIMONA OCKLEY | : | |
| 416 South Ithan Road | : | |
| Villanova, PA 19085 | : | |
| Defendant | : | |

## RULE TO SHOW CAUSE WHY
## SPECIAL INJUNCTION SHOULD NOT ISSUE

Upon consideration of the Verified Complaint in this matter and the Petition of Plaintiff

for a Special Injunction, **IT IS ORDERED** that Defendant show cause before this Court on the

_____ day of June, **2022,** at _____ **AM/PM** in Courtroom _____, or as soon

thereafter as counsel can be heard, why a Special Injunction providing the relief sought in the

accompanying Petition should not be entered; and

**IT IS FURTHER ORDERED** that Plaintiff shall cause a copy of this Rule, along with

a copy of the Complaint and the aforesaid Petition and accompanying papers, to be served upon

Defendant on or before _____.

**BY THE COURT:**

_____
**J.**

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA

| | |
|---|---|
| ROCKWELL GLYNN, L.P. | : Court of Common Pleas |
| 123 E. State Street | : Delaware County, PA |
| Media, PA 19063 | : |
| Plaintiff | : No. CV-2022- |
| vs. | : |
| | : |
| SIMONA OCKLEY | : |
| 416 South Ithan Road | : |
| Villanova, PA 19085 | : |
| Defendant | : |

## SPECIAL INJUNCTION ORDER

AND NOW, this _____ day of June, 2022, upon consideration of Plaintiff's Verified Complaint, Plaintiffs Petition for Special Injunction, and the accompanying papers in support thereof and having determined that:

1.    It is appearing from the record that the Complaint and the moving papers for Plaintiff's Motion for Injunctive Relief were personally served on Defendant, Simona Ockley, on June \_\_\_, 2022; and

2.    The Court having heard the argument of counsel for Plaintiff and any opposition filed and/or any argument on behalf of Defendant; and

3.    The Court having concluded that Plaintiff will suffer irreparable harm and loss if the Deed signed by Defendant on December 13, 2021 is not recorded of record; and,

4.    Plaintiff does not have adequate remedy at law; and

5.    Greater injury will be inflicted upon Plaintiff by the denial of temporary injunctive relief than would be inflicted upon Defendant by the granting of such relief, it is therefore:

**ORDERED, ADJUDGED, and DECREED** as follows:

Copying Prohibited

1. Upon Plaintiff's payment of the purchase price of $550,000.00 set forth in the October 29, 2022 Agreement of Sale (less Plaintiff's deposit of $20,000.00), together with all usual and customary closing costs including transfer taxes, the Hollister Land Services, LLC Company shall immediately record the December 13, 2022 Deed signed Defendant, thereby transferring title of 416 South Ithan Avenue, Villanova, PA 19085 ("the Premises") to Plaintiff.

2. At Defendant's option, Defendant's personal property shall remain at the Premises for a period of not more than sixty (60) days; alternatively, Defendant may direct Plaintiff to remove her personal property to a storage locker, with all costs for removal and storage to be bourne by Defendant.

6. This Special Injunction shall continue in effect until further Order of this Court.

7. A further hearing is scheduled for _____, 2022 at _____ a/p.m in Courtroom _____, Delaware County Courthouse

**BY THE COURT:**

_____
                                                                              **J.**

Copying Prohibited

LEE M. HERMAN, ESQUIRE
Attorney for Plaintiff
Attorney I.D. No. 27570
280 N. Providence Road, Suite 4
Media, Pennsylvania 19063
(610) 891-6500
Fax (215) 689-1930
lmh@lmhlaw.com

| | | |
|---|---|---|
| ROCKWELL GLYNN, L.P. | : | Court of Common Pleas |
| 123 E. State Street | : | Delaware County, PA |
| Media, PA 19063 | : | |
| Plaintiff | : | No. CV-2022-004275 |
| vs. | : | |
| | : | |
| SIMONA OCKLEY | : | |
| 416 South Ithan Road | : | |
| Villanova, PA 19085 | : | |
| Defendant | : | |

## PETITION FOR SPECIAL INJUNCTION

Plaintiff, by its undersigned counsel, respectfully petitions this Court for an Order granting a Special Injunction pursuant to Pennsylvania Rule of Civil Procedure 1531, and in support thereof alleges as follows:

1. As set forth more fully in the Complaint, a copy of which is attached hereto as Exhibit A, Defendant has failed to attend several closings scheduled for 416 South Ithan Avenue, Villanova, PA 19085 ("the Property").

2. As is further set forth in the Complaint, Defendant failed to attend settlement on numerous occasions; Plaintiff is ready, willing and able to complete closing, and has agreed to construct a new residence at the property for Plaintiff's Purchaser.

3. As is further set forth in the Complaint, in return for Plaintiff releasing its Deposit to Defendant so that Defendant might pay her past due municipal, school and county taxes and remove

the Property from the December 16, 2021 Tax sale, Defendant executed a Deed to Plaintiff, which is currently held in Escrow by Plaintiff's title company.

4.    As is set forth in the attached Certification of Greg Lingo, the Manager of Rockwell Glynn GP, LLC, the sole General Partner of Plaintiff, Rockwell Glynn, LP, Defendant no longer resides in the Property, but is a patient at a local nursing facility; further, the Property is uninhabitable, having been declared "Unsafe for Human Occupancy or Use" by Radnor Township on April 21, 2022.

5.    It is unfair and inequitable for Defendant to retain title to her property, and to refuse to attend a settlement, which was twice extended at Defendant's request from the original closing date of January 31, 2022 to April 17, 2022, and then to June 10, 2022.

6.    Plaintiff has notified the Defendant that she is in default of her obligations under the October 29, 2021 Agreement of Sale.

7.    Despite receiving the aforementioned Notices of Default, Defendant has refused to comply with Plaintiff's reasonable demands, specifically to either attend a settlement or to authorize the release of the Deed she signed on December 13, 2021, and which is currently held by the Plaintiff's Title Company, Hollister Land Services, LLC.

8.    On June 23, 2022, Plaintiff filed its verified Complaint with this Court. A true and correct copy of the Complaint is attached hereto as Exhibit A and made a part hereof.

9.    On June 24, 2022, Plaintiff caused a copy of the verified Complaint, with exhibits, and this Petition, with exhibits, to be served by hand delivery upon Defendant.

10.    Unless the requested Special Injunction is granted, Plaintiff will suffer immediate and irreparable harm which cannot be compensated by damages by reason of the following:

Copying Prohibited

(a)    Defendant's failure to authorize the release of the Deed she signed on December 13, 2021 which is currently held in escrow by the Title Company;

(b)    Defendant's failure to attend a settlement as she is contractually obligated to do pursuant to the October 29, 2021 Agreement of Sale;

(c)    Plaintiff's Purchaser will lose his rate lock on June 24, 2022 for the purchase of the Premises and the Plaintiff's construction of a new residence at the Premises

11.    Plaintiff has offered to allow Defendant to store her personal property at the Premises for up to sixty (60) days after settlement at no cost to Defendant, or, alternatively to move Defendant's personal property to a secure storage facility.

12.    Plaintiff has no adequate remedy at law.

13.    Defendant will not suffer any appreciable injury if this Petition is granted because she will receive the proceeds of the sale pursuant to October 29, 2021 Agreement, and will have access to all of her personal property after closing.

14.    Defendant's wrongful conduct is actionable; the rights of Plaintiff are clear; and Plaintiff is likely to succeed on the merits of its claims.

WHEREFORE, Plaintiff respectfully prays that this Honorable Court enter an Order in the form attached hereto.

Lee M. Herman, Esq.
Attorney for Plaintiff,
Rockwell Glynn, LP

## VERIFICATION

Greg Lingo hereby states that he is Manager of Rockwell Glynn GP, LLC, the sole General Partner of Plaintiff, Rockwell Glynn, LP, that he is authorized to take this Verification, and that the statements made in the foregoing Motion for Special Injunction are true and correct to the best of his knowledge, information and belief.

The undersigned understands that this statement is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

<div style="text-align: right;">

_____
GREG LINGO
Manager, Rockwell Glynn GP, LLC
Sole General Partner of Plaintiff,
Rockwell Glynn, LP

</div>

DATE: 6/23/2022

Copying Prohibited

LEE M. HERMAN, ESQUIRE
Attorney for Plaintiff
Attorney I.D. No. 27570
280 N. Providence Road, Suite 4
Media, Pennsylvania 19063
(610) 891-6500
Fax (215) 689-1930
lmh@lmhlaw.com

| | |
|---|---|
| ROCKWELL GLYNN, L.P.<br>123 E. State Street<br>Media, PA 19063 | : Court of Common Pleas<br>: Delaware County, PA<br>: |
|                 Plaintiff | : No. CV-2022-004275 |
| vs. | : |
| | : |
| SIMONA OCKLEY<br>416 South Ithan Road<br>Villanova, PA 19085 | :<br>:<br>: |
|                 Defendant | : |

## CERTIFICATION OF GREG LINGO

COMMONWEALTH OF PENNSYLVANIA :
                               :
COUNTY OF DELAWARE          :

Greg Lingo, being duly sworn, according to law deposes and states as follows:

      1.     I am Manager of Rockwell Glynn GP, LLC, the sole General Partner of Plaintiff, Rockwell Glynn, LP ("Plaintiff") and take this Certification based on my personal knowledge.

      2.     This Certification is taken in support of Plaintiff's Motion for Special Injunction, which seeks an Order of Court permitting the recording of a Deed signed by Defendant, Simona Ockley on December 13, 2021, which is currently held in escrow by Plaintiff's title company, Hollister Land Services, LLC.

      3.     As is set forth in the Complaint, Plaintiff and Defendant, Simona Ockley ("Defendant") signed an Agreement of Sale dated October 20, 2022 for the purchase of 519 S. Ithan Avenue, Radnor, Delaware County, Pennsylvania ("the Premises"). Plaintiff deposited $20,000.00 as an initial deposit under the terms of the Agreement. Settlement was to take place no later than January 31, 2022.

4.      In December 2020, Plaintiff learned that the Premises was to be sold by the Delaware County Tax Claim Bureau at its December 16, 2021 sale as Defendant had not kept current on her municipal, school and county taxes.

5.      Plaintiff agreed to release its Deposit to Defendant so that she could make a payment to the Tax Claim Bureau and remove the Premises from the December 16, 2021 tax sale.  In return, Defendant agreed to sign a Deed which the title company would hold in escrow pending settlement.

6.      Settlement did not take place by January 31, 2022, as required by the Agreement. At Defendant's request, we extended the date for closing twice, first to April 17, 2022, and then to June 10, 2022.  Defendant has refused to attend any settlement or to allow the Deed she signed in December 2021 to be recorded.

7.      Plaintiff has been ready, willing and unable to go to settlement at all times relevant to the transaction.  Plaintiff has incurred in excess of $30,000.00 in expenses in anticipation of taking title to the Premises and beginning its work to construct a new home at that location.

8.      Defendant no longer resides at the Premises; she is a patient at a local nursing home in Broomall.

9.      Defendant can no longer reside at the Premises, as on April 21, 2022, Radnor Township declared the property "Unsafe for Human Occupancy of Use".   See: Exhibit 1 to this Certification.

10.     Plaintiff has agreed to construct a new residence on the Premises for its Purchaser. Plaintiff's Purchaser has sold his former residence in anticipation of acquiring the Premises and occupying the new home Plaintiff intends to build at the site.

11.     In connection with the new residence to be built, Radnor Township recently approved a site plan which would remove numerous trees which had made the site dangerous and unsafe for anyone venturing on the Premises.  The removal of the dangerous site conditions cannot take place until Plaintiff acquires title to the Premises.

12.     Plaintiff has agreed to allow Defendant time after any closing to remove her personal property which remains at the Premises; Plaintiff offered to transport Defendant from her nursing home and bring her to the Property to direct which items to be moved to a storage facility, and further offered to pay for the costs of moving and for 90 day's storage.

Copying Prohibited

13.     There are several reasons why immediate court action is required.  First, Plaintiff's Purchaser has secured bank financing for his acquisition of the property and the Plaintiff's construction of a new home at the Premises.  Plaintiff is advised that its Purchaser's financing has a "rate lock" which expires on June 24, 2022.  Second, the condition of the Premises constitutes a present danger to members of the public, as the house has been condemned by Radnor Township authorities, and the lot contains dozens of trees which are in an unsafe condition.

14.     Absent Court intervention Plaintiff's Purchaser may lose his "rate lock" and the Plaintiff will lose the benefit of the Deposit which has already been paid to Defendant, who in turn paid her past due taxes and removed her property from the December 16, 2022 Tax Sale.

15.     Absent Court intervention, the home located at 416 S. Ithan Avenue, Villanova, PA will remain a public hazard, as will the lot which surrounds the property.  Allowing the Deed signed by Defendant in December 2021 to be recorded will allow Plaintiff to begin its work to bring the Premises back to a safe condition.

*This Certification is taken subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.*

GREG LINGO
Manager, Rockwell Glynn GP, LLC
Sole General Partner of Plaintiff,
Rockwell Glynn, LP

DATE: 6/24/22

# LEGAL NOTICE

Caring Properties (watermark)



RADNOR
TOWNSHIP

Andy Pincoast
Code Official

301 Iven Avenue
Wayne, PA 19087
(Office) 610-685-5600 x 140
(Fax) 610-971-0450
apincoast@radnor.org
www.radnor.com

# DANGER

This Structure is Declared Unsafe For
Human Occupancy or Use. It Is Unlawful For Any Person To
Use Or Occupy This Building After __4-21-22__
Any Unauthorized Person Removing This Sign Will be Prosecuted



416 S. Ithan Ave  Villanova  PA
**Address of Building**

Chapter __1__  Section __108.1.3__  of the __2018 IPMC__  Code

Date __4-21-22__  _(signature)_
**CODE OFFICIAL**

## CERTIFICATION OF GOOD FAITH OF MOVING PARTY
### Local Rule 206 C

I hereby certify that I have made a good faith effort to give all parties affected by the application being presented to the Court as much advance notice as reasonably possible of the date and time in which the present application is being presented.

Notice of was given to the following persons in the manner set forth and on the date(s) and time(s) set forth.

PERSONS NOTIFIED:

Via Fax and Email to
Kenneth C. Russell, Esquire
1000 North Providence Road
Media, PA 19063
ken@russell.legal and fax to: (215) 914-2118
Attorney for Defendant, Simona Ockley
(has not entered an appearance in this matter)


Via Hand Delivery to:
Simona Ockley
Broomall Manor Nursing Home
43 Church Lane, Room 37 North
Broomall, PA 19008

Lee M. Herman
Attorney for Plaintiff

Copying Prohibited

# LEE M. HERMAN, ESQUIRE

Attorney At Law
280 N. PROVIDENCE ROAD, SUITE 4
Media, PA 19063

---

(610) 891-6500
Efax: (215) 689-1930

June 24, 2022

Via emil to: ken@russell.legal and fax to: (215) 914-2118

Kenneth C. Russell, Esquire
1000 North Providence Road
Media, PA 19063

      Re:    Rockwell Glynn, LP Simona Ockley
             CV-2022-004275

Dear Mr. Russell,

      Please find enclosed a true and correct copy of the Petition of Plaintiff, Rockwell Glynn, LP for Special Injunction which is being filed with the Court this date.

                      Very Truly Yours,


                      Lee M. Herman, Esquire
                      Attorney for Plaintiff

Copying Prohibited

# Supreme Court of Pennsylvania

## Court of Common Pleas
## Civil Cover Sheet

Delaware County

| For Prothonotary Use Only: | TIME STAMP |
|---|---|
| Docket No: | |

*The information collected on this form is used solely for court administration purposes. This form does not supplement or replace the filing and service of pleadings or other papers as required by law or rules of court.*

**SECTION A**

**Commencement of Action:**

- [X] Complaint
- [ ] Writ of Summons
- [ ] Petition
- [ ] Transfer from Another Jurisdiction
- [ ] Declaration of Taking

Lead Plaintiff's Name: ROCKWELL GLYNN, L.P.

Lead Defendant's Name: SIMONA OCKLEY

**Are money damages requested?** [X] Yes [ ] No

Dollar Amount Requested: (check one) [ ] within arbitration limits [X] outside arbitration limits

**Is this a *Class Action Suit*?** [ ] Yes [X] No

**Is this an *MDJ Appeal*?** [ ] Yes [X] No

Name of Plaintiff/Appellant's Attorney: Lee M. Herman, Esquire

[ ] **Check here if you have no attorney (are a Self-Represented [Pro Se] Litigant)**

**SECTION B**

**Nature of the Case:** Place an "X" to the left of the **ONE** case category that most accurately describes your ***PRIMARY CASE.*** If you are making more than one type of claim, check the one that you consider most important.

**TORT** (*do not include Mass Tort*)
- [ ] Intentional
- [ ] Malicious Prosecution
- [ ] Motor Vehicle
- [ ] Nuisance
- [ ] Premises Liability
- [ ] Product Liability (*does not include mass tort)*
- [ ] Slander/Libel/ Defamation
- [ ] Other:

**MASS TORT**
- [ ] Asbestos
- [ ] Tobacco
- [ ] Toxic Tort - DES
- [ ] Toxic Tort - Implant
- [ ] Toxic Waste
- [ ] Other:

**PROFESSIONAL LIABLITY**
- [ ] Dental
- [ ] Legal
- [ ] Medical
- [ ] Other Professional:

**CONTRACT** (*do not include Judgments*)
- [ ] Buyer Plaintiff
- [ ] Debt Collection: Credit Card
- [ ] Debt Collection: Other
- [ ] Employment Dispute: Discrimination
- [ ] Employment Dispute: Other
- [ ] Other:

**REAL PROPERTY**
- [ ] Ejectment
- [ ] Eminent Domain/Condemnation
- [ ] Ground Rent
- [ ] Landlord/Tenant Dispute
- [ ] Mortgage Foreclosure: Residential
- [ ] Mortgage Foreclosure: Commercial
- [ ] Partition
- [ ] Quiet Title
- [X] Other: Equity- Enforce Agreement

**CIVIL APPEALS**

Administrative Agencies
- [ ] Board of Assessment
- [ ] Board of Elections
- [ ] Dept. of Transportation
- [ ] Statutory Appeal: Other
- [ ] Zoning Board
- [ ] Other:

**MISCELLANEOUS**
- [ ] Common Law/Statutory Arbitration
- [X] Declaratory Judgment
- [ ] Mandamus
- [ ] Non-Domestic Relations Restraining Order
- [ ] Quo Warranto
- [ ] Replevin
- [ ] Other:

Copying Prohibited

LEE M. HERMAN, ESQUIRE
Attorney for Plaintiff
Attorney I.D. No. 27570
280 N. Providence Road, Suite 4
Media, Pennsylvania 19063
(610) 891-6500
Fax (215) 689-1930
lmh@lmhlaw.com

| | |
|---|---|
| ROCKWELL GLYNN, L.P. | : Court of Common Pleas |
| 123 E. State Street | : Delaware County, PA |
| Media, PA 19063 | : |
| Plaintiff | : No. CV-2022- 004275 |
| vs. | : |
| | : |
| SIMONA OCKLEY | : |
| 416 South Ithan Road | : |
| Villanova, PA 19085 | : |
| Defendant | : |

## <u>NOTICE TO DEFEND-CIVIL</u>

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW. THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFF[...]
TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THA[...]
LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE O[...]

Lawyer Referral Service
FRONT AND LEMON STREETS
MEDIA, PA 19063
(610) 566-6625



1

LEE M. HERMAN, ESQUIRE
Attorney for Plaintiff
Attorney I.D. No. 27570
280 N. Providence Road, Suite 4
Media, Pennsylvania 19063
(610) 891-6500
Fax (215) 689-1930
lmh@lmhlaw.com

| | |
|---|---|
| ROCKWELL GLYNN, L.P. | : Court of Common Pleas |
| 123 E. State Street | : Delaware County, PA |
| Media, PA 19063 | : |
| Plaintiff | : No. CV-2022- 004275 |
| vs. | : |
| | : |
| SIMONA OCKLEY | : |
| 416 South Ithan Road | : |
| Villanova, PA 19085 | : |
| Defendant | : |

## COMPLAINT

Plaintiff, Rockwell Glynn, LP ("Plaintiff"), by its attorneys, Lee M. Herman, Esquire

brings this cause of action based upon the following statement of facts:

### PARTIES

1.    Plaintiff is a Limited Partnership organized and existing pursuant to the laws of

the Commonwealth of Pennsylvania and doing business at 123 E. State Street, Media, PA

19063.

2.    Defendant is Simona Ockley, ("Defendant") is an individual who at all times

relevant to the events set forth in this Complaint owned a residential property located at 416

South Ithan Road, Villanova, PA 19085 ("the Property").

1

## JURISDICTION AND VENUE

3.     This court has jurisdiction over the dispute set forth in this Complaint; venue is

proper before this Court as this case involves title to real estate located in Delaware County.

4.     Both Plaintiff and Defendant are present in Delaware County; all events leading

up to this litigation occurred in Delaware County.

## FACTUAL BACKGROUND

5.     On or about October 29, 2021, Plaintiff, as Buyer, and Defendant, as Seller,

entered into an Agreement of Sale for the Property. A copy of the Agreement of Sale is attached

to the Complaint as Exhibit "A" and is incorporated by reference as though fully set forth herein.

6.     The essential terms of the Agreement of Sale are as follows:

| | | |
|---|---|---|
| a. | Price: | $550,000.00 |
| b. | Deposit | $ 20,000.00 |
| c. | Settlement | January 31, 2022 |
| d. | Mortgage Contingency | None |
| e. | Inspection Contingencies | All waived except as to survey. |

THE PROPERTY IS LISTED FOR TAX SALE IN DECEMBER 2021
BUYER AGREES TO ALLOW SELLER TO UTILIZE BUYER'S DEPOSIT
TO FUND A PAYMENT TO TAXING AUTHORITIES
IN RETURN FOR SELLER SIGNING A DEED TO BE HELD IN ESCROW

7.     After the Agreement of Sale was signed, Plaintiff determined that the Delaware

County Tax Claim Bureau listed the Property for tax sale at the continued Upset Tax Sale on

December 16, 2021 Tax Sale, as Defendant had not paid property taxes due to local taxing

authorities. See: Exhibit "B".

2

8.     On December 13, 2022, Buyer and Seller agreed that all or part of Buyer's $20,000.00 deposit would be released to Seller so that Seller could pay her back taxes and have the Property removed from the December 16, 2021 tax sale. In return, Seller agreed to execute a Deed to Buyer which would be held in Escrow until final settlement. See: Exhibit "C".

9.     On December 13, 2021, the Agreement of Sale was modified at line 10 by a handwritten notation: "THE DEPOSIT SHALL TRANSFER TO SELLER 12/13/2021." However, the outside closing date of January 31, 2022 remained in place.

10.     On December 14, 2021, Buyer's title company released Buyer's deposit to Seller, who in turn made a payment to the Delaware County Tax Claim Bureau, thus allowing the Property to be removed from the December 16, 2021 Tax Sale.

<u>SELLER REPEATEDLY FAILS TO APPEAR FOR NUMEROUS CLOSING DATES</u>

11.     Seller did not attend the settlement scheduled for January 31, 2022; rather she requested and was granted an extension to close no later than April 17, 2022.

12.     Again, Seller did not attend the settlement scheduled to occur no later than April 17, 2022.

13.     Buyer scheduled a closing for May 2, 2022; once again, Seller did not appear for a closing on that date. See: Exhibit "D".

14.     To accommodate Seller, the parties agreed to a second extension to close no later than June 10, 2022. See: Exhibit "E".

15.     Seller did not appear for closing scheduled for June 10, 2022.

16.     Seller has failed to attend any schedule closing date; as such, she is in default under the Agreement of Sale. Plaintiff has notified Seller she is in Default. See: Exhibit "F".

3

## BUYER AGREES TO CONSTRUCT A NEW RESIDENCE AT 416 S. ITHAN ROAD.

17. Subsequent to entering an agreement with Seller to acquire the Property, and in reliance on Seller's agreement to convey the Property to Plaintiff, Plaintiff entered an Agreement with its purchaser ("Purchaser") to construct a new residence at 416 S. Ithan Road, Villanova, PA ("Construction Contract").

18. In reliance on the Construction Agreement, Purchaser sold their primary residence to use their proceeds to immediately fund the construction of their new residence with a construction start date of early July 2022.

19. In reliance on the Construction Agreement, Purchaser secured construction financing with Citizens Bank and locked in a fixed 30-year interest rate prior to the Federal Reserve's raising of interest rates (the "Rate Lock"). Since receiving the Rate Lock, mortgage rates have significantly increased, and a delayed closing of the loan would jeopardize the Rate Lock and have serious financial impacts.

20. Plaintiff is advised that the Citizen's Bank construction loan and 30-year fixed mortgage is scheduled to close on June 24, 2022.

21. Plaintiff anticipated that its profit in acquiring Seller's Property and in turn constructing and conveying a new residence to its Purchaser would be Two Hundred Fifty Thousand Dollars ($250,000.00), which it might lose should Seller refuse to convey the Property has she has agreed.

22. Should Plaintiff fail to acquire title to the Property on or before June 24, 2022, it would risk the loss of the proposed sale and construction of a new residence to its Purchaser.

4

Copying Prohibited

23.     Plaintiff has already incurred approximately Thirty Thousand Dollars ($30,000.00) in connection with engineering and professional fees related to the acquisition of the Property from Seller, and in engineering and related costs to prepare for construction of a new residence for its Purchaser.

24.     Construction of the new residence at the Property is currently scheduled to commence in the first few weeks of July. Any delay in commencing construction in July could result in numerous construction delay damages. For example, a delay could push construction into the winter months resulting in additional costs. Furthermore, subcontractors scheduled to commence work on this project in July could be lost creating a labor issue for Plaintiff resulting in additional delay damages.

## COUNT I
## DECLARATORY RELIEF

25.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as though the same were set forth herein at length.

26.     Plaintiff seeks a declaratory judgment that the December 13, 2021 Deed is a valid document and that Plaintiff is entitled to record the Deed upon payment of the purchase price pursuant to 42 Pa.C.S. §§7531.

27.     Plaintiff has a direct and immediate interest in having the December 13, 2021 Deed declared valid because it is not so declared, Plaintiff could suffer an adverse effect through the loss of the transaction it has entered with its Purchaser.

28.     Plaintiff has a substantial and direct interest in ensuring that the December 13, 2021 Deed is validated, released from escrow and recorded.

5

Copying Prohibited

29.     The Declaratory Judgment Act is a remedial statute that has as its purpose "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations." 42 Pa.C.S. §§7541.

30.     Plaintiff seeks an Order of Court which would release the Deed which Seller signed on December 13, 2022, in return for which Plaintiff would pay the purchase price set forth in the Agreement of Sale, thus allowing title to the Property to be transferred to Plaintiff in return for the Purchase Price as the parties agreed in the October, 2021 Agreement.

WHEREFORE, Plaintiff respectfully requests the entry of an Order of Court:

a.  Declaring that Plaintiff may obtain title to 416 S. Ithan Avenue, Villanova, PA by recording the Deed signed by Defendant on December 13, 2021, upon payment by Plaintiff of the purchase price set forth in the Agreement of Sale to Seller, to the Title Company or as further directed by an Order of Court.

b.  Granting such other relief as the Court determines to be fair and equitable under the circumstances.

### COUNT II
### BREACH OF CONTRACT

31.     Plaintiff incorporates herein by reference the preceding paragraphs of this Complaint as though the same were set forth herein at length.

32.     Defendant is in breach of its contractual obligation to sell the Property to Plaintiff under the Agreement of Sale, which has been modified at Defendant's request to settle on or before June 10, 2022. (See Exhibits "A" and "E").

33.     Defendant received the benefit of Plaintiff's down payment which was released by the title company and utilized to pay Defendant's past-due taxes; by reason of Plaintiff's

6

down payment being released to Defendant, and in turn paid to the Delaware County Tax Claim Bureau, the Property was removed from a Tax Sale scheduled for December 16, 2021.

34.     Plaintiff has sustained monetary damages including the loss of its down payment, the costs it has incurred in preparing the Property for the construction of a new residence for its Purchaser, the potential loss of the profits it would have made in the construction of a new residence for its Purchaser, and construction delay damages.

WHEREFORE, Plaintiff, Rockwell Glynn, LP demands judgment against Defendant, Simona Oxley, in an amount in excess of $50,000 plus interest, costs and attorney's fees and such further relief as the court deems necessary.

<div style="margin-left:40%">

_/s/ Lee M. Herman_
LEE M. HERMAN, ESQUIRE
Attorney for Plaintiff

</div>

## **VERIFICATION**

Greg Lingo hereby states that he is Manager of Rockwell Glynn GP, LLC, the sole General Partner of Plaintiff, Rockwell Glynn, LP, that he is authorized to take this Verification, and that the statements made in the foregoing Complaint are true and correct to the best of his knowledge, information and belief.

The undersigned understands that this statement is made subject to the penalties of 18 Pa.C.S. § 4904 relating to unsworn falsification to authorities.

_____
GREG LINGO
Manager, Rockwell Glynn GP, LLC
Sole General Partner of Plaintiff,
Rockwell Glynn, LP

DATE: 6/21/2002

Copying Prohibited

1

# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

ASR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

BUYER(S): _Rockwell Glynn, LP_

SELLER(S): _Simona · OCKLEY_
_416 South Ethan Rd._
_Villanova PA 19085_

BUYER'S MAILING ADDRESS:
_124 E. State Street_
_Wayne PA 19087_

SELLER'S MAILING ADDRESS:

## PROPERTY

ADDRESS (including postal city) _416 South Ethan Rd._
_Villanova_ ZIP _19085_
in the municipality of _Radnor Township_, County of _Delaware_
in the School District of _Radnor_, in the Commonwealth of Pennsylvania.
Tax ID #(s): _____ and/or
Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): _____

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☑ No Business Relationship (Buyer is not represented by a broker)

Broker (Company) _____

Company License # _____
Company Address _____
_N/A_
Company Phone _____
Company Fax _____
Broker is (check only one):
☐ Buyer Agent (Broker represents Buyer only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) _____

State License # _____
Direct Phone(s) _____
Cell Phone(s) _____
Email _____
Licensee(s) is (check only one):
☐ Buyer Agent (all company licensees represent Buyer)
☐ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☑ No Business Relationship (Seller is not represented by a broker)

Broker (Company) _____

Company License # _____
Company Address _____
_N/A_
Company Phone _____
Company Fax _____
Broker is (check only one):
☐ Seller Agent (Broker represents Seller only)
☐ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) _____

State License # _____
Direct Phone(s) _____
Cell Phone(s) _____
Email _____
Licensee(s) is (check only one):
☐ Seller Agent (all company licensees represent Seller)
☐ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller)
☐ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: _____

ASR Page 1 of 14

Seller Initials: _SO_

Pennsylvania Association of Realtors®

COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2019
rev. 6/19; rel 7/19

East Hill Real Estate, LLC, 245 Conestoga Road, Suite 2 Wayne, PA 19087
Christopher Hogan
Phone: (610)581-1700   Fax   Miscellaneous
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.ziplogix.com

Exhibit A

1. **By this Agreement,** dated _October 20 2021_

Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (4-14)**

(A) Purchase Price $ _550,000_

( _Five Hundred Fifty thousand dollars and_ ———————————————— _00/100_ U.S. Dollars), to be paid by Buyer as follows:

   1. Initial Deposit, within _2_ days (5 if not specified) of Execution Date, if not included with this Agreement: $ _20,000.00_

   2. Additional Deposit within _____ days of the Execution Date: $ _____

   _THE DEPOSIT SHALL TRANSFER TO SELLER 12/13/2021_

   Remaining balance will be paid at settlement.

(B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.

(C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____ _Hollister Land Services, LLC_ ),

who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)**

Seller will pay $ _N/A_ or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (4-14)**

(A) Settlement Date is _January 31, 2022_, or before if Buyer and Seller agree.

(B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.

(C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:
_____

(D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
   1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
   2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.

(E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____

(F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____

(G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.

(H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.

☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.

5. **DATES/TIME IS OF THE ESSENCE (1-10)**

(A) Written acceptance of all parties will be on or before: _December 3, 2021_

(B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.

(C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be initialed and dated.

(D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.

Buyer Initials: _____

Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Miscellaneous

Exhibit A

62     (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms
63        and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable
64        to all parties, except where restricted by law.
65 **6.**  **ZONING (4-14)**
66     Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if sub-
67     dividable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if
68     voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
69     Zoning Classification, as set forth in the local zoning ordinance: _____
70 **7.**  **FIXTURES AND PERSONAL PROPERTY (1-17)**
71     (A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens,
72       and other items including plumbing; heating; gas fireplace logs; radiator covers; lighting fixtures (including chandeliers and ceil-
73       ing fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars);
74       garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment;
75       unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences;
76       mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware
77       (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners;
78       built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the
79       Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems.
80       Unless stated otherwise, the following items are included in the sale, but not in the Purchase Price: _____
81       _____
82       _____
83     (B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment
84       systems, propane tanks, satellite dishes and security systems): _____
85     (C) EXCLUDED fixtures and items: _____
86       _____
87 **8.**  **MORTGAGE CONTINGENCY (6-19)**
88     ☒  WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties
89       may include an appraisal contingency.
90     ☐  ELECTED.
91     (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| 92   First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| 93   Loan Amount $ _____ | Loan Amount $ _____ |
| 94   Minimum Term _____ years | Minimum Term _____ years |
| 95   Type of mortgage _____ | Type of mortgage _____ |
| 96   For conventional loans, the Loan-To-Value (LTV) ratio is not to | For conventional loans, the Loan-To-Value (LTV) ratio is not to |
| 97   exceed _____ % | exceed _____ % |
| 98   Mortgage lender _____ | Mortgage lender _____ |
| 99 | |
| 100   Interest rate _____ %; however, Buyer agrees to accept the | Interest rate _____ %; however, Buyer agrees to accept the |
| 101   interest rate as may be committed by the mortgage lender, not | interest rate as may be committed by the mortgage lender, not |
| 102   to exceed a maximum interest rate of _____ %. | to exceed a maximum interest rate of _____ %. |
| 103   Discount points, loan origination, loan placement and other fees | Discount points, loan origination, loan placement and other fees |
| 104   charged by the lender as a percentage of the mortgage loan (exclud- | charged by the lender as a percentage of the mortgage loan (exclud- |
| 105   ing any mortgage insurance premiums or VA funding fee) not to | ing any mortgage insurance premiums or VA funding fee) not to |
| 106   exceed _____ % (0% if not specified) of the mortgage loan. | exceed _____ % (0% if not specified) of the mortgage loan. |

107     (B) Upon receiving documentation demonstrating lender's approval, whether conditional or outright, of Buyer's mortgage applica-
108       tion(s) according to the terms set forth above, Buyer will promptly deliver a copy of the documentation to Seller; but in any case
109       no later than _____.
110       1.  If Seller does not receive a copy of the documentation demonstrating lender's conditional or outright approval of Buyer's mort-
111         gage application(s) by the date indicated above, Seller may terminate this Agreement by written notice to Buyer. Seller's right
112         to terminate continues until Buyer delivers documentation demonstrating lender's conditional or outright approval of Buyer's
113         mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to
114         make a good faith effort to obtain mortgage financing.
115       2.  Seller may terminate this Agreement by written notice to Buyer after the date indicated above if the documentation demon-
116         strating lender's conditional or outright approval of Buyer's mortgage application(s):
117         a.  Does not satisfy the terms of Paragraph 8(A), OR
118         b.  Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be
119           received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writ-
120           ing by the mortgage lender(s) within   7  DAYS after the date indicated in Paragraph 8(B), or any extension thereof other
121           than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employ-
122           ment).
123       3.  If this Agreement is terminated pursuant to Paragraphs 8(B)(1) or (2), or the mortgage loan(s) is not obtained for settlement,
124         all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer
125         will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this

126 Buyer Initials: _____                 **ASR Page 3 of 14**                     Seller Initials: _____

Copying Prohibited

Exhibit A

127 Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee
128 for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
129 (3) Appraisal fees and charges paid in advance to lender(s).
130 (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular
131 LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific
132 level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The
133 appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher
134 or lower than the Purchase Price and/or market price of the property.
135 (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee
136 the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s),
137 Buyer will do so at least _____ 15 _____ days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted
138 by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage
139 lender(s) to make the above mortgage term(s) available to Buyer.
140 (E) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage appli-
141 cation (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s)
142 identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any,
143 otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process.
144 Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan
145 application.
146 (F) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or
147 employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and
148 ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to
149 reject, or refuse to approve or issue, a mortgage loan commitment.
150 (G) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
151 repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within _____ 5 _____
152 DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
153 expense.
154 1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
155 agrees to the RELEASE in Paragraph 28 of this Agreement.
156 2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within _____ 5 _____
157 DAYS, notify Seller of Buyer's choice to:
158 a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will
159 not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the Pre-
160 Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
161 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
162 Paragraph 26 of this Agreement.
163 If Buyer fails to respond within the time stated in Paragraph 8(G)(2) or, fails to terminate this Agreement by written notice to
164 Seller within that time, Buyer will accept the Property, make the required repairs/improvements at Buyer's expense and agree
165 to the RELEASE in Paragraph 28 of this Agreement.

---

166 **FHA/VA, IF APPLICABLE**
167 (H) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the
168 purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless
169 Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing
170 Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of
171 not less than $ _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege
172 and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The
173 appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will
174 insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price
175 and condition of the Property are acceptable.
176 Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing
177 Administration Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department,
178 makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not
179 more than two years, or both."

---

180 (I) U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement
181 ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
182 getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
183 FHA will not perform a home inspection nor guarantee the price or condition of the Property.
184 ☐ Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(B))
185 and Buyer's acceptance of additional required repairs as determined by the lender.
186 (J) Certification We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for pur-
187 chase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in con-
188 nection with this transaction is attached to this Agreement.

189 Buyer Initials: _____     ASR Page 4 of 14     Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     Miscellaneous

Exhibit A

9. **CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**

If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation; entry of a judgment against Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to purchase.

10. **SELLER REPRESENTATIONS (4-14)**

(A) Status of Water

Seller represents that the Property is served by:

☑ Public Water   ☐ Community Water   ☐ On-site Water   ☐ None   ☐ _____

(B) Status of Sewer

1. Seller represents that the Property is served by:

☑ Public Sewer   ☐ Community Sewage Disposal System   ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)   ☐ Holding Tank (see Sewage Notice 3)
☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
☐ None (see Sewage Notice 1)   ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
☐ _____

2. Notices Pursuant to the Pennsylvania Sewage Facilities Act

Notice 1: There is no currently existing community sewage system available for the subject property. Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working cooperatively with others.

Notice 2: This Property is served by an individual sewage system installed under the ten-acre permit exemption provisions of Section 7 of the Pennsylvania Sewage Facilities Act. (Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to, an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.

Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site. Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.

Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.

Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.

(C) Historic Preservation

Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____

(D) Land Use Restrictions

1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):

☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. §901 et seq.)
☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
☐ Other _____

2. Notices Regarding Land Use Restrictions

a. Pennsylvania Right-To-Farm Act: The property you are buying maybe located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance law suits or restrictive ordinances.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   Miscellaneous

Exhibit A

COPYING PROHIBITED

252      b.   Clean and Green Program: Properties enrolled in the Clean and Green Program receive preferential property tax assess-
253        ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution
254        of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that
255        may result in the future as a result of any change in use of the Property or the land from which it is being separated.
256      c.   Open Space Act: This Act enables counties to enter into covenants with owners of land designated as farm, forest, water
257        supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open
258        space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that
259        the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific
260        termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply
261        from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the
262        Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.
263      d.   Conservation Reserve (Enhancement) Program: Properties enrolled in the Conservation Reserve Program or CREP are
264        environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the
265        land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer
266        has been advised of the need to determine the restrictions on development of the Property and the term of any contract now
267        in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.
268    (E)   Real Estate Seller Disclosure Law
269      Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real
270      estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential
271      real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of
272      an interest in real property where NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING
273      UNITS are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures
274      regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale
275      of condominium and cooperative interests.
276    (F)   Public and/or Private Assessments
277      1.   Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner asso-
278        ciation assessments have been made against the Property which remain unpaid, and that no notice by any government or public
279        authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to vio-
280        lations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition
281        that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____
282        _____
283      2.   Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____
284        _____
285    (G)   Highway Occupancy Permit
286      Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.
287  **11. WAIVER OF CONTINGENCIES (9-05)**
288      If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions,
289      boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise
290      any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the
291      Property and agrees to the RELEASE in Paragraph 28 of this Agreement.
292  **12. BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)**
293    (A)   Rights and Responsibilities
294      1.   Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to
295        surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate
296        licensee(s) may attend any inspections.
297      2.   Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the
298        condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived
299        by any other provision of this Agreement.
300      3.   Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.
301      4.   All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any Inspection Report to Broker for
302        Buyer.
303      5.   Seller has the right, upon request, to receive a free copy of any Inspection Report from the party for whom it was prepared.
304        Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.
305    (B)   Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as
306      "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly
307      licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same
308      inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for
309      Notices Regarding Property and Environmental Inspections)
310    (C)   For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any
311      Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit
312      a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

313   Buyer Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com

Seller Initials: _____

Miscellaneous

Copy Prohibited

| 314 | | Home/Property Inspections and Environmental Hazards (mold, etc.) | Waived |
| 315 | Elected | Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior doors; | |
| 316 | | exterior building material, fascia, gutters and downspouts; swimming pools; hot tubs and spas; appliances; electrical | |
| 317 | | systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetration; elec- | |
| 318 | | tromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environmental | |
| 319 | | hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer may | |
| 320 | | select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the home | |
| 321 | | inspection must be performed by a full member in good standing of a national home inspection association, or a per- | |
| 322 | | son supervised by a full member of a national home inspection association, in accordance with the ethical standards | |
| 323 | | and code of conduct of that association, or by a properly licensed or registered engineer or architect. (See | |
| 324 | | Notices Regarding Property & Environmental Inspections) | |

| 325 | | Wood Infestation | Waived |
| 326 | Elected | Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as | |
| 327 | | a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provid- | |
| 328 | | ed by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort- | |
| 329 | | gage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be | |
| 330 | | limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection | |
| 331 | | reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pes- | |
| 332 | | ticide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer | |
| 333 | | may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to | |
| 334 | | structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property. | |

| 335 | | Deeds, Restrictions and Zoning | Waived |
| 336 | Elected | Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi- | |
| 337 | | nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the | |
| 338 | | Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) | |
| 339 | | is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____ | |
| 340 | | | |

| 341 | | Water Service | Waived |
| 342 | Elected | Buyer may obtain an inspection of the quality and quantity of the water system from a properly licensed or otherwise | |
| 343 | | qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will | |
| 344 | | locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous | |
| 345 | | condition, at Seller's expense, prior to settlement. | |

| 346 | | Radon | Waived |
| 347 | Elected | Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency | |
| 348 | | (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working lev- | |
| 349 | | els or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal | |
| 350 | | decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the | |
| 351 | | risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon | |
| 352 | | problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, | |
| 353 | | mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental | |
| 354 | | Protection. Information about radon and about certified testing or mitigation firms is available through Department | |
| 355 | | of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O. | |
| 356 | | Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov | |

| 357 | | On-lot Sewage (If Applicable) | Waived |
| 358 | Elected | Buyer may obtain an inspection of the individual on-lot sewage disposal system, which may include a hydraulic | |
| 359 | | load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's | |
| 360 | | expense, will locate, provide access to, and empty the individual on-lot sewage disposal system and provide all water | |
| 361 | | needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense, prior | |
| 362 | | to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection | |
| 363 | | Contingency. | |

| 364 | | Property and Flood Insurance | Waived |
| 365 | Elected | Buyer may determine the insurability of the Property by making application for property and casualty insurance for | |
| 366 | | the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with | |
| 367 | | the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer | |
| 368 | | may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior | |
| 369 | | to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insur- | |
| 370 | | ance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood | |
| 371 | | insurance agents regarding the need for flood insurance and possible premium increases. | |

| 372 | | Property Boundaries | Waived |
| 373 | Elected | Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal | |
| 374 | | description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property | |
| 375 | | surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural | |
| 376 | | or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen- | |
| 377 | | tations of size of property are approximations only and may be inaccurate. | |

| 378 | Buyer Initials: _____ | ASIt Page 7 of 14 | Seller Initials: |

Exhibit A

Copy not authorized

379    **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**
380   Elected   Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a   Waived
381    risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint haz-
382    ards. Regardless of whether this Inspection is elected or waived, the Residential Lead-Based Paint Hazard
383    Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved
384    lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a sep-
385    arate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any
386    lead-based paint records regarding the Property.
387    **Other**
388   Elected   _____   Waived
389

390 The Inspection selected above do not apply to the following existing conditions and/or items: _____
391
392

393    **(D) Notices Regarding Property & Environmental Inspections**
394     1.   **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
395      the surface of a structure where it may cause mold and damage to the building's frame.
396     2.   **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
397     3.   **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
398      of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsi-
399      bility to dispose of them properly.
400     4.   **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer
401      to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop
402      the property would be affected or denied because of its location in a wetlands area.
403     5.   **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
404      pollen and viruses) have been associated with allergic responses.
405     6.   **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
406      directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
407      20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
408      Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
409      and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
410      calling 1-877-724-3258.

411 **13. INSPECTION CONTINGENCY (10-18)**
412    (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
413      in Paragraph 12(C).
414    (B) Within the stated Contingency Period and as the result of any Inspection elected in Paragraph 12(C), except as stated in
415      Paragraph 13(C):
416     1.   If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL present all Report(s) in
417      their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in
418      Paragraph 28 of this Agreement, OR
419     2.   If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL present all Report(s) in
420      their entirety to Seller and terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer
421      according to the terms of Paragraph 26 of this Agreement, OR
422     3.   If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL present all Report(s) in
423      their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by
424      Buyer.
425      The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the
426      corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the cor-
427      rections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or govern-
428      mental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
429      a.   Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation
430       Period. During the Negotiation Period:
431       (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
432       (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improve-
433       ments to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
434      If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable writ-
435      ten agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the
436      Negotiation Period ends.
437      b.   If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, within
438       _____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:
439       (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
440       Agreement, OR
441       (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
442       of Paragraph 26 of this Agreement.

443 Buyer Initials: _____       ASR Page 8 of 14       Seller Initials: _____

Exhibit A

444 If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this
445 Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property
446 and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the
447 Negotiation Period.
448 (C) If a Report reveals the need to repair or replace the existing individual on-lot sewage disposal system, Seller may, within _____
449 days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the
450 name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected com-
451 pletion date for corrective measures. Within _____5_____ DAYS of receiving Seller's Proposal, if a Proposal is provided within the
452 stated time, Buyer will notify Seller in writing of Buyer's choice to:
453 1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
454 2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
455 Paragraph 26 of this Agreement, OR
456 3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any
457 mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required
458 by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property
459 given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the
460 defects, Buyer may, within _____5_____ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit
461 monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
462 If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice to
463 Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
464 **14. TITLES, SURVEYS AND COSTS (9-18).**
465 (A) Within _____ days (7 if not specified) from the Execution Date of the Agreement, Buyer will order from a reputable title company
466 for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report
467 to Seller.
468 (B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from
469 a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies
470 come in standard and enhanced versions. Buyer should consult with a title insurance agent about Buyer's options. Buyer
471 agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's
472 title insurance policy.
473 (C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
474 (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
475 and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
476 (D) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal descrip-
477 tion of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or
478 required by the mortgage lender will be obtained and paid for by Buyer.
479 (E) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular
480 rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; his-
481 toric preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the
482 ground; easements of record; and privileges or rights of public service companies, if any.
483 (F) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the
484 Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but
485 is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against
486 Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient
487 to satisfy all liens and encumbrances against the Property.
488 (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as
489 specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to
490 Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs
491 incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items spec-
492 ified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).
493 (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
494 about the status of those rights unless indicated elsewhere in this Agreement.
495 ☐ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.
496 (I) COAL NOTICE (Where Applicable)
497 THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH
498 THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL
499 RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE,
500 BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July
501 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from
502 coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private
503 contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with
504 the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees
505 to sign the deed from Seller which deed will contain the aforesaid provision.
506 (J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:
507

Copy Not Supplied

509 (K) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
510 ☐ Private Transfer Fee Addendum (PAR Form)
511 2. Notices Regarding Private Transfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private
512 Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101; et. seq.), which defines a Private Transfer Fee as "a fee that
513 is payable upon the transfer of an interest in real property, or payable for the right to make, or accept the transfer, if the obliga-
514 tion to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of
515 whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or
516 other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must
517 disclose the existence of the fee to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the
518 Act gives certain rights and protections to buyers.

## 15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)

520 (A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
521 received after Seller has signed this Agreement and before settlement, Seller will within ___5_ DAYS of receiving the notices and/or
522 assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
523 1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
524 notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
525 2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails
526 within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within ___5_ DAYS
527 that Buyer will:
528 a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
529 Paragraph 28 of this Agreement, OR
530 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
531 Paragraph 26 of this Agreement.
532 If Buyer fails to respond within the time stated in Paragraph 15(A)(2) or fails to terminate this Agreement by written notice
533 to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
534 (B) If required by law, within ___30_ DAYS from the Execution Date of this Agreement, but in no case later than ___15_ DAYS prior
535 to Settlement Date, Seller will order, at Seller's expense a certification from the appropriate municipal department(s) disclosing
536 notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupan-
537 cy of the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the
538 notice to Seller.
539 1. Within ___5_ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy
540 of the notice to Buyer and notify Buyer in writing that Seller will:
541 a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required
542 repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
543 b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
544 notify Seller in writing within. ___5_ DAYS that Buyer will:
545 (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph
546 28 of this Agreement and make the repairs at Buyer's expense after settlement, OR
547 (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
548 of Paragraph 26 of this Agreement.
549 If Buyer fails to respond within the time stated in Paragraph 15(B)(1)(b) or fails to terminate this Agreement by written
550 notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this
551 Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the
552 notice provided by the municipality.
553 3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph,
554 Seller will perform all repairs/improvements as required by the notice, at Seller's expense. Paragraph 15(B)(3) will survive
555 settlement.

## 16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)

557 (A) Property is NOT a Condominium or part of a Planned Community unless checked below.
558 ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407
559 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of
560 the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.
561 ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
562 the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration
563 (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions
564 set forth in Section 5407(a) of the Act.
565 (B) THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A
566 PLANNED COMMUNITY:
567 If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
568 Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
569 this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
570 Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
571 Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

572 Buyer Initials: _____    ASR Page 10 of 14    Seller Initials: _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.ziplogix.com
Miscellaneous

Copyright reproduction prohibited

Exhibit A

CONDITIONS Prohibited

573 (C) THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A
574   PLANNED COMMUNITY:
575     1.  Within ___15___ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
576         a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
577         that the association is required to provide these documents within 10 days of Seller's request.
578     2.  Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer
579         for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
580         association in the Certificate.
581     3.  The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents
582         and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer
583         declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this
584         Agreement.
585     4.  If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
586         reimburse Buyer for any costs incurred by Buyer from any inspections or certifications obtained according to the terms of this
587         Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for
588         cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3)
589         Appraisal fees and charges paid in advance to mortgage lender.
590 17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)
591   In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-
592   erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the
593   property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the
594   property and result in a change in property tax.
595 18. MAINTENANCE AND RISK OF LOSS (1-14)
596   (A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property
597       specifically listed in this Agreement in its present condition, normal wear and tear excepted.
598   (B) If any part of the Property included in the sale fails before settlement, Seller will:
599     1.  Repair or replace that part of the Property before settlement, OR
600     2.  Provide prompt written notice to Buyer of Seller's decision to:
601       a.  Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
602           if any, OR
603       b.  Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
604           part of the Property.
605     3.  If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, or if Seller
606         fails to notify Buyer of Seller's choice, Buyer will notify Seller in writing within ___5___ DAYS or before Settlement Date,
607         whichever is earlier, that Buyer will:
608       a.  Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
609       b.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
610           Paragraph 26 of this Agreement.
611       If Buyer fails to respond within the time stated in Paragraph 18(B)(3) or fails to terminate this Agreement by written notice
612       to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
613   (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
614       replaced prior to settlement, Buyer's:
615     1.  Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
616     2.  Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
617         Paragraph 26 of this Agreement.
618 19. HOME WARRANTIES (1-10)
619   At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller under-
620   stand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-
621   existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifi-
622   cations that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home
623   warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.
624 20. RECORDING (9-05)
625   This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
626   causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.
627 21. ASSIGNMENT (1-10)
628   This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable,
629   on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless oth-
630   erwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.
631 22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)
632   (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
633       laws of the Commonwealth of Pennsylvania.
634   (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by
635       either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of
636       Pennsylvania.

637 Buyer Initials: _____                                    ASR Page 11 of 14                                    Seller Initials: _____

638 23. **FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
639 The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
640 Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
641 real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
642 chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
643 to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. tax-
644 ation of gains realized on disposition of such interests. The transferor/Buyer is the withholding-agent. If you are the transferee/Buyer
645 you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold,
646 you may be held liable for the tax.
647 24. **NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
648 The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
649 for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the municipal
650 police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular prop-
651 erty, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.
652 25. **REPRESENTATIONS (1-10)**
653 (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their
654 licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this
655 Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations,
656 covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This
657 Agreement will not be altered, amended, changed or modified except in writing executed by the parties.
658 (B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property
659 specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the Property
660 IN ITS PRESENT CONDITION, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
661 Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the struc-
662 tural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of con-
663 ditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems con-
664 tained therein.
665 (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
666 (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.
667 26. **DEFAULT, TERMINATION AND RETURN OF DEPOSITS (4-14)**
668 (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
669 deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
670 Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.
671 (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
672 determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
673 1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
674 agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
675 2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
676 Broker how to distribute some or all of the deposit monies.
677 3. According to the terms of a final order of court.
678 4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
679 deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))
680 (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved _____ days (180 if not
681 specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
682 Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
683 request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the
684 subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of Buyer's request
685 for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer
686 and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of the deposit monies prior to
687 any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based
688 upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights
689 to pursue litigation even after a distribution is made.
690 (D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
691 law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
692 monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.
693 (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
694 1. Fail to make any additional payments as specified in Paragraph 2, OR
695 2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's
696 legal or financial status, OR
697 3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
698 (F) Unless otherwise checked in Paragraph 26(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
699 1. On account of purchase price, OR
700 2. As monies to be applied to Seller's damages, OR
701 3. As liquidated damages for such default.

702 Buyer Initials: _____  ASR Page 12 of 14  Seller Initials: _____

Exhibit A

Confidential

703 (G) [✓] SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED
704 DAMAGES.
705 (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
706 and Seller are released from further liability or obligation and this Agreement is VOID.
707 (I) Brokers and licensees are not responsible for unpaid deposits.
708 27. MEDIATION (1-10)
709 Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
710 to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
711 Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation sys-
712 tem offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided
713 equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party
714 to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any
715 statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agree-
716 ment to mediate disputes or claims arising from this Agreement will survive settlement.
717 28. RELEASE (9-05)
718 Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any
719 OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or
720 through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and
721 all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects,
722 radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage
723 disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in
724 default under the terms of this Agreement or in violation of any Seller disclosure law or regulation; this release does not deprive Buyer
725 of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.
726 29. REAL ESTATE RECOVERY FUND (4-18)
727 A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
728 estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been
729 unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
730 3658.
731 30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)
732 (A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
733 and Closing Disclosure(s) upon receipt.
734 (B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
735 satisfied by communication/delivery to the Broker for Buyer, if any, except for documents required to be delivered pursuant
736 to Paragraph 16. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
737 directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or
738 allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if
739 any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the
740 Seller, unless otherwise agreed to by the parties.
741 31. HEADINGS (4-14)
742 The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the
743 sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.
744 32. SPECIAL CLAUSES (1-10)
745 (A) The following are attached to and made part of this Agreement if checked:
746 [ ] Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
747 [ ] Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
748 [ ] Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
749 [ ] Settlement of Other Property Contingency Addendum (PAR Form SOP)
750 [ ] Appraisal Contingency Addendum (PAR Form ACA)
751 [ ] Short Sale Addendum (PAR Form SHS)
752 [ ] _____
753 [ ] _____
754 [ ] _____
755 (B) Additional Terms:
756
757
758
759
760
761
762
763
764
765
766

767 Buyer Initials: _____   ASR Page 13 of 14   Seller Initials: _SO_

Exhibit A

768   Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

769   This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which counterparts
770   together shall constitute one and the same Agreement of the Parties.

771   **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised
772   to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

773   Return of this Agreement, and any addenda and amendments, including return by electronic transmission, bearing the signatures of all
774   parties, constitutes acceptance by the parties.

775   _____ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

776   _____ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

777   _____ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
778   before signing this Agreement.

779   _____ Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
780   received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

781   BUYER _____ _____ DATE 11/29/2021

782   BUYER _____ _____ DATE _____

783   BUYER _____ _____ DATE _____

784   Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
785   Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

786   SELLER _____ _____ DATE 11.19.2021

787   SELLER _____ _____ DATE _____

788   SELLER _____ _____ DATE _____

Copying Prohibited

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026 www.zipLogix.com     'Miscellaneous'

Exhibit A

DELAWARE COUNTY LEGAL JOURNAL
335 West Front Street
Media, Pennsylvania

**UPSET PRICE SALE LIST**

NOTICE OF SALE OF REAL
ESTATE FOR DELINQUENT
REAL ESTATE TAXES DUE
THEREON FOR THE YEAR 2019
AND PRIOR YEARS

NOTICE IS HEREBY GIVEN THAT the
TAX CLAIM BUREAU OF DELAWARE
COUNTY, PENNSYLVANIA, will hold a
delinquent tax sale under the Real Estate
Tax Sale Law, P.L. 1368, as amended at 9:00
A.M. prevailing time, Thursday, September
16, 2021 at the County Council Meeting
Room, Government Center Building, 201
W. Front Street, Media, Pennsylvania,
for the purpose of collecting unpaid taxes,
municipal claims and all costs incident
thereto. The following described properties
will be sold for at least the Upset Price plus
real estate taxes for the current year and
municipal claims filed, if any. **Upset Prices
given in this notice are approximate.**

Exhibit B

Copy... Prohibited

Folio Nbr. 34-00-02638-00, 208 SYCA-MORE LN 1 1/2 STY HSE 111.91 X 153.49 IRR, SMITH SUSAN, $11,593.95

Folio Nbr. 34-00-02770-00, 117 WALLING-FORD AVE 2 STY HSE 2 CAR S/P 244 X 221 X IRREG, SWANSON DAVID & SWANSON JOANNE, $17,276.36

Folio Nbr. 34-00-02787-00, 400 WALLING-FORD AVE 2 STY HSE GAR 24.1 X 60, MASON SHIRELLE G, $4,841.96

Folio Nbr. 34-00-02863-00, 611 WASHING-TON AVE GRD 30 X 140, MASON LARRY M, $924.34

Folio Nbr. 34-00-02876-00, 510 WASH-INGTON AVE 2 1/2 STY HSE 30 X 140, HUNTER JAMES P & HUNTER MARGA-RETTA, $5,511.76

Folio Nbr. 34-00-02892-00, 700 WASH-INGTON AVE 2 STY HSE GAR 60 X 140, REDMOND DAVID L, $6,473.78

## UPPER PROVIDENCE TOWNSHIP

Folio Nbr. 35-00-01355-00, 871 PICKER-ING LN 1 STY HSE 70 X 195, BEDFORD WILLIAM R & JEANNINE L, $970.80

Folio Nbr. 35-00-01397-00, 1223 N PROVI-DENCE RD 3STY BASEMENT OFF/BANK 124.8 X 225.09 IRR, ROSE TREE OFFICE CAMPUS PARTN C/O BENCHMARK MGTE CORP, $6,219.53

Folio Nbr. 35-00-01398-00, 0 PROVI-DENCE RD BLDG 133 X 175 IRR, ROSE TREE OFFICE CAMPUS PARTN C/O BENCHMARK MANAGMENT CORP, $796.29

Folio Nbr. 35-00-01420-02, 2165 PROVI-DENCE RD 2 STY HSE GAR 101 X 320 X 320 X 150, DZINE PROPERTIES LLC, $1,960.39

Folio Nbr. 35-00-01616-01, 1237 HUNT CLUB LN GRD 3.319AC LOT 4, HAM-MOND CORY F & KARA R, $5,181.17

Folio Nbr. 35-00-01696-00, 224 ROBIN RD 2 STY HSE 150 X 45, BOWDREN AN-THONY J ETUX, $2,791.51

Folio Nbr. 35-00-01779-00, 410 E ROSE TREE RD GROUND. 3.627ACRES, VITAL ESTATE GROUP LLC, $7,387.02

Folio Nbr. 35-00-01854-00, 316 SANDY BANK RD 1 STY HSE GAR 155 X 157 IRR, BEDFORD WM & DORIS, $1,005.57

Folio Nbr. 35-00-02169-00, 613 SUMMER ST 1 1/2 STY HSE ADD (FIRE) 40 X 130, CONQUEST JERRY A, $2,058.53

Folio Nbr. 35-00-02189-00, 112 SUMMIT RD 2 STY HSE 25 X 150, MILBRAD CANDICE K & MILBRAD MELODY K, $3,864.84

Folio Nbr. 35-00-02584-00, 26 YARMOUTH LN HSE 2C GAR 235 X 291 IRR, WELCH ROBERT G WELCH DONNA J, $10,457.55

## RADNOR TOWNSHIP

Folio Nbr. 36-01-00459-00, 121 PLANT AVE 2 STY HSE GAR 26 X 112, BURDEN GEORGE, $4,523.79

Folio Nbr. 36-02-00951-99, 711 COUNTY LINE RD GRD 2.772AC LOT 2, KATZ NEAL B, $8,691.95

Folio Nbr. 36-02-01190-00, 516 KING OF PRUSSIA 2 STY HSE/2 CAR GAR 121.24 X 79.14 & 30.7X296, KORTSCH ULI & KORTSCH CAROL, $15,179.62

Folio Nbr. 36-02-01343-00, 252 RADNOR CHESTER 2 1/2 STY HSE GAR 215 X 183.38 X 174.2, 864 PROPERTIES LLC, $16,954.95

Folio Nbr. 36-02-01390-00, 430 ST DAVIDS AVE 1 STY HSE GAR 60 X 188.16 X 80 X 207.6, BARIBAULT RUSSELL, $1,159.75

Folio Nbr. 36-03-01503-00, 296 S ABER-DEEN AVE 2 STY HSE 2C GAR RM 227.5 X 185 X 108.41X210, MILNER BYRON L MILNER KATHLEEN R, $18,552.21

Folio Nbr. 36-03-01879-57, 422 ROUND HILL RD 2 STY HSE GAR 125 X 220 LOT 72, STRONG RICHARD K & PATRICIA C, $20,587.07

Folio Nbr. 36-04-02336-00, 416 ITHAN AVE S/L HSE GAR 230 X 215, OCKLEY REGINALD F. & OCKLEY SIMONA NE-GUT, $16,992.32

Folio Nbr. 36-04-02574-00, 331 RADNOR CHESTER 3 STY HSE GAR LOT 3 2.304 ACRES, SALAH ESAM & SALAH REHAB, $24,938.15

Folio Nbr. 36-04-02578-00, 216 SINKLER DR GRD BARN HSE 100 X 170, WARNER VIRGINIA M, $4,946.10

Folio Nbr. 36-04-02593-01, 646 SAW MILL RD 1 STY HSE 3C GAR 92,627SF LOT 1, SUMMIT HILL DEVEL LLC, $19,236.71

Folio Nbr. 36-04-02593-11, 646 SAW MILL RD GRD 43,956SF LOT 3, SUMMIT HILL DEVELOPMENT LLC, $6,006.49

Folio Nbr. 36-05-02966-28, 728 CORNER-STONE LN 2STY HSE GAR A49 X 169 IRR LOT 47, QIN XING MING, $2,778.61

Folio Nbr. 36-05-03036-00, 823 GLEN-BROOK AVE 2 STY BLD OFF APTS 40 X 132, HYDROCEPHALUS EQUALITY ADVOCAC RESEARCH UNITED SOCI-ETY, $10,566.59

Folio Nbr. 36-05-03208-00, 529 S ROBERTS RD 2 STY HSE 1.0096 ACRES, ITHAN REALTY TRUST, $9,430.74

Exhibit B

**PREPARED BY:**
Kenneth C. Russell, Esq.
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006

**RECORD AND RETURN TO:**
Kenneth C. Russell, Esq.
Baratta, Russell & Baratta
3500 Reading Way
Huntingdon Valley, PA 19006

Folio Number 36-04-02336-00

# DEED

THIS INDENTURE made the *14* day of *December*, 2021, between SIMONA NEGUT OCKLEY a/k/a SIMONA OCKLEY NEGUT (hereinafter called the "Grantor"), and ROCKWELL GLYNN, L.P. (hereinafter called the "Grantee").

**WITNESSETH,** that the said Grantor for and in consideration of the sum of Five Hundred and Fifty Thousand Dollars ($550,000.00) lawful money of the United States of America, paid by the said Grantees, at or before the sealing and delivery hereof, the receipt whereof is hereby acknowledged, do grant, bargain, sell, release, and confirm unto the said Grantees, as sole owners, their heirs and assigns.

**ALL THAT CERTAIN** lot or piece of ground, situate in the Township of Radnor, County of Delaware and State of Pennsylvania, bounded and described according to a Map of Property of Claymont Development Company, by M.R. and J.B. Yerkes, Civil Engineers, Bryn Mawr, Pennsylvania, August 26, 1952 and revisited as to this lot January 21, 1953 as follows to wit:

Beginning at a point in the middle of Ithan Avenue (fifty feet wide) at the distance of Two hundred sixty-two feet measured Northeastwardly along the middle line of said Ithan Avenue from its intersection with the middle line of Mill Road ( fifty feet wide); thence extending along the middle line of said Ithan Avenue, North sixty-seven degrees, thirty-four minutes East, Two hundred thirty feet to a point; hence leaving said Ithan Avenue and extending North twenty-two degrees, twenty-six minutes West, Two hundred thirty feet to a point; thence extending South sixty-seven degrees, thirty four minutes West, Two hundred thirty feet to a point; thence extending South twenty two degrees, twenty six minutes East, Two hundred fifteen feet to the first mentioned point and place of beginning. Being Lot #16 on the above-mentioned plan. CONTAINING One Acre and One hundred thirty-five one-thousandths. (1.135) Acres.

**ALSO ALL THAT CERTAIN** strip or piece of ground, situate in the Township of Radnor, County of Delaware and State of Pennsylvania, bounded and described according to a Map of property of Claymont Development Company, made by M.R. and J.B. Yerkes, Civil Engineers, Bryn Mawr, Pennsylvania on August 26, 1952 and las revised as to this piece on July 13, 1955 as follows to wit:

Exhibit C

**BEGINNING** at an interior point, which point is at the distance of Two hundred fifteen feet measured North twenty-two degrees, twenty-six minutes West, from a point in the center line of Ithan Avenue, which last mentioned point is at the distance of Two hundred sixty-two feet measured North sixty seven degrees, thirty four minutes East along the center line of Ithan Avenue from its intersection with the center line of Mill Road; thence from said point of beginning extending North Twenty two degrees, twenty six minutes West, Ten feet to a point; thence extending North-seventy degrees, three minutes East, Two hundred thirty feet and twenty-two on hundredths feet to a point; thence extending South sixty seven degrees, thirty four minutes West, Two hundred thirty feet to the place of beginning: CONTAINING Twenty-six on thousandths (.026) Acres.

**BEING** the same premises which Reginald F. Ockley Jr. and Margaret E Ockley by Deed dated September 9, 1976 and recorded in the Office of the Recorder of Deeds, in and for the County of Delaware, in Deed Book 2591; Page 851 granted and conveyed unto Margaret E. Ockley, Individually in fee.

And the said Margaret E. Ockley died on January 31, 2002 leaving a Will probated and registered at Delaware County of Will No. 23-2002-0968, wherein she appointed Reginald F Ockley Jr as Executor, to whom Letters Testamentary were granted on April 19, 2002.

And the said Reginald F. Ockley Jr. did pass from this life on May 18, 2005.

Together with all and singular the buildings, Improvements ways, waters, water courses, driveways, rights, liberties, hereditaments and appurtenances whatsoever thereunto belonging or in any wish appertaining and the reversions and remainders, rents, issues and profits thereof and all the estate right title, interest, property claim and demand whatsoever of them, the grantor in law, equity, or otherwise howsoever of in and to the same and every part thereof.

**TO HAVE AND TO HOLD** the said lot or piece of ground described above, with the buildings and improvements thereon erected, hereditaments and premises hereby granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, their heirs and assigns, to and for the only proper use and behoof of the said Grantee, their heirs and assigns, forever.

**AND** the said Grantor, her heirs, executors and administrators, does, by these presents, covenant, grant and agree, to and with the said Grantee, their heirs and assigns, that the said Grantor, all and singular the hereditaments and premises herein described and granted, or mentioned and intended so to be, with the appurtenances, unto the said Grantee, their heirs and assigns, against the said Grantor, and against all and every other person and persons whosoever lawfully claiming or to claim the same or any part thereof, shall and will WARRANT and Forever DEFEND.

IN WITNESS WHEREOF, the said Grantors has caused these presents to be duly executed, the _14_ day of _December~~2022~~. 2021_

Exhibit C

Grantor:

_____
SIMONA NEGUT OCKLEY

Grantee:

_____
ROCKWELL GLYNN, L.P.
BY: Gregory B. Lingo
Manager

Commonwealth of Pennsylvania - Notary Seal
ELIZABETH R. HURTUBISE, Notary Public
Delaware County
My Commission Expires February 26, 2025
Commission Number 1394107

Commonwealth of Pennsylvania      :
                                   : SS

County of Delaware                  :

On this the 14 day of December 2021, before me, the undersigned officer, personally appeared Gregory B. Lingo on behalf of ROCKWELL GLYNN, L.P., who acknowledged themself to be the person/s whose name/s are subscribed in the foregoing document, that the foregoing instrument was executed for the purposes therein contained.

_____
Notary Public

Commonwealth of Pennsylvania      :
                                   : SS

County of Delaware                  :

On this the 14 day of December, 2021, before me, the undersigned officer, personally appeared SIMONA NEGUT OCKLEY, who acknowledged themself to be the person/s whose name/s are subscribed in the foregoing document, that the foregoing instrument was executed for the purposes therein contained.

_____
Notary Public

Commonwealth of Pennsylvania - Notary Seal
ELIZABETH R. HURTUBISE, Notary Public
Delaware County
My Commission Expires February 26, 2025
Commission Number 1394107

The precise residence and the complete post office address of the above-named Grantees is:
124 E. State St.
Media, PA 19063

Exhibit C



# HOLLISTER
## LAND SERVICES
**124 East State Street, Media, PA 19063  Phone:  610-891-6600  Fax:**

March 24, 2022

**Buyer:** Rockwell Glynn, LP, a PA Limited Partnership

**Seller:** Reginald Ockley and Simona Negut Ockley

RE:   416 South Ithan Road, Villanova, PA 19085

Please be advised that settlement has been scheduled as follows:

DATE:        May 2, 2022

TIME:        11:00 AM

LOCATION:  Hollister Land Services, LLC
124 East State Street
Media, PA 19063

**Please note that all parties must provide Government Issued Photo Identification (i.e. Driver's License, Passport, etc.) at the settlement table.**

**Funds for closing must be in the form of a Cashier's Check made payable to HOLLISTER LAND SERVICES, LLC.  If preferred, a wire transfer can be used to send closing funds.  Please contact me directly for wiring instructions.**

If you have any questions or need directions, please contact our office at 610-891-6600 or via email at .  Thank you.

Sincerely,

Beth Lelii, Title Processor

124 East State Street ~ Media, PA 19063

Settlement Notice

Exhibit D

HLS-21208

**416 South Ithan Road, Villanova, PA 19085**
**AMENDMENT TO AGREEMENT OF SALE**

THIS AMENDMENT TO AGREEMENT OF SALE (the "Amendment") is made and entered into this 17th day of April, 2022 (the "Amendment Date"), by and between SIMONA OCKLEY (the "Seller"), and ROCKWELL GLYNN, LP (the "Buyer").

### BACKGROUND

1. Seller and Buyer are parties to a certain Agreement of Sale ("AOS") for Real Estate having an effective date of October 20, 2021, which AOS provides the sale and purchase of 416 South Ithan Road, Villanova, Township of Radnor, County of Delaware, and Commonwealth of Pennsylvania; and

2. Seller and Buyer do hereby desire to amend the AOS as set forth herein.

### AGREEMENT

AND NOW, THEREFORE, in consideration of the covenants and agreements set forth herein, Seller and Buyer agree as follows:

3. Section 4. (SETTLEMENT AND POSSESSION) of the AOS, Part (A), settlement date is hereby extended from January 31, 2022, to June 10, 2022.

IN WITNESS THEREOF, this Amendment to the Agreement of Sale of Real Estate has been executed by the Parties hereto as of the Amendment Date set forth above. This Amendment may be executed in counterparts.

SELLER:                                        BUYER:


_____        _____
SIMONA OCKLEY                            BY: Gregory Lingo, Manager
                                         ROCKWELL GLYNN, LP

Copying Prohibited

Exhibit "E"

# Lee M. Herman, Esquire

*Attorney at Law*
280 N. Providence Rd, Suite 4
Media, PA 19063

lmh@lmhlaw.com

Lee M. Herman, Esquire+
+Admitted to practice in NJ and PA

(610) 891-6500

June 10, 2022

*Via email to: ken@russell.legal*
Kenneth C. Russell, Esquire
1000 North Providence Road
Media, PA 19063

Re:       416 S. Ithan Road, Villanova, PA
Buyer:    Rockwell Glynn, LP
Seller:   Simona Ockley

Dear Mr. Russell,

Confirming our brief call this morning, I represent Rockwell Glynn, LP ("Buyer"), the purchaser under the October 20, 2021 Agreement of Sale with your client, Simona Ockley ("Seller"), regarding 416 S. Ithan Road, Villanova, PA 19085 ("the Property").

As we discussed, the original closing date of January 31, 2022 was extended to June 10, 2022 by an Amendment dated April 17, 2022. Further, my client agreed to allow its deposit to be released to Seller so that she could make a payment to taxing authorities and avoid a tax sale, in return for which Seller executed a Deed being held in escrow by the title company.

Please allow this letter to confirm the following:

1. The settlement date of June 10, 2022 has not been extended in writing or orally.
2. Buyer is ready, willing and able to close today, June 10, 2022.
3. Buyer has an agreement to sell the Property and custom build a new residence for its new purchaser.
4. The new purchaser has a rate lock for the purchase and construction of the new home to be built by my client at the Property. The rate lock expires Friday, June 17, 2022.

Buyer will make reasonable accommodations for storage and/or removal of Seller's personal property over sixty (60) days. However, unless closing takes place in short order, Buyer will seek immediate judicial relief to prevent the loss of the rate lock by the Buyer's purchaser.

Please confirm that Seller authorizes the Title Company to complete the transaction and to record the Deed, so that Seller may receive the sale proceeds and my client may move forward with his upcoming transaction without the loss of its purchaser's rate lock.

Very Truly Yours,

*Lee M. Herman*

Lee M. Herman, Esquire

LMH/200081-Lingo-Rockwell Glynn, LP  Simona Ockley 416 S. Ithan Rd.

Exhibit "F"

Copying Prohibited